# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, and BJ'S WHOLESALE CLUB, INC., a Delaware corporation, | ) ) Civil Action No. 04 10162 DPW ) ) ) |
| Defendants. | ) ) |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) ) |
| Counter-Claimant, | ) ) |
| v. | ) ) |
| FLEXI-MAT CORPORATION, a corporation, | ) ) |
| Counter-Defendant. | ) ) |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) ) ) |
| Counter-Claimant, | ) ) |
| v. | ) ) |
| FLEXI-MAT CORPORATION, a corporation, | ) ) |
| Counter-Defendant. | ) |

## DEFENDANT BJ'S WHOLESALE CLUB'S RESPONSES AND OBJECTIONS TO PLAINTIFF FLEXI-MAT'S FIRST SET OF INTERROGATORIES

Pursuant to FED. R. CIV. P. 33, Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale Club") hereby objects and responds to *Plaintiff Flexi-Mat's First Set of*



EXHIBIT
C

*Interrogatories to Defendant BJ's Wholesale Club, Inc. (Nos. 1-17)*, served by Plaintiff Flexi-Mat Corporation ("Flexi-Mat") on May 25, 2004.

## GENERAL OBJECTIONS

1.    BJ's Wholesale Club objects to each interrogatory insofar as it is vague, overly broad, oppressive, harassing or vexatious; imposes burden or expense that outweighs its likely benefit; seeks a legal conclusion; and/or seeks information not relevant to any claim or defense between Flexi-Mat and BJ's Wholesale Club.

2.    BJ's Wholesale Club objects to each interrogatory insofar as it seeks information protected against disclosure by the attorney-client privilege, the work product doctrine, the common interest doctrine, or any other applicable privilege or rule of confidentiality.  Such information shall not be provided in response to Flexi-Mat's interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or of any work product or common interest immunity that may attach thereto.

3.    BJ's Wholesale Club objects to identifying information or documents withheld from production on grounds of attorney-client privilege or the work product doctrine to the extent such information or documents were generated after the commencement of this action, as unduly burdensome, oppressive, harassing and vexatious, and because the burden and expense outweighs its likely benefit.

4.    BJ's Wholesale Club objects to each interrogatory to the extent that it:  (1) seeks disclosure of information that would violate the privacy rights of individuals; or (2) requests disclosure of confidential commercial information, trade secrets, and/or proprietary information, including financial information, of BJ's Wholesale Club or third parties.  To the extent that BJ's Wholesale Club responds to Flexi-Mat's interrogatories by stating that it will

provide information which it, any other party to this litigation, or any third party deems to be private, business confidential, proprietary, trade secret or otherwise protected from disclosure pursuant to FED. R. CIV. P. 26(c)(7), FED. R. EVID. 501, or otherwise, BJ's Wholesale Club will do so only in accordance with a protective order entered in this action.

5.     BJ's Wholesale Club objects to each interrogatory to the extent it seeks information not currently in BJ's Wholesale Club's possession, custody, or control, or refers to persons, entities, or events not known to it, on the grounds that such interrogatory seeks to require more of BJ's Wholesale Club than any obligation imposed by law, would subject BJ's Wholesale Club to unreasonable and undue annoyance, oppression, burden, and expense, and seeks to impose upon BJ's Wholesale Club an obligation to investigate or discover information from third parties or sources who are equally accessible to Flexi-Mat.

6.     In responding to these interrogatories, BJ's Wholesale Club does not waive the foregoing objections or the specific objections that are set forth in response to particular interrogatories.  In addition, BJ's Wholesale Club does not concede by responding that the information sought or provided is relevant to the subject matter of this action or admissible in trial or in any other proceeding in this action.  BJ's Wholesale Club expressly reserves the right to object to further discovery into the subject matter of these interrogatories, to object to the introduction into evidence of any responses to any of these interrogatories, and to supplement its responses should further investigation and discovery uncover responsive information.

7.     BJ's Wholesale Club's responses to Flexi-Mat's interrogatories are made to the best of its current employees' present knowledge, information and belief based upon reasonable investigation and inquiry.  The responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and are subject to such refreshing of recollection and such additional knowledge of facts as may result from further

discovery or investigation. BJ's Wholesale Club reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to Flexi-Mat's interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information obtained in discovery herein.

