UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| AND RELATED COUNTERCLAIMS. | ) ) ) |

Civil Action No. 04 10162 DPW

**DEFENDANT DALLAS MANUFACTURING COMPANY, INC.'S OPPOSITION TO PLAINTIFF FLEXI-MAT CORPORATION'S MOTION TO COMPEL DOCUMENTS AND INTERROGATORY RESPONSES**

## I.   INTRODUCTION

This dispute is a tempest in a teapot. In September, Plaintiff and Counter-Defendant Flexi-Mat Corporation ("Flexi-Mat") began insisting that Defendant and Counter-Claimant Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") immediately produce all documents responsive to Flexi-Mat's First Request for Documents and Things. Flexi-Mat made these demands despite the facts that (1) Dallas Manufacturing had just filed its answer to Flexi-Mat's First Amended Complaint on September 13; (2) Co-Defendant Doskocil Manufacturing Company, Inc. ("Doskocil") had not even filed an appearance in the case; and (3) due to Doskocil's status, the parties were not yet in a position to negotiate a stipulated protective order to safeguard the confidentiality of discovery information and materials.

Notwithstanding Flexi-Mat's overly aggressive discovery posture, Dallas Manufacturing agreed to enter into an interim discovery agreement governing the production of

confidential materials and to produce documents on October 1. However, during the week before October 1, Dallas Manufacturing's intellectual property paralegal, who was responsible for gathering documents for review and possible production, had to cope with the death of her mother after a long illness. Upon the paralegal's return to work in early October, it became apparent that there were people from whom documents may not have been collected, and that the documents needed further review before production. Dallas Manufacturing is presently trying to ensure a complete production, and is producing what it believes to be a substantial portion of its documents to Flexi-Mat concurrent with the filing of this opposition.

Importantly, it bears emphasis that Flexi-Mat is **not** entitled to its requested order "to immediately produce all documents and things for which no privilege is asserted and to respond fully to Interrogatory Nos. 8, 9 and 11-14." Dallas Manufacturing made multiple objections to each of Flex-Mat's discovery requests, and Dallas Manufacturing has never withdrawn or waived any of its objections. Even more, Flexi-Mat has **not** followed Local Rule 37.1(a), which required Flexi-Mat to "confer in good faith to narrow the areas of disagreement to the greatest possible extent" concerning Dallas Manufacturing's objections. Nor is Flexi-Mat also entitled to an award of attorneys' fees, costs, or any other sanctions under the facts of this motion. To the extent that Flexi-Mat argues otherwise, it is in flagrant violation of the Local Rules and is the party that should be sanctioned.

At most, Flexi-Mat may request an order that Dallas Manufacturing produce responsive, non-privileged documents in its possession, custody, or control, subject to and without waiving the objections asserted in its July 19, 2004 Responses and Objections (Exhibit B to Flexi-Mat's motion), at a reasonable time following the entry of the order. By producing documents with the service of its opposition, Dallas Manufacturing renders such an order largely moot.

## II.   BACKGROUND

Flexi-Mat sued Dallas Manufacturing for infringing a patent to a pet bed with a bottom cushion and removable bolster. Among other things, the patent requires that "substantially all of said bolster [be] disposed exteriorly about at least a portion of the perimeter of the bottom portion." (U.S. Patent No. 5,765,502 ("the '502 patent") at 3:43-45.) In other words, the bolster must be arranged or placed along the outside of the outer boundary of the bottom cushion, as shown by the drawings in Flexi-Mat's patent, and not on top of the bottom cushion. In Dallas Manufacturing's pet bed, the top cushion or bolster is positioned entirely on top of the bottom or base cushion. Flexi-Mat's claim against Dallas Manufacturing is completely baseless.

### A.   Exchange of Discovery Requests and Objections.

Despite the groundless nature of its claim, Flexi-Mat insists that Dallas Manufacturing Company immediately produce all documents and information responsive to Flexi-Mat's discovery requests. Flexi-Mat served the requests at issue on May 25, 2004. Dallas Manufacturing and Co-Defendant BJ's Wholesale Club, Inc. ("BJ's Wholesale Club") served their First Joint Set of Requests for Production of Documents and Things upon Flexi-Mat on June 14. On June 24, the parties granted each other mutual three-week extensions to respond to the discovery requests. (Declaration of Darren M. Franklin ("Franklin Decl.") at ¶ 4, Exh. A.)

Dallas Manufacturing timely served its Responses and Objections to Flexi-Mat's First Request for Documents and Things and First Set of Interrogatories (Exhibits A and B to Flexi-Mat's motion) on July 19. Flexi-Mat timely served its Responses and Objections to Dallas Manufacturing's and BJ's Wholesale Club's First Joint Set of Requests for Production of Documents and Things on August 9, 2004. Neither Flexi-Mat nor Dallas Manufacturing produced any documents. Flexi-Mat specifically stated that it "will not produce any confidential

or proprietary documents until an appropriate protective order has been entered." (Franklin Decl. at ¶ 5, Exh. B.)

