## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FLEXI-MAT CORPORATION**, an Illinois corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>**DALLAS MANUFACTURING COMPANY, INC.**, a Texas corporation, **BJ'S WHOLESALE CLUB, INC.**, a Delaware corporation, and **DOSKOCIL MANUFACTURING COMPANY, INC.**, a Texas corporation,<br><br>       Defendants. | Civil Action No. 04 10162 DPW |

### PLAINTIFF FLEXI-MAT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT DALLAS MANUFACTURING TO PRODUCE ITS ONLY RULE 30(B)(6) WITNESS AND AN INDIVIDUAL WITNESS FOR TWO SEVEN-HOUR DAYS OF DEPOSITION

Defendant Dallas Manufacturing Company, Inc. ("Dallas") has designated Richard Mathews as its only corporate representative in response to the Rule 30(b)(6) notice of deposition served by plaintiff Flexi-Mat Corporation ("Flexi-Mat") on December 31, 2004. This occurred after Flexi-Mat noticed Mr. Mathews individually for a deposition, because he is referenced on numerous documents and appears to have personal knowledge of numerous relevant subjects. Flexi-Mat believes that it will need a full day with Mr. Mathews to cover the subjects of which he has individual knowledge, and another day with Mr. Mathews to cover the Rule 30(b)(6) subjects. Dallas asserts that the two depositions should be treated as a single deposition, limited to seven (7) hours, and offered Mr. Mathews initially for only one day of deposition. Although Dallas later offered Mr. Mathews for a day and a half, Dallas has threatened to revert back to its one day limitation if Flexi-Mat files this motion to compel with the Court.

In view of Dallas' gamesmanship, and pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1, Flexi-Mat requests that this Court compel defendant Dallas to:

(a) produce Mr. Mathews for two seven-hour days of deposition to permit Flexi-Mat to depose him in both his individual capacity and as Dallas's sole corporate designee; and

(b) pay Flexi-Mat's reasonable attorneys' fees and costs incurred in pursuing this motion, and any additional amount the Court deems appropriate.

To save both parties' out-of-town counsel additional travel time and costs, this issue should be addressed in advance of the depositions, presently scheduled to take place during the first week of March, 2005 in Dallas, Texas.

## BACKGROUND

Flexi-Mat is the owner of U.S. Patent No. 5,765,502 ("the '502 Patent"), directed toward pet beds having a bolster. On January 23, 2004, Flexi-Mat filed its Complaint for infringement of the '502 Patent against co-defendants Dallas and BJ's Wholesale Club, Inc. On August 31, 2004, Flexi-Mat amended its Complaint to add another defendant, Doskocil Manufacturing, Inc., which, like co-defendant Dallas, also sells pet beds having a bolster to co-defendant BJ's.

Flexi-Mat served its Rule 30(b)(1) notice of deposition on Mr. Mathews in his individual capacity as Dallas's Vice President of Sales and Marketing on December 6, 2004. (Ex. 1). Flexi-Mat served its Rule 30(b)(6) Notice of Deposition on Dallas on December 31, 2004. (Ex 2). The 30(b)(6) notice covers several categories related to Dallas's alleged infringing activity. (*See id.*).

Dallas first said that Mr. Mathews will be made available only for one seven-hour day. After an extensive series of discussions and written correspondence between counsel for the parties (*see* Ex. 5), Dallas refused to agree that in the present situation, where Mr. Mathews is to be deposed both as an individual and as Dallas's sole corporate designee, *each* of these

2

depositions is subject to the seven-hour "presumptive durational limitation" imposed by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 30 Comm. Notes (2000 Am. to Subdivision (d)). Instead, Dallas proposed that Flexi-Mat should depose Mr. Mathews for one and one-half days, or only three-quarters of the time that the Federal Rules provide as the presumptive time limit for two depositions. When that proposal was rejected, Dallas threatened to withdraw even that proposal if Flexi-Mat filed this motion and said that Flexi-Mat would be limited to only one day, or half the time allotted by the Federal Rules.

## ARGUMENT

### I. THE FEDERAL RULES TREAT THE PRESENT CIRCUMSTANCES AS TWO DEPOSITIONS, NOT ONE.

Rule 30(d)(2) provides:

> Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

Fed. R. Civ. P. 30(d)(2).

