IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION,<br>an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>DALLAS MANUFACTURING COMPANY,<br>INC., a Texas corporation, **BJ'S WHOLESALE CLUB, INC.**, a Delaware corporation, and<br>**DOSKOCIL MANUFACTURING COMPANY,**<br>INC., a Texas corporation,<br><br>Defendants. | Civil Action No. 04 10162 DPW |

**PLAINTIFF FLEXI-MAT'S NOTICE OF DEPOSITION PURSUANT
TO FED. R. CIV. P. 30(B)(6) TO DEFENDANT DALLAS MANUFACTURING**

To:     Gary A. Clark, Esq.
        Darren M. Franklin, Esq.
        SHEPPARD MULLIN
        333 South Hope Street, 48th Floor
        Los Angeles, California 90071-1448
        Facsimile: 213/620-1398

        James J. Marcellino (BBO # 318840)
        David M. Mello (BBO #634722)
        MCDERMOTT, WILL & EMERY
        28 State Street
        Boston, Massachusetts 02109
        Facsimile: 617/535-3800

        Roy W. Hardin, Esq.
        Martin Korn, Esq.
        Michael W. Dubner, Esq.
        Locke, Liddell & Sapp LLP
        2200 Ross Avenue, Ste. 2200
        Dallas, Texas 75201-6776
        Facsimile: 214/740-8800

PLEASE TAKE NOTICE that, commencing at 9:30 a.m. on the 10th day of January 2005, and continuing thereafter as necessary, Plaintiff Flexi-Mat Corporation ("Flexi-Mat") will take the deposition of Defendant Dallas Manufacturing Co. ("Dallas") pursuant to Fed. R. Civ. P. 30(b)(6), at the offices of Hughes & Luce, L.L.P., Suite 2800, 1717 Main Street, Dallas, Texas 75201. The deposition will be taken before a person authorized by law to administer an oath and will be recorded stenographically.

Pursuant to Rule 30(b)(6), Dallas shall designate one or more officers, directors, managing agents, or other persons, who consent to testify on its behalf with respect to the matters set forth in Schedule A attached hereto. Dallas is requested to provide counsel for Flexi-Mat with written notice, five (5) days prior to the commencement of the deposition, of the name(s) and position(s) of the designee(s) who will testify on behalf of Dallas and to identify which matters each designee will testify to.

Dated: December 31, 2004

Flexi-Mat Corporation
Plaintiff

By: _____
One of Its Attorneys

John J. Cotter (BBO #554524)
William Meunier
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: (617) 248-7000
Facsimile: (617) 248-7100

Larry L. Saret (*pro hac vice*)
Manotti L. Jenkins, Esq. (*pro hac vice*)
MICHAEL, BEST & FRIEDRICH LLP
401 N. Michigan Avenue, Suite 1900
Chicago, Illinois 60611
(312) 222-0800
Facsimile: (312) 222-0818

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFF FLEXI-MAT'S NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) TO DEFENDANT DALLAS MANUFACTURING** was served, via facsimile and first class mail, postage pre-paid, on this 31st day of December 2004 upon:

Gary A. Clark, Esq.
Darren M. Franklin, Esq.
SHEPPARD MULLIN
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Facsimile: 213/620-1398

James J. Marcellino (BBO # 318840)
David M. Mello (BBO #634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, Massachusetts 02109
Facsimile: 617/535-3800

Roy W. Hardin, Esq.
Martin Korn, Esq.
Michael W. Dubner, Esq.
Locke, Liddell & Sapp LLP
2200 Ross Avenue, Ste. 2200
Dallas, Texas 75201-6776
Facsimile: 214/740-8800

_____
One of the Attorneys for Plaintiff

## **SCHEDULE A**

The Definitions and Instructions contained in Flexi-Mat's First Set of Interrogatories to Dallas shall apply to and govern the 30(b)(6) categories outlined below.

I.      **Conception, Design and Development.**

A.      The conception and design of the "Berkeley & Jensen Premium Quality Bolster Pet Bed" made or sold by and/or imported into the United States by or on behalf of Dallas Manufacturing Co. ("Dallas").

B.      The conception and design of any other pet bed having a bolster made or sold by and/or imported into the United States on behalf of Dallas.

C.      The development of any pet bed having a bolster referred to in Categories I-A and I-B above, once first conceived, including but not limited to, the steps, processes, analyses, all prototypes and all evaluations undertaken in completing development of such pet beds.

D.      All discussions about and considerations of the design, manufacture and/or appearance of Flexi-Mat's patented Bolster Bed, including but not limited to, any decision to purchase one or more of such pet beds, to analyze and/or copy such pet beds, or to use such pet beds as a basis for costing any pet bed to be made by or on behalf of Dallas.

E.      All discussions about and considerations of the design, manufacture and/or appearance of any pet bed having a bolster, made, designed and/or manufactured by or on behalf of Apogee and/or Mr. Eric Heilborn, including but not limited to, any decision to obtain one or more of such pet beds, to analyze and/or duplicate such pet beds, or to use such pet beds as a basis for costing any pet bed to be made by or on behalf of Dallas.

F.      A detailed comparison and contrast between the "Berkeley & Jensen Premium Quality Bolster Pet Bed" sold by Dallas to BJ's Wholesale Club ("BJWC") and the "Berkeley &

Jensen Premium Quality Bolster Pet Bed" sold by Doskocil Manufacturing Co. ("Doskocil") to BJWC.

G. A detailed comparison and contrast between the "Berkeley & Jensen Premium Quality Bolster Pet Bed" sold by Dallas to BJWC and any pet bed having a bolster, made, designed and/or manufactured by or on behalf of Apogee and/or Mr. Eric Heilborn that is referenced in Category I-E, above.

