UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>        Defendants.<br><br>DALLAS MANUFACTURING COMPANY, INC., a corporation,<br><br>        Counter-Claimant,<br><br>        v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>        Counter-Defendant.<br><br>BJ'S WHOLESALE CLUB, INC., a corporation,<br><br>        Counter-Claimant,<br>        v.<br>FLEXI-MAT CORPORATION, a corporation,<br><br>        Counter-Defendant.<br><br>DOSKOCIL MANUFACTURING COMPANY, INC., a corporation,<br><br>        Counter-Claimant,<br>        v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>        Counter-Defendant. | Civil Action No. 04 10162 DPW<br><br>**DEFENDANT DOSKOCIL MANUFACTURING COMPANY, INC.'s**<br><br>**NOTICE OF FILING REQUEST FOR *EX PARTE* REEXAMINATION OF THE '502 PATENT IN THE UNITED STATES PATENT AND TRADEMARK OFFICE** |

---

**Doskocil's Notice of Filing Request for Reexamination**              1
DALLAS: 26935.00036: 1373323v1

G. That this Court enter an order declaring this an exceptional case pursuant to 35 U.S.C. § 285 and award to Flexi-Mat its attorneys' fees, costs and expenses.

H. That this Court award to Flexi-Mat such other and further relief as may be just and appropriate.

FLEXI-MAT CORPORATION

Dated: 6/21/04

By: /s/ John J. Cotter
John J. Cotter (BBO #554524)
William Meunier
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: (617) 248-7000
Facsimile: (617) 248-7100

Of Counsel:
Larry L. Saret (*pro hac vice*)
Manotti L. Jenkins (*pro hac vice*)
MICHAEL BEST & FRIEDRICH LLP
401 N. Michigan Avenue, Suite 1900
Chicago, Illinois 60611-4274
Telephone: (312) 222-0800
Facsimile: (312) 222-0818

S:\CLIENT\20130\9029\C0383030.1

8

Defendant Doskocil Manufacturing Company, Inc. ("Doskocil") respectfully submits this Notice of Filing its Request for *Ex Parte* Reexamination of United States Patent No. 5,765,502 Pursuant to 37 C.F.R. 1.510 and 35 U.S.C. 302 in the United States Patent and Trademark Office ("Request for Reexamination"). The Request for Reexamination is expected to be mailed concurrently with this Notice.

The present Notice is filed as a courtesy to the Court and the parties, and Doskocil seeks no relief from the Court in association with the present Notice. A copy of the Request for Reexamination is submitted herewith as Exhibit A.

Respectfully submitted,

Dated: April 5, 2005

Roy W. Hardin
Martin Korn
M. Scott Fuller
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776
Telephone: 214.740.8556
Facsimile: 214.740.8800

James J. Marcellino (BBO #318840)
David M. Mello (BBO #634722)
McDERMOTT, WILL & EMERY
28 State Street
Boston, Massachusetts 02109
Telephone: 617.535.4000
Facsimile: 617.535.3800

Attorneys for Defendant
Doskocil Manufacturing Company, Inc.

B.  That this Court order each defendant to:

i)  communicate to all persons requesting the infringing pet beds that each defendant is prohibited from further advertisement or sale of the respective infringing pet bed; and

ii) notify in writing all recipients of each catalog in which any defendant has advertised or offered for sale the respective infringing pet bed, all prospective purchasers of that product, and all persons inquiring about that product, whether orally, in writing, or via the Internet, that defendants are prohibited from further advertisement or sale of the respective infringing pet bed.

C.  That this Court order defendants Dallas Mfg. and Doskocil to provide to Flexi-Mat all past and future customer purchase orders received by them relating to the sale of their respective infringing pet beds or any pet bed of similar design as shown in **Exhibit B** and **Exhibit C** that Dallas Mfg. and Doskocil have caused to be imported into, made or sold in the United States.

D.  That defendants be directed to file in Court, and to serve on plaintiff Flexi-Mat, within thirty (30) days after entry of the above injunction and order, a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the above injunction and order.

E.  That this Court award to Flexi-Mat damages adequate to compensate Flexi-Mat for the infringement of the '502 patent by each of the defendants.

F.  That this Court award increased damages against each of the defendants up to three times the actual damages pursuant to 35 U.S.C. § 284.

