UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, <br><br>　　　　　Defendants. <br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. 04 10162 DPW |

## DALLAS MANUFACTURING'S OPPOSITION TO FLEXI-MAT'S MOTION REGARDING DALLAS MANUFACTURING'S OBJECTION TO DISCLOSURE

### INTRODUCTION

Plaintiff Flexi-Mat Corporation demands that Defendant Dallas Manufacturing Company, Inc. allow Flexi-Mat's counsel to turn over highly confidential information to an active and thriving competitor. Flexi-Mat couches this demand as merely the "disclosure of an extremely limited amount of Dallas' sales information" to Flexi-Mat's CEO and the associate general counsel of Flexi-Mat's parent corporation, Heather French. This is not, however, a mere disclosure of a limited amount of information. Rather, this would provide Flexi-Mat, a main competitor to Dallas Manufacturing in the marketplace, with the opportunity to review Dallas Manufacturing's highly confidential information regarding sales of the accused pet beds at issue in this case, specifically the total units of the pet beds sold by Dallas Manufacturing and the total net sales of those beds. Such a disclosure is unnecessary.

Before agreeing to produce any confidential information in this lawsuit, the parties entered into a Stipulated Protective Order. (The Stipulated Protective Order is attached to Flexi-Mat's brief in support of its motion as Exhibit 1.) The Court approved and entered the Stipulated Protective Order. FED. R. CIV. P. 26(c). Thus, to modify the Stipulated Protective Order, Flexi-Mat must show good cause that the modification is necessary. Flexi-Mat has failed to do so.

Dallas Manufacturing originally produced the requested information to Flexi-Mat with the designation "CONFIDENTIAL: ATTORNEYS' EYES ONLY." (Declaration of Gary A. Clark, "Clark Decl.," ¶ 4.) Dallas Manufacturing agreed to produce this information relying on the fact that its disclosure would be limited to Flexi-Mat's outside counsel, and that Flexi-Mat's officers and employees would not have access to the information. Forcing Dallas Manufacturing to disclose this information to Flexi-Mat's president and associate general counsel would be detrimental to Dallas Manufacturing and harm Dallas Manufacturing's competitive position in the pet bed business.

Lastly, Dallas Manufacturing attempted to cooperate with Flexi-Mat by offering to provide an approximation of some of the information requested. Specifically, Dallas Manufacturing's counsel called Flexi-Mat's counsel and offered to disclose a range of the total unit sales of the accused pet beds sold by Dallas Manufacturing. (Clark Decl., ¶ 6.) This information would suffice to provide Flexi-Mat's president and its in-house counsel with a fair showing of the approximate magnitude of Dallas Manufacturing's business and, thus, the ability to ascertain the magnitude of alleged damages in this case. Yet, Flexi-Mat's counsel rejected this offer and wants nothing less than the actual units sold and total sales. (*Id.*)

## DISCUSSION

Flexi-Mat seeks disclosure of information that was produced to Flexi-Mat under the protection of a Stipulated Protective Order, stipulated to by both parties. Dallas Manufacturing designated the requested information as "CONFIDENTIAL: ATTORNEYS' EYES ONLY." Under the terms of the Stipulated Protective Order, information produced under this higher level of protection cannot be disclosed to employees or in-house counsel of the party receiving the information unless agreed to in writing by the producing party. (Stipulated Protective Order at Section 4(b).) Dallas Manufacturing produced this information to Flexi-Mat, relying on the fact that the information would remain confidential and would not be seen by employees of Flexi-Mat, including its president. As demonstrated below, the information should stay remain confidential.

A.     Flexi-Mat Has Failed To Demonstrate Good Cause For Modifying The Stipulated Protective Order

Flexi-Mat has failed to demonstrate good cause for modifying the Stipulated Protective Order to allow employees of Flexi-Mat access to Dallas Manufacturing's confidential information. A number of district courts have held that by stipulating to a protective order, the parties represent that "good cause" exists for entry of the protective order. *See, e.g., Factory Mutual Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, 303-04 (M.D.N.C. 2002) (holding that, by stipulating to the protective order, the parties implicitly acknowledged that there was good cause for the order, and thus the party had the burden of showing good cause to modify the order); *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 464 (S.D.N.Y. 1995); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (S.D. Iowa 1992). Since there was good cause for entering the Stipulated Protective Order, the burden falls on Flexi-Mat to show the need to modify it to allow employees of Flexi-Mat access to the confidential information. *Id.* Flexi-Mat has failed to satisfy this burden.

In its moving papers, Flexi-Mat claims that its CEO, Mr. Elesh, and its parent's associate general counsel, Ms. French, need the information to make "informed and intelligent decisions concerning the further conduct in this case, including settlement, motion practice and trial preparation . . . ." (Flexi-Mat Brief at 2.) This amounts, however, to nothing more than a vague excuse to obtain Dallas Manufacturing's confidential sales information. When it approached Dallas Manufacturing, Flexi-Mat would not commit to having any interest in discussing settlement.. (Clark Decl., ¶ 5.) In fact, Flexi-Mat refused to provide any *specific* reasons for why either Mr. Elesh allegedly needs this information. (*Id.*) The subject of Ms. French never even came up.

