**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) | |
| Defendants. | ) | |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) | **FLEXI-MAT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF VALIDITY** |
| Counter-claimant, | ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| Counter-defendant. | ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) | |
| Counter-claimant, | ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| Counter-defendant. | ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) | |
| Counter-claimant, | ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| Counter-defendant. | ) | |

***Statement of Fact 1.***    In this action Plaintiff Flexi-Mat Corp. (Flexi-Mat) alleges infringement of claims 1-3 of U.S. Patent No. 5,765,502 (the '502 patent).

***Statement of Fact 2.***    Claim 1, the only independent claim asserted in this action, claims:

> A pet bed comprising:
>   1.   an outer covering;
>   2.   a removable cushion disposed within the outer covering to form a cushioned bottom portion; and
>   3.   a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FIG. 5

FM Validity Ex. 1 at Col. 3, lines 38-40.

***Statement of Fact 3.***    Claim 2 depends from claim 1 and calls for the outer covering of claim 1 to include a reclosable access opening.  *Id.* at Col. 3, lines 47-50.

***Statement of Fact 4.***    Claim 3 calls for the access opening of claim 2 to include a zipper.  *Id.* at Col. 3, lines 47-50.

***Statement of Fact 5.***    Since claims 2 and 3 each depend from claim 1, each includes the limitations of claim 1.  *Id.* at Col. 3, lines 47-50.

***Statement of Fact 6.***    All defendants allege that claim 1 is anticipated by nine identified patents:  U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), and 4,873,734 (Pollard), 5,010,843 (Henry) and 5,421,044 (Steensen).  FM Validity Ex. 19 at pp. 10-28; FM Validity Ex. 17; FM Validity Ex. 23.

***Statement of Fact 7.***    Doskocil further alleges that claim 1 is anticipated by U.S. Patent No. 2,032,248 (Bins).  FM Validity Ex. 20 at p. 8; FM Validity Ex. 21 at p. 3.

***Statement of Fact 8.***    Each of the ten patents upon which Defendants rely lacks at least one limitation of claim 1 of the '502 patent and, therefore, none anticipates claim 1 or claims 2-3 that depend from claim 1.

***Statement of Fact 9.***    Only four patents asserted by defendants U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), and 5,010,843 (Henry), pertain to pet beds.

**Statement of Fact 10.**  Three of these pet bed patents, *i.e.*, U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), feature pet beds with a wall rather than Claim 1's required bolster.  FM Validity Ex. 3, 4 and 5 respectively.

**Statement of Fact 11.**  Barreto describes a rigid, walled pet bed:  "Sidewall 42 is secured to base 44 and provides a perimeter wall to define a partial enclosure or cradle . . . . Sidewall 42 and base 44 may be made of a soft, flexible foam-core material . . . having a thickness of about one-quarter to six inches . . . dependent upon the size and weight of the pet, and the particular configuration of the embodiment selected."  FM Validity Ex. 3 at Col. 6, lines 46-58.

**Statement of Fact 12.**  Barreto's claims confirm that its invention is limited to pet beds having walls.  Its claims require a sidewall that is "sufficiently rigid to form a generally erect intended configuration above [the] floor."  *Id.* at claims 1, 12, and 13.  There is no disclosure of a bolster.

**Statement of Fact 13.**  Since the '537 Heilborn patent (FM Validity Ex. 5) is a continuation of the '393 Heilborn patent (FM Validity Ex.4), the two patents share a common specification.

**Statement of Fact 14.**  Heilborn, like Barreto, discloses pet beds with walls.  Heilborn explicitly describes its side parts as walls and its invention is described as one in which the walls of the semi-enclosed type of pet bed can be collapsed for shipping.  FM Validity Ex. 5, Col. 2, lines 10-14.  The walled bed "provide[s] the animal with a sheltered, semi-enclosed bed in which the pet feels secure."  *Id.* at Col. 1, lines 17-19.

