# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| AND RELATED COUNTERCLAIMS. | ) ) | |

## DALLAS MANUFACTURING'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502

TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT .................................................................................1

II.    BACKGROUND ...................................................................................................3

       A.    The Parties .................................................................................................3

       B.    The Controversy...........................................................................................3

       C.    The '502 Patent............................................................................................5

             1.    The asserted claims. ............................................................................5

             2.    Prosecution History of the '502 Patent.................................................6

                   a.    Claim 1 was limited to "a single cover" for both the bottom
                         cushion and the bolster......................................................................6

                   b.    Claim 1 was limited to substantially all of the bolster
                         disposed exteriorly about the perimeter of the bottom
                         cushion. ...............................................................................................6

       D.    Dallas Manufacturing's Accused Beds ...................................................7

III.   APPLICABLE LEGAL PRINCIPLES...................................................................8

       A.    Legal Standard for Summary Judgment ...................................................8

       B.    Infringement Analysis...................................................................................8

             1.    Claim construction ................................................................................8

                   a.    Generally..............................................................................................8

                   b.    35 U.S.C. § 112, ¶ 6................................................................................10

             2.    Comparing the claims to the accused products.........................................10

IV.    THE PROPER INTERPRETATION OF CLAIM 1...........................................11

       A.    Claim 1 Requires The Bottom Cushion And The Bolster To Be Disposed
             Within The Same Interior Space Of An Outer Covering......................................11

       B.    Claim 1 Requires The Bolster To Be Positioned Alongside, Not On Top
             Of, The Bottom Cushion.........................................................................................14

C.    The Function Of Disposing The Bolster Alongside The Bottom Cushion Covers Fasteners Or Straps As The Corresponding Structure Described In The '502 Patent....................................................................................................16

V.    DALLAS MANUFACTURING'S ACCUSED BEDS........................................................
      DO NOT LITERALLY INFRINGE CLAIM 1 ...........................................................17

      A.    All Of The Bolsters Have Separate Covers With Separate Interior Spaces. .........17

      B.    In None Of Accused Beds Is "Substantially All" Of The Bolster Disposed "Exteriorly" About The Perimeters Of The Bottom Cushions. ...........................17

      C.    None Of The Accused Beds Have Fasteners, Straps, Or Equivalents For Disposing The Bolsters In Place. ..........................................................................18

VI.   FLEXI-MAT IS PRECLUDED FROM ARGUING INFRINGEMENT ..............................
      UNDER THE DOCTRINE OF EQUIVALENTS ........................................................18

      A.    Flexi-Mat Has Failed To Present Required Expert Testimony To Support An Argument Of Infringement Under The Doctrine Of Equivalents. ..................18

      B.    Application Of The Doctrine Of Equivalents Is Precluded By Prosecution History Estoppel...................................................................................................19

VII.  CONCLUSION.......................................................................................................20

TABLE OF AUTHORITIES

Cases

Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,
    731 F.2d 831 (Fed. Cir. 1984)....................................................................................8

Budde v. Harley-Davidson, Inc.,
    250 F.3d 1369 (Fed. Cir. 2001).................................................................................10

Exxon Research & Eng'g Co. v. United States,
    265 F.3d 1371 (Fed. Cir. 2001).................................................................................12

Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,
    339 U.S. 605 (1950)..................................................................................................11

Hoganas AB v. Dresser Industries, Inc.,
    9 F.3d 948 (Fed. Cir. 1993)......................................................................................13

Home Diagnostics, Inc. v. LifeScan, Inc.,
    381 F.3d 1352 (Fed. Cir. 2004)..................................................................................9

Innova/Pure Water, Inc. v. Safari Water  Filtration Sys., Inc.,
    381 F.3d 1111 (Fed. Cir. 2004)..........................................................................8, 9, 13

Johnson v. IVAC Corp.,
    885 F.2d 1574 (Fed. Cir. 1989)..................................................................................8

KCJ Corp. v. Kinetic Concepts, Inc.,
    223 F.3d 1351 (Fed. Cir. 2000).................................................................................19

Magnivision, Inc. v. Bonneau Co.,
    33 F. Supp. 2d 1218 (C.D. Cal. 1998) .....................................................................16

Markman v. Westview Instruments, Inc.,
    517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).........................................8

Mas-Hamilton Group v. LaGard, Inc.,
    156 F.3d 1206 (Fed. Cir. 1998).................................................................................16

Micro Chemical v. Great Plains Chemical Co.,
    194 F.3d 1250 (Fed. Cir. 1999)............................................................................10, 16

Modine Mfg. Co. v. U.S. Int'l Trade Comm'n,
    75 F.3d 1545 (Fed. Cir. 1996)...................................................................................12

Network Commerce, Inc. v. Microsoft Corp.,
    422 F.3d 1353 (Fed. Cir. 2005).................................................................................19

