**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 10162 DPW |
| | ) | |
| DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) | **FLEXI-MAT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF VALIDITY** |
| | ) | |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) | |
| | ) | |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) | |
| | ) | |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...............................................................................................................................1

I. CLAIMS 1-3 OF THE '502 PATENT ARE NOT ANTICIPATED OR OBVIOUS IN VIEW OF THE
   PRIOR ART CITED BY THE DEFENDANTS. ....................................................................1

   A. Claims 1-3 Are Not Anticipated by the Prior Art. ...........................................................2

        1) The  Walled Pet Beds Do Not Anticipate Claim 1.........................................................3

        2) Patents That Do Not Disclose a Pet Bed Do Not Anticipate Claims 1-3. .....................5

        3) The Structures with Bolster Disposed Atop the Bottom Cushion Do Not
           Anticipate Claim 1. .................................................................................................6

        4) U.S. Patent No. 5,421,044 (Steensen) Does Not Anticipate Claims 1-3 of the
           '502 Patent. ...........................................................................................................9

        5) U.S. Patent No. 2,032,248 (Bins) Does Not Anticipate Claims 1-3 of the '502
           Patent. ..................................................................................................................11

   B. Claims 2-3 of the '502 Patent Are Not Obvious in View of the Prior Art Cited by the
      Defendants. ....................................................................................................................12

II. CLAIMS 1-3  OF THE '502 PATENT ARE NOT INVALID FOR FAILURE TO COMPLY WITH
    35 U.S.C. §112. ..................................................................................................................13

   A. The Specification of the '502 Patent Provides a Written Description of the Invention as
      Defined in Claims 1-3. ...................................................................................................13

   B. Claims 1-3 Are Not Vague and Ambiguous. ..................................................................16

CONCLUSION ...........................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akamai Techs., Inc. v. Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ................................................................................................................................2, 7

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364. 1371-71 (Fed. Cir. 2003) ........................18

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) .......................................................................................................................................5

*Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp Inc.*, 249 F.3d 1341, 1353-54 (Fed. Cir. 2001) ...........................................................................................................................2

*Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) ........................................................................................................................................14

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989 ................6

*Deering Precision Instruments, LLC v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1322-23 (Fed. Cir. 2003) ..................................................................................................................17

*Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995 ...........................................................16

*Ferguson Beauregard/Logic Controls v. Meaga Sys. LLC,* 350 F.3d 1327 (Fed. Cir. 2003) ........1

*Florida Power & Light Company v. United States*, 375 F.3d 1119 (Fed. Cir. 2004) ...................12

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) .....................................14

*Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 988 (1995) .........................................................................................................................................2

*In re Cruciferous Sprout Litig.*, 301 F.3d 1343 (Fed. Cir. 2002) .................................................2

*Moba v. Diamond Automation*, 325 F.3d 1306, 1319 (Fed. Cir. 2003) .........................................2

*Phillips v. AWH Corp.*, 363 F.3d 1207, 1212 (Fed. Cir. 2004) ...................................................18

*Schonbek Worldwide Lighting Inc. v. American Lighting Fixture Corp.*, 2002 U.S. Dist. LEXIS 4761 at *5 (D. Mass. 2002) .......................................................................................................1

*Verve* v. Crane Cams, Inc., 311 F.3d 1116, 1120 (Fed. Cir. 2002) ...........................................17

**13**

§ 13, 15, 16, 17

35 U.S.C. §§ 102 and 103 ........................................................................................3

35 U.S.C. §102 ........................................................................................................2

35 U.S.C. §112 ....................................................................................13, 16, 18, 20

35 U.S.C. §112 ¶2 ................................................................................................19

35 U.S.C. §112 ¶6 ................................................................................................18

**INTRODUCTION**

In this action Plaintiff Flexi-Mat Corp. (Flexi-Mat) alleges infringement of claims 1-3 of U.S. Patent No. 5,765,502 (the '502 patent). Dallas Manufacturing Co., Inc., Doskocil Manufacturing Co., Inc., and BJ's Wholesale Club, Inc. (Defendants) have responded to Flexi-Mat's interrogatories identifying their affirmative defenses of patent invalidity. Defendants' joint expert, Ms. Fessler, has opined about some of Defendants' alleged affirmative defenses. Since discovery is closed and the time for serving expert reports has expired, Defendants are limited to the affirmative defenses noted in their discovery responses and Ms. Fessler's report. *See Ferguson Beauregard/Logic Controls v. Mega Sys. LLC.,* 350 F.3d 1327, 1347 (Fed. Cir. 2003). Flexi-Mat now moves for summary judgment dismissing each affirmative defense and declaring claims 1-3 of the '502 patent valid.

Claim 1, the only independent claim asserted in this action, claims:

A pet bed comprising:

FIG. 5

1. an outer covering;
2. a removable cushion disposed within the outer covering to form a cushioned bottom portion; and
3. a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Validity Ex. 1 at Col. 3, lines 38-40. Claim 2 depends from claim 1 and calls for the outer covering of claim 1 to include a reclosable access opening. Claim 3 calls for the access opening of claim 2 to include a zipper. Since claims 2 and 3 each depend from claim 1, each includes the limitations of claim 1. *Id.* at Col. 3, lines 47-50.

The general standards for summary judgment under Rule 56 of the Federal Rules of Civil Procedure are well established and need not be repeated here. *See Schonbek Worldwide Lighting, Inc. v. American Lighting Fixture Corp.*, 2002 U.S. Dist. LEXIS 4761 at *5 (D. Mass. 2002).

**ARGUMENT**

**I.    CLAIMS 1-3 OF THE '502 PATENT ARE NOT ANTICIPATED OR OBVIOUS IN VIEW OF THE PRIOR ART CITED BY THE DEFENDANTS.**

Defendants assert that claims 1-3 of the '502 patent are invalid in view of the prior art.

Specifically, claim 1 is allegedly invalid as anticipated by ten identified patents and claims 2 and 3 are

invalid either as anticipated by one or more of these ten patents or alternatively rendered obvious by alleged combinations of the prior art.

