UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>       Defendants. | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a corporation,<br><br>       Counter-claimant,<br><br>       v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>       Counter-defendant. | **FLEXI-MAT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** |
| BJ'S WHOLESALE CLUB, INC., a corporation,<br><br>       Counter-claimant,<br><br>       v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>       Counter-defendant. | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation,<br><br>       Counter-claimant,<br><br>       v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>       Counter-defendant. | |

*Statement of Fact 1.*    This case involves pet beds and in particular, pet beds having a bottom cushion and a bolster within an outer covering.

*Statement of Fact 2.*    Plaintiff Flexi-Mat Corporation ("Flexi-Mat"), a manufacturer of pet products, owns U.S. Patent No. 5,765,502 (the '502 patent), entitled "Pet Bed With Removable Bolster."  FM Infr. Ex. 1.

*Statement of Fact 3.*    Defendant BJ's Wholesale Club, Inc. ("BJ's") is a wholesale club that sells various products including the accused pet beds.  FM Infr. Ex. 4 at p. 1

*Statement of Fact 4.*    Defendants Doskocil Manufacturing Company, Inc. ("Doskocil") and Dallas Manufacturing Company ("Dallas") are manufacturers and suppliers of the accused pet beds to BJ's.  FM Infr. Ex. 4 at p. 1.

*Statement of Fact 5.*    Dallas also sells the accused pet beds to other wholesale clubs or retailers, such as Costco, Sam's Club, Bass Pro, and Big Lots.  FM Infr. Ex. 4 at pp. 1, 16-19.

*Statement of Fact 6.*    The '502 patent describes a pet bed comprising an outer covering, a removable cushion disposed within the outer covering to form a combined bottom portion, and a bolster also within the outer covering.  FM Infr. Ex. 1 at p.1, Abstract.  Figure 5 from the patent (below) is representative.



*Statement of Fact 7.*    The patent describes the outer covering as "preferably fabricated from a durable material, such as a fabric that is easily cleaned."  FM Infr. Ex. 1, col. 2, lines 41-42.  A "removable cushion 4 [is] disposed within a bottom pocket 12 formed in the outer covering 2 to form a cushioned bottom portion of the pet bed 1."  FM Infr. Ex. 1, col. 2, lines 45-47.  A bolster is also provided in the outer covering "within a bolster pocket 10" and is "disposed about at least a portion of the perimeter of the cushioned bottom portion of the pet bed 1."  FM Infr. Ex. 1, col. 2, lines 51-54.

*Statement of Fact 8.*    Claim 1 is the only independent claim at issue.  It states:

    1.  A pet bed comprising:

>> an outer covering;
>
>> a removable cushion disposed within the outer covering to form a cushioned bottom portion; and
>
>> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Infr. Ex. 1, col. 3, lines 38-46.

**Statement of Fact 9.**   Claims 2 and 3 depend on claim 1 and state, respectively:

> 2. The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening.
>
> 3. The pet bed of claim 2, wherein the reclosable access opening further includes a zipper.

FM Infr. Ex. 1, col. 3, lines 47-50.

**Statement of Fact 10.**   Each of the Doskocil and Dallas accused bolster beds includes a removable bolster, a removable bottom cushion and an outer covering into which the bolster and cushion are placed. The outer covering of both accused beds are divided into interior spaces, one for the bolster and one for the bottom cushion, that are each removable through zippered openings. Neither of the accused beds includes straps or ties that affix the bolster to the outer covering. FM Infr. Ex. 3, pp. 3-5 and Exs. A, B.

**Statement of Fact 11.**   The infringement issues are defined in Defendants' responses to Flexi-Mat's interrogatories. In response to Flexi-Mat's interrogatory 4, which requests identification of Defendants' non-infringement positions, Defendants identified three such arguments. FM Infr. Ex. 7, pp. 5-8; FM Infr. Ex. 8, p. 7; FM Infr. Ex. 9.