## SPECIFIC OBJECTIONS AND RESPONSES
## TO FLEXI-MAT'S INTERROGATORIES

### INTERROGATORY NO. 1:

State the date on which BJWC, or any officer, employee or agent of BJWC, first became aware of the '502 patent, and identify those persons most knowledgeable about such circumstances.

### RESPONSE TO INTERROGATORY NO. 1:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in that it is not clear what Flexi-Mat means by "aware" and "such circumstances."

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club believes that it first received actual notice of the existence of U.S. Patent No. 5,765,502 ("the '502 patent") on or about January 27, 2004. The person most knowledgeable about BJ's

Wholesale Club's first receipt of notice of the existence of the '502 patent is believed to be
Edward F. Giles, Jr., BJ's Wholesale Club's Executive Vice President of Club Operations.

**INTERROGATORY NO. 2:**

Identify each patent, publication, reference, device, public use, sale, offer for sale
or other information or material, known to or considered by BJWC as prior art or potential prior
art with respect to the '502 patent or any patent application related thereto.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale
Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in that
it is not clear what Flexi-Mat means by "potential prior art," "with respect to the '502 patent," and
"any patent application related thereto."

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous as to
the time applicable to its knowledge or consideration.

BJ's Wholesale Club objects to this interrogatory as premature in that
(1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent
No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club; (3) Flexi-Mat
has not provided any information concerning the dates of conception and reduction to practice of
the claimed invention; (4) Flexi-Mat has not provided its contentions regarding the proper
interpretation of the claims of the '502 patent; and (5) the claims of the '502 patent have not yet
been interpreted by the Court.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it seeks identification of prior art related to (1) any claims of the '502 patent that Flexi-Mat is not asserting to have been infringed infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. that is identified in the *Complaint*, or (2) any patent application allegedly related to the '502 patent.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that, in addition to the references cited during prosecution of the application for the '502 patent, at least the following references may be relevant to one or more issues in this action concerning the '502 patent:  U.S. Patent Nos. 4,872,228; 5,421,044; 5,588,393; and 5,826,537.

BJ's Wholesale Club reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against BJ's Wholesale Club; (3) when Flexi-Mat provides dates of conception and reduction to practice of the claimed invention; (4) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (5) when the Court interprets the claims of the '502 patent.

**INTERROGATORY NO. 3:**

Identify each person involved in any investigation, consideration, report, opinion, analysis or review of the validity, enforceability and/or infringement of the '502 patent.

## RESPONSE TO INTERROGATORY NO. 3:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in that it is not clear what Flexi-Mat means by "involved in."

BJ's Wholesale Club objects to this interrogatory as premature in that Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint.*

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it asks BJ's Wholesale Club to identify each person having anything to do with any investigation, consideration, report, opinion, analysis, or review of the validity, enforceability, and/or infringement of the '502 patent.

BJ's Wholesale Club objects to this interrogatory in that it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that BJ's Wholesale Club's lead counsel of record, Gary A. Clark and Darren M. Franklin, have been primarily responsible for investigating, reporting, opining, analyzing, and reviewing the validity, enforceability and infringement issues raised by Flexi-Mat's assertion of the '502 patent against BJ's Wholesale Club relating to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing.

**INTERROGATORY NO. 4:**

Identify in detail the factual basis for BJWC's affirmative defense that "[d]efendant BJ's Wholesale Club has not infringed and does not infringe any valid claim of the '502 patent, either literally or under the doctrine of equivalents," including but not limited to, the claimed elements or features allegedly missing from the "Berkeley & Jensen Premium Quality Bolster Pet Bed."

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club; (3) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) the claims of the '502 patent have not yet been interpreted by the Court.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the accused pet bed supplied by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint.*

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing.