B.   **Negotiation of an Interim Agreement Governing Confidential Materials.**

Flexi-Mat first contacted Dallas Manufacturing about negotiating a protective order in late August, and e-mailed a draft protective order to Dallas Manufacturing's counsel on August 30. (Franklin Decl. at ¶ 6, Exh. C.) Counsel spoke again on September 1, the same day that Flexi-Mat filed its First Amended Complaint naming Doskocil as a defendant. Dallas Manufacturing raised the issue that Doskocil had not yet filed an appearance in the case and was not joining in the protective order negotiations. Counsel spoke again on September 2, and Flexi-Mat demanded that Dallas Manufacturing enter into an interim letter of understanding governing the production of confidential materials. Dallas Manufacturing explained that an interim agreement without Doskocil's input would be inefficient, since Doskocil might object to the terms that Flexi-Mat and Dallas Manufacturing negotiated, and that Dallas Manufacturing might not be comfortable entering into an interim agreement not signed by the Court. On September 3, Flexi-Mat told Dallas Manufacturing that Flexi-Mat planned to file a motion for a protective order and the production of documents subject thereto. (*Id.* at ¶ 7.)

To avoid motion practice, on September 10 Dallas Manufacturing acceded to Flexi-Mat's demands and agreed to enter into an interim agreement governing the production of confidential materials. Dallas Manufacturing also dropped certain objections that it had voiced to the terms of the prior draft protective order. Flexi-Mat sent a draft agreement to Dallas Manufacturing's counsel on September 15, two days after Dallas Manufacturing filed its answer to Flexi-Mat's First Amended Complaint. (Franklin Decl. at ¶ 8, Exh. D.) Counsel held further telephone negotiations concerning the draft agreement.

Flexi-Mat e-mailed a second draft interim agreement to Dallas Manufacturing's counsel on September 24. (Franklin Decl. at ¶ 9, Exh. E.) Counsel spoke and agreed to exchange documents on October 1. Dallas Manufacturing signed the Interim Discovery Agreement and e-mailed it to Flexi-Mat's counsel on September 29. (*Id.* at ¶ 10, Exh. F.) Doskocil filed its first appearance in the case on September 30.

C.     **Production of Documents.**

During the week before October 1, Dallas Manufacturing's intellectual property paralegal had to cope with the death of her mother. On September 30, Dallas Manufacturing's counsel called Flexi-Mat's counsel, explained the circumstances, and requested an extra ten days to produce documents. Incredibly, Flexi-Mat's counsel called the requested extension "unreasonable" and gave Dallas Manufacturing **a mere two additional business days** before threatening to file a motion to compel. (Franklin Decl. at ¶ 11.)

In early October, after the paralegal returned to work, it became clear that there were people from whom documents may not have been collected, probably due to the stress that the paralegal was under, and that a further document review was needed before production. Dallas Manufacturing is presently trying to ensure a complete production. On October 11, Dallas Manufacturing provided a partial production of mostly publicly available documents to Flexi-Mat. With the service of this opposition, Dallas Manufacturing is producing what it believes to be a substantial portion of its remaining documents to Flexi-Mat.

Flexi-Mat also produced documents on October 11, but its production was plainly deficient. Dallas Manufacturing and BJ's Wholesale Club served forty-nine production requests upon Flexi-Mat covering the gamut of issues from the alleged validity and infringement of Flexi-Mat's patent to Flexi-Mat's alleged damages. (Franklin Decl. at ¶ 4.) In response, Flexi-Mat produced 325 pages of documents consisting almost completely of (1) correspondence between

Flexi-Mat and Trade Lines, Inc. about Trade Lines' alleged infringement of Flexi-Mat's patent; (2) a spreadsheet showing bolster bed sales quantities and dollar amounts; (3) documents pertaining to the application for and prosecution of Flexi-Mat's patent; (4) patents and catalogs showing prior art pet beds; and (5) correspondence between Flexi-Mat and Wynken, Blynken & Fido ("WBF") about WBF's alleged infringement of Flexi-Mat's patent. (Franklin Decl. at ¶ 12.) There are many production requests for which Flexi-Mat produced no documents.

### III.  DISCUSSION

**A.  Flexi-Mat Is Not Entitled to "All Documents and Things."**

Flexi-Mat is not entitled to its requested order "to immediately produce all documents and things for which no privilege is asserted and to respond fully to Interrogatory Nos. 8, 9 and 11-14." Dallas Manufacturing did not waive any of its objections to Flexi-Mat's overly broad and unduly burdensome discovery requests, nor did Flexi-Mat follow Local Rule 37.1(a) and "confer in good faith to narrow the areas of disagreement to the greatest possible extent" concerning Dallas Manufacturing's objections. There has been no meet-and-confer about Dallas Manufacturing's objections to Flexi-Mat's discovery requests.