The Advisory Committee Notes (2000) do not address a situation in which an individual is noticed to testify on his own personal knowledge *and* is designated by the corporation to testify on its behalf in response to a notice of deposition served on the corporation. The only case Flexi-Mat found that addresses this situation squarely holds that, where an individual is noticed to testify based on his personal knowledge and is also designated by the corporation to testify on its behalf in a 30(b)(6) deposition, such depositions are "presumptively subject to *independent* seven-hour time limits." *Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637 at *1 (S.D.N.Y. 2001) (emphasis added). In *Sabre*, the parties disputed whether the seven-hour time limit applied cumulatively to testimony given in an individual capacity and

3

as a corporate representative. As the *Sabre* court noted, if the limit were cumulative, there would be "absurd results" in which a party could limit the testimony of an individual by making the individual a 30(b)(6) witness or, conversely, limit the testimony of a company by identifying a 30(b)(6) witness as someone who had already been deposed for six hours. *Id*. at *3. The result would be even more "absurd" where, as here, Dallas has designated only one person to testify on a vast number of disparate subjects and categories.

Dallas has argued that Flexi-Mat needs court approval to extend Mr. Mathews' deposition beyond seven hours. Dallas confuses the "good cause" requirement applicable to a single deposition, with the fact that two depositions have been noticed here, one for Mr. Mathews and one for Dallas.

## II. MR. MATHEWS' PERSONAL KNOWLEDGE AND THE CORPORATION'S KNOWLEDGE ARE NOT LIKELY TO BE CO-EXTENSIVE.

In this case, Mr. Mathews is the Vice President of Sales and Marketing for Dallas. Dallas's Initial Disclosure Statement describes him as having "information regarding product introduction, marketing and sales of the accused pet bed and subjects relating thereto." (Ex. 3). Mr. Mathews' name appears on approximately eighty (80) documents produced by Dallas relating to the introduction and marketing of the accused product. Thus, he presumably has considerable personal knowledge of many of the events that form the basis of this lawsuit, and exploring his personal knowledge will take a considerable amount of time.

In addition, the Rule 30(b)(6) deposition of Dallas will involve considerable time. Dallas, as one of the accused infringers, is a principal player in this dispute, and its designated deponent has been requested and is expected to have acquired corporate knowledge of the following topics:

> (1) Conception, design and development of Dallas's accused pet bed and other similar products, including (a) any consideration or analysis of Flexi-Mat's

4

pet bed and (b) comparison of Dallas's pet bed with the accused pet bed made by Dallas's co-defendant Doskocil and certain other pet beds made by Flexi-Mat or third parties;

(2)    The corporate relationships between Brinkmann Corporation, Dallas and Apogee (a corporation apparently acquired by Brinkmann);

(3)    Production, testing, and changes of pet beds having a bolster, including the specifications and manufacture of the accused pet bed;

(4)    Compensation and terms paid to others in connection with developing and manufacture of Dallas' pet beds having a bolster;

(5)    Sales and marketing of pet beds with bolsters, by units and dollars, by customer;

(6)    Financial information, including Dallas' gross and net margins, its cost and profit per unit, and its operating expenses, financial statements, including but not limited to, profit and loss statements, balance sheets and cash flow statements for such pet beds, market share data of Dallas and/or Dallas's competitors for any pet beds having a bolster, and other financial forecasts and budgets relating to such pet beds;

(7)    The identities of all distribution, purchasing and/or resale companies used by Dallas, and any agreements with them regarding any pet beds having a bolster made or sold by and/or imported on behalf of Dallas;

(8)    Marketing of such pet beds;

(9)    Agreements with other parties relating to the manufacture, supply and assembly of such pet beds;

(10)    Royalties and licensing fees for all pet beds;

(11)    Prior art, including the identity of each document, product or event that could be prior art, and any testing or analysis done on such prior art;

(12)    Legal opinions, including the extent of reliance upon such opinions, relating to the patent in suit; and

(13)    The specific identification of documents relating to each of the foregoing topics.

(Ex. 2).

Mr. Mathews has been designated by Dallas as its sole deponent for all of these categories. The categories in the Rule 30(b)(6) Notice of Deposition are likely broader than Mr.