H. A detailed comparison and contrast between any pet bed having a bolster, made, designed and/or manufactured by or on behalf of Apogee and/or Mr. Eric Heilborn that is referenced in Category I-E, above, and Flexi-Mat's patented Bolster Bed.

I. A detailed explanation of the corporate relationships between Brinkmann Corporation, Dallas and Apogee, from the date(s) any such relationships developed through the present.

J. Any search or investigation conducted by Dallas regarding a pet bed having a bolster, conducted in contemplation or connection with the design of any pet bed having a bolster made or sold by and/or imported into the United States on behalf of Dallas, referred to in Categories I-A and I-B above.

K. Any discussions or considerations by Dallas of seeking or not seeking patent protection for any pet bed having a bolster, made, sold by and/or imported into the United States on behalf of Dallas, referred to in Categories I-A and I-B above.

L. Any test marketing and/or market research performed by or on behalf of Dallas concerning any pet bed having a bolster, made, sold by and/or imported into the United States on behalf of Dallas, referred to in Categories I-A and I-B above.

M. Any test market research performed by or on behalf of Dallas concerning Flexi-Mat's patented Bolster Bed.

N. Identification, by document number, of documents produced by Dallas that relate to the foregoing topics.

**II. Production and Testing of Pet Beds Having a Bolster.**

A. The specifications, materials, processes, and manufacturing methods used for the "Berkeley & Jensen Premium Quality Bolster Pet Bed" made or sold by and imported into the United States on behalf of Dallas.

B. The specifications, materials, processes, and manufacturing methods used for any other pet bed having a bolster made, sold by and/or imported into the United States on behalf of Dallas.

C. The first manufacture of any pet bed having a bolster made, sold by and/or imported on behalf of Dallas.

D. Any and all testing done by or behalf of Dallas of any pet bed having a bolster, including but not limited to, any analyses of the bolster on such beds to determine whether it would provide comfort for a pet.

E. Any and all changes made in the "Berkeley & Jensen Premium Quality Bolster Pet Bed" made or sold by and/or imported into the United States on behalf of Dallas, from first commercial introduction, both before and after commencement of the captioned litigation.

F. Any and all changes made in any other pet bed having a bolster made or sold by and/or imported on behalf of Dallas, from first commercial introduction, both before and after commencement of the captioned litigation.

G. Any and all terms and payments, fees or compensation paid to independent or third party consultants, designers, engineers and/or advisers in connection with the design, development or manufacture of pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

H. Identification, by document number, of documents produced by Dallas that relate to the foregoing topics.

### III. Sales and Marketing.

A. Any and all of Dallas's sales to date of the "Berkeley & Jensen Premium Quality Bolster Pet Bed" made or sold by and/or imported into the United States by or on behalf of Dallas, by units and dollars.

B. Identification of each customer to which Dallas sells the accused products, and separately for each customer to whom Dallas sells the accused products, any and all of Dallas's sales of any other pet beds having a bolster made or sold by and/or imported on behalf of Dallas, by units and dollars.

C. Dallas's gross and net margins, its cost and profit per unit, and its operating expenses for the "Berkeley & Jensen Premium Quality Bolster Pet Bed" made or sold by and/or imported into the United States on behalf of Dallas.

D. Dallas's gross and net margins, its cost and profit per unit, and its operating expenses for any other pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

E. Any and all financial statements, including but not limited to, profit and loss statements, balance sheets and cash flow statements for the "Berkeley & Jensen Premium

Quality Bolster Pet Bed" made or sold by and/or imported into the United States on behalf of Dallas.

F.  Any and all financial statements, including but not limited to, profit and loss statements, balance sheets and cash flow statements for any other pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

G.  Market share, market volume, or other market financial data of Dallas and/or Dallas's competitors, whether internally or externally prepared or compiled, for any pet beds having a bolster.

H.  Assessments, valuations, worth or net worth, business prospects or risks, strategic plans, "SWOT" (strengths, weaknesses, opportunities, and threats) or similar analyses, budget plans and/or projections, forecasts and all other strategic, budgeting or forecasting relating to any pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

I.  The identities of all distribution, purchasing and/or resale companies used by Dallas, and any agreements with them regarding any pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

J.  Marketing and/or sales strategies, directives, policies, standard pitches and customized pitches for any pet beds having a bolster made or sold by and/or imported on behalf of Dallas, including regarding the component parts of said pet beds such as the outer cover, bolster, inner and outer lining, and other parts.

K.  Manufacturing, supplier, assembly and/or fabrication agreements or orders between Dallas and any other entity for any pet beds having a bolster made or sold by and/or imported on behalf of Dallas.

L.  Any and all permitted uses and/or licensing fees and/or royalties paid or received in connection with any pet beds made or sold by and/or imported on behalf of Dallas.

M.  Identification, by document number, of documents produced by Dallas that relate to the foregoing topics.

**IV.  Prior Art.**

A.  Each and every document, product or event that Dallas contends constitutes, establishes or tends to establish prior art to Flexi-Mat's patented Bolster Bed and/or U.S. Patent No. 5,765,502 (the "'502 Patent").

B.  Any and all testing, including design, construction and/or material analyses, done by or on behalf of Dallas on the above contended prior art or models thereof.

C.  Identification, by document number, of documents produced by Dallas that relate to the foregoing topics.

**V.  Legal Opinions.**

A.  The dates, source, recipient, content of, and extent of reliance upon, any and all legal opinions, whether written or oral, regarding infringement, non-infringement, validity, invalidity or other matters relating to or regarding the '502 Patent.

B.  Identification, by document number, of documents produced by Dallas that relate to the foregoing topics.