7

## Certificate of Service

The undersigned hereby certifies that true and correct copies of Doskocil's Notice of Filing Request for Reexamination were caused to be served on the following by the manner indicated on April 5, 2005:

### By Facsimile and First Class Mail

John J. Cotter, Esq.,
Testa Hurwitz & Thibeault, LLP
125 High Street Tower
Boston, MA 02110
Facsimile: (617) 248-7100

Larry L. Saret, Esq.
Manotti L. Jenkins, Esq.
Michael Best & Friedrich LLP
401 N. Michigan Avenue, Suite 1900
Chicago, IL 66011
Facsimile: (312) 222-0818

Darren M. Franklin
Gary A. Clark
Sheppard, Mullin, Richter & Hampton LLP
48th Floor
333 South Hope Street
Los Angeles, CA 90071-1448
Telephone: (213) 617-5498
Facsimile: (213) 620-1398

_____
Attorneys for Defendant
Doskocil Manufacturing Company, Inc.

available from Flexi-Mat and instead appear to be commodity products also offered by BJWC and distributed by Doskocil. Therefore, Flexi-Mat's patented product is less desirable to customers. The commodity image is emphasized by the fact that the defendants are offering the infringing products at a substantially lower price than Flexi-Mat, and consequently, on information and belief, diverting sales from Flexi-Mat.

24. As a consequence of the defendants' infringing activities regarding the '502 patent, plaintiff Flexi-Mat has suffered monetary damages and is entitled to an award of monetary damages pursuant to 35 U.S.C. § 284 in an amount yet to be determined.

25. As a consequence of the defendants' infringing activities regarding the '502 patent, plaintiff Flexi-Mat has suffered and will continue to suffer irreparable harm unless the defendants are enjoined by this Court.

### JURY DEMAND

Plaintiff Flexi-Mat demands a trial by jury on all matters and issues triable by jury.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, Flexi-Mat Corporation, prays for the following relief:

A. That defendants Dallas Mfg., BJWC and Doskocil, and their officers, agents, servants, employees, successors, assigns, parent, subsidiaries, affiliated or related companies, attorneys and all persons in active concert and/or participation with them who receive notice, be preliminarily and permanently enjoined and restrained from making, using, selling, offering to sell, or importing pet beds that infringe the '502 patent, including, but not limited to, the "Berkley & Jensen Premium Quality Bolster Pet Bed," or otherwise engaging in acts of infringement, inducing others to infringe, and/or contributing to the infringement of the '502 patent.

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, <br><br> Counter-Claimant, <br><br> v. <br><br> FLEXI-MAT CORPORATION, a corporation, <br><br> Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) ) |
| BJ'S WHOLESALE CLUB, INC., a corporation, <br><br> Counter-Claimant, <br> v. <br> FLEXI-MAT CORPORATION, a corporation, <br><br> Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, <br><br> Counter-Claimant, <br> v. <br><br> FLEXI-MAT CORPORATION, a corporation, <br><br> Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 04 10162 DPW

**DEFENDANT DOSKOCIL MANUFACTURING COMPANY, INC.'s**

**NOTICE OF FILING REQUEST FOR *EX PARTE* REEXAMINATION OF THE '502 PATENT IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

# EXHIBIT A

---

Doskocil's Notice of Filing Request for Reexamination
DALLAS: 26935.00036: 1373323v1

available from Flexi-Mat and instead appear to be commodity products also offered by BJWC and distributed by Dallas. Therefore, Flexi-Mat's patented product is less desirable to customers. The commodity image is emphasized by the fact that the defendants are offering the infringing products at a substantially lower price than Flexi-Mat, and consequently, on information and belief, diverting sales from Flexi-Mat.

18. As a consequence of the defendants' infringing activities regarding the '502 patent, plaintiff Flexi-Mat has suffered monetary damages and is entitled to an award of monetary damages pursuant to 35 U.S.C. § 284 in an amount yet to be determined.

19. As a consequence of the defendants' infringing activities regarding the '502 patent, plaintiff Flexi-Mat has suffered and will continue to suffer irreparable harm unless the defendants are enjoined by this Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 5,765,502 BY DOSKOCIL AND BJWC

20. Plaintiff Flexi-Mat hereby incorporates the allegations of paragraphs 1-12 as if fully set forth herein.

21. Defendant Doskocil has infringed and/or has induced others to infringe and/or has committed acts of contributory infringement of one or more claims of the '502 patent. Doskocil's infringing activities include, but are not limited to, making, offering for sale and selling to BJWC stores in the U.S. pet beds under the name "Berkley & Jensen Premium Quality Bolster Pet Bed", as shown in **Exhibit C**.