Dallas Manufacturing has no interest in thwarting reasonable and good faith settlement discussions with Flexi-Mat if such discussions were being proposed. However, Flexi-Mat has never suggested it would settle this case for anything less than the injunctive relief and full measure of damages sought in its complaint. Thus, Flexi-Mat has given no reason to believe that Mr. Elesh and Ms. French need such information for settlement purposes.

Additionally, Flexi-Mat's outside counsel is sufficiently capable of advising Flexi-Mat in making "informed and intelligent decisions" without the need for access to Dallas Manufacturing's confidential information. Flexi-Mat is represented by Michael Best & Friedrich LLP, a firm of over 250 attorneys that promotes itself as having expertise in patent litigation. Moreover, as is done in practically every patent litigation, Flexi-Mat can employ outside expert consultants to review Dallas Manufacturing's financial information and to assist Michael Best & Friedrich in preparing its case. Such experts, working with Flexi-Mat's attorneys, will enable Flexi-Mat to prepare its damages arguments without disclosing the confidential information to Mr. Elesh or Ms. French. Accordingly, there is simply no need to reveal Dallas Manufacturing's confidential sales information to Flexi-Mat employees and to

expose Dallas Manufacturing to the risk of inadvertent disclosure or use of the information outside of the context of this lawsuit.

Lastly, Flexi-Mat has failed to demonstrate why Dallas Manufacturing's offer to disclose a range of the total unit sales of pet beds to Mr. Elesh and Ms. French is insufficient to enable Flexi-Mat to make informed decisions regarding this lawsuit. Mr. Elesh is well-versed in the pet bed business and can estimate the average selling price of Dallas Manufacturing's bolster beds based on their retail selling price in the marketplace. This would allow Flexi-Mat to make a range of total net sales of the bolster beds. As such, it is not necessary that Mr. Elesh have the exact unit and dollar figures for the total sales of the bolster beds. This further demonstrates Flexi-Mat's inability to show good cause why the Stipulated Protective Order should be modified to grant Mr. Elesh and Ms. French access to information previously designated "CONFIDENTIAL: ATTORNEYS' EYES ONLY."

B.  Granting Flexi-Mat's President Access To The Requested Information Could Cause Dallas Manufacturing Irreparable Harm In The Pet Bed Business

Flexi-Mat is an active competitor in the pet bed business. In the past Flexi-Mat has approached Dallas Manufacturing's customers in an effort to take business away from Dallas Manufacturing. Flexi-Mat has also targeted other retail customers that Dallas Manufacturing has targeted in an effort to secure a position in the pet bed business for that retailer. Thus, Flexi-Mat and Dallas Manufacturing are significant and direct competitors.

More to the point, as a result of this competition and selling effort, Flexi-Mat surely knows Dallas Manufacturing's approximate sales volumes with at least some of its customers because Flexi-Mat knows the volumes on which the customers want suppliers to bid. With access to information regarding Dallas Manufacturing's total unit sales of the bolster beds, Flexi-Mat could then back out those volumes for specific Dallas Manufacturing customers of

which Flexi-Mat is aware. This would allow Flexi-Mat to estimate Dallas Manufacturing's sales volumes with the remaining customers of which Flexi-Mat might not be aware. This would provide Flexi-Mat with information that it could use competitively in an attempt to take business away from Dallas Manufacturing. Specifically, it would provide Flexi-Mat with the ammunition to attack Dallas Manufacturing's existing accounts from both a marketing and sales perspective. It could also provide Flexi-Mat with a competitive edge in securing future business with other retailers that Dallas Manufacturing intends to pursue.

Mr. Elesh is not in a position to separate himself from the confidential information he might obtain in this lawsuit from his business obligations and dealings for Flexi-Mat. Although Flexi-Mat claims that it will not use the information for a competitive reason, it is impossible to separate such knowledge from daily business decisions. Mr. Elesh is intimately involved in the business decisions for Flexi-Mat, including existing customers and customers Flexi-Mat intends to target in the future. In fact, Mr. Elesh has put himself out as the representative of Flexi-Mat for purposes of FED. R. CIV. P. 30(b)(6) depositions on most topics. Thus, Mr. Elesh is a key business decision-maker for Flexi-Mat.

It would be inherently unfair to force Dallas Manufacturing to shoulder the extraordinary burden of having its own confidential materials used against it in the marketplace. The Court should not grant Mr. Elesh or Ms. French access to materials designated as "Confidential: Attorneys' Eyes Only." *See Intel*, 198 F.R.D. at 531 ("Even a seemingly insignificant risk of disclosure cannot be ignored due to the threat of significant potential injury. The potential injury from inadvertent disclosure of VIA trade secrets in this case would be great, because the information could be used to duplicate VIA products, *compete for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace*.") (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should deny Flex-Mat's Motion permitting the disclosure of Dallas Manufacturing's total units and total net sales of the accused products to Mr. James Elesh and Ms. Heather French.

                                      Attorneys for Defendants and Counter-Claimants
DALLAS MANUFACTURING COMPANY, INC.
AND BJ'S WHOLESALE CLUB, INC.

Gary A. Clark (pro hac vice)
Darren M. Franklin (pro hac vice)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
(213) 620-1780

Dated: September 15, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4000