**Statement of Fact 15.**  Defendants' affirmative defense of anticipation in regard to these three walled pet beds ignores the difference between walled pet beds and those that employ a bolster, as the claims of the '502 patent require.



**Statement of Fact 16.**  Defendants' own expert, when asked about Heilborn's wall made from an "upstanding foam core," could only respond that the difference between a pillow and wall was one of "semantics."

Q. Okay.  And do you consider an upstanding foam core to be a bolster?
A. It could be referred to as that.  It could be, another inventor could call it a bolster.
Q. Do you consider it to be a bolster?
A. I think it's semantics.  I think a bolster, if it's a stuffed unit within a covering, it could be stuffed with peanuts; it could be stuffed with foam; it could be stuffed with fiberfill, it could be stuffed with batting, blown in, or whatever, it still creates an outer area for the pet.  So whether do you call it a bolster or a wall I think is semantics.  It's still, it's not solid.  Yet, as we would go over to the wall of this room and say, this is a wall,

and I hit it and I hurt my hand, this is not the same sort of structure. So I would
consider any of these terms cushion/bolster/wall to be interchangeable.

FM Validity Ex. 18 at p. 149.

**Statement of Fact 17.**  The plain meaning of the claim language, the specification, and the use of the

terms "bolster" and "wall" in the art establish that they are two different structures.  A *bolster* is commonly

understood to be a long pillow or cushion.  http://www.m-w.com/dictionary.  FM Validity Ex. 22.  The '502

patent confirms that this ordinary usage of the term "bolster" is intended:  the patent describes the bolster

as a "long, slender pillow," (FM Validity Ex. 1 at Col. 3, line 4) and "more cylindrical or banana-shaped

than flat, and more like a pillow than a wall." *Id.* at Col. 2, lines 56-57 so that it "tends to retain its shape

even when used as a pillow by the pet, and does not easily collapse from the weight of the pet as in some

prior art products." *Id.* at Col. 2, lines 58-60.

**Statement of Fact 18.**  The '502 patent describes previously-known walled pet beds as being

unsatisfactory because the wall "does not provide support for heavier … animals" to use as a headrest

and "tends to collapse … unless it is made of material so rigid that it is uncomfortable." *Id.* at Col. 1, lines

21-26.  The '502 patent then distinguishes a bolster from a wall in that the bolster, unlike the wall, "tends

to retain its shape even when used as a pillow by the pet, and does not easily collapse from the weight of

the pet." *Id.* at Col. 2, lines 57-60.

**Statement of Fact 19.**  Flexi-Mat's own prior art walled pet beds as well as other walled pet beds, *i.e.*,

the "Pucker Bed" sold by In the Company of Dogs, Flexi-Mat's "Cuddler" and "Kitty Kup," were disclosed

to the Patent and Trademark Office ("PTO") by Flexi-Mat during the prosecution of the '502 patent.  FM

Validity Ex. 2 at DCM 67-75.  The PTO considered this prior art and found the claims of the '502 patent

allowable over the prior art walled beds.

**Statement of Fact 20.**  As explained by Mr. Handelsman, Flexi-Mat's expert:

> Those persons experienced in the pet industry also distinguish between the
> terms *bolster* and *side wall* and recognize the difference between the two structures.  The
> term *bolster* as used in the '502 patent does not include a wall.

FM Validity Ex. 16 at p. 12.

**Statement of Fact 21.**  The term *bolster*, as used in the patent-in-suit, means a long, narrow pillow and

does not include the walls of Barreto and Heilborn.

**Statement of Fact 22.**  Because Heilborn and Barreto lack the bolster of claims 1-3, they do not anticipate claims 1-3 of the '502 Patent.

**Statement of Fact 23.**  The five patents, U.S. Patent Nos. 5,421,044 (Steensen), 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), and 4,873,734 (Pollard), do not disclose pet beds.  FM Validity Exs.  11, 6, 7, 8 and 9 respectively.  In addition, Defendants have assembled several foreign equivalents to the U.S. Thönnessen  patent which discloses the same information as the U.S. patent invented by Thönnessen.