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005)...............................................................................8, 9

Rhine v. Casio, Inc.,
     183 F.3d 1342 (Fed. Cir. 1999)...........................................................................11

Southwall Techs. Inc. v. Cardinal IG Co.,
     54 F.3d 1570 (Fed. Cir. 1995)............................................................................13

Spectrum Int'l, Inc. v. Sterilite Corp.,
     164 F.3d 1372 (Fed. Cir. 1998)..........................................................................13

Texas Instruments Inc. v. Cypress Semiconductor Corp.,
     90 F.3d 1558 (Fed. Cir. 1996)............................................................................19

United States v. Telectronics, Inc.,
     857 F.2d 778 (Fed. Cir. 1988)............................................................................11

Vitronics Corp. v. Conceptronic, Inc.,
     90 F.3d 1576 (Fed. Cir. 1996)..........................................................................8, 9

Wahpeton Canvas Co. v. Frontier, Inc.,
     870 F.2d 1546 (Fed. Cir. 1989)..........................................................................11

Warner Jenkinson Co. v. Hilton Davis Chem. Co.,
     520 U.S. 17 (1997).............................................................................10, 11, 19

Wright Med. Tech. v. Osteonics Corp.,
     122 F.3d 1440 (Fed. Cir. 1997)..........................................................................11

Statutes and Rules

35 U.S.C. § 112...............................................................................................................2

35 U.S.C. § 112, ¶ 6............................................................................................10, 16, ii

Fed. R. Civ. P. 56(c) ........................................................................................................8

<u>**DALLAS MANUFACTURING'S MEMORANDUM IN**</u>
<u>**SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF**</u>
<u>**NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502**</u>

### I.

### <u>SUMMARY OF ARGUMENT</u>

In alleging that Defendant Dallas Manufacturing is infringing its patent on a "Pet Bed with Removable Bolster," Plaintiff Flexi-Mat is barking up the wrong tree. Despite its title, Flexi-Mat's patent does not cover all pet beds with removable bolsters.

Although Dallas Manufacturing's accused pet beds have removable bolsters, Dallas Manufacturing designed its beds to be different and to overcome deficiencies in Flexi-Mat's design. This resulted in three fundamental differences in Dallas Manufacturing's beds— (1) the cover arrangement for the bottom cushion and bolster, (2) the position of the bolster relative to the bottom cushion, and (3) how the bolster is held in place—that avoid the only independent claim at issue, claim 1.

Notably, two of the three limitations in claim 1 that are avoided by Dallas Manufacturing's beds were relied on by Flexi-Mat in the Patent Office to distinguish a cited prior art reference. As a result, Flexi-Mat is precluded from arguing that those limitations apply.

First, in response to a rejection, Flexi-Mat argued that claim 1 distinguished over the cited reference by having "a single cover for all the cushions." In this context, "a single cover" refers to a cover having one interior space for both the bottom cushion and the bolster. This is the only interpretation that would distinguish the cited reference. Also, claim 1 recites that the bolster is within "the interior" of the outer covering, indicating that it has one and only one interior space. Moreover, Flexi-Mat amended claim 1 at the same time to provide that the bolster is disposed within the interior of the outer covering "without being secured to the

-1-

removable cushion." This limitation only makes sense if the bolster is in the same interior space as the bottom cushion, for only then would the two even be capable of being secured together.

Second, to ensure that claim 1 distinguished over the cited reference, Flexi-Mat agreed with the patent examiner to further amend claim 1 to require that "substantially all" of the bolster be positioned "exteriorly" about at least a portion of the perimeter of the bottom cushion. In other words, amended claim 1 requires the bolster to be positioned alongside the bottom cushion, *not* on top of it as in the prior art.

For the third limitation, claim 1—properly construed under 35 U.S.C. § 112, sixth paragraph—requires fasteners or straps, as disclosed in the patent, to dispose the bolster alongside the bottom cushion. Fasteners or straps are necessary due to claim 1's requirement, noted above, that the bolster is not secured to the bottom cushion. The inventor admitted in deposition that without fasteners or straps, the bolster could freely shift position within the interior of the outer covering. The fasteners or straps ensure that the bolster is, and remains, "disposed exteriorly about at least a portion of the perimeter" of the bottom cushion, as claim 1 requires.

In contrast, Dallas Manufacturing's accused pet beds are similar to the cited prior art reference over which Flexi-Mat distinguished during prosecution to obtain the '502 patent: (1) the bottom cushion and bolster are disposed within separate covers and occupy separate interior spaces, (2) the bolster is positioned on top of the bottom cushion, not alongside it, and (3) there are no fasteners, straps, or the equivalent disposing the bolster in place relative to the bottom cushion. These differences avoid literal infringement of claim 1. Moreover, Flexi-Mat is precluded both by its failure to present expert testimony and by prosecution history estoppel from arguing infringement under the doctrine of equivalents.