### A.    CLAIMS 1-3 ARE NOT ANTICIPATED BY THE PRIOR ART.

If a claim of a patent is anticipated by the prior art, the claim is invalid under 35 U.S.C. §102. Defendants have the burden of proving by clear and convincing evidence that the claims, as properly construed, are invalid. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp Inc.*, 249 F.3d 1341, 1353-54 (Fed. Cir. 2001). "Anticipation is a question of fact, and is determined by first construing the claims and then comparing the properly construed claims to the prior art." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1346 (Fed. Cir. 2002). A claim is anticipated if a *single* prior art reference discloses each limitation of the claim, either inherently or explicitly. *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995).

Defendants argue that several patents "inherently disclose" (and thus anticipate) the claimed invention. "A claim limitation is inherent in the prior art if it is *necessarily* present in the prior art, *not* merely probably or possibly present." *Akamai Techs., Inc. v. Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003).

Flexi-Mat requested the identification of all of Defendants' alleged affirmative defenses in its Interrogatory 5.

> "Identify in detail the factual basis for [Defendants'] affirmative defense that [e]ach and every claim of the '502 patent is invalid and/or unenforceable under one or more provisions of the Patent Laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112."

In its second supplementary response to Flexi-Mat's interrogatory 5, Dallas alleges that claim 1 is anticipated by nine identified patents: U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), and 4,873,734 (Pollard), 5,010,843 (Henry) and 5,421,044 (Steensen). FM Validity Ex. 19 at pp. 10-28.[1] The expert report of Ms. Fessler, served jointly by Dallas, Doskocil and BJ's, provides anticipation arguments regarding only these nine references. FM Validity Ex. 17.

---

[1] Defendant BJ's Wholesale Club, Inc. joined in Dallas' response to Flexi-Mat's interrogatories. See FM Validity Ex. 23.

In its supplementary answer to Flexi-Mat's interrogatory 5, Doskocil ambiguously claims that "the claims of the '502 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of at least the [18] patents identified in response to Interrogatory No. 2" and all prior art identified or cited in the prosecution of the '502 patent. FM Validity Ex. 20 at p. 8. Doskocil then incorporated by reference its Request for Reexamination filed with the PTO. In that request, Doskocil limits its claim of anticipation of claim 1 to only four patents, three of which are included in the above list of nine. FM Validity Ex. 21 at p. 3. Doskocil's additional alleged anticipatory reference is U.S. Patent No. 2,032,248 (Bins).

Each of the ten patents upon which Defendants rely lacks at least one limitation of claim 1 of the '502 patent and, therefore, none anticipates claim 1 or claims 2-3 that depend from claim 1.[2]

### 1) THE WALLED PET BEDS DO NOT ANTICIPATE CLAIM 1.

Of the 10 prior art patents asserted by Defendants, only four of them pertain to pet beds. Three of these pet bed patents, *i.e.*, U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), feature pet beds with a wall rather than Claim 1's required bolster. FM Validity Exs. 3, 4 and 5 respectively.

Barreto describes a rigid, walled pet bed.



> Sidewall 42 is secured to base 44 and provides a perimeter wall to define a partial enclosure or cradle . . . . Sidewall 42 and base 44 may be made of a soft, flexible foam-core material . . . having a thickness of about one-quarter to six inches . . . dependent upon the size and weight of the pet, and the particular configuration of the embodiment selected.

FM Validity Ex. 3 at Col. 6, lines 46-58.

Barreto's claims confirm that its invention is limited to pet beds having walls. Its claims require a sidewall that is "sufficiently rigid to form a generally erect intended configuration above [the] floor." *Id.* at claims 1, 12, and 13. There is no disclosure of a bolster.

Since the '537 Heilborn patent (FM Validity Ex. 5) is a continuation of the '393 Heilborn patent (FM Validity Ex. 4), the two patents share a common specification. Heilborn, like Barreto, discloses pet beds with walls. Heilborn explicitly describes its side parts as walls and its invention is described as one in which the walls of the semi-enclosed type of pet bed can be collapsed for shipping. FM Validity Ex. 5,

---

[2] Flexi-Mat's motion for summary judgment of validity is based on the absence of certain identified claim limitations in the prior art. Flexi-Mat does not concede that those limitations not discussed in its motion are present in the prior art references.

Col. 2, lines 10-14.  The walled bed "provide[s] the animal with a sheltered, semi-enclosed bed in which the pet feels secure."  *Id.* at Col. 1, lines 17-19.



Defendants' affirmative defense of anticipation based on these three walled pet beds ignores the difference between walled pet beds and those that employ a bolster, as the claims of the '502 patent require.  Defendants simply argue that a pillow, *i.e.*, a bolster, is a wall and a wall is a pillow.  Defendants' own expert, when asked about Heilborn's wall made from an "upstanding foam core," could only respond that the difference between a pillow and wall was one of "semantics."

> Q. Okay.  And do you consider an upstanding foam core to be a bolster?
> A. It could be referred to as that.  It could be, another inventor could call it a bolster.
> Q. Do you consider it to be a bolster?
> A. I think it's semantics.  I think a bolster, if it's a stuffed unit within a covering, it could be stuffed with peanuts; it could be stuffed with foam; it could be stuffed with fiberfill, it could be stuffed with batting, blown in, or whatever, it still creates an outer area for the pet.  So whether do you call it a bolster or a wall I think is semantics.  It's still, it's not solid.  Yet, as we would go over to the wall of this room and say, this is a wall, and I hit it and I hurt my hand, this is not the same sort of structure. So I would consider any of these terms cushion/bolster/wall to be interchangeable.

FM Validity Ex. 18 at p. 149.

The plain meaning of the claim language, the specification, and the use of the terms "bolster" and "wall" in the art establish that they are two different structures.  A *bolster* is commonly understood to be a long pillow or cushion.  http://www.m-w.com/dictionary.  FM Validity Ex. 22.  The '502 patent confirms that this ordinary usage of the term "bolster" is intended:  the patent describes the bolster as a "long, slender **pillow**," (FM Validity Ex. 1 at Col. 3, line 4 (emphasis added)) and "more cylindrical or banana-shaped than flat, and more like a **pillow** than a wall."  *Id.* at Col. 2, lines 56-57(emphasis added) so that it "tends to retain its shape even when used as a pillow by the pet, and does not easily collapse from the weight of the pet as in some prior art products."  *Id.* at Col. 2, lines 58-60.