**Statement of Fact 12.**   Defendant's non-infringement arguments are explained in Defendants' joint expert report. FM Infr. Ex. 4. They are:

1) Defendants contend that the limitation of claim 1 requiring that the bolster and the bottom cushion be disposed within the interior of the outer covering "does not read on an outer covering with multiple interior spaces or compartments that are walled off from one another." (hereinafter the "outer covering limitation"). FM Infr. Ex. 4, p. 5.

2) Defendants contend that the limitation of claim 1 requiring that "substantially all" of the bolster be disposed exteriorly about the perimeter of the bottom portion requires that a "significant amount of the bolster cannot be on top of the bottom cushion because then it would be within the perimeter of the cushion." (hereinafter the "substantially all" limitation). FM Infr. Ex. 4, p. 8.

   Defendant Dallas contends that a significant portion of its bolster is on top of the bottom cushion. FM Infr. Ex. 4, pp. 14-15. Doskocil's expert has admitted that its accused bed meets this limitation of claim 1. FM Infr. Ex. 4, pp. 19-20; FM Infr. Ex. 6, p. 282, line 24 to p. 283, line 3.

3) Defendants contend that the following claim language is a "means-plus-function" limitation that requires an infringing product to include ties, straps or equivalent structure which their pet beds lack:

> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

(hereinafter the "disposed within the outer covering" limitation). FM Infr. Ex. 4, p. 13.

**Statement of Fact 13.** The outer covering of claims 1-3 of the '502 patent is not limited to those having a single interior compartment and reads directly on the Defendants' bolster beds that have walled off compartments. FM Infr. Ex. 3, pp. 3-5.

**Statement of Fact 14.** Dallas' bolster bed does position the bolster such that substantially all of it is disposed exteriorly of the bottom cushion. FM Infr. Ex. 3, pp. 3-5.

**Statement of Fact 15.** The accused beds employ structure identical or equivalent to the structure disclosed in the '502 patent for the "disposed within the outer covering" limitation. FM Infr. Ex. 1, col. 2, lines 51-67.

**Statement of Fact 16.** The patent describes the outer covering as having a "bottom pocket" for the removable bottom cushion and a "bolster pocket" for the bolster. FM Infr. Ex. 1, col. 2, lines 45-47, 51-54.

**Statement of Fact 17.** "Removably affixing the bolster 6 within the bolster pocket 10 of the outer covering 2 has the advantage of lending structural integrity to the pet bed 1. Since the bolster 6 is much like a long, slender pillow, holding the bolster 6 in the bolster pocket 10 keeps the bolster relatively fixed in position with respect to the perimeter of the bottom portion of the pet bed 1." FM Infr. Ex. 1, col. 3, lines 1-7.

**Statement of Fact 18.** The patent specification supports a simple construction of "outer covering" that includes the "pockets," "interiors," and/or "compartments" that are featured in both Doskocil's and Dallas' bolster beds. FM Infr. Ex. 1, col. 2, lines 40-52 (identifying "pockets" formed in the outer covering).

**Statement of Fact 19.** Some of the claims originally filed by Flexi-Mat were initially rejected by the patent examiner, who stated:

> Claims 1-3, 7 and 8 are rejected … as being anticipated by Henry …. Henry shows a pet bed 10, see figure 5, having an outer covering (unnumbered) containing a zippered opening 34 for access to the interior, a base cushion 12 and semi-circular top cushions or bolsters 14" or 16". The top cushions or bolsters 14" or 16" are affixed to the edge 22 of

3

> the base cushion 12 in either a permanent (stitched) or removable (zippered or snapped) fashion, see column 2, lines 19-29.

FM Infr. Ex. 2 at DMC034.

***Statement of Fact 20.*** In response, Flexi-Mat argued that Henry did not anticipate its invention because:

> Henry suggests individual liners for each cushion and requires covers for the semi-circular cushions 14, 16 which are <u>separate</u> from the cover for the base cushion. . . . Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry.

FM Infr. Ex. 2 at DMC042 (emphasis in original).

***Statement of Fact 21.*** Flexi-Mat argued that Henry does not disclose a "single cover" encompassing the bolster and the bottom cushion. FM Infr. Ex. 2 at DMC042.