BJ's Wholesale Club objects that this interrogatory seeks contention discovery on an issue as to which Flexi-Mat bears the burden of proof. BJ's Wholesale Club is awaiting Flexi-Mat's answer to BJ's discovery requests directed to this issue.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that, as presently advised, it has not infringed, and does not infringe, any claims of the '502 patent. The accused pet bed supplied by Dallas Manufacturing to BJ's Wholesale Club lacks at least the following limitations of the independent claims:

<u>Claim 1</u>

1. A bolster "disposed within the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2. A bolster, "substantially all" of which is "disposed exteriorly about at least a portion of the perimeter of the bottom portion," as those phrases must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

<u>Claim 4</u>

1. A bolster "removably affixed within the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2. A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3. A "plurality of straps secured to the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

<u>Claim 7</u>

1. A bolster "removably secured to the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3.    A removable cushion and bolster that are "separately removable from the outer covering interior through the reclosable access opening," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

<u>Claim 9</u>

1.    An outer covering "including a bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster "removably affixed within the bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

4.    A "removably cushion and bolster" that are "separately removably from the outer covering interior through the reclosable access opening," as those phrases must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

5. A "plurality of straps," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

Claim 11

1. An outer covering "including a bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2. A reclosable access opening "through a bottom portion of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3. A bolster "removably affixed within the bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

4. A "plurality of straps that are secured about the bolster," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

5. A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

6. A removable cushion and bolster that are "separately removable from the outer covering interior through the reclosable access opening," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

All of the remaining claims of the '502 patent depend, directly or indirectly, from independent claims 1, 4, 7, 9, or 11. Therefore, BJ's Wholesale Club does not infringe any of the remaining claims of the '502 patent for at least the reason that there can be no infringement unless an independent claim is infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (holding that the absence of at least one limitation from an independent claim precludes a finding that any of its dependent claims are infringed).

BJ's Wholesale Club reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against BJ's Wholesale Club; (3) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) when the Court interprets the claims of the '502 patent.

**INTERROGATORY NO. 5:**

Identify in detail the factual basis for BJWC's affirmative defense that "[e]ach and every claim of the '502 patent is invalid and/or unenforceable under one or more provisions of the Patent Laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112."

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club; (3) Flexi-Mat has not provided any information concerning the dates of conception and reduction to practice of

the claimed invention; (4) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (5) the claims of the '502 patent have not yet been interpreted by the Court.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club contends that if the claims of the '502 patent are construed broadly enough to cover the accused pet bed supplied by Dallas Manufacturing to BJ's Wholesale Club, then the claims are invalid as anticipated or obvious in view of several references, including U.S. Patent Nos. 4,872,228; 5,010,843; 5,421,044; 5,588,393; and 5,826,537.

BJ's Wholesale Club reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against BJ's Wholesale Club; (3) when Flexi-Mat provides dates of conception and reduction to practice of the claimed invention; (4) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (5) when the Court interprets the claims of the '502 patent.

**INTERROGATORY NO. 6:**

Identify in detail the factual basis for BJWC's affirmative defense that "[b]y virtue of the arguments made during the prosecution of the application for the '502 patent in order to obtain allowance of the claims, Plaintiff Flexi-Mat is estopped from asserting a claim construction that would encompass any pet beds supplied to Defendant BJ's Wholesale Club by Defendant Dallas Manufacturing," including but not limited to, an identification of each of the arguments referenced in this affirmative defense.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club; (3) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) the claims of the '502 patent have not yet been interpreted by the Court.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club answers as follows: In the first office action, mailed June 27, 1997, in the application for the '502 patent, claims 1, 3, 7, and 8 were rejected as anticipated by U.S. Patent No. 5,010,843 to Henry ("the Henry patent"). In rejecting claims 1-3, 7, and 8 of the application for the '502 patent, the examiner cited the embodiment in Figure 5 of the Henry patent.

In an *Amendment* dated September 29, 1997, Flexi-Mat disclaimed an interpretation of claim 1 that would cover a pet bed having separate outer coverings for a bottom or base cushion and a top cushion or bolster. Specifically, Flexi-Mat made the following argument:

> Claims 1-3 are directed towards a pet bed comprising an outer covering, a cushion disposed within the outer covering, and a bolster removably disposed within the outer covering and disposed about at least a portion of the perimeter of the bottom portion without being secured to the cushion. Because the bolster is not secured to the cushion, this pet bed is easier than those in the prior art to assemble, i.e., to place the bolster and cushion within the outer covering, and also easier to disassemble for transport and cleaning purposes.
>
> In the pet bed disclosed in Henry, the semi-circular cushions are attached to the circular base by stitching, hook and loop materials, or other fasteners. However, if the cushions are foam, a commonly used cushion material, it is not easy to sew or attach hook and loop fasteners to such foam material, and the joint between the semi-circular cushion and cushion base is susceptible to failure. As a result, Henry suggests individual liners for each cushion and requires covers for the semi-circular cushions 14, 16 which are separate from the cover for the base cushion. See Col. 2, lines 44-50. These separate liners and covers add manufacturing cost for material and assembly time. In addition, Henry has a concern for exposed connections between the semi-circular cushions and the base cushion, which is not a concern with the present invention because a single cover encompasses both cushions. Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry.

Thus, the '502 patent cannot include beds having separate covers with separate interior spaces for the bolster and bottom cushion.

By making these remarks to the examiner, Flexi-Mat triggered "the rule that explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998); *see also Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) (stating that the prosecution history, which includes "all express representations made by or on behalf of the applicant to the examiner to induce a patent grant," limits claim interpretation "so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance").

Moreover, arguments made during prosecution may give rise to prosecution history estoppel if they show a surrender of subject matter. *See, e.g., KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359-60 (Fed. Cir. 2000) (concluding that "KCJ's statements [during prosecution] reflect a clear and unmistakable surrender" of subject matter that cannot be reclaimed through the doctrine of equivalents); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252-53 (Fed. Cir. 2000) (finding that "through [Bayer's] statements to the PTO and the declarations it filed, Bayer made statements of clear and unmistakable surrender of subject matter" that it could not recapture through the doctrine of equivalents); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d, 1373 1377 (Fed. Cir. 1999) ("A number of activities during prosecution may give rise to prosecution history estoppel, . . . including arguments made to obtain allowance of the claims at issue.") (citation omitted); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995) ("Clear assertions made during prosecution in

support of patentability, whether or not actually required to secure allowance of the claim, may . . . create an estoppel."); *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed. Cir. 1993) (holding that arguments made during prosecution that emphasized one feature of the invention estopped the patent holder from asserting that a device lacking that feature infringed the patent under the doctrine of equivalents). Because Flexi-Mat distinguished the Henry patent's two-cover design, it may not argue that two coverings are equivalent to one covering under the doctrine of equivalents.

Dallas Manufacturing's pet bed has two coverings. The bolster is completely partitioned off from the bottom cushion. The two coverings are sewn together, but sewing does not turn two coverings into one, consistent with Flexi-Mat's argument in distinguishing over the Henry patent.

Furthermore, the prosecution history for the '502 patent requires that the bolster be on the sides of or surrounding the perimeter of the bottom portion, not on top of the bottom portion. After Flexi-Mat submitted the above remarks in its *Amendment* dated September 29, 1997, the examiner held a telephone interview with Flexi-Mat's patent attorney on November 19, 1997. According to the *Interview Summary*, "[a]dditional language was discussed to insure that claim 1 read [sic] over the prior art patent to Henry." As a result, claim 1 was amended as follows:

> . . . a bolster removably disposed within the interior of the outer covering and <u>substantially all of said bolster</u> disposed <u>exteriorly</u> about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

It was only after this amendment that claims 1-3 were allowed.

In Figure 5 of the Henry patent, the bolsters are shown atop the bottom cushion, not disposed around the sides of or surrounding the bottom cushion. The words "substantially all

of said bolster" and "exteriorly" were thus added to ensure that claim 1 did not read on a bed like Dallas Manufacturing's pet bed, in which the bolster is disposed on top of the bottom cushion.

Having amended its claims to narrow the scope of the claimed subject matter and secure issuance of the patent, Flexi-Mat may not reclaim what it gave up. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) ("When . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1573 (Fed. Cir. 1997) ("When a claim has been narrowed by amendment for a 'substantial reason related to patentability,' such as to avoid a prior art rejection, the patentee may not assert that the surrendered subject matter is within the range of equivalents."); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1107 (Fed. Cir. 1996) ("Prosecution history estoppel bars the patentee from recapturing subject matter that was surrendered by the patentee during prosecution in order to promote allowance of the claims.").