Flexi-Mat claims that "Dallas has conceded that the interim confidentiality agreement nullifies co-defendants' concerns over answering this discovery . . . ," (Flexi-Mat's Memorandum in Support of Its Motion to Compel ("Mem.") at 4), but Flexi-Mat overlooks Dallas Manufacturing's other objections to Flexi-Mat's discovery requests. These include objections that the requests are vague, overly broad, unduly burdensome, and irrelevant, among other things. Dallas Manufacturing did not waive these and other objections.

Moreover, it is audacious for Flexi-Mat to demand that Dallas Manufacturing "immediately produce all documents and things" when Flexi-Mat itself made a plainly deficient production. At most, Flexi-Mat may request an order that Dallas Manufacturing produce

responsive, non-privileged documents in its possession, custody, or control, subject to and without waiving the objections asserted in its July 19, 2004 Responses and Objections (Exhibit B to Flexi-Mat's motion), at a reasonable time following the entry of the order. It would be fair to direct Flexi-Mat to obey such an order as well.

### B.      Flexi-Mat Is Not Entitled to Sanctions.

Flexi-Mat is not entitled to an award of attorneys' fees, costs, or any other sanctions under the facts of this motion. The parties agreed to exchange documents on October 1, and Flexi-Mat would have had absolutely no claim for sanctions had Dallas Manufacturing been able to meet that date. Thus, Flexi-Mat's demand for "attorneys' fees and costs incurred in seeking the aforesaid discovery after the dates set by the Federal Rules" is completely groundless, if Flexi-Mat has in mind the original June 28 discovery response date. Flexi-Mat itself did not produce documents and sign the interim discovery agreement concerning confidential materials until October 11. Flexi-Mat filed this motion the very next day.

It was reasonable for Dallas Manufacturing to request an extra ten days after October 1 to produce documents, due to the death of its intellectual property paralegal's mother. *Cf. Rubin Response Servs, Inc. v. Dunning*, No. 89 C 4326, 1990 WL 7084, *1 (N.D. Ill. Jan. 18, 1990) (indicating initially that discovery sanctions were not warranted in part due to "the unfortunate circumstances of the serious illness and ultimate death of [defendant's] mother, coupled with [defendant's] understandable preoccupation during the period immediately after his mother's death," although ultimately awarding sanctions due to defendant's "outright *refusal* to produce the requested documents both before and after that distressing event"). Here, Dallas Manufacturing never outright refused to produce the requested documents, but instead told Flexi-Mat that it just needed more time.

In early October, it became clear that there were people from whom documents may not have been collected and that further review of the documents was needed before production. Dallas Manufacturing provided a partial production of mostly publicly available documents to Flexi-Mat on October 11 and is producing a substantial portion of its remaining documents to Flexi-Mat concurrent with the filing of this opposition. The fifteen-day delay after the initial exchange of documents on October 11 does not warrant sanctions, especially given the plain deficiencies in Flexi-Mat's own document production, Dallas Manufacturing's earlier willingness to compromise on the drafting of an interim confidentiality agreement, and the fact that Flexi-Mat will likely need to seek an extension of the discovery cutoff, due to Flexi-Mat's late addition of Co-Defendant Doskocil to this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Flexi-Mat's Motion to Compel Documents and Interrogatory Responses from Dallas Manufacturing. Flexi-Mat is not entitled to "all documents and things," since Dallas Manufacturing did not waive any of its objections to Flexi-Mat's overly broad and unduly burdensome discovery requests. Flexi-Mat also is not entitled to sanctions under the facts of this motion. At most, Flexi-Mat may obtain an order that Dallas Manufacturing produce responsive, non-privileged documents in its possession, custody, or control, subject to and without waiving the objections asserted in its July 19, 2004 Responses and Objections (Exhibit B to Flexi-Mat's motion), at a reasonable time following the entry of the

order.  Such an order would be largely moot due to Dallas Manufacturing's production of documents with the service of this opposition.

        Attorneys for Defendants and Counter-Claimants
        DALLAS MANUFACTURING COMPANY, INC.
        AND BJ'S WHOLESALE CLUB, INC.

        /s/ Darren M. Franklin
        Gary A. Clark (pro hac vice)
        Darren M. Franklin (pro hac vice)
        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
          A Limited Liability Partnership
          Including Professional Corporations
        333 South Hope Street, 48th Floor
        Los Angeles, California  90071-1448
        (213) 620-1780
        dfranklin@sheppardmullin.com

Dated:   October 26, 2004

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA  02109-1775
(617) 535-4000