5

Mathews' personal knowledge, which, according to Dallas in its Initial Disclosure Statement, is limited to product introduction, marketing and sales. In addition, based on the documents, it appears that he will have only limited personal knowledge of how the accused product was developed. Further, he probably will not have personal knowledge of the cost margins and similar financial information, and nothing in either the documents or Dallas's Initial Disclosure Statement engenders confidence that he will have personal knowledge of relevant prior art, any legal opinions that may have been provided to Dallas pertaining to the design and structure of the accused pet beds *vis-à-vis* the '502 Patent, or production or testing related to the accused pet beds.

This is not a case in which the personal knowledge of the deponent is co-extensive with the corporate knowledge for which he has been designated as the sole corporate representative. Moreover, Dallas is not a small company where one person knows virtually everything the company does. According to published reports, Dallas had $94 million in annual gross revenues in 2003 (*see* Ex. 4), and yet it has designated a single mouthpiece for the entire company -- a mouthpiece who will have to acquire much of the knowledge in preparation for the 30(b)(6) deposition. In his individual capacity, he will be asked to testify about numerous documents which he either authored or received. The Rules contemplate that these are two depositions, not one, and that such depositions should not be collapsed into a single day.

### III. DALLAS SHOULD BE SANCTIONED FOR ITS UNREASONABLE CONDUCT IN CONNECTION WITH THIS DISPUTE.

In sum, Dallas, through its Initial Disclosure Statement and its documents, has indicated that Mr. Mathews, as an individual, has significant knowledge of relevant events in this lawsuit. Moreover, Dallas has designated Mr. Mathews for all categories of information under Rule

6

30(b)(6). Flexi-Mat has thus established good cause for an order that the two depositions are entitled to separate, independent seven-hour time limits.

Flexi-Mat has attempted to resolve this matter with Dallas without seeking the assistance of this Court. Indeed, on January 28, 2005, counsel for Flexi-Mat sent counsel for Dallas a copy of the *Sabre v. First Dominion Capital, LLL* case (discussed above) in an attempt to avoid burdening the Court with this non-controversial matter. (*See* Ex. 5.) Despite the fact that that case is virtually on all fours with the current matter, is well reasoned, and irrefutably rejects Dallas's position in this dispute, Dallas continues to be defiant and intransigent about such a common sense issue. In fact, Dallas, through its Initial Disclosure Statement, has *admitted* that Mr. Mathews does not have personal knowledge of many, if not most, of the categories identified in the 30(b)(6) notice. As a further demonstration of its bad faith, Dallas has unreasonably and improperly attempted to horse trade over the Federal Rules by offering *only a day and a half* of deposition if Flexi-Mat forgoes filing its motion and seeking Court intervention on this matter.

In short, Flexi-Mat should not have had to expend time and resources, as well as burden this Court, to force Dallas to reach agreement on this matter. Accordingly, Flexi-Mat believes sanctions are warranted against Dallas in the amount of Flexi-Mat's reasonable attorneys' fees, including, but not limited to, the cost of bringing this motion, and any additional amount the Court deems appropriate.

## CONCLUSION

For the foregoing reasons, Flexi-Mat requests the Court to:

    (a)    Order Dallas Manufacturing to produce Richard Mathews for two seven-hour days of deposition to permit Flexi-Mat to depose him in both his individual capacity and as Dallas's sole corporate designee; and

  (c)  Order Dallas Manufacturing to pay Flexi-Mat's reasonable attorneys' fees and costs incurred in pursuing this motion, and any additional amount the Court deems appropriate.

  Respectfully submitted,

**FLEXI-MAT CORPORATION**

Dated: February 14, 2005  By: /s/ John J. Cotter
    John J. Cotter (BBO #554524)
    Testa, Hurwitz & Thibeault, LLP
    (a Limited Liability Partnership in dissolution)
    125 High Street
    Boston, MA 02110
    Telephone: (617) 248-7000
    Facsimile: (617) 248-7100

    Larry L. Saret (*pro hac vice*)
    Manotti L. Jenkins (*pro hac vice*)
    Lisa C. Childs
    MICHAEL BEST & FRIEDRICH LLP
    401 N. Michigan Avenue, Suite 1900
    Chicago, Illinois 60611-4274

    Telephone: (312) 222-0800
    Facsimile: (312) 222-0818

    Attorneys for Plaintiff, Flexi-Mat Corporation