22. Upon information and belief, defendants' infringement of the '502 patent has been willful and deliberate.

23. The availability of defendants' infringing products has damaged Flexi-Mat in several ways. For example, the patented products sold by Flexi-Mat are no longer exclusively

5

26937/00036

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re: | United States Patent Number 5,765,502 |
| Inventor: | Haugh, Scott |
| Title: | Pet Bed With Removable Cover |
| Serial No.: | 08/634,374 |
| Filed: | April 18, 1996 |
| Issued: | June 16, 1998 |

Mail Stop: *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

## REQUEST FOR *EX PARTE* REEXAMINATION
## PURSUANT TO 37 C.F.R. 1.510 and 35 U.S.C. 302

Requestor herein respectfully seeks *ex parte* reexamination pursuant to 37 C.F.R. 1.510 of United States Patent Number 5,765,502, issued June 16, 1998 to Haugh, entitled "Pet Bed With Removable Cover." Reexamination is requested with respect to claims 1, 2, 3, 7, and 8 of the referenced patent. This request is made by the undersigned attorneys on behalf of third party requestor, Doskocil Manufacturing Company, Inc., 4209 Barnett, Arlington, Texas 76004-1246. The Director is hereby authorized to charge the fee of $2,520.00, as set forth in 37 C.F.R. 1.20(c)(1), to Deposit Account No. 12-1781 (Customer No. 20873).

The referenced patent is currently the subject of the following concurrent proceeding in the United States District Court for the District of Massachusetts: *Flexi-Mat Corp. v. Dallas Mfg. Co., Inc., BJ's Wholesale Club, Inc., and Doskocil Mfg. Co., Inc.*, Civil Action No. 04-10162 DPW. Plaintiff Flexi-Mat has asserted that defendants infringe the referenced patent. Pursuant to MPEP 2219, a copy of the First Amended Complaint in the referenced litigation is submitted herewith.

Pursuant to 37 C.F.R. 1.510(b)(4), a full copy of the patent to be examined having a double column format on one side of a separate paper is enclosed herewith. Pursuant to 37 C.F.R. 1.510(b)(3), copies of every patent or printed publication relied upon or referred to herein,

1

DALLAS: 26935.00036: 1380275v1

sells pet beds which are made substantially as claimed and described in the '502 patent. These pet beds are sold to defendant BJWC, which in turn offers for sale and sells the pet beds under the name "Berkley & Jensen Premium Quality Bolster Pet Bed" to purchasers in the United States. A sample of this pet bed is shown in **Exhibit C** and bears a label with Doskocil's address.

## COUNT I
### INFRINGEMENT OF U.S. PATENT NO. 5,765,502 BY DALLAS MFG. AND BJWC

13. Plaintiff Flexi-Mat hereby incorporates the allegations of paragraphs 1-12 as if fully set forth herein.

14. Defendant Dallas Mfg. has infringed and/or has induced others to infringe and/or has committed acts of contributory infringement of one or more claims of the '502 patent. Dallas Mfg.'s infringing activities include, but are not limited to, importing into the United States and selling to BJWC stores in this district and elsewhere in the United States pet beds that are offered for sale and sold under the name "Berkley & Jensen Premium Quality Bolster Pet Bed," as shown in **Exhibit B**. The "Berkley & Jensen Premium Quality Bolster Pet Bed" is made substantially as claimed in the '502 patent.

15. Defendant BJWC has infringed and/or has induced others to infringe and/or has committed acts of contributory infringement of one or more claims of the '502 patent. BJWC's infringing activities include, but are not limited to, offering for sale and selling pet beds under the name "Berkley & Jensen Premium Quality Bolster Pet Bed," as shown in **Exhibit B**.

16. Upon information and belief, defendants' infringement of the '502 patent has been willful and deliberate.

17. The availability of defendants' infringing products has damaged Flexi-Mat in several ways. For example, the patented products sold by Flexi-Mat are no longer exclusively

4

including English language translations when appropriate, are enclosed herewith, including a listing thereof on Form PTO/SB/08, PTO-1449, or equivalent.

The detailed request herein below contains at least the following: (a) a statement identifying each substantial new question of patentability based on prior patents and printed publications (37 C.F.R. 1.510(b)(1)); and (b) an identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested (37 C.F.R. 1.510(b)(2)).

## DETAILED REQUEST

Reexamination under 35 U.S.C. 302 – 307 and C.F.R. 1.510 is respectfully requested of United States Patent Number 5,765,502 ("the '502 Patent") which issued on June 16, 1998 to Scott Haugh. This patent is understood to be still enforceable.