**Statement of Fact 24.**  The '502 patent, entitled "Pet Bed with Removable Bolster,"  makes clear that the inventor was working on a particular problem with prior art pet beds, *i.e.*, those with walls that collapse under the weight of a pet's head.  The invention does not pertain to a human pillow, a human bed, or guards to prevent humans from falling out of bed.  See FM Validity Ex. 1 at Col. 1, lines 1-63.  Indeed, the specification distinguishes pet beds from human beds and other furniture.  *Id.* at Col. 1, lines 11-15.

**Statement of Fact 25.**  Because Steensen, Rinz, Thönnessen, Bishop and Pollard do not disclose pet beds, they do not anticipate claims 1-3 of the '502 Patent.

**Statement of Fact 26.**  Five patents do not disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom cushion," as required by claims 1-3 of the '502 patent.  They do not therefore anticipate those claims.  These patents are U.S. Patent Nos. 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), 4,873,734 (Pollard), and 5,010,843 (Henry).  FM Validity Exs. 6, 7, 8, 9 and 10 respectively.

**Statement of Fact 27.**  U.S. Patent No. 4,754,513 (Rinz) discloses an orthopedic pillowcase that encases an insert (the alleged bolster) located entirely on top of a pillow (the alleged bottom cushion). FM Validity Ex. 6.

**Statement of Fact 28.**  Rinz does not disclose a bolster substantially all of which is disposed exteriorly about at least a portion of the perimeter of the bottom portion.  FM Validity Ex. 16 at p. 13.

**Statement of Fact 29.**  Rinz does not teach that one should change the only

disclosed location of the insert 16, atop the pillow 17, while rotating the pillowcase.  There certainly is no teaching or suggestion in the Rinz patent to rotate the pillow case in the manner suggested by Ms. Fessler. FM Validity Ex. 16 at pp. 13-14.

**Statement of Fact 30.**  The rotation actually suggested by the Rinz patent in keeping with the purpose of the pillow, *i.e.*, relieving neck pain, is an amount of rotation to adjust the insert's location atop the pillow. If one were to rotate the pillow case as Ms. Fessler suggests, the insert would simply compress the pillow inside the pillow case and in effect become part of that pillow.  FM Validity Ex. 16 at pp. 13-14.

**Statement of Fact 31.**  The remaining four prior art patents, U.S. Patent Nos. 5,586,350 (Thönnessen), 4,872,228 (Bishop), 4,873,734 (Pollard), and 5,010,843 (Henry), that dispose these prior art bolster atop the bottom cushion are asserted only conditionally by the Defendants.  According to Defendants and their expert these references anticipate only "**if** claim 1 of the '502 patent were [erroneously] read to cover a bed with the bolster atop the bottom cushion."  See FM Validity Ex. 19 at p. 21 (Thönnessen), p. 23 (Bishop) and (Pollard) and p. 24 (Henry); FM Validity Ex. 17 at p. 26 (Thönnessen), p. 30 Bishop, p. 35 (Pollard) and p. 40 (Henry).

**Statement of Fact 32.**  Claims 1-3 of the '502 patent each require that "substantially all" of the bolster be "disposed exteriorly about at least a portion of the perimeter of the bottom portion."  Neither Flexi-Mat nor Defendants contend that claim 1 covers a bed with the bolster atop the bottom cushion.

**Statement of Fact 33.**  The bolsters of the Thönnessen '350 patent could only possibly be moved to a potentially infringing position if one leaned on or pushed on these bolsters, disposed atop the bottom cushion.  FM Validity Ex. 18 at p. 105.

**Statement of Fact 34.**  The bolster of the Bishop '228 patent would move to an infringing position only if it malfunctioned.  FM Validity Ex. 18 at pp. 116-117.