In short, there is no genuine issue of material fact that Dallas Manufacturing is entitled to summary judgment of non-infringement as a matter of law.

## II.
## BACKGROUND[1]

### A.    The Parties

Plaintiff Flexi-Mat, Defendant Dallas Manufacturing, and Defendant Doskocil Manufacturing are competing manufacturers of pet beds.  Defendant BJ's Wholesale Club is a leading wholesale club chain operating in the eastern United States.

Both Dallas Manufacturing and Doskocil Manufacturing supply pet beds to BJ's Wholesale Club that are accused of infringing Flexi-Mat's patent.  Although Dallas Manufacturing's and Dockocil Manufacturing's respective pet beds are both sold by BJ's Wholesale Club as the "Berkley & Jensen Premium Quality Bolster Pet Bed," in fact the beds have differences in design that are material to this infringement dispute.

### B.    The Controversy

Plaintiff Flexi-Mat is the assignee of the patent-in-suit, U.S. Patent No. 5,765,502 ("the '502 patent"), entitled "Pet bed with Removable Bolster."  A copy of the '502 patent is attached as Exhibit A to the DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Clark Decl."  The '502 patent issued in 1998, based on an application filed in 1996.    The patent application was prosecuted by Flexi-Mat's litigation counsel.  (*Id*.; Deposition

---

[1] Some of the facts set forth in this section are not material, but are included as helpful background for the Court.  The material facts are set forth in DALLAS MANUFACTURING'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO RULE 56.1.

of Larry L. Saret taken on September 13, 2005, "9/13/05 Saret Depo.," Exh. E to Clark Decl., at 10:14-11:7.)

The named inventor on the '502 patent is Scott Haugh, who was then an employee of Now Products, Inc. (Deposition of Scott Haugh taken September 14, 2005, "9/14/05 Haugh Depo.," Exh. F to Clark Decl., at 17:13-21.) Now Products designed the pet bed and assigned the '502 patent to Flexi-Mat for unstated consideration. (*Id*. at 60:16-61:14; Clark Decl., ¶ 7 and Exh. D.)

The '502 patent discloses a pet bed having a bottom cushion and a separate bolster disposed within an outer covering. Both the bottom cushion and the bolster are removable through a zippered opening in the outer covering. The bolster is positioned alongside the bottom cushion, so that both the bottom cushion and the bolster rest on the floor. The bolster is held in place within the outer covering by Velcro® straps that removably affix it to the interior.

Dallas Manufacturing developed its first accused bolster pet bed in mid-2003. (*See* DECLARATION OF RICHARD MATHEWS IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Mathews Decl.," ¶¶ 6-8.) Dallas Manufacturing designed the bed in response to BJ's Wholesale Club's request. In Dallas Manufacturing's first submission, the bolster was positioned alongside the bottom cushion. (*See* Deposition of James M. Pereira taken on April 14, 2005, "Pereira Depo.," Exh. G to Clark Decl., at 132:24-133:1 ("The bolster laid flat around the bed when you put it down.").) BJ's Wholesale Club rejected this design specifically because the bolster was on the floor and did not stand up on top of the bottom cushion. The buyer for BJ's Wholesale Club, Jim Pereira, asked Dallas Manufacturing to "fix[] the bolster so it doesn't lay flat on the ground and .

. . look unaesthetic." (Pereira Depo., *id.*, at 135:3-5. *See also* Mathews Decl., ¶ 6.)[2] Dallas

Manufacturing did just that, revamping the bed so that the bolster was positioned completely on

top of the bottom cushion. (Pereira Depo., *id.*, at 151:24-153:8; Mathews Decl., ¶¶ 7-8.)

        In January 2004, Flexi-Mat filed suit against Dallas Manufacturing and BJ's

Wholesale Club, alleging infringement of the '502 patent. In August 2004, Flexi-Mat amended

its complaint to add Doskocil Manufacturing as a defendant. Dallas Manufacturing has since

sold similar pet beds to four other retailers.

**C.     <u>The '502 Patent</u>**

      **1.    The asserted claims.**

        Flexi-Mat alleges that Dallas Manufacturing has infringed claim 1-3 of the

'502 patent, which read as follows:

> 1. A pet bed comprising:
>
> an outer covering;
>
> a removable cushion disposed within the outer covering to form a
> cushioned bottom portion; and
>
> a bolster removably disposed within the interior of the outer covering
> and substantially all of said bolster disposed exteriorly about at
> least a portion of the perimeter of the bottom portion without being
> secured to the removable cushion.
>
> 2. The pet bed of claim 1, wherein the outer covering further includes
> a reclosable access opening.
>
> 3. The pet bed of claim 2, wherein the reclosable access opening
> further includes a zipper.