The '502 patent describes previously-known **walled** pet beds as being unsatisfactory because the wall "does not provide support for heavier … animals" to use as a headrest and "tends to collapse … unless it is made of material so rigid that it is uncomfortable."  *Id.* at Col. 1, lines 21-26.  The '502 patent then distinguishes a bolster from a wall in that the bolster, unlike the wall, "tends to retain its shape even when used as a pillow by the pet, and does not easily collapse from the weight of the pet."  *Id.* at Col. 2, lines 57-60.  Flexi-Mat's own prior art walled pet beds as well as other walled pet beds, *i.e.*, the "Pucker

Bed" sold by In the Company of Dogs and Flexi-Mat's "Cuddler" and "Kitty Kup," were disclosed to the Patent and Trademark Office ("PTO") by Flexi-Mat during the prosecution of the '502 patent.  FM Validity Ex. 2 at DMC 67-75.  The PTO considered this prior art and found the claims of the '502 patent allowable over the prior art walled beds.

As explained by Mr. Handelsman, Flexi-Mat's expert:

> Those persons experienced in the pet industry also distinguish between the terms *bolster* and *side wall* and recognize the difference between the two structures.  The term *bolster* as used in the '502 patent does not include a wall.

FM Validity Ex. 16 at p. 12.

The term *bolster*, as used in the patent-in-suit, means a long, narrow pillow and does not include the walls of Barreto and Heilborn.  Defendants cannot meet their clear and convincing burden of proof by simply arguing that a wall is a bolster because it is just a matter of "semantics."  Because Heilborn and Barreto lack the bolster of claims 1-3, they do not anticipate claims 1-3 of the '502 Patent.

### 2)    PATENTS THAT DO NOT DISCLOSE A PET BED DO NOT ANTICIPATE CLAIMS 1-3.

Defendants next assert 5 patents, none of which disclose a pet bed, as anticipatory references, *i.e.*, U.S. Patent Nos. 5,421,044 (Steensen), 4,754,513 (Rinz), 5,586,350 (Thönnessen) [3], 4,872,228 (Bishop), and 4,873,734 (Pollard).  FM Validity Exs. 11, 6, 7, 8 and 9 respectively.  These patents disclose human air mattresses, orthopedic neck pillows and guards to prevent humans from falling out of bed.  They do not teach each and every limitation recited by the claims as they do not disclose a pet bed, a basic requirement for proving invalidity by anticipation.

> "[T]he general principle, as well-settled as any in our patent law precedent, [is] that a claim preamble has the import that the claim as a whole suggests for it.  In other words, when the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects."

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) (emphasis in original).

Here, the '502 patent, entitled "Pet Bed with Removable Bolster,"  makes clear that the inventor was working on a particular problem with prior art pet beds, *i.e.*, those with walls that collapse under the weight of a pet's head.  The invention does not pertain to a human pillow, a human bed, or guards to

---

[3]    In addition, Defendants have assembled several foreign equivalents to the U.S. Thönnessen patent which discloses the same information as the U.S. patent by Thönnessen.

prevent humans from falling out of bed. See FM Validity Ex. 1 at Col. 1, lines 1-63. Indeed, the specification distinguishes pet beds from human beds and other furniture. *Id.* at Col. 1, lines 11-15.

This case is thus similar to *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989). In *Corning Glass Works*, the claim's preamble was "[a]n optical waveguide," and the infringers sought to have that term read out of the claim because there was a prior art optical fiber that would otherwise read on the claim. *Id.* at 1256. The infringers argued that the term *optical waveguide* was merely a new use for an old structure. *Id.* The Federal Circuit rejected that argument because the specification made clear that the inventors were addressing the particular problem of optical communication systems, not improvements in conventional optical fibers. "To read the claim in light of the specification indiscriminately to cover all types of optical fibers would be divorced from reality." *Id.* at 1257.

Here, the '502 specification limits the invention to pet beds, and does not encompass human beds or pillows. As in *Corning Glass*, defendants ignore the *pet bed* limitation of the claims, and read them indiscriminately to cover human beds and pillows. Because Steensen, Rinz, Thönnessen, Bishop and Pollard do not disclose pet beds, they do not anticipate claims 1-3 of the '502 patent.

> **3)    THE STRUCTURES WITH A BOLSTER DISPOSED ATOP THE BOTTOM CUSHION DO NOT ANTICIPATE CLAIM 1.**

Five patents argued by Dallas and Defendants' joint expert as anticipatory references do not disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom cushion," as required by claims 1-3 of the '502 patent. They do not therefore anticipate those claims. These patents are U.S. Patent Nos. 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), 4,873,734 (Pollard), and 5,010,843 (Henry). FM Validity Exs. 6, 7, 8, 9 and 10, respectively.

U.S. Patent No. 4,754,513 (Rinz) discloses an orthopedic pillowcase that encases an insert (the alleged bolster) located entirely on top of a pillow (the alleged bottom cushion). As explained by Flexi-Mat's expert, Rinz does not disclose a bolster substantially all of which is disposed exteriorly about at least a portion of the perimeter of the bottom portion.

> Rinz does not teach a bolster substantially all of which is disposed exteriorly about at least a portion of the perimeter of the bottom portion. Rinz teaches to place the insert, the alleged bolster, **on top** of a conventional pillow, the bottom cushion.



FIG 1

FM Validity Ex. 16 at p. 13 (emphasis added).



Defendants' expert argues that Rinz's comment that the insert can be "adjusted" is an "**inherent**" disclosure that substantially all of the bolster could be disposed about the perimeter of the bottom cushion. FM Validity Ex. 18 at p. 95. Inherency does not result from mere probabilities or possibilities. *Akamai Techs., Inc. v. Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003). Inherency requires that the limitation of the claim is necessarily present in the prior art. As explained by Mr. Handelsman, this is not the case with Rinz:

> Ms. Fessler's reliance on Col. 1, lines 53-56 is misplaced. These lines state:
>
>> The position of the insert 16 can be adjusted by simply rotating the pillowcase 10 have the pocket 15 and insert 16 received therein, about the conventional pillow 17 in accordance with the preferance [sic] of the user . . . .
>
> This does not teach that one should change the only disclosed location of the insert 16, atop the pillow 17, while rotating the pillowcase. There certainly is no teaching or suggestion in the Rinz patent to rotate the pillow case in the manner suggested by Ms. Fessler. The rotation actually suggested by the Rinz patent in keeping with the purpose of the pillow, *i.e.*, relieving neck pain, is an amount of rotation to adjust the insert's location atop the pillow. If one were to rotate the pillow case as Ms. Fessler suggests, the insert would simply compress the pillow inside the pillow case and in effect become part of that pillow.