***Statement of Fact 22.*** Henry discloses "separate" covers for each top cushion and yet a third separate cover for the bottom cushion. FM Infr. Ex. 2 at DMC042. These separate and complete covers are then connected together. FM Infr. Ex. 2 at DMC042.

***Statement of Fact 23.*** Henry so states: "To this end, the filler may be contained in its own liner (not shown) which is put into respective covers of the cushions 12, 14, 16 through zipper openings… provided in these covers." FM Infr. Ex. 5, col. 2. lines 47-50. Significantly, the term "outer covering" was not amended by Flexi-Mat. FM Infr. Ex. 2 at DMC039.

***Statement of Fact 24.*** The Patent and Trademark Office, however, was not satisfied with this argument. The patent examiner proposed "[a]dditional language … to insure that claim 1 read over the prior art patent to Henry," specifically, that "<u>substantially all of said bolster</u> [ must be] disposed <u>exteriorly</u> about at least a portion of the perimeter of the bottom portion." FM Infr. Ex. 2 at DMC046; see also handwritten additions at DMC039.

***Statement of Fact 25.*** Without continuing its argument concerning Henry, Flexi-Mat agreed to the proposal made by the examiner. FM Infr. Ex. 2 at DMC044, DMC046.

***Statement of Fact 26.*** When questioned about the '502 prosecution history and Henry, even Defendants' own expert agreed that the disavowal was only to covers like Henry's that are complete and separate and then sewn together.

> Q. What do you mean by totally enclosed?

4

> A. It's surrounded, each one is surrounded by a piece of fabric; bolster one, bolster two and the cushion independently, they are surrounded by fabric. And then they are sewn together, so that they become a product of Henry's patent.
>
> . . . .
>
> Q. You don't believe he meant separate, meaning unattached?
> A. No.
> Q. Okay. Why? Why do you think that?
> A. Because your patent was, the inventor was trying to talk about one cover that enclosed both the bolster and the cushion.
> Q. Uh-huh.
> A. And Henry, he had to distinguish that Henry was separate entities put together, so that he could get around the Henry patent. Henry, it could be said --
> Q. Okay.
> A. -- it's a totally covered pet bed.
> Q. Okay.
> A. But until and unless he distinguishes that the cushions, the cushion is separated from the bolster with a separate, if you will, pocket, that is closed and then they are sewn together, that's the only way he can, he got around Henry in my view.

FM Infr. Ex. 6, p. 201, line 21 to p. 202, line 1; p. 203, lines 3-22.

**Statement of Fact 27.** Neither Dallas nor Doskocil makes two separate covers, one for the bolster and one for the bottom cushion, and then sews them together as taught by Henry. Dallas' and Doskocil's covers are both made of various pieces of material sewn together at a common seam to form a single cover with pockets for the bolster and cushion. FM Infr. Ex. 10 at pp. 27-28; FM Infr. Ex. 11 at p. 133, lines 1-8; last photo in FM Infr. Ex. 4 (showing "unsewn" bolster cover).

**Statement of Fact 28.** If Henry's covers were unsewn from each other, each cushion would remain fully enclosed within its respective cover. FM Infr. Ex. 5, col. 2, lines 49-50.

**Statement of Fact 29.** If either Dallas' or Doskocil's alleged two separate "covers" were unsewn, their bolsters and bottom cushions would fall out of the outer covering because the seam in between the bolster and bottom cushion is what keeps them in the outer covering. See last photo in FM Infr. Ex. 4 (showing "unsewn" bolster cover).

**Statement of Fact 30.** As admitted by Doskocil's expert:

> Q. In your opinion, is the bolster on the Doskocil bed, is substantially all of that bolster disposed about the perimeter of the bottom portion of that bed?
> A. Yes.

FM Infr. Ex. 6, p. 282, line 24 to p. 283, line 3.

**Statement of Fact 31.** Dallas' bolster beds also have bolsters "substantially all of [which are] disposed exteriorly about at least a portion of the perimeter of the bottom portion." Ex. B of FM Infr. Ex. 3.