BJ's Wholesale Club reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against BJ's Wholesale Club; (3) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) when the Court interprets the claims of the '502 patent.

**INTERROGATORY NO. 7:**

Identify in detail the factual basis for BJWC's affirmative defense that "[p]laintiff Flexi-Mat's claims against Defendant BJ's Wholesale Club are barred by the doctrines of laches, estoppel, waiver and unclean hands."

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as premature in that (1) discovery has just commenced; and (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against BJ's Wholesale Club.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

BJ's Wholesale Club reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; and (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against BJ's Wholesale Club.

**INTERROGATORY NO. 8:**

State the date on which BJWC first purchased the product that is sold under the name "Berkeley & Jensen Premium Quality Bolster Pet Bed" from Dallas Manufacturing Company or any other entity, and identify those persons most knowledgeable about such purchase(s).

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the product that is sold under the name 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory to the extent that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that it first purchased the accused pet bed supplied by Dallas Manufacturing in or around the beginning of October 2003. The person most knowledgeable about the purchase is Jim Pereira, BJ's Wholesale Club's buyer, pet supplies.

## INTERROGATORY NO. 9:

State the number of units and purchase price of the "Berkeley & Jensen Premium Quality Bolster Pet Bed" that BJWC has purchased from Dallas Manufacturing Company or any other entity.

## RESPONSE TO INTERROGATORY NO. 9:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it seeks information concerning products other than the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory in that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

**INTERROGATORY NO. 10:**

Identify each entity that has supplied BJWC with the "Berkeley & Jensen Premium Quality Bolster Pet Bed."

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it seeks information concerning products other than the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory in that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

## INTERROGATORY NO. 11:

State the date on which BJWC made the first sale or offer for sale of the "Berkeley & Jensen Premium Quality Bolster Pet Bed."

## RESPONSE TO INTERROGATORY NO. 11:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense between any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory to the extent that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that it first offered for sale the accused pet bed supplied by Dallas Manufacturing after October 8, 2003.

## INTERROGATORY NO. 12:

State the number of units and gross sales of the "Berkeley & Jensen Premium Quality Quality Bolster Pet Bed" sold by BJWC for each year from the date of first sale to the present.

## RESPONSE TO INTERROGATORY NO. 12:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense between any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory in that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

## INTERROGATORY NO. 13:

State BJWC's net profits from the sale of the "Berkeley & Jensen Premium Quality Bolster Pet Bed" for each year from the date of first sale to the present.

**RESPONSE TO INTERROGATORY NO. 13:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'," and in that it is unclear what Flexi-Mat means by "net profits."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense between any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. that is identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory as not relevant to a claim or defense of any party in seeking information concerning BJ's Wholesale Club's "net profits."

BJ's Wholesale Club objects to this interrogatory in that it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

**INTERROGATORY NO. 14:**

Identify each person who participated in the preparation of any answer or portion of any answer, or supplied any information used or considered in the preparation of any answer, to the foregoing Interrogatories.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it asks BJ's Wholesale Club to identify each person who "participated in" the preparation of any answer or portion of any answer, or supplied any information used or considered in the preparation of any answer, to Flexi-Mat's interrogatories.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, the answers were prepared by BJ's Wholesale Club's lead counsel, Gary A. Clark and Darren M. Franklin. Persons who participated and/or supplied any information used or considered in the preparation of one or more answers were Gary A. Clark, Darren M. Franklin, Nancy M. Hanley, Senior Attorney at BJ's Wholesale Club, and Jim Pereira, buyer at BJ's Wholesale Club.

**INTERROGATORY NO. 15:**

Identify each person BJWC will call to testify at any hearing or trial in this matter, whether a fact witness or expert witness, and the subject matter of that person's testimony, including the facts and opinions about which that person is expected to testify.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as premature because BJ's Wholesale Club does not yet know, and cannot be expected to know, what witnesses it will call to testify, or what hearings will be held in this matter.

BJ's Wholesale Club objects to this interrogatory as premature because the Court's May 11, 2004 Scheduling Order does not require Defendants to designate trial experts until April 15, 2005.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

**INTERROGATORY NO. 16:**

Identify the person or persons employed by or on behalf of BJWC who is/are most knowledgeable regarding the: (a) design; (b) manufacture; (c) purchase; and (d) sale of the "Berkeley & Jensen Premium Quality Bolster Pet Bed."