### I.     Claims for Which Reexamination is Requested

Reexamination is requested of claims 1, 2, 3, 7, and 8 of the '502 Patent in view of the following references, which are also listed on accompanying Form PTO-1449: (a) U.S. Patent No. 2,032,248 ("the '248 Patent") (newly discovered reference; not previously considered); (b) U.S. Patent No. 5,010,843 ("the '843 Patent") (previously considered); (c) German Patent No. 93 09 699.2 ("the DE '699 Patent") (newly discovered reference; not previously considered) (English translation filed herewith); (d) U.S. Patent No. 5,109,559 ("the '559 Patent") (previously considered); (e) U.S. Patent No. 5,421,044 ("the '044 Patent") (newly discovered reference; not previously considered); (f) U.S. Patent No. 5,588,393 ("the '393 Patent") (newly discovered reference; not previously considered); and (g) U.S. Patent No. 5,136,981 ("the '981 Patent") (newly discovered reference; not previously considered). As noted, a number of newly discovered references are cited herein which raise substantial new questions of patentability under 35 U.S.C. 303(a). Moreover, the references which were considered in the original examination of the '502 Patent application have renewed significance in view of the newly-discovered references; thus, the previously considered references now also raise substantial new questions of patentability under 35 U.S.C. 303(a). It is expected that the Director may further discover and identify additional references not cited herein which raise substantial new questions of patentability, as provided in 35 U.S.C. 303(a).

### II.    Statement of Substantial New Questions of Patentability

The primary references cited herein were not considered during the original examination of the '502 Patent application, and a number of previously considered references gain renewed significance in view of these newly discovered references. More specifically, claim 1 of the '502 Patent is unpatentable under 35 U.S.C. 102 as anticipated by any of the '248, '393, '044, and/or '981 Patents. Alternatively, claim 1 of the '502 Patent is unpatentable under 35 U.S.C. 103(a) as obvious over any of the '248, '393, '044, and/or '981 Patents in view of the '843 Patent, the '248 Patent, and/or the DE '699 Patent. Claim 2 of the '502 Patent depends from claim 1 and is unpatentable under 35 U.S.C. 103(a) as obvious in view of the DE '699 Patent, the '843 Patent,

2

this district Dallas Mfg.'s infringing pet beds. Doskocil has offered to sell and has sold its pet products and various other products in this state such that its connections with the state are substantial, continuous and systematic. Upon information and belief, Doskocil has also sold pet beds that infringe the asserted patent to BJWC, and BJWC has offered to sell and is selling those pet beds with labels identifying BJWC as the distributor in Natick, Massachusetts.

8. Venue is proper in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §1391(b) and (c) and 1400(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTUAL BACKGROUND

9. United States Letters Patent No. 5,765,502 ("the '502 patent"), entitled "Pet Bed With Removable Bolster," was duly and legally issued by the United States Patent and Trademark Office on June 16, 1998. A true and correct copy of the '502 patent is attached as **Exhibit A**.

10. The inventor of the '502 patent, Scott Haugh, assigned to plaintiff Flexi-Mat his entire right, title and interest to this patent. Flexi-Mat owns the entire right, title and interest in and to the '502 patent, including the right to sue and recover damages for infringement.

11. Upon information and belief, defendant Dallas Mfg. imports into the United States and distributes pet beds which are made substantially as claimed and described in the '502 patent. These pet beds are sold to defendant BJWC, which in turn offers for sale and sells the pet beds under the name "Berkley & Jensen Premium Quality Bolster Pet Bed" to purchasers in this district and elsewhere in the United States. A sample of this pet bed is shown in **Exhibit B** and bears a label identifying Dallas Mfg. as the source.

12. Upon information and belief, defendant Doskocil manufactures, offers to sell and

3

the '393 Patent, and/or the '981 Patent. Claim 3 of the '502 Patent depends from claim 1 and is unpatentable under 35 U.S.C. 103(a) as obvious in view of the DE '699 Patent, the '044 Patent, and/or the '843 Patent. Claim 7 of the '502 Patent is unpatentable under 35 U.S.C. 103(a) as obvious in view of any of the '248 Patent, the DE '699 Patent, the '559 Patent, the '044 Patent, the '393 Patent, and/or the '981 Patent. Claim 8 of the '502 Patent depends from claim 7 and is unpatentable under 35 U.S.C. 103(b) as obvious in view of the DE '699 Patent, the '044 Patent, and/or the '843 Patent.

### III. Detailed Explanation and Application of Prior Art to Reexamination Claims

The '502 Patent discloses and claims a pet bed having an outer covering. A removable cushion is disposed within the outer covering to form a bottom portion. A bolster is removably disposed within the outer covering. The '502 Patent contains five independent claims and six dependent claims. Each claim requires that the cushion and bolster be disposed within the outer covering of the pet bed.