**Statement of Fact 35.**  The bolsters of the '734 Pollard patent and the '843 Henry patent cannot move to an infringing position. FM Validity Ex. 18 at pp. 131 and 141.

**Statement of Fact 36.**  Defendants' prior art patents with a bolster disposed atop the bottom cushion, *i.e.*, Rinz, Thönnessen, Bishop, Pollard, and Henry, do not anticipate claims 1-3.

**Statement of Fact 37.**   In addition to not being a pet bed, U.S. Patent No. 5,421,044 (Steensen), FM Validity Ex. 11, does not disclose 1) a bolster, 2) a removable bolster or 3) a bolster that is not secured to the bottom cushion and, consequently, does not anticipate claims 1-3.

**Statement of Fact 38.**   Steensen discloses an air bed.  Figures 1 and 2 of the Steensen patent show the patented air mattress.  Fig. 1 shows the mattress with its cover 20 partially opened revealing foam pads 58 and 59.  Fig. 2 shows that the mattress is made from several identical air tubes (31-36 and 42).  FM Validity Ex. 11.

**Statement of Fact 39.**   Steensen calls the laterally disposed air tubes 42 "cushion air tubes" and air



tubes 31-36 which surround the laterally disposed tubes "bolster air tubes." Steensen makes clear that its bed or mattress is made from the combination of all of the air tubes and the foam pads and that this combination is to "provide a level top surface."

The air tubes are fitted into the outer covering and either or both of "egg crate" polyurethane foam pad 58 and rectangular polyurethane foam pad 59 are then placed on top of the upper laterally disposed cushion air tubes 42 in the space bounded by upper side bolster air tubes 32, 33, 34 and 35 and upper end bolster air tubes 31 and 36. The foam pads are used to provide a soft cushioned feel to the user, and to provide a level top surface. The top surface would otherwise have its outside edges extending substantially above the interior portions of the top surface due to the fact that the bolster air tubes 31, 32, 33, 34, 35, 36, 37, 38, 39 and 40 will typically be 8" diameter tubes while all the interior tubes (i.e., the upper laterally disposed cushion air tubes 42 and the lower laterally disposed cushion air tubes 45) will be 7" diameter tubes, and the height of the two levels of bolster tubes will therefore be 2" greater than the height of the two levels of interior tubes.

FM Validity Ex. 11 at Col. 4, lines 20-37,

**Statement of Fact 40.**   Because Steensen pertains to an air bed, each of the air tubes is connected to each other.  Fig. 9 of the patent is a diagram of the Steensen air system and shows that the "cushion tubes" and the "bolster tubes" are all connected together by air hoses that are then connected to a manifold and air pump outside of the bed. Fig. 7 shows the air hoses connecting some of the air tubes that have been enclosed in magazine 65.



Steensen does not disclose a bolster as claimed in the '502 patent.

**Statement of Fact 41.** These "bolster tubes" are simply part of the bottom cushion or mattress upon which a human is intended to lie. They are not pillows for use with the bottom cushion.

**Statement of Fact 42.** Claim 1 of the '502 patent requires a "bolster" and a "bottom cushion":

> The Steensen patent discloses a human bed without a pillow. The tubes 31, 32, 33, 34, 35, and 36 together with air tubes 42 and pads 58 and 59 make up one single bottom portion or resting surface. As described, the Steensen patent the foam pads 58 and/or 59 and tubes 31, 32, 33, 34, 35, and 36 and 42 "provide a soft cushioned feel to the user, and are used to provide a <u>level top surface</u>." Col. 4, lines 26-27 (emphasis added). These air tubes do not provide a separate structure for the user of the air bed and are not the bolster described and claimed in the '502 patent.

FM Validity Ex. 16 at p. 6.

**Statement of Fact 43.** The alleged "bolster" is not removable as required by claims 1-3 and is secured to the bottom cushion as prohibited by claims 1-3. Steensen's interconnection of "bolster air tubes" with the rest of the air tubes and the manifold and air pump makes this alleged "bolster" non-removable. Claims 1-3, on the other hand, each specifically require that the bolster be "removable."