(Clark Decl., Exh. A, col. 3, lines 37-46.)

---

[2] Dallas Manufacturing received a similar reaction from another retailer, Costco, in the same
    time frame. (*See* Mathews Decl., ¶ 5 and Exh. A.)

2.    **Prosecution History of the '502 Patent**

 a.    **Claim 1 was limited to "a single cover" for both the bottom cushion and the bolster.**

The patent examiner initially rejected claim 1-3 as anticipated (lacking novelty) in view of U.S. Patent No. 5,010,843 to Henry ("the Henry patent"). (*See* Clark Decl., Exh. B at DMC000033-000036.) The Henry patent (*id.*, Exh. C) discloses a pet bed having a pair of top cushions that rest on a base cushion. Each cushion has its own outer cover with its own zippered opening. The top cushion covers are joined to the base cushion cover by stitching or other means. (*Id.*, Exh. C, col. 2, lines 19-28; col. 3, lines 22-27.) In rejecting claim 1-3, the patent examiner cited to Figure 5 of the Henry patent, which resembles the accused Dallas Manufacturing beds except that Figure 5 shows two cushions (or bolsters), instead of one, on top of the bottom cushion. (*Id.*, Exh. B at DMC000034.)

In response, Flexi-Mat filed an AMENDMENT in which it amended claim 1 to recite that the bolster is disposed within the interior of the outer covering "without being secured to the removable cushion." (*Id.*, Exh. B at DMC000039.) In its accompanying remarks, Flexi-Mat distinguished the Henry patent on the grounds that it disclosed separate covers for the top and base cushions, whereas in the claimed invention "a single cover encompasses both cushions." Flexi-Mat went on to argue that "Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry." (*Id.*, Exh. B at DMC000042.)

 b.    **Claim 1 was limited to substantially all of the bolster disposed exteriorly about the perimeter of the bottom cushion.**

Following the AMENDMENT, the patent examiner held a telephone interview with Flexi-Mat's attorney. According to the INTERVIEW SUMMARY, "[a]dditional language was discussed to insure that claim 1 read over the prior art patent to Henry." (Clark Decl., Exh. B at

DMC000044.)  The additional language was an amendment to claim 1 to recite that "substantially all of said bolster" is disposed "exteriorly" about at least a portion of the perimeter of the bottom portion.  (*Id.*, Exh. B at DMC000046.)  This amendment clearly was intended to capture the further distinction that the bolster is alongside the bottom cushion in the '502 patent, rather than on top of it as in the Henry patent.

After this amendment, claim 1-3 were allowed, and the '502 patent issued.

## D.    Dallas Manufacturing's Accused Beds

Dallas Manufacturing has made and sold bolster pet beds to five major retailers, including BJ's Wholesale Club, that are charged to infringe (hereinafter the "Accused Beds"). The Accused Beds sold to four of the retailers—Big Lots, Sam's Club, and Bass Pro, in addition to BJ's Wholesale Club—are the same except for features (fabric, size, etc.) that are immaterial to this infringement dispute.  (*See* Mathews Decl., ¶¶ 9-14 and Exhs. B-E.)  The main difference in the Accused Bed sold to the fifth retailer, Costco, is that the zippered opening for the bolster is located inside the cover for the bottom cushion.  (*Id.*, ¶ 15 and Exh. F.)

In all of the Accused Beds, the bolster is disposed in a separate cover that is stitched to the top of the cover for the bottom cushion.  This is shown by the photographs of Exhibit A to the EXPERT REPORT OF SUZANNE FESSLER RE: INFRINGEMENT ISSUES FOR U.S. PATENT NO. 5,765,502, "Fessler Rpt.," which is attached as Exhibit B to the DECLARATION OF SUZANNE FESSLER IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT, "Fessler Decl."  The photograph shows the black line on the top panel of the cover for bottom cushion where the bolster cover is stitched in place.

Thus, in all of the Accused Beds, the bolster and the bottom cushion are disposed in separate interior spaces, and the bolster is held in place on top of the bottom cushion by its separate covering, not straps as in the '502 patent.  (*See* Mathews Decl., ¶¶ 9-15 and Exhs. B-F.)

In each of the Accused Beds, the covering for the bolster has its own zippered opening separate from the zippered opening in the covering for the bottom cushion.  (*Id.*)

### III.
### APPLICABLE LEGAL PRINCIPLES

**A.    Legal Standard for Summary Judgment**

A court may grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Summary judgment is as appropriate in a patent case as in any other case.  *See Johnson v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

**B.    Infringement Analysis**

Infringement requires a two-step analysis.  First, the Court must determine as a matter of law the scope of the claims that the patent owner asserts are infringed.  Second, the Court must compare the properly construed claims to the accused products to determine whether they come within the scope of the claims.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).