FM Validity Ex. 16 at pp. 13-14.

The remaining four prior art patents that dispose these prior art bolster atop the bottom cushion are asserted only conditionally by the Defendants. According to Defendants and their expert these references anticipate only "**if** claim 1 of the '502 patent were [erroneously] read to cover a bed with the bolster atop the bottom cushion." See FM Validity Ex. 19 at p. 21 (Thönnessen), p. 23 (Bishop) and (Pollard) and p. 24 (Henry); FM Validity Ex. 17 at p. 26 (Thönnessen), p. 30 (Bishop), p. 35 (Pollard) and p. 40 (Henry).

Claims 1-3 of the '502 patent each require that "substantially all" of the bolster be "disposed exteriorly about at least a portion of the perimeter of the bottom portion." Neither Flexi-Mat nor Defendants contend that claim 1 covers a bed with the bolster atop the bottom cushion. Consequently, Defendants' conditional allegations that claims 1-3 are invalid as anticipated by these four patents are moot and should be dismissed.

Additionally, Defendants' expert argues that, if one leaned on these bolsters, disposed atop the bottom cushion, or pushed on them, they could be moved to a potentially infringing position.  When asked about this allegation in regard to the '350 Thönnessen patent, Defendants' expert admitted that such was just a possibility.

> A. It's possible in usage.
> Q. Is there anything in the '350 patent that suggests that one would use the pillow in such a fashion by pushing it back, the cylinder that you are talking about, item three?
> A. No, it doesn't say that.  I'm just saying it **could** happen.  That's all I'm saying.

FM Validity Ex. 18 at p. 105.

When asked about the Bishop '228 patent, Ms. Fessler agreed that Bishop's bolster would move to an infringing position **only if it malfunctioned**.

> Q. My question is:  Is there any disclosure in the Bishop patent that expressly discloses that these bolsters can move in the fashion in which you just described?
> A. I think it's inherent.  But let me, let me see if I can find something that -- That's not his intention.  His intention is that they are protected bolsters to set on top of the bed.  He claims in column one, 61: "It is within the spirit of the invention...to anchor the bolster(s) with a conventional rectangular sheet that covers the mattress and is tucked under" in its usual way.  . . . And I firmly believe that they will protect the person, his invention will protect somewhat, but it won't totally protect from rolling out of the bed, if they shift over, excuse me, to the side of the mattress.
> Q. Would this be in the area of I think what you called a malfunction?
> A. Yeah, definitely malfunction.

FM Validity Ex. 18 at pp. 116-117.

Regarding the '734 Pollard patent and the '843 Henry patent, Ms. Fessler conceded that the bolsters would not move to an infringing position.

> Q. Do you believe they [the bolsters of Pollard] could move to a position or substantially all of the bolster is off of the top and disposed around the perimeter of the bottom cushion?
> A. **Probably not totally**.  Because if the pockets were secure enough, if they are stable, they should be holding it in a fairly good position.  If the mattress cover, the sheet that covers the mattress, then, is tucked under, if it's stable, then it probably won't move substantially.
> . . .
>
> Q. Okay.  Do you think that, given the stitching between the top bolster cushion and the bottom cushion [of Henry], it could push substantially all of that bolster off of the perimeter of the bottom portion?
> A. **No, I don't think it could do all**.

FM Validity Ex. 18 at pp. 131 and 141.

As noted above, establishing a "possibility" or even a "probability" does not meet the test for establishing an inherent disclosure.  An inherent disclosure cannot be established by showing the

possibility of a malfunction.  Defendants' prior art patents with a bolster disposed atop the bottom cushion, *i.e.*, Rinz, Thönnessen, Bishop, Pollard, and Henry, do not anticipate claims 1-3.

### 4) U.S. Patent No. 5,421,044 (Steensen) Does Not Anticipate Claims 1-3 of the '502 Patent.

In addition to not being a pet bed, U.S. Patent No. 5,421,044 (Steensen) (FM Validity Ex. 11) lacks at least three limitations of claims 1-3 of the '502 patent.  It does not disclose 1) a bolster, 2) a removable bolster or 3) a bolster that is not secured to the bottom cushion and, consequently, does not anticipate claims 1-3.

Steensen discloses an air bed.  Figures 1 and 2 of the Steensen patent show the patented air



mattress.  Fig. 1 shows the mattress with its cover 20 partially opened revealing foam pads 58 and 59.  Fig. 2 shows that the mattress is made from several identical air tubes (31-36 and 42).  Steensen calls the laterally disposed air tubes 42 "cushion air tubes" and air tubes 31-36 which surround the laterally disposed tubes "bolster air tubes."  Steensen makes clear that its bed or mattress is made from the combination of all of the air tubes and the foam pads and that this combination is to "provide a level top surface."

> The air tubes are fitted into the outer covering and either or both of "egg crate" polyurethane foam pad 58 and rectangular polyurethane foam pad 59 are then placed on top of the upper laterally disposed cushion air tubes 42 in the space bounded by upper side bolster air tubes 32, 33, 34 and 35 and upper end bolster air tubes 31 and 36. The foam pads are used to provide a soft cushioned feel to the user, and to provide a level top surface. The top surface would otherwise have its outside edges extending substantially above the interior portions of the top surface due to the fact that the bolster air tubes 31, 32, 33, 34, 35, 36, 37, 38, 39 and 40 will typically be 8" diameter tubes while all the interior tubes (i.e., the upper laterally disposed cushion air tubes 42 and the lower laterally disposed cushion air tubes 45) will be 7" diameter tubes, and the height of the two levels of bolster tubes will therefore be 2" greater than the height of the two levels of interior tubes.

FM Validity Ex. 11 at Col. 4, lines 20-37.