5

***Statement of Fact 32.***  Dallas' bed is not like Henry's bed, where all of the top cushion lies over the bottom cushion.  Compare Ex. B of FM Infr. Ex. 3 with Figs. 1 and 2 of FM Infr. Ex. 5.

***Statement of Fact 33.***  Dallas' pet beds are constructed so that if a pet were to lean on or against the bolster, the bolster would move so that part of it leans over the side of the bottom cushion.  FM Infr. Ex. 4, pp. 14-15.

***Statement of Fact 34.***  A configuration of a pet bed in which the top of the bed's bolster is higher vertically than the top of its bottom portion is what is shown in the figures of the '502 patent, and nothing in the claims limits the elevation of the bolster relative to the bottom portion.  See Fig. 2 of FM Infr. Ex. 1.

***Statement of Fact 35.***  The limitation Dallas argues is a means-plus-function limitation,

> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion,

contains **no** functional language.

***Statement of Fact 36.***  A "bolster" is a structure, *i.e.*, a long, slender pillow, as the '502 Patent explains.  FM Infr. Ex. 1, col. 2, line 4.  The remaining language in the cited limitation, rather than recite any function for the claimed structure, simply describes that bolster structure in relation to other structures.  The bolster:

> 1) must be "disposed within the interior of the [structure of the] outer covering";
> 2) "substantially all of said bolster [must be] disposed exteriorly about at least a portion of the perimeter of the [structure that is the] bottom portion" and
> 3) must not be "secured to the [structure that is the] removable cushion."

FM Infr. Ex. 1, col. 3, lines 38-46.

***Statement of Fact 37.***  There is no language in claim 1 that requires any "means" to keep the bolster "disposed exteriorly about at least a portion of the perimeter of the bottom portion."  FM Infr. Ex. 1, col. 3, lines 38-46.

***Statement of Fact 38.***  The '502 patent teaches the use of "pockets," "straps" or "fasteners" to retain the bolster and bottom cushion in the claimed spatial relationship.  FM Infr. Ex. 1, col. 2, lines 51-67.

***Statement of Fact 39.***  The outer covering of both accused beds have interior spaces, one for the bolster and one for the bottom cushion, that are accessible through their respective zippered openings.  The defendants have made walled compartments or "pockets" for their bolster for "keeping the bolster 'disposed exteriorly about at least a portion of the perimeter of the bottom portion.'"  This is the same

6

structure disclosed in the '502 patent.  That Defendants' pockets are walled off from each other does not distinguish them from the '502 patent because they too retain the bolster and bottom cushion in the claimed spatial relationship.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 40.*  Dallas' and Doskocil's bolster beds are pet beds.  FM Infr. Ex. 4 at p. 1.

*Statement of Fact 41.*  Dallas's and Doskocil's bolster beds have an outer covering.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 42.*  Dallas's and Doskocil's bolster beds have a removable cushion disposed within the outer covering to form a cushioned bottom portion.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 43.*  Dallas's and Doskocil's bolster beds have a removable bolster.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 44.*  The bolster of Dallas's and Doskocil's bolster beds is removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 45.*  The bolster of Dallas's and Doskocil's bolster beds is not secured to the removable cushion.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 46.*  Dallas's and Doskocil's bolster beds have a reclosable access opening.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

*Statement of Fact 47.*  The reclosable access opening of Dallas's and Doskocil's bolster beds has a zipper.  FM Infr. Ex. 3 at pp. 3-5, Exs. A, B.

                    Respectfully submitted,

Dated: November 30, 2005                  /s  Michael Husmann
                                          Michael Husmann
                                          Larry L. Saret
                                          Lisa C. Childs
                                          Gretchen M. Hosty
                                          MICHAEL BEST & FRIEDRICH LLP
                                          401 North Michigan Avenue, Suite 1900
                                          Chicago, IL  60611
                                          (312) 222-0800
                                          (312) 222-0818 (fax)

                                          Richard B. Myrus (BBO # 638793)
                                          GOODWIN PROCTER LLP
                                          Exchange Place
                                          Boston, MA 02109
                                          Telephone:  (617) 570-1058

Facsimile: (617) 523-1231

Attorneys for Plaintiff
Flexi-Mat Corporation