**RESPONSE TO INTERROGATORY NO. 16:**

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "the 'Berkeley & Jensen Premium Quality Bolster Pet Bed'."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense between any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") that is identified in the *Complaint*.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that the person employed by or on behalf of BJ's Wholesale Club who is most knowledgeable regarding the purchase and sale of the accused pet bed supplied by Dallas Manufacturing is Jim Pereira, BJ's Wholesale Club's buyer, pet supplies.  BJ's Wholesale Club has no knowledge regarding the design and manufacture of the accused pet bed supplied by Dallas Manufacturing.

## INTERROGATORY NO. 17:

Identify the supplier of each pet bed that includes a bolster and has been sold by BJWC since June 16, 1998, and state the date when BJWC first purchased such pet beds from each supplier.

## RESPONSE TO INTERROGATORY NO. 17:

In addition to the grounds set forth in the General Objections, BJ's Wholesale Club objects to this interrogatory on the following grounds:

BJ's Wholesale Club objects to this interrogatory as vague and ambiguous in its reference to "has been sold . . . since June 16, 1998."

BJ's Wholesale Club objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it seeks information

concerning suppliers of products other than Dallas Manufacturing Company, Inc. ("Dallas Manufacturing"), the supplier of the accused pet bed identified in the *Complaint*.

BJ's Wholesale Club objects to this interrogatory to the extent it seeks confidential and proprietary information. BJ's Wholesale Club will produce confidential information only after the parties have agreed to and the Court has entered a protective order in this action.

Subject to and without waiving the foregoing objections, BJ's Wholesale Club states that Dallas Manufacturing is the supplier of the accused pet bed identified in Flexi-Mat's

Complaint, and that BJ's Wholesale Club began selling the Dallas Manufacturing bed after June 16, 1998.

Attorneys for Defendants and Counter-Claimants
DALLAS MANUFACTURING COMPANY, INC.
AND BJ'S WHOLESALE CLUB, INC.

*Darren Franklin*

Gary A. Clark (pro hac vice)
Darren M. Franklin (pro hac vice)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
(213) 620-1780

Dated:   July 19, 2004

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA  02109-1775
(617) 535-4000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiff's counsel, John J. Cotter, Esq., Testa, Hurwitz & Thibeault, LLP, 125 High Street, Boston, MA 02110, and Larry L. Saret, Esq., Michael, Best & Friedrich LLP, 401 N. Michigan Avenue, Suite 1900, Chicago, Illinois 60611, via first class mail, postage pre-paid, on July 19, 2004.

*Darren Franklin*



SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
A T T O R N E Y S   A T   L A W

48th Floor | 333 South Hope Street | Los Angeles, CA 90071-1448
213-620-1780 office | 213-620-1398 fax | *www.sheppardmullin.com*

Darren M. Franklin
Writer's Direct Line: 213-617-5498
dfranklin@sheppardmullin.com

July 19, 2004

Our File Number: 0688-100419

John J. Coulter, Esq.
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110

Larry L. Saret, Esq.
Michael, Best & Friedrich LLP
401 N. Michigan Avenue, Suite 1900
Chicago, Illinois 60611

Re:    Flexi-Mat Corporation v. Dallas Manufacturing Company, Inc.

Dear Mr. Coulter and Mr. Saret:

Enclosed are the following documents:

1.    Defendant Dallas Manufacturing's Responses and Objections to Plaintiff Flexi-Mat's First Set of Interrogatories.

2.    Defendant Dallas Manufacturing's Responses and Objections to Plaintiff Flexi-Mat's First Request for Documents and Things.

3.    Defendant BJ's Wholesale Club's Responses and Objections to Plaintiff Flexi-Mat's First Set of Interrogatories.

4.    Defendant BJ's Wholesale Club's Responses and Objections to Plaintiff Flexi-Mat's First Request for Documents and Things.

Please call if you have any questions.

Sincerely,

*Darren Franklin*

Darren M. Franklin

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-LA:LB3\70732587.1
Enclosures