During the original prosecution of the '502 Patent application, the Applicant defined the invention and distinguished over a cited reference, the '843 Patent. In construing the '843 Patent, the Applicant argued that the pet bed covered by the '843 Patent required separate covers for the cushions and base, and as a result of utilizing separate covers, added manufacturing costs for material and added assembly time was required to manufacture the bed of the '843 Patent. Since the '843 Patent did not disclose a single cover for the cushion and base, the Applicant argued that the invention of the '502 Patent was not anticipated by the disclosure of the '843 Patent. Based on these arguments, allowance of the application was secured, and the '502 Patent subsequently issued.

#### A. Discussion: Claim 1

Claim 1 of the '502 Patent is directed to a pet bed generally comprising three distinct elements: (1) an outer covering, (2) a removable bottom cushion, and (3) a removable bolster. Due to the statements in the original prosecution concerning and distinguishing the '843 Patent (*i.e.*, argument that the '843 Patent required separate covers for the cushions and base), the term "outer covering" is limited to a single article for receiving and enclosing the removable bottom cushion and the removable bolster.

The '248 Patent discloses a pet bed comprising a fabric article (*i.e.*, base sheet 3, band 4, and outer periphery of annular bolster 1 (*see* col. 2, ll. 5-11)) configured to receive and enclose a removable bottom mattress (5). The removable bottom mattress (5) is disposed within (surrounded by) the exterior fabric article, as reflected in '248 Patent Figure 6. The '248 Patent further discloses a bolster disposed within the fabric article, as reflected in Figure 6 and as described at column 1, line 50 through column 2, line 15. The '248 Patent bolster filler material is preferably cotton which is packed within the outer periphery of the bolster and is, inherently, removable by simply reversing the process and extracting the filler material. As disclosed by the '248 Patent, substantially all of the bolster material is disposed exteriorly about at least a portion of the perimeter of the bottom mattress. This structure is reflected in '248 Patent Figures 1 and 6. The bolster disclosed by the '248 Patent is not secured to the bottom mattress. Accordingly, each and every limitation in claim 1 of the '502 Patent is expressly or inherently disclosed by the

3

organized and existing under the laws of the State of Texas, having its principal place of business at 2315 McEwen Road, Dallas, Texas 75235. Upon information and belief, defendant Dallas Mfg. is an importer and distributor of pet beds and other pet products, and imports and distributes pet beds to defendant BJWC in this district and elsewhere in the United States.

4. Upon information and belief, defendant BJWC is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 1 Mercer Road, Natick, Massachusetts 01760-2400. Upon information and belief, defendant BJWC owns and operates warehouse club stores in this district and elsewhere in the United States which offer for sale and sell pet beds and other products. These stores are known as "BJ's Wholesale Club."

5. Upon information and belief, defendant Doskocil is a corporation duly organized and existing under the laws of the State of Texas, having its principal place of business at 4209 Barnett Blvd., Arlington, Texas 76017. Upon information and belief, Doskocil manufactures, distributes, and sells pet beds and other products to retailers and consumers in this district and elsewhere in the United States and has sold pet beds to BJWC.

## JURISDICTION AND VENUE

6. Jurisdiction is expressly conferred on this Court under 35 U.S.C. §§ 271 and 281 and 28 U.S.C. §§ 1331 and 1338(a).

7. Personal jurisdiction over defendants is vested in this Court since, upon information and belief, defendants have committed one or more of the acts complained of herein within the United States and within this state and district pursuant to Mass. Gen. Laws c. 223A ¶3 (2000). In particular, Dallas Mfg. has imported into the United States and sold in this district pet beds to BJWC that infringe the asserted patent, and BJWC has offered to sell and has sold in

2

'248 Patent. As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. 102(b) as anticipated by the disclosures of the '248 Patent.

Likewise, the '393 Patent discloses a pet bed (100) comprising an outer covering (110) configured to receive a removable bottom cushion (108). *See* Figs. 5 and 6; col. 2, lines 22-30, and col. 4, line 15 to col. 5, line 7. The removable bottom cushion (108) is disposed within the outer covering (110), as reflected in '393 Figures 5 and 6. The '393 Patent further discloses a bolster (106) disposed within the outer covering (110), as reflected in Figures 5 and 6 and as described at column 2, lines 23-35 and column 4, line 65 to column 5, line 7. As disclosed by the '393 Patent, substantially all of the bolster material (106) is disposed exteriorly about at least a portion of the perimeter of the bottom cushion (108). This is reflected in '393 Figures 4-6. The bolster disclosed by the '393 Patent is not secured to the bottom cushion, and is separately removable therefrom. As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. 102(b) as anticipated by the disclosures of the '393 Patent.