> The term "removable cushion" is used in the '502 patent to describe a cushion that is designed to be removed from the outer cover and then replaced. "the pet bed should be . . . equipped with a one-piece cover and separately removable bolster and bottom cushion for ease of cleaning." Col. 1 lines 60-64. Again at Col. 3, lines 8-17 the patent discusses the construction of the pet bed in a manner that provides for the ease of removing and replacing the bolster and bottom cushion. . . .
> A pet bed with a removable cushion as described in the '502 patent is one that is specifically designed in a manner such that the bolster and bottom cushion can readily be removed and replaced and excludes the removal by a means that would require excessive effort as to discourage a pet bed owner from removing the bolster and bottom cushion or destroy the bed.

FM Validity Ex. 16 at p. 7.

**Statement of Fact 44.** Claims 1-3 of the '502 patent each require that the bolster be disposed in the interior of the outer covering "without being secured to the removable cushion." FM Validity Ex. 1 at Col. 3, lines 45-46.

**Statement of Fact 45.** As shown in the Steensen patent, each of the air tubes, including "bolster air tubes" 31-36, are secured to air tubes 42 which are part of the bottom cushion.

**Statement of Fact 46.**  U.S. Patent No. 2,032,248 (Bins) does not disclose 1) a removable bolster or 2) a bolster "substantially all of" which is disposed exteriorly about the perimeter of the bottom portion.  FM Validity Ex. 12.

**Statement of Fact 47.**  Bins discloses a pet bed that has a donut or annular shaped bolster setting atop a bottom mattress.  Bins explains the manner in which the bolster is constructed.



> As shown, the bed comprises an annular bolster 1 of general circular, oval, oblong, or other desired shape preferably formed by stitching the side edges of a strip of fabric of desired length together to forma tube, then filling the tube with cotton 2 or the like, preferably using a cotton packer having a fan or blower.  After the tube is filled one end is sewed up, and the sewed end of the tube inserted in the open end and the overlapping end portions of the tube sewed together, thereby forming a circular, oval, or oblong stuffed bolster.

FM Validity Ex. 12 at  Col. 1, line 50 to Col. 2, line 6.  After the oval bolster is sewn shut, a pocket, consisting of an annular band of fabric (4) and a base sheet (3), which is "approximately the same shape and size as the outer periphery of the annular bolster," is sewn to the closed bolster.  FM Validity Ex. 12 at Col. 2, lines 6-34.

**Statement of Fact 48.**  Bins' bolster is not "removable."  It is sewn shut and then sewn to the pocket that holds the bottom mattress.

**Statement of Fact 49.**  The claim term *removable* "excludes the removal by a means that would require excessive effort as to discourage a pet bed owner from removing the bolster and bottom cushion or destroy the bed."  FM Validity Ex. 16 at p. 7.

**Statement of Fact 50.**  The pocket in Bins that forms the bottom of the bed is "approximately the same shape and size as the outer periphery of the annular bolster."  "Substantially all" of Bins' bolster is not "disposed exteriorly" of the bottom cushion.  Rather, it is atop the bottom of the cushion.

**Statement of Fact 51.**  Both Barreto and Heilborn are walled beds.  Neither of them has the bolster that is required by claims 2-3.

**Statement of Fact 52.**  The Bishop and Pollard patents fail to teach the required limitation that "substantially all of the bolster be disposed exteriorly about at least a portion of the bottom cushion." Similarly, the asthma treatment articles[1] fail to disclose this limitation.  Even Defendants acknowledge this

---

[1]  These articles are: 1) A.B. Murray and Ferguson, *Dust-free bedrooms in the treatment of asthmatic children with house dust or house dust mite allergy; a controlled trial*, 71 PEDIATRICS 418-22 (March 1, 1983); 2) M.J. Walshaw and C.C. Evans, *Allergen Avoidance in House Dust Mite Sensitive Adult Asthma*, QUARTERLY JOURNAL OF MEDICINE,

by arguing that these articles add only the added limitations of claims 2 and 3 , *i.e.*, a reclosable access opening and a zipper. *See* FM Validity Ex. 19 at p. 27.