**1.    Claim construction**

**a.    Generally**

Claim interpretation is a question of law for the court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).  The Federal Circuit recently reaffirmed the rules for interpreting patent claims in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  The Federal Circuit noted that since "'the claims of a patent define the invention to which the patentee is entitled the right to exclude,'" claim construction should start with the words of the claim.  *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water*

*Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Claim terms are normally given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Id.* at 1312-13; *see also Innova/Pure Water*, 381 F.3d at 1116; *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).

To ascertain the "ordinary and customary meaning" of a claim term, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'"  *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water*, 381 F.3d at 1116).  Those sources include:  (1) the claims; (2) the patent specification; (3) the prosecution history of the patent; and (4) extrinsic evidence, including dictionaries, expert testimony, and treatises.  *Id.*

The patent specification, informed by the prosecution history of the patent, is "highly relevant to the claim construction analysis."  *Id.* at 1315.  "The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."  *Id.* at 1316.  Moreover, "the court may also consider the prosecution history of the patent, if in evidence.  This history contains the complete record of all the proceedings before the Patent and Trademark Office . . ."  *Vitronics*, 90 F.3d at 1582.

Extrinsic evidence, such as expert testimony, dictionaries, and treatises, may also help in determining the ordinary meaning of a claim term.  *Phillips*, 415 F.3d at 1318.  However, such evidence must be considered in the context of the intrinsic evidence.  *Id.* at 1319.

### b.    35 U.S.C. § 112, ¶ 6

In general, the Patent Laws require inventions to be claimed in terms of the structure, material, or acts needed to make or use the invention.  A statutory exception is contained in 35 U.S.C. § 112, sixth paragraph, which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

In applying § 112, ¶ 6, it is important to note that a claim element does *not* have to use the word "means" to be subject to the construction mandated by it.  If the word "means" is not used, the claim element is presumed to fall outside § 112, ¶ 6.  However, "that presumption can collapse when an element lacking the term 'means' nonetheless relies on functional terms rather than structure or material to describe performance of the claimed function." *Micro Chemical v. Great Plains Chemical Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999).

When § 112, ¶ 6, applies, the Court must first determine the function recited by the element.  *See Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001). Second, the court must identify the corresponding structure or material described in the patent specification that performs that function.  *See id.*  The claim element is then construed to cover the corresponding structure or materials and equivalents thereof.

### 2.    Comparing the claims to the accused products.

The second step in an infringement analysis is to compare the claims to the accused products.  In this regard, there are two types of infringement:  literal infringement and infringement under the doctrine of equivalents.  *See Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).  Literal infringement "requires that every limitation of the patent

-10-

claim must be found in the accused device." *United States v. Telectronics, Inc.*, 857 F.2d 778, 784 (Fed. Cir. 1988). If an accused device lacks a limitation as literally claimed, the device may still infringe if it has an equivalent feature. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950). However, prosecution history estoppel may bar application of the doctrine of equivalents. *Warner-Jenkinson*, 520 U.S. at 33.

Although patent infringement is an issue of fact, *see Wright Med. Tech. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed. Cir. 1997), summary judgment is appropriate where, as here, the design of the accused products is indisputable and straightforward. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999).

**IV.**

**THE PROPER INTERPRETATION OF CLAIM 1**

Flexi-Mat alleges that Dallas Manufacturing has infringed claim 1-3 of the '502 patent. The following analysis focuses solely on independent claim 1 because claims 2 and 3 are dependent claims, and, as a matter of law, cannot be infringed unless claim 1 is infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

**A.** **Claim 1 Requires The Bottom Cushion And The Bolster To Be Disposed Within The Same Interior Space Of An Outer Covering**

Claim 1 requires "an outer covering" for both "a removable cushion" and "a bolster removably disposed within the interior of the outer covering." For several reasons, a person of ordinary skill would understand these requirements to mean that the claimed pet bed has an outer covering with just one interior space in which both the bottom cushion and the bolster are disposed.

First, the words of claim 1 themselves compel this result by specifically referring to "*the* interior of the outer covering" (emphasis added). The definite article "the" indicates that there is one and only one interior space in the outer covering.

Second, if claim 1 allowed for the possibility of an outer covering with multiple interior spaces that were walled off from one another, the claim would be indefinite. It would then be unclear in which "interior" the bolster is disposed. *See generally Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (rejecting indefiniteness argument after claim construction; "If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite."); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996).