Because Steensen is an air bed, each of the air tubes is connected to each other.  Fig. 9 of the patent is a diagram of the Steensen air system and shows that the "cushion tubes" and the "bolster tubes" are all connected together by air hoses that are then connected to a manifold and air pump outside of the



bed. Fig. 7 shows the air hoses connecting some of the air

tubes that have been enclosed in magazine 65.

For no reason other than that Steensen names air

tubes 31-36 "bolster tubes," Defendants argue that,

individually or collectively, tubes 31-36 are the bolster

required by claim 1.  As noted above, however, these

"bolster tubes" are simply part of the bottom cushion or mattress upon which a human is intended to lie.

They are not pillows for use with the bottom cushion.  Claim 1 of the '502 patent requires a "bolster" and a

"bottom cushion."   As explained by Flexi-Mat's expert:

> The Steensen patent discloses a human bed without a pillow.  The tubes 31, 32,
> 33, 34, 35, and 36 together with air tubes 42 and pads 58 and 59 make up one single
> bottom portion or resting surface.  As described, the Steensen patent the foam pads 58
> and/or 59 and tubes 31, 32, 33, 34, 35, and 36 and 42 "provide a soft cushioned feel to
> the user, and are used to provide a <u>level top surface</u>."  Col. 4, lines 26-27 (emphasis
> added).  These air tubes do not provide a separate structure for the user of the air bed
> and are not the bolster described and claimed in the '502 patent.

FM Validity Ex. 16 at p. 6.  Thus Steensen does not disclose a bolster as claimed in the '502 patent.

Even if one erroneously considers air tubes 31-36 as responsive to claim 1's requirement of a

bolster, Steensen would still not anticipate.  The alleged "bolster" is not removable as required by claims

1-3 and is secured to the bottom cushion as prohibited by claims 1-3.  Steensen's interconnection of

"bolster air tubes" with the rest of the air tubes and the manifold and air pump makes this alleged "bolster"

non-removable.  Claims 1-3, on the other hand, each specifically require that the bolster be "removable."

> The term "removable cushion" is used in the '502 patent to describe a cushion
> that is designed to be removed from the outer cover and then replaced.  "the pet bed
> should be . . . equipped with a one-piece cover and separately removable bolster and
> bottom cushion for ease of cleaning."  Col. 1 lines 60-64.   Again at Col. 3, lines 8-17 the
> patent discusses the construction of the pet bed in a manner that provides for the ease of
> removing and replacing the bolster and bottom cushion. . . .
> A pet bed with a removable cushion as described in the '502 patent is one that is
> specifically designed in a manner such that the bolster and bottom cushion can readily be
> removed and replaced and excludes the removal by a means that would require
> excessive effort as to discourage a pet bed owner from removing the bolster and bottom
> cushion or destroy the bed.

FM Validity Ex. 16 at p. 7.

Further, claims 1-3 of the '502 patent each require that the bolster be disposed in the interior of

the outer covering "**without being secured** to the removable cushion."  FM Validity Ex. 1 at Col. 3, lines

45-46.  As shown in the Steensen patent, each of the air tubes, including "bolster air tubes" 31-36, are secured to air tubes 42 which are part of the bottom cushion.

Because the Steensen patent does not disclose 1) a  bolster, 2) a removable bolster, or 3) a bolster that is not secured to the bottom cushion, it does not anticipate claims 1-3 of the '502 Patent. Summary judgment should be entered dismissing Defendants' claim that Steensen anticipates claims 1-3 of the '502 patent.

### 5)    U.S. PATENT NO. 2,032,248 (BINS) DOES NOT ANTICIPATE CLAIMS 1-3 OF THE '502 PATENT.

The last of the ten alleged anticipatory references is U.S. Patent No. 2,032,248 (Bins).  FM Validity Ex. 12.  This reference lacks at least two limitations of claims 1-3 of the '502 patent.  It does not disclose 1) a removable bolster or 2) a bolster "substantially all of" which is disposed exteriorly about the perimeter of the bottom portion.

Bins discloses a pet bed that has a donut or annular shaped bolster atop a bottom mattress.  Bins explains the manner in which the bolster is constructed.

> As shown, the bed comprises an annular bolster 1 of general circular, oval, oblong, or other desired shape preferably formed by stitching the side edges of a strip of fabric of desired length together to form a tube, then filling the tube with cotton 2 or the like, preferably using a cotton packer having a fan or blower.  After the tube is filled one end is sewed up, and the sewed end of the tube inserted in the open end and the overlapping end portions of the tube sewed together, thereby forming a circular, oval, or oblong stuffed bolster.



FM Validity Ex. 12 at Col. 1, line 50 to Col. 2, line 6.  After the oval bolster is sewn shut, a pocket, consisting of an annular band of fabric (4) and a base sheet (3), which is "approximately the same shape and size as the outer periphery of the annular bolster," is sewn to the closed bolster. FM Validity Ex. 12 at Col. 2, lines 6-34.

For the reasons set forth above in regard to the Steensen patent, Bins' bolster is not "removable" as required by claim 1.  Bins' bolster is sewn shut and then sewn to the pocket that holds the bottom mattress.  The claim term *removable* "excludes the removal by a means that would require excessive effort as to discourage a pet bed owner from removing the bolster and bottom cushion or destroy the bed."  FM Validity Ex. 16 at p. 7.  Additionally, as explained from the above-quoted portion of Bins' specification, the pocket that forms the bottom of the bed is "approximately the same shape and size as the **<u>outer periphery</u>** of the annular bolster."  "Substantially all" of Bins' bolster is not "disposed exteriorly"

of the bottom." Rather, it is atop the bottom just as the bolsters of U.S. Patent Nos. 4,754,513 (Rinz), 5,586,350 (Thönnessen), 4,872,228 (Bishop), 4,873,734 (Pollard), and 5,010,843 (Henry), as discussed above.

Because Bins does not disclose 1) a removable bolster or 2) a bolster "substantially all of" which is disposed exteriorly about the perimeter of the bottom portion, it does not anticipate Claims 1-3 of the '502 patent.