Likewise, the '981 Patent discloses a pet bed (40) comprising an outer covering (46) configured to receive a removable bottom cushion (44). *See* Fig. 2; col. 6, lines 40-45, and A146 at col. 7, lines 14-45. The removable bottom cushion (44) is disposed within the outer covering (46), as reflected in '981 Figures 2, 3, and 4. The '981 Patent further discloses a bolster (42) disposed within the outer covering (46), as reflected in Figure 2 and as described at column 7, lines 9-45. As disclosed by the '981 Patent, substantially all of the bolster material (42) is disposed exteriorly about at least a portion of the perimeter of the bottom cushion (44). This is reflected in '981 Figures 1-4. The bolster disclosed by the '981 Patent is not secured to the bottom cushion, and is separately removable therefrom. Figs. 2-4; col. 7, lines 9-59 (also identifying alternative embodiment for removal of bolster (sidewall) (42)). As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. 102(b) as anticipated by the disclosures of the '981 Patent.

Likewise, the '044 Patent discloses a bed (10) comprising an outer covering (12) configured to receive a removable bottom cushion ((42), (58), (59)). *See* Figs 1 and 2; col. 3, line 58 to col. 4, line 39. The removable bottom cushion is disposed within the outer covering, as reflected in '044 Figures 1 and 2. The '044 Patent further discloses a bolster (*e.g.*, (31), (32), (33), (34)) disposed within the outer covering, as reflected in Figures 1 and 2 and as described at column 3, lines 11-15, and column 4, lines 20-37. As disclosed by the '044 Patent, substantially all of the bolster material is disposed exteriorly about the perimeter of the bottom cushion. This is reflected in '044 Figures 1 and 2. The bolster disclosed by the '044 Patent is not secured to the bottom cushion, and is separately removable therefrom. As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. 102(b) as anticipated by the disclosures of the '044 Patent.

Even assuming claim 1 of the '502 Patent is not anticipated by the disclosures of any of the '248, '393, '981, or '044 Patents, claim 1 is nevertheless invalid under 35 U.S.C. 103(a) as obvious in view of additional relevant prior art. The '843 Patent teaches the simple containment of bolster filler material within its own, separate liner. *See* '843 Patent at col. 2, ll.44-53. As taught by the '843 Patent specification, this separate liner allows the inner fill material to be removed and cleaned as necessary or desired. Thus, the removability of the bolster from within the outer covering is an obvious limitation.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FLEXI-MAT CORPORATION,
an Illinois corporation,

        Plaintiff,

v.

DALLAS MANUFACTURING COMPANY,
INC., a Texas corporation, BJ'S
WHOLESALE CLUB, INC., a Delaware
corporation, and DOSKOCIL
MANUFACTURING COMPANY, INC., a
Texas corporation,

        Defendants.

Civil Action No. 04 10162 DPW

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

Plaintiff, Flexi-Mat Corporation ("Flexi-Mat"), by its undersigned attorneys, complains against defendants Dallas Manufacturing Company, Inc. ("Dallas Mfg."), BJ's Wholesale Club, Inc. ("BJWC"), and Doskocil Manufacturing Company, Inc. ("Doskocil") (collectively, the "defendants") as follows:

### NATURE AND STATUTORY BASIS OF ACTION

1. This civil action arises under the Federal Patent Act, as provided for by 35 U.S.C. §§ 100, *et seq.*

### THE PARTIES

2. Plaintiff Flexi-Mat is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business at 2244 South Western Ave., Chicago, Illinois 60608. Flexi-Mat makes and sells pet beds and other products.

3. Upon information and belief, defendant Dallas Mfg. is a corporation duly

Furthermore, the '248 Patent discloses an optional mattress cover (8) (*see* Figure 4). The mattress cover serves the purpose of keeping the mattress (5) clean. *See* '248 Patent at col. 3, ll.5-16. As taught by the '248 Patent, the optional cover is not physically attached to the remainder of the exterior fabric article (*i.e.*, the outer cover). The absence of any physical attachment allows for the removable insertion of the base mattress (5) within the exterior fabric article. In the event the "outer cover" claim 1 element of the '502 Patent is construed in terms of substantial or complete enclosure of the removable bottom cushion, then the exterior fabric article disclosed by the '248 Patent may not be anticipatory. In view of the knowledge in the art and the teachings of references such as the '843 Patent, for example, the substantial or complete enclosure of the removable bottom cushion by the exterior fabric article is an obvious derivation and limitation. The DE '699 Patent also discloses the complete enclosure of the removable bottom cushion by the exterior fabric article. The use of zipper openings to allow for the physical attachment of the optional mattress cover would have been obvious to one of skill in the art, as the '843 Patent utilizes zipper openings for the insertion and removal of both the bolster cushion (14, 16) and the base cushion (12).