**Statement of Fact 53.**  The specification of the '502 patent when viewed in its entirety does not limit the scope of the invention, let alone clearly indicate that the invention is limited to pet beds having bolsters that are affixed to the outer covering.

**Statement of Fact 54.**  In the Summary of the Invention, the '502 patent states:  "In one form of the invention, the bolster may be removably affixed to the interior of the outer covering by a plurality of hook-and-loop fastener straps."  FM Validity Ex. 1 at Col. 2 lines 7-9.  This language indicates that other forms of the invention in which the bolster is not affixed to the cover are contemplated.  Additionally, Col. 2, lines 45-54 discloses "pockets formed in the outer covering" in which the bolster and bottom cushion are disposed.  These separate pockets are shown in Figure 2 of the '502 patent.

> The pet bed 1 includes a removable cushion 4 disposed within a bottom pocket 12 formed in the outer covering 2 . . . . Within a bolster pocket 10 provided in the outer covering 2, a bolster 6 is removably affixed.

**Statement of Fact 55.**  As also explained in the '502 patent, affixing the bolster within the bolster pocket provides the added advantage of providing structural integrity to the pet bed if such is desired.

> Removably affixing the bolster 6 within the bolster pocket 10 of the outer covering 2 has the advantage of lending structural integrity to the pet bed 1. Since the bolster 6 is much like a long, slender pillow, holding the bolster 6 in the bolster pocket 10 keeps the bolster relatively fixed in position with respect to the perimeter of the bottom portion of the pet bed 1.

FM Validity Ex. 1 at Col. 3 lines 1-7.

**Statement of Fact 56.**  The '502 disclosure does not limit the '502 invention.

> Claim 1 of the '502 patent does not include a limitation requiring that the bolster be affixed or otherwise secured to the outer covering.  It does contain a limitation that the bolster be disposed in the outer covering in a particular relationship with the bottom portion.  One of ordinary skill would clearly understand that the inventor had possession of the invention actually described in claim 1.
> The patent specification makes clear that the inventor did have possession of an invention in which the bolster is disposed in the outer covering in a particular relationship with the bottom portion, *i.e.*, such that substantially all of the bolster is disposed exteriorly

---

New Series 58, No. 226, pp. 199-215 (February 1986); and 3) Marc L. Rivo and Floyd J. Malveaux, *Outpatient Management of Asthma in Adults*, 45 AMERICAN FAMILY PHYSICIAN 2105 (May 1992).  FM Validity Ex. 13, 14 and 15 respectively.

about at least a portion of the perimeter of the bottom portion.  The patent discloses the use of a "bolster pocket" and a "bottom pocket" to create such a relationship.

FM Validity Ex. 16 at p. 26.

**Statement of Fact 57.**  When viewed in its entirety, the '502 specification and drawings show that the invention is not limited to beds that have a bolster "affixed" to the outer covering as Dallas argues.

**Statement of Fact 58.**  Claim 1 requires that "substantially all" of the bolster be "disposed exteriorly about at least a portion of the perimeter of the bottom portion."  "Substantially" is a common term of magnitude often used in patent claims as discussed below.  It means "being largely but not wholly that which is specified." Merriam-Webster Online Dictionary at http://www.m-w.com/dictionary.  FM Validity Ex 22.  By limiting the claim to "substantially all" rather than to "all," claim 1 allows some portion of the bolster at a location other than exteriorly about the perimeter of the bottom portion, *e.g.*, atop the bottom cushion.

**Statement of Fact 59.**  The drawings of the '502 Patent disclose a pet bed that has a bolster substantially all of which is disposed about the perimeter of the bottom portion.  There is no claim limitation that requires that a "significant portion" of the bolster not be disposed atop the bottom cushion.  Nor is there any language in the patent so limiting the invention.