Third, as discussed above, during prosecution Flexi-Mat distinguished the Henry patent by arguing that it disclosed separate covers for the top and base cushions, whereas in the claimed invention "a single cover encompasses both cushions." The Henry patent, however, discloses that these so-called "separate covers" actually "are joined together into one cover assembly by any suitable means in a permanent or releasable fashion, for example, by stitching, . . ." (Clark Decl., Exh. C, col. 2, lines 22-24; *see also id*., col. 3, lines 22-27.) In the final analysis, therefore, both Henry and the '502 patent end up with a single cover assembly, capable of encompassing multiple cushions, that has been formed by stitching together several pieces of fabric.[3] The only sense in which Henry has "separate covers" is that they form separate interior spaces for the cushions. Therefore, the only way in which Flexi-Mat's "single cover" argument distinguishes over Henry is that the "single cover" of the claimed invention means a

---

[3] That the outer covering 2 disclosed in the '502 patent is formed by stitching together several different pieces of fabric is self-evident from the drawing figures in the patent.

cover with one interior compartment for both the bottom cushion and the bolster. *Cf. Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 953 (Fed. Cir. 1993) (reasonable to conclude that examiner relied on patentee's argument about one claim distinction where argument as to other claim distinction "was of questionable validity" in terms of distinguishing over cited reference.)

Moreover, by making its "single cover" argument to the patent examiner, Flexi-Mat triggered "the rule that explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998); *see also Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

Fourth, at the same time it presented its "single cover" argument, Flexi-Mat amended claim 1 to provide that the bolster is disposed within the interior of the outer covering "without being secured to the removable cushion." This limitation makes sense only if the bottom cushion and the bolster are in the same interior space. If the bottom cushion and the bolster were in separate interior spaces, walled off from one another, there would be no opportunity to secure them together. An interpretation rendering a claim limitation superfluous should be avoided. *See Innova/Pure Water*, 381 F.3d at 1119 ("all claim terms are presumed to have meaning in a claim.").

For at least these reasons, claim 1 is limited to a pet bed having an outer covering with a single interior space for both the bottom cushion and the bolster.

B.    **Claim 1 Requires The Bolster To Be Positioned Alongside, Not On Top Of, The Bottom Cushion.**

Claim 1 requires "substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion."  This means that the bolster is disposed alongside the bottom cushion, around its perimeter.  Moreover, a significant amount of the bolster cannot extend over the top of the bottom cushion because then "substantially all" of the bolster would not be exterior to the perimeter of the cushion.

These constructions are supported by the definition of "about" as meaning "surrounding," and by the definition of "exterior" as meaning "outer" or "external."  (*See* Clark Decl., ¶ 16 and Exh. M.)  Even Flexi-Mat's own technical expert, Simon Handelsman, agrees with these constructions.  (*See* Handelsman Depo., Exh. H to Clark Decl., at 75:8-76:10, and Deposition Exhibits 725-726, Exhs. I-J to Clark Decl.)  In particular, Mr. Handelsman expressly accepted Deposition Exhibits 725-726 as illustrating the "perimeter" of the bottom cushion and the area surrounding that perimeter that corresponds to "exteriorly about."  (Handelsman Depo., Exh. H to Clark Decl., at 76:16-77:5.)

With regard to the requirement that "substantially all" of the bolster must be disposed exteriorly about the perimeter of the bottom cushion, the *only* portion of the bolster that Flexi-Mat's expert identified as overlapping the bottom cushion was the "gathering" or folds on the inside curved surface of the bolster.  Mr. Handelsman marked Figure 1 to show the overlapping portion in a copy of the '502 patent, Deposition Exhibit 727.  (*See* Handelsman Depo., Exh. H to Clark Decl., at 85:24-87:7, and Deposition Exhibit 727, Exh. K to Clark Decl.)  This is consistent with the ordinary meaning of "substantially" as "largely but not wholly" and "all" as the "totality" of the bolster.  In other words, "substantially all" means largely, but not wholly, the totality of the bolster.  (*See* Exh. M to Clark Decl.)  Importantly, the phrase

"substantially all" does *not* mean merely a "substantial" portion of the bolster, as in "considerable in quantity."

As discussed above, Flexi-Mat amended claim 1 by adding the words "substantially all of said bolster" and "exteriorly" to ensure that the claim distinguished over the Henry patent. Henry not only shows the top cushions on top of the bottom cushion, but in the alternative states that "the top cushions can extend *beyond the edges* of the base cushion 12." (Clark Decl., Exh. C, col. 3, lines 18-19, emphasis added.) Moreover, the Henry patent states that the cushions may be "filled with any suitable cushion material, for example, layers of plastic foam or resilient foam particles, semi-rigid or rigid beading, cloth filler, and the like." (*Id.*, col. 2, lines 44-47.) A bed filled with foam, beads, or cloth can be deformed, fluffed, or plumped up so that its shape changes. (Fessler Rpt., Exh. B to Fessler Decl., at 10).) Hence, it was foreseeable that someone might design a bed in accordance with the Henry patent in which the bolster covering is sewn to the top of the covering for the bottom cushion, but a significant amount of the bolster might extend or "flop" over the perimeter. (*Id.*)

Because Flexi-Mat amended claim 1 to distinguish over the Henry patent, it cannot be construed to read on a bed in which any substantial part of the bolster is on the top of the bottom cushion, even if some portion of the bolster extends beyond the perimeter of the bottom cushion. Flexi-Mat has given away the right to claim this subject matter in amending claim 1 to distinguish over Henry.