### B.    CLAIMS 2-3 OF THE '502 PATENT ARE NOT OBVIOUS IN VIEW OF THE PRIOR ART CITED BY THE DEFENDANTS.

Defendants assert that certain combinations of the prior art render obvious claims 2 and 3. Doskocil, in its response to Flexi-Mat's interrogatories, makes various invalidity claims based on a theory that claims 1-3 of the '502 patent were obvious because of various combinations of the prior art. Neither Dallas nor Doskocil, however, has offered any expert testimony in regard to any of these alleged combinations of references except those discussed below. Defendants have failed to present opinion testimony that one of ordinary skill in the art at the time of the invention would have found the inventions of claims 2-3 of the '502 patent obvious, *i.e.*, that one of ordinary skill in the art 1) would have found motivation in the art to make the alleged combinations and 2) would have combined the references in such a manner that the combination would have resulted in the invention as claimed in the '502 patent. Since Defendants bear the burden of proof of invalidity, their failure of proof in regard to the Defendants' undiscussed combinations entitles Flexi-Mat to summary judgment on those combinations. *See Florida Power & Light Co. v. United States*, 375 F.3d 1119, 1124 (Fed. Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

As to those combinations upon which Defendants did offer some evidence, and even assuming that it is proper to combine the references as Defendants allege, none of Defendants' combinations shows each of the limitations of claims 2 and 3. Consequently, claims 2 and 3 are not invalid as obvious.

Defendants first attempt to combine the Barreto and Heilborn patents. As explained above, both Barreto and Heilborn are walled beds. Neither has the bolster that is required by claims 2-3. Lacking this required limitation of the claims, whether or not considered in combination, they cannot render claims 2 or 3 obvious.

Next, Defendants allege a combination of Bishop or Pollard with any one of three articles pertaining to the treatment of asthma in humans.[4]  As with the previous alleged combinations, even if these references are combined, the combination is missing at least one limitation of claims 2 and 3.  As explained above, the Bishop and Pollard patents fail to teach the required limitation that "substantially all of the bolster be disposed exteriorly about at least a portion of the bottom cushion."  Similarly, the asthma treatment articles fail to disclose this limitation.  Even Defendants acknowledge this by arguing that these articles add only the added limitations of claims 2 and 3, *i.e.*, a reclosable access openings and a zipper. *See* FM Validity Ex. 19 at p. 27.

Lacking the required limitation of that "substantially all of the bolster be disposed exteriorly abut at least apportion of the perimeter of the bottom portion," these alleged combination do not render claims 2 or 3 obvious.  Summary judgment should be entered dismissing Defendants' allegations that claims 2 and 3 of the '502 patent are obvious.

**II.    CLAIMS 1-3 OF THE '502 PATENT ARE NOT INVALID FOR FAILURE TO COMPLY WITH 35 U.S.C. §112.**

> **A.    THE SPECIFICATION OF THE '502 PATENT PROVIDES A WRITTEN DESCRIPTION OF THE INVENTION AS DEFINED IN CLAIMS 1-3.**

Defendants assert that claims 1-3 of the '502 Patent are invalid because of alleged non-compliance with the written description requirement of §112.

First, Dallas contends that there is a lack of support in the specification for claims 1-3 because "[n]othing in the application of the '502 patent as filed indicated that the named inventor had possession of the invention of somehow disposing the bolster in the prescribed position relative to the bottom portion **without affixing the bolster within the interior** of the outer covering."[5]  FM Validity Ex. 19 at p. 30 (emphasis added).  Dallas' position is that any '502 claim that does not require that the bolster be affixed to the outer cover is invalid because the patent's written description of the invention limits the scope of the

---

[4]  These articles are: 1) A.B. Murray and Ferguson, *Dust-free bedrooms in the treatment of asthmatic children with house dust or house dust mite allergy; a controlled trial,* 71 PEDIATRICS 418-22 (March 1, 1983); 2) M.J. Walshaw and C.C. Evans, *Allergen Avoidance in House Dust Mite Sensitive Adult Asthma,* QUARTERLY JOURNAL OF MEDICINE, New Series 58, No. 226, pp. 199-215 (February 1986); and 3) Marc L. Rivo and Floyd J. Malveaux, *Outpatient Management of Asthma in Adults,* 45 AMERICAN FAMILY PHYSICIAN 2105 (May 1992).  FM Validity Ex. 13, 14 and 15 respectively.

[5]  Claim 1 of the '502 Patent does not require that the bolster be "affixed" to the outer covering.  It only requires that the bolster be "disposed" within the outer covering.

invention to pet beds having bolsters that are affixed to the outer covering, thereby excluding those in which the bolster is merely disposed within the outer covering as claimed in claims 1-3 of the '502 Patent.

The argument asserted by Dallas was discussed by the Federal Circuit in *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998). The patent in *Gentry Gallery* was directed to a sectional sofa with two independent reclining sections. The Federal Circuit concluded that the claims of that patent, which did not include a limitation requiring that the controls for the sofa be located on a console, were invalid. The Court in *Gentry Gallery* explained that "when viewed in its entirety, the disclosure [specification] limited the invention to sofas in which the recliner control is located on the console." *Id.* at 1479. The *Gentry Gallery* decision was later clarified by the Federal Circuit in *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317 (Fed. Cir. 2002).

> In *Gentry,* the original disclosure identified the console of a sectional sofa as the only possible location for the controls. 134 F.3d at 1479. We held that the asserted claims were invalid because the location of the recliner controls in the claims was not limited to the console. *Id.* at 1479-80. In reaching that conclusion, we stated: "[I]t is clear that [the inventor] considered the location of the recliner controls on the console to be an essential element of his invention. Accordingly, his original disclosure serves to limit the permissible breadth of his after-drafted claims." *Id.* In so stating, we did not announce a new "essential element" test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements. Use of particular language explaining a decision does not necessarily create a new legal test. Rather, in *Gentry,* we applied and merely expounded upon the unremarkable proposition that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope. *Id.* ("[C]laims may be no broader than the supporting disclosure."). There was no description or support whatever in the *Gentry* patent of the controls being other than on the console.

*Id.* at 1323.