Still further, the DE '699 Patent discloses a bolstered pillow (1) having an outer covering (5), a removable cushion disposed within the outer covering to form a cushioned bottom portion (2), and a bolster cushion removably disposed within the interior of the outer covering (3). *See* DE '699 Patent at p.4, ll.16-19; p.11, ll.11-14 (claim 2); *see also* Fig. 1. The DE '699 Patent bolster pillow (*i.e.*, the "cylindrical roll") is disposed exteriorly about at least a portion of the perimeter of the bottom portion. *See* Figs. 1 and 2. Finally, the DE '699 Patent bolster pillow is connected "detachably" to the bottom cushion. *See* DE '699 at p.3, l.17 to p.4, l.6; p.11, l.14 (claim 2); *see also* Fig. 1 (indicating connecting element (4)). Thus, claim 1 of the '502 Patent is invalid under 35 U.S.C. 103(a) as obvious in view of the DE '699 Patent, if not anticipated thereby under 35 U.S.C. 102(b).

### B.  Discussion: Claims 2 and 3

Claim 2 of the '502 Patent recites: "[t]he pet bed of claim 1, wherein the outer covering further includes a reclosable access opening." The "reclosable access opening" language is used only twice in the '502 specification, once at column 3, line 12, and again as part of the Abstract. "It is well-settled that claims must be read in view of the specification, of which they are a part. This includes consulting the preferred embodiment and the abstract." *Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1363 n.1 (Fed. Cir. 2003) (internal citations omitted). The Abstract states that "[t]he outer covering further includes a reclosable access opening permitting both the bottom cushion and bolster to be removed as needed." At column 3, the reclosable access opening (11) is defined and discussed in terms of receiving both the bottom cushion and the bolster. *See* '502 Patent at col. 3, ll.8-18. Thus, one of ordinary skill in the art would understand the "reclosable access opening" limitation to mean "a reclosable opening in the outer covering allowing for the insertion and removal of both the bottom cushion and the bolster." Under this construction, claim 2 of the '502 Patent is rendered obvious in view of the teachings of the DE '699 Patent. The DE '699 Patent discloses a reclosable single cover (5) having an access opening allowing for the insertion and removal of both the base cushion (2) and the bolster cushion (3). *See* DE '699 Patent at p.3, l.14 to p.4, l.6; p.8, ll.13-14 (cover is closable by means of a zipper); p.11, ll.7-8 (cover is closable); p.12, l.26 to p.13, l.2 (use of zipper closure); *see also* Figure 1. Alternatively, if the "reclosable access opening" limitation is

5

Pursuant to 37 C.F.R. §§ 1.510(f) and 1.34(a), the undersigned attorneys are acting in a representative capacity of third party requestor Doskocil Manufacturing Company, Inc.

Please direct all correspondence concerning this Request for Reexamination to the undersigned counsel:

Respectfully submitted,

DOSKOCIL MANUFACTURING COMPANY, INC.

By its attorneys,

Date: April 4, 2005

Roy W. Hardin, Reg. No. 28,304
Martin Korn, Reg. No. 28,317
M. Scott Fuller, Reg. No. 54,716
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
Telephone: (214) 740-8000 (Main)
Facsimile: (214) 740-8800 (Main)

Attorneys for Third Party Requestor,
Doskocil Manufacturing Company, Inc.

Pursuant to 37 C.F.R. 1.33(c), it is certified that a copy of this Request has been served in its entirety, via Certified Mail, Return Receipt Requested, on the party believed to be the registered agent of the patent owner. The name and address of the party served and the date of service are:

Flexi-Mat Corporation
c/o Michael Best & Friedrich LLP
Larry L. Saret, Esq.
401 N. Michigan Avenue, Suite 1900
Chicago, IL 60611
Telephone: (312) 222-0800
Facsimile: (312) 222-0818

Date of Service: April 4, 2005

By: M. Scott Fuller, Reg. No. 54,716

8

construed in terms of allowing for the removal and insertion of any number of cushions through the opening (*i.e.*, allowing for separate openings for the bolster and base cushion, respectively), such condition is obvious in view of the of any of the '843, '393, or '981 Patents, as discussed *supra*. Furthermore, such condition is clearly taught by the DE '699 Patent. *See* DE '699 Patent at p.4, ll.2-6; p.4, ll.20-24; p.9, l.25 to p.10, l.6; *see also* Fig. 2.

Claim 3 of the '502 Patent recites "[t]he pet bed of claim 2, wherein the reclosable access opening further includes a zipper." As discussed *supra*, the use of a zipper to facilitate the closure of the access opening was known in the art and would have been obvious in view of any of either the DE '699 Patent or the '843 Patent. The '044 Patent also discloses the use of a zipper for closing the access opening.