**Statement of Fact 60.**  The term "substantially" is used to describe the subject matter of the invention:

> The modifying term *substantially* is used in its common and ordinary manner. The term "substantially" as used in claim 1 does not exclude a "significant" part of the bolster being atop the bottom cushion.  Substantially means considerable in importance, value, degree, amount, or extent.  Am. Herit. Dict. (2000).  Merriam Webster's Online Dictionary defines "substantially as "being largely <u>but not wholly</u> that which is specified." In specifying that only "substantially" all of the bolster" rather than all or the entirety of the bolster be disposed outside the bottom portion, claim 1 specifically allows that a portion of the bolster be located or disposed on top of the bottom portion.

FM Validity Ex. 16 at p. 16.  Those skilled in the art would understand the common meaning of the term "substantially" and that its use in claim 1 does not vary from that common meaning.

**Statement of Fact 61.**  The following limitation of claim 1 is not a means-plus-function limitation:

> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Validity Ex. 19 at p. 31.

**Statement of Fact 62.**  A "bolster" is a structure, *i.e.*, a long, slender pillow.  FM Validity Ex. 1 at Col. 2, line 4.

**Statement of Fact 63.** The remaining language in the cited limitation, rather than recite any function for the claimed structure, simply describes that bolster structure in relation to other structures: The bolster:

1) must be "disposed within the interior of the [structure of the] outer covering";
2) "substantially all of said bolster [must be] disposed exteriorly about at least a portion of the perimeter of the [structure that is the] bottom portion" and
3) must not be "secured to the [structure that is the] removable cushion."

FM Validity Ex. 1 at Col. 3, lines 38-40.

**Statement of Fact 64.** There is no language in claim 1 that requires any means to keep the bolster so disposed. The claim only requires that it be so disposed at some point. FM Validity Ex. 1 at Col. 3, lines 38-40.

**Statement of Fact 65.** The '502 patent teaches the use of "pockets," "straps" or "fasteners" to retain the bolsters in the claimed spatial relationship. FM Validity Ex. 1 at Col. 2, lines 51-67; FM Validity Ex. 16 at p. 27.

**Statement of Fact 66.** Each of the ten patents cited by defendants as anticipatory prior art to claim 1 is missing at least the limitations identified by an X in the table below. FM Validity Ex. 16 at pp. 5-25.

| Claims 1 of the '502 Patent | Defendants' Alleged Anticipatory Prior Art | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 5,136,981 (Barreto) | 5,588,393 5,826,537 (Heilborn) | 4,754,513 (Rinz) | 5,586,350 (Thönnessen) | 4,872,228 (Bishop) | 4,873,734 (Pollard) | 5,010,843 (Henry) | 5,421,044 (Steensen) | 2,032,248 (Bins) |
| A pet bed comprising: | | | X | X | X | X | | X | |
| an outer covering; | | | | | | | | | |
| a removable cushion disposed within the outer covering to form a cushioned bottom portion; and | | | | | | | | | |
| a bolster removably disposed within the interior of the outer covering and | X | X | | | | | | X | X |
| substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | | | X | X | X | X | X | | X |
| [a bolster being disposed] without being secured to the removable cushion. | | | | | | | | X | |

Respectfully submitted,

Dated: November 30, 2005

  /s  Michael Husmann             
Michael Husmann
Larry L. Saret
Lisa C. Childs
Gretchen M. Hosty
Michael Best & Friedrich LLP
401 North Michigan Avenue, Suite 1900
Chicago, IL  60611
(312) 222-0800
(312) 222-0818 (fax)

Richard B. Myrus (BBO # 638793)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Telephone:  (617) 570-1058
Facsimile:  (617) 523-1231

Attorneys for Plaintiff
Flexi-Mat Corporation

S:\CLIENT\201300\9029\C0605680.1

-12-