For all these reasons, the phrase "substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion" should be construed to mean that substantially all of the bolster is disposed alongside the perimeter of the bottom cushion, with no significant portion of the bolster on top of the bottom cushion.

**C.    The Function Of Disposing The Bolster Alongside The Bottom Cushion Covers Fasteners Or Straps As The Corresponding Structure Described In The '502 Patent.**

Claim 1 does not recite any structure for performing the function of disposing the bolster "exteriorly about at least a portion of the perimeter of the bottom portion." As the inventor Mr. Haugh acknowledged, without fasteners or straps holding the bolster in place, "[i]t would be sloppy, you know, and not stay where it should stay. It could in theory go anywhere inside that loose bag is all you'd have without those ties." (9/14/05 Haugh Depo., Exh. F to Clark Decl., at 68:24-69:18; *see also id*., at 46:14-47:1.) In other words, the structure needed to perform the function of disposing the bolster alongside the bottom cushion is missing from claim 1. Therefore, even though the word "means" does not appear in claim 1, it must be construed under § 112, ¶ 6, to cover that corresponding structure. *Micro Chemical*, 194 F.3d at 1257. *See also Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213 (Fed. Cir. 1998); *Magnivision, Inc. v. Bonneau Co.*, 33 F. Supp. 2d 1218 (C.D. Cal. 1998), *aff'd in part, rev'd in part on other grounds*, 250 F.3d 758 (Fed. Cir. 2000).

Both the inventor Mr. Haugh and Flexi-Mat's expert Mr. Handelsman confirmed that "fasteners or straps 8" (col. 2, lines 61-62) are the only structures disclosed in the '502 patent to keep the bolster in place alongside the bottom cushion. (9/14/05 Haugh Depo., Exh. F to Clark Decl., at 68:24-69:18; *see also id.*, at 46:14-47:1; Handelsman Depo., Exh. H to Clark Decl., at 88:8-90:4).) The fasteners or straps are secured to the interior of the outer covering.

Accordingly, the function of disposing the bolster should be construed to cover fasteners, straps, or equivalents secured to the interior of the outer covering.

**V.**

## DALLAS MANUFACTURING'S ACCUSED BEDS
## DO NOT LITERALLY INFRINGE CLAIM 1

None of Dallas Manufacturing's Accused Beds literally satisfy any of the limitations discussed in the preceding Section IV.

**A.    All Of The Bolsters Have Separate Covers With Separate Interior Spaces.**

All of the Accused Beds have their bolsters disposed in a cover that is separate from the cover from the bottom cushion.  The bolster cover creates a separate interior space for the bolster that is partitioned off from the interior space for the bottom cushion.  (The two covers are sewn together, but sewing does not turn two coverings into one, as Flexi-Mat's remarks concerning the Henry patent show.

The cover arrangement for the bolsters in design of the Accused Beds is thus completely different from the one-piece outer covering claimed in the '502 patent.  Even the inventor, Mr. Haugh, said his design was "different" from a design with a completely contained bolster pocket with its own opening.  (9/14/05 Haugh Depo., Exh. F to Clark Decl., at 49:1-5.)

For at least this reason, the Accused Beds do not literally infringe claim 1.

**B.    In None Of Accused Beds Is "Substantially All" Of The Bolster Disposed
        "Exteriorly" About The Perimeters Of The Bottom Cushions.**

Each of Dallas Manufacturing's Accused Beds has its bolster disposed on or over the top of the bottom cushion, not "exteriorly about at least a portion of the perimeter" of the bottom cushion.  The photographs attached as Exhibits B-F to the Mathews Decl. and Exhibit A to the Fessler Rpt. (Exh. B to Fessler Decl.) make this clear.  It is never the case that all or substantially all of the bolster "flops" or extends over the side of the bottom cushion.  (Fessler Rpt., Exh. B to Fessler Decl., at 14-19; Mathews Decl., ¶¶ 10, 18.)

Mr. Handelsman's admittedly poor sketches that he made during his deposition, Deposition Exhibit 728, grossly exaggerate the amount of the bolster that may extend over the perimeter of the bottom cushion in selected places around the perimeter, as a simple inspection of the Accused Beds proves.[4]  However, even those sketches show a significant portion of the bolster on top of the bottom cushion in the Accused Beds.  (Handelsman Depo., Exh. H to Clark Decl., at 113:24-114:19, Deposition Exhibit 728, Exh. L to Clark Decl.)  No reasonable jury could conclude, after inspecting the Accused Beds and seeing Mr. Handelsman's sketches, that "substantially all" of the bolster of any of the Accused Beds is "disposed exteriorly about . . . the perimeter of the bottom portion."