The specification of the '502 patent "when viewed in its entirety" does not limit the scope of the invention, let alone "clearly indicate" that the invention is limited to pet beds having bolsters that are affixed to the outer covering. In the Summary of the Invention, the '502 patent states: "**In one form** of the invention, the bolster **may be** removably affixed to the interior of the outer covering by a plurality of hook-and-loop fastener straps." FM Validity Ex. 1 at Col. 2, lines 7-9. This language indicates that other forms of the invention in which the bolster is not affixed to the cover are contemplated. Additionally, Col. 2, lines 45-54, discloses "pockets formed in the outer covering" in which the bolster and bottom cushion are disposed. These separate pockets are shown in Figure 2 of the '502 patent.



FIG. 2

The pet bed 1 includes a removable cushion 4 disposed within a **bottom pocket 12** formed in the outer covering 2 . . . . Within a **bolster pocket 10** provided in the outer covering 2, a bolster 6 is removably affixed.

As also explained in the '502 patent, affixing the bolster within the bolster pocket provides the added advantage of providing structural integrity to the pet bed if such is desired.

Removably affixing the bolster 6 within the bolster pocket 10 of the outer covering 2 has the advantage of lending structural integrity to the pet bed 1. Since the bolster 6 is much like a long, slender pillow, holding the bolster 6 in the bolster pocket 10 keeps the bolster relatively fixed in position with respect to the perimeter of the bottom portion of the pet bed 1.

FM Validity Ex. 1 at Col. 3 lines 1-7.

In his expert report, Mr. Simon Handelsman, Plaintiff's expert, explains the '502 disclosure and his conclusion that the '502 invention is not limited as Dallas argues.

Claim 1 of the '502 patent does not include a limitation requiring that the bolster be affixed or otherwise secured to the outer covering. It does contain a limitation that the bolster be disposed in the outer covering in a particular relationship with the bottom portion. One of ordinary skill would clearly understand that the inventor had possession of the invention actually described in claim 1.

The patent specification makes clear that the inventor did have possession of an invention in which the bolster is disposed in the outer covering in a particular relationship with the bottom portion, *i.e.*, such that substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter of the bottom portion. The patent discloses the use of a "bolster pocket" and a "bottom pocket" to create such a relationship.

FM Validity Ex. 16 at p. 26.

When viewed in its entirety, the '502 specification and drawings show that the invention is not limited to beds that have a bolster "affixed" to the outer covering as Dallas argues. Summary judgment dismissing Dallas' affirmative defense in this regard should be granted.

Second, Dallas alleges a failure of the specification to satisfy the written description requirement of §112 "to the extent" that claim 1 "is construed to cover a bolster in which any significant or substantial part of the bolster is disposed on top of the base cushion." FM Validity Ex. 19 at p. 31. This contention is based on Dallas' argument that "[n]owhere did the specification disclose or suggest that any substantial part of the bolster could be disposed on top of the bottom portion." *Id.*

Claim 1 requires that "substantially all" of the bolster be "disposed exteriorly about at least a portion of the perimeter of the bottom portion." "Substantially" is a common term of magnitude often used

in patent claims as discussed below.  It means "being largely but not wholly that which is specified."
http://www.m-w.com/dictionary.  FM Validity Ex  22.  By limiting the claim to "substantially all" rather than
to "all," claim 1 allows some portion of the bolster to be at a location other than exteriorly about the
perimeter of the bottom portion, *e.g.*, atop the bottom cushion.  Dallas does not even argue to the
contrary.  Rather, through this conditional claim of invalidity, Dallas is attempting to add more language
and complexity to claim 1.  Pursuant to Dallas' argument, if a determination is made that the bolster of an
accused bed is disposed such that "substantially all" of it is exterior of the perimeter of the bottom cushion
as required by claim 1, the fact finder, nonetheless, would have to make a second determination, *i.e.*,
whether any portion of the bolster that is atop of the bottom cushion is "significant."  Dallas' argument is
one of claim construction, not an invalidity argument.

The standard for determining whether or not the written description requirement has been met
has been explained by the Federal Circuit.

> In order to comply with the written description requirement, the specification "need not
> describe the claimed subject matter in exactly the same terms as used in the claims: it
> must simply indicate to persons skilled in the art that as of the [filing] date the applicant
> had invented **what is now claimed**.

*Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995) (emphasis added).  The drawings of the '502
patent disclose a pet bed that has a bolster "substantially all" of which is disposed about the perimeter of
the bottom portion, *i.e.*, "what is now claimed."  There is no claim limitation that requires that a "significant
portion" of the bolster not be disposed atop the bottom cushion.  Nor is there any language in the patent
so limiting the invention.

Summary judgment dismissing Dallas' affirmative defenses that claims 1-3 of the '502 patent are
invalid because of alleged failures of the applicant to comply with the written description requirement of
§112  should be granted.

### B.   CLAIMS 1-3 ARE NOT VAGUE AND AMBIGUOUS.

Dallas alleges that the word "substantially" in claim 1 is vague and ambiguous and, therefore,
renders claims 1-3 invalid under 35 U.S.C. §112 ¶2 paragraph.  FM Validity Ex. 19 at p. 31.  The Federal
Circuit has several times addressed questions concerning the use of the term "substantially" in a patent
claim and concluded that such use does not render the patent claim vague and ambiguous.

This court is asked, once again, to construe the meaning of the term  "substantially" in a

patent claim.  *See, e.g., Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022 (Fed. Cir. 2002) (construing the terms "substantially constant" and "substantially below"); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,* 206 F.3d 1408 (Fed. Cir. 2000) (construing the term "substantially inward"); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568 (Fed. Cir. 1996) (construing the term "substantially the entire height thereof"); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558 (Fed. Cir. 1996) (construing the term "substantially in the common plane").  In conducting this analysis, we begin with the ordinary meaning of the claim terms to one of ordinary skill in the art.  *Prima Tek,* 318 F.3d at 1148.  Reference to dictionaries and our cases indicates that the term "substantially" has numerous ordinary meanings.  As the district court stated, "substantially" can mean "significantly" or "considerably."  The term "substantially" can also mean "largely" or "essentially."  *Webster's New 20th Century Dictionary* 1817 (1983).  Indeed, our cases recognize the dual ordinary meaning of this term as connoting a term of approximation or a term of magnitude.  *See Epcon,* 279 F.3d at 1031 ("The phrase 'substantially constant' denotes language of approximation, while the phrase 'substantially below' signifies language of magnitude, i.e., not insubstantial.").