### C.   Discussion: Claim 7

Claim 7 of the '502 Patent recites the following:

A pet bed comprising:

>   an outer covering including a reclosable access opening;
>
>   a removable cushion disposed within the outer covering to form a cushioned bottom portion;
>
>   a bolster removably secured to the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion;
>
>   such that the removable cushion and bolster are separately removable from the outer covering interior through the reclosable access opening.

Each of the following claim elements have been shown herein to be in the prior art: "outer covering," "reclosable access opening," "removable cushion," and "bolster." Claim 7 of the '502 Patent further limits the pet bed therein to one in which the bolster is "removably secured to the interior of the outer covering" and in which the bolster and cushion "are separately removable from the outer covering interior through the reclosable access opening." There is no explicit teaching in the '502 Patent specification with respect to "removably securing" the bolster to the interior of the outer covering, and the issue was addressed without clarifying elaboration during the original prosecution. Thus, this claim is invalid as indefinite or not enabled, according to 35 U.S.C. 112. Alternatively, if there is determined to be an absence of distinction between the use of the terms "securing" and "affixing," claim 7 is nevertheless unpatentable as will be shown below.

The '502 Patent specification discusses "removably affixing" the bolster to the interior of the outer covering, with the purpose of providing structural integrity to the pet bed. Preferably, this is accomplished by means such as straps (8). *See* '502 Patent at col. 2, ll.7-9; col.2, l. 51 to col. 3, l. 13; Figure 4; *see also* Prosecution Amendment, September 29, 1997 (removably

6

securing bolster to the interior of outer covering increases stability of the bed by fixing the position of the bolster). The need for structural integrity was known in the art, as the '248 Patent taught the use of a stiffening wire (10) for this purpose. Further, the DE '699 Patent teaches the need to maintain the relative position of the bolster member (3) to the base member (2), utilizing hook and loop fasteners (Velcro) (4) to accomplish this objective. *See* DE '699 Patent at p.3, l.14 to p.4, l.6; *see also* Figure 1. Still further, the '559 Patent teaches the use of straps (54) to hold the inner member (15) in place. *See* '559 Patent at col.3, l. 51 to col. 4, l. 11; Figure 4. Still further, the '044 Patent teaches the use of straps ((55), (56)) to hold the bolster in place. *See* '044 Patent at Figs. 3, 4 and 6. Thus, the removable securing (or "affixing") of the bolster using, for example, straps and/or hook and loop material would have been obvious to one of ordinary skill in the art at the time of the '502 Patent application. With respect to the final limitation of claim 7 of the '502 Patent, the separate removability of the bolster and cushion from the outer covering, reference is again made to the teachings of the DE '699 Patent, as discussed *supra* with respect to obviousness of claim 2 of the '502 Patent. More specifically, the DE '699 Patent discloses a reclosable single cover (5) having an access opening allowing for the separate insertion and removal of both the base cushion (2) and the bolster cushion (3). *See* DE '699 Patent at p.3, l.14 to p.4, l.6; p.8, ll.13-14; *see also* Figure 1. Thus, the separate removability of the bolster and cushion from the outer covering is a limitation rendered obvious in view of the DE '699 Patent. As further discussed *supra,* the separate removability of the bolster and bottom cushion from the outer covering is anticipated by either of the '393 or '981 Patents, as both disclose such separate removability.

### D.  Discussion: Claim 8

Claim 8 of the '502 Patent depends from claim 7 and further recites a "means for closing the reclosable access opening." Notwithstanding the questionable distinction between claim 7 comprising a "reclosable" opening and claim 8 comprising "means for closing" that which is already said to be "reclosable," it is noted that claim 8 is governed by 35 U.S.C. 112(6) as incorporating a "means plus function" limitation. Accordingly, the limitation is limited to the particular embodiments linked to the "closing" operation in the specification and any equivalents therefor. The '502 Patent specification limits its disclosure in this regard to the use of a zipper. *See* '502 Patent at col. 3, ll.6-13. As discussed *supra*, the use of a zipper to facilitate the closure of the access opening was known in the art and would have been obvious in view of any of the DE '699 Patent, the '044 Patent, or the '843 Patent.

### IV.  Conclusion

There are substantial new questions of patentability raised herein with respect to at least claims 1, 2, 3, 7, and 8 of the '502 Patent. Accordingly, reexamination of those claims is requested in view of the prior art cited herein, as well as any art identified by the Director, pursuant to 37 C.F.R. 1.510 and 35 U.S.C. 302 – 304.

7