For this additional reason, the Accused Beds do not literally infringe claim 1.

**C.**    **None Of The Accused Beds Have Fasteners, Straps, Or Equivalents For Disposing The Bolsters In Place.**

In the Accused Beds, the bolster is held in place by its separate cover, which is sewn to the top of the cover for the bottom cushion.  (Mathews Decl., ¶¶ 9-19; Fessler Rpt., Exh. B to Fessler Decl., at 14-19.)  The Accused Beds have no fasteners, straps, or equivalent structure for holding the bolster in place.  (*Id*.)  Moreover, Flexi-Mat's expert Mr. Handelsman has offered absolutely no opinion on this issue.  Dallas Manufacturing's Accused Beds do not literally infringe claim 1 for this additional reason.

## VI.

**FLEXI-MAT IS PRECLUDED FROM ARGUING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

**A.**    **Flexi-Mat Has Failed To Present Required Expert Testimony To Support An Argument Of Infringement Under The Doctrine Of Equivalents.**

To support an argument for infringement under the doctrine of equivalents, "a

---

[4] Dallas Manufacturing plans to lodge samples of the Accused Beds with the Court.

patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test. . . . Such evidence must be presented on a limitation-by-limitation basis." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005), *quoting Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)..  This rule applies in the summary judgment context.  *Id.*

Flexi-Mat's expert Mr. Handelsman has not presented any such testimony or linking argument in his expert report.  (*See* Clark Decl., ¶ 17 and Exh. N.)  Accordingly, for at least this reason, Flexi-Mat cannot raise a genuine issue of material fact, and summary judgment of non-infringement under the doctrine of equivalents is proper.

**B.**    **Application Of The Doctrine Of Equivalents Is Precluded By Prosecution History Estoppel.**

A patentee who has added a claim limitation during prosecution of the patent application for patentability reasons cannot later sidestep that limitation by invoking the doctrine of equivalents.  *Warner-Jenkinson*, 520 U.S. 17, 29-30.  Arguments made during the patent application process also may give rise to prosecution history estoppel if they show a clear and unmistakable surrender of subject matter.  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359-60 (Fed. Cir. 2000).  Whether prosecution history estoppel bars the doctrine of equivalents is a question of law for the court.  *Id.*

As discussed, Flexi-Mat amended claim 1 to require that "substantially all" of the bolster is disposed "exteriorly" about at least a portion of the perimeter of the bottom cushion. Flexi-Mat also distinguished the Henry patent by arguing that Henry disclosed separate covers for its cushions, whereas in the claimed invention "a single cover encompasses both cushions." The amendment was made for reasons of patentability (*see* 9/13/05 Saret Depo., Exh. E to Clark

Decl., at 42:5-11; 43:13-44:2; 44:13-45:3.), and Flexi-Mat's "single cover" argument clearly and unmistakably surrendered the right to cover a pet bed having separate covers.

Accordingly, prosecution history estoppel applies, and Flexi-Mat is precluded from relying on the doctrine of equivalents.

## VII.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should put Flexi-Mat on a leash and grant Dallas Manufacturing's motion for summary judgment of non-infringement of the '502 patent.

Attorneys for Defendants and Counterclaimants
DALLAS Manufacturing COMPANY, INC.


<u>/s/ Darren M. Franklin</u>
Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
Sheppard, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
Telephone:    (213) 620-1780
Facsimile:    (213) 620-1398
E-mail:        gclark@sheppardmullin.com
                 dfranklin@sheppardmullin.com

Dated:   November 30, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
McDermott, WILL & EMERY
28 State Street
Boston, Massachusetts  02109-1775
Telephone:    (617) 535-4000
Facsimile:    (617) 535-3800
E-mail:        jmarcellino@mwe.com
                 dmello@mwe.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel for Plaintiff and Counterdefendant Flexi-Mat Corporation, William A. Meunier, Esq., Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, and Larry L. Saret, Esq., Michael, Best & Friedrich LLP, 401 North Michigan Avenue, Suite 1900, Chicago, Illinois 60611, via first class mail, postage pre-paid, on November 30, 2005.

I hereby certify that a true copy of the above document was also served upon counsel for Defendant and Counterclaimant Doskocil Manufacturing Company, Inc., Roy W. Hardin, Esq., Locke Liddell & Sapp LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776, via first class mail, postage pre-paid, on November 30, 2005.

/s/ Darren M. Franklin
Darren M. Franklin