*Deering Precision Instruments, LLC v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1322-23 (Fed. Cir. 2003).  In *Verve v. Crane Cams, Inc.*, 311 F.3d 1116 (Fed. Cir. 2002) the Federal Circuit explained that "[i]t is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite."  *Id.* at 1120.

In this case, the term "substantially" is used to describe the subject matter of the invention, as explained by Mr. Handelsman in his expert report:

> The modifying term *substantially* is used in its common and ordinary manner. The term "substantially" as used in claim 1 does not exclude a "significant" part of the bolster being atop the bottom cushion.  Substantially means considerable in importance, value, degree, amount, or extent.  Am. Herit. Dict. (2000).  Merriam Webster's Online Dictionary defines "substantially as "being largely <u>but not wholly</u> that which is specified." In specifying that only "substantially" all of the bolster" rather than all or the entirety of the bolster be disposed outside the bottom portion, claim 1 specifically allows that a portion of the bolster be located or disposed on top of the bottom portion.

FM Validity Ex. 16 at p. 16.  Those skilled in the art would understand the common meaning of the term "substantially" and that its use in claim 1 does not vary from that common meaning.  Consequently, the use of this term in claim 1 does not render claim 1 invalid.

Dallas next contends that claims 1-3 are invalid as indefinite under §112 ¶2 if the following limitation of claim 1 is not construed as a means-plus-function limitation:

> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Validity Ex. 19 at p. 31.  Dallas argues that since the above limitation is "purely functional," it is indefinite "in the absence of specific structure or material sufficient to perform the function of disposing the bolster in the prescribed position relative to the bottom portion."

A "means-plus-function" limitation is one governed by 35 U.S.C. §112 ¶6.  The sixth paragraph of §112 states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Whether or not a claim limitation is governed by §112 ¶6 is a question of claim construction and, therefore, a question of law for the Court to determine.  *Personalized Media Communications v. Int'l Trade Comm'n,* 161 F.3d 696, 702 (Fed. Cir. 1998).  Since the claim limitation argued by Dallas does not use the term "means," it is presumed that §112 ¶6 does not apply.

> It is well settled that "[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies.  By contrast, a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply."  "[T]he term 'means' is central to the analysis."

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (citations omitted).

To invoke the application of §112, ¶6, the limitation must use functional language, *i.e.*, it must recite a means for performing a function.  The limitation Dallas argues is a means-plus-function limitation contains **no** functional language.  A "bolster" is a structure, *i.e.*, a long, slender pillow, as the '502 patent explains at Col. 2, line 4.  The remaining language in the cited limitation, rather than recite any function for the claimed structure, simply describes that bolster structure in relation to other structures:  The bolster:

1) must be "disposed within the interior of the [structure of the] outer covering";
2) "substantially all of said bolster [must be] disposed exteriorly about at least a portion of the perimeter of the [structure that is the] bottom portion" and
3) must not be "secured to the [structure that is the] removable cushion."

There is no function in the limitation.  Consequently, it is not governed by §112 ¶6.

Apparently, Dallas argues that claim 1 requires the pet bed to perform "the function of keeping the bolster 'disposed exteriorly about at least a portion of the perimeter of the bottom portion.'"  FM Validity Ex. 17 at p. 48.  There is no language in claim 1 that requires any means to keep the bolster so disposed. The claim only requires that it be so disposed at some point.

-18-

Even if one were to erroneously read this "means" limitation into claim 1, the claim would not be vague and ambiguous. As §112, ¶6 states, the limitation would cover the "corresponding structure, material, or acts described in the specification and equivalents thereof." The '502 patent teaches the use of "pockets," "straps" or "fasteners" to retain the bolsters in the claimed spatial relationship. FM Validity Ex. 1 at Col. 2, lines 51-67; FM Validity Ex. 16 at p. 27.

Summary judgment should be granted dismissing Dallas' affirmative defenses that claims 1-3 of the '502 patent are claims are vague and ambiguous and therefore invalid in violation of 35 U.S.C. §112 ¶2.

## CONCLUSION

Flexi-Mat requests the Court grant its motion for summary judgment dismissing Defendants' affirmative defenses that the '502 patent is invalid and declaring that claims 1-3 of the '502 patent are valid. Defendants' alleged anticipatory prior art is missing at least the following Claim 1 limitations:

| Claims 1 of the '502 Patent | Defendants' Alleged Anticipatory Prior Art | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 5,136,981 (Barreto) | 5,588,393 5,826,537 (Heilborn) | 4,754,513 (Rinz) | 5,586,350 (Thönnessen) | 4,872,228 (Bishop) | 4,873,734 (Pollard) | 5,010,843 (Henry) | 5,421,044 (Steensen) | 2,032,248 (Bins) |
| A pet bed comprising: | | | X | X | X | X | | X | |
| an outer covering; | | | | | | | | | |
| a removable cushion disposed within the outer covering to form a cushioned bottom portion; and | | | | | | | | | |
| a bolster removably disposed within the interior of the outer covering and | X | X | | | | | | X | X |
| substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | | | X | X | X | X | X | | X |
| [a bolster being disposed] without being secured to the removable cushion. | | | | | | | | X | |

Claims 1-3 of the '502 are fully described in the patent specification as required by 35 U.S.C. §112 1st paragraph.  The term "substantially" is not vague.  Section 112 ¶6 is not applicable to the structural term "bolster" or to the limitation requiring that the bolster be disposed in a specific relationship to other claimed structural elements.

Respectfully submitted,

Dated November 30, 2005

   /s Michael Husmann
Michael Husmann
Larry L. Saret
Lisa C. Childs
Gretchen M. Hosty
MICHAEL BEST & FRIEDRICH LLP
401 North Michigan Avenue, Suite 1900
Chicago, IL  60611
(312) 222-0800
(312) 222-0818 (fax)

Richard B. Myrus (BBO # 638793)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Telephone:  (617) 570-1058
Facsimile:  (617) 523-1231

Attorneys for Plaintiff
Flexi-Mat Corporation

S:\CLIENT\201300\9029\A1384829.1

-20-