**EXHIBIT E**

```
 1            IN THE UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
 2

 3    FLEXI-MAT CORPORATION, an    )
       Illinois Corporation,       )
 4              Plaintiff,         )
                vs.                )   Civil Action
 5                                 )   No. 0410162 DPW
      DALLAS MANUFACTURING COMPANY,)
 6    INC., a Texas Corporation,   )
      BJ'S WHOLESALE CLUB, INC.,   )
 7    a Delaware Corporation, and  )
      DOSKOCIL MANUFACTURING       )
 8    COMPANY, INC., a Texas       )
      Corporation,                 )
 9              Defendants.        )

10           The videotaped deposition of LARRY L.

11    SARET, called for examination pursuant to the

12    Rules of Civil Procedure for the United States

13    District Courts pertaining to the taking of

14    depositions, taken before Gina Callahan, a

15    notary public within and for the County of

16    Iroquois and State of Illinois, at 227 West

17    Monroe Street, Chicago, Illinois, on the 13th

18    day of September, 2005, at the hour of 9:42 a.m.

19

20

21

22

23

24    REPORTED BY:   Gina Callahan, CSR

25    LICENSE NO:    084-003623
```

1    APPEARANCES:

2        MICHAEL, BEST & FRIEDRICH, LLP, by

3        MR. MICHAEL E. HUSMANN

4        100 East Wisconsin Avenue, Suite 3300

5        Milwaukee, Wisconsin  53202-4108

6        (414) 271-6560

7            Representing the Plaintiff;

8

9        SHEPPARD, MULLIN, RICHTER & HAMPTON, by

10       MR. DARREN M. FRANKLIN and

11       MR. GARY CLARK

12       333 South Hope Street, 48th Floor

13       Los Angeles, California  90071-1448

14       (213) 620-1780

15           Representing the Defendant,

16           Dallas Manufacturing Company;

17

18   ALSO PRESENT:

19       Karolina Tesarski, videographer.

20

21

22

23

24

25

1   Mr. Applebee last week?

2       MR. HUSMANN:  I do not, but I would propose

3   what we do is start marking at 500.

4       MR. FRANKLIN:  Okay.

5       MR. HUSMANN:  So we know where everything

6   above 500 is going.

7       MR. FRANKLIN:  Okay, that's fine with me.  In

8   that case, let's mark as 500 documents Bates

9   labeled DMC 00001 through 000075.

10                  (Whereupon, Defendant's

11                  Deposition Exhibit No. 500 was

12                  marked for identification.)

13  BY MR. FRANKLIN:

14      Q.   Mr. Saret, do you recognize the

15  document that I've just handed you or that the

16  court reporter has just handed to you?

17      A.   I believe I do.

18      Q.   What is that document?

19      A.   It appears to be the prosecution

20  history for the Flexi-Mat patent application

21  with some tabs that have been added.

22      Q.   Are you the attorney that prosecuted

23  this patent application?

24      A.   I am one of the attorneys.

25      Q.   What other attorneys were involved in

1   prosecuting this patent application?
2       A.   William Meunier.
3       Q.   Any others?
4       A.   Not that I recall.
5       Q.   Were you the head attorney prosecuting
6   this patent?
7       A.   I was the supervising attorney, yes.
8       Q.   How did you become engaged to prosecute
9   this patent?
10      A.   Flexi-Mat Corporation asked me to.
11      Q.   You represented Flexi-Mat in connection
12  with this patent prosecution?
13      A.   Yes.
14      Q.   Did you represent any other individuals
15  or entities in connection with this patent
16  prosecution?
17      A.   Flexi-Mat was my only client in
18  connection with this patent application.
19      Q.   Did you represent Scott Haugh in
20  connection with this patent application?
21      A.   Mr. Haugh was not my client, but in the
22  sense that he was the inventor, I guess the
23  answer is yes.
24      Q.   When did you become engaged to
25  prosecute this patent application?

1  on November 19, 1997?

2      A.   Not that I recall.

3      Q.   Was any other prior art discussed
4  during that telephone conference?

5      A.   Not that I recall.

6      Q.   To refer you to the next line on DMC 44
7  of Exhibit 500, stating description of the
8  general nature of what was agreed to if an
9  agreement was reached, or any other comments:
10 Additional language was discussed to insure that
11 claim 1 read over the prior art patent to Henry.
12 See Examiner's Amendment.

13          Do you see that language on DMC 44 of
14 Exhibit 500?

15     A.   Yes.

16     Q.   What additional language is the
17 interview summary referring to here?

18     A.   I believe it is the additional language
19 that we previously referenced.

20     Q.   On page DMC 46 of Exhibit 500?

21     A.   Yes.

22     Q.   And that's the language in claim 1,
23 line 6, after the word and the phrase, hyphen
24 substantially all of said bolster hyphen has
25 been inserted and after the word disposed, the

1  word hyphen exteriorly hyphen has been inserted.
2  Is that the additional language that's being
3  discussed on the interview summary?
4       A.   Yes.
5       Q.   And you agreed to this additional
6  language?
7       A.   Yes.
8       Q.   Why did you agree to this additional
9  language?
10      A.   I believe it was to secure allowance of
11 the patent.
12      Q.   And why did you need to agree to this
13 additional language to secure allowance of the
14 patent?
15      A.   I don't understand the question.
16      Q.   Was it your understanding without
17 agreeing to this language, the examiner would
18 not allow the patent?
19      A.   I don't recall if we discussed
20 alternatives or not.
21      MR. FRANKLIN:  Can I have the question read
22 back, please?
23                (Whereupon, the record was read
24                 as requested.)
25

1  BY MR. FRANKLIN:
2      Q.  Was it your understanding that without
3  this additional language, that the examiner
4  would not have allowed the patent?
5      A.  Well, as I said, I don't know if the
6  examiner would have accepted alternatives or
7  not.  I don't recall.
8      Q.  Was it your understanding without
9  agreeing to at least some additional language,
10 that the examiner would not have allowed the
11 patent?
12     A.  I don't recall.
13     Q.  Did the examiner say anything to you
14 about why she was requesting this additional
15 language?
16     A.  Not other than what's stated in the
17 interview summary.
18     Q.  So it is your recollection that the
19 examiner told you that the additional language
20 is to insure that claim 1 read over the prior
21 art patent to Henry?
22     A.  To that effect, yes.
23     Q.  Anything else you can recall?
24     A.  No.
25     Q.  Did the examiner give any other reasons

1   for requesting the additional language?
2   A.   Not that I recall.
3   Q.   Do you have any reason to believe that
4   the examiner needed additional reasons to
5   request the additional language?
6   A.   Could you repeat the question?
7   Q.   Let me rephrase the question.
8        Let me have the question re-read back.
9           (Whereupon, the record was read
10            as requested.)
11  MR. FRANKLIN:  Strike that question.
12  BY MR. FRANKLIN:
13  Q.   So you agreed to the addition of the
14  language substantially all of said bolster and
15  the addition of the word exteriorly in order to
16  insure that claim 1 read over the prior art
17  patent to Henry?
18  A.   In order to obtain allowance of the
19  patent.
20  Q.   And it was your understanding the
21  examiner felt that she needed to add those two
22  phrases in order to read over the prior art
23  patent to Henry?
24  A.   That was what the examiner suggested,
25  yes.

Page 45

1    Q.    Did you agree with that suggestion from
2    the examiner?
3    A.    Yes.
4    Q.    Did you agree with the reasons why the
5    examiner wanted that additional language?
6    A.    I don't remember.
7    Q.    Did the examiner say anything about how
8    these phrases would allow claim 1 to avoid the
9    prior art patent to Henry?
10   A.    I don't recall.
11   Q.    Did the examiner indicate that the
12   reasons why she wanted the additional language
13   was to insure -- was that because the top
14   cushions in the Henry patent are disposed on top
15   of the bottom cushion?
16   MR. HUSMANN:  Could you read that question
17   back, please?
18              (Whereupon, the record was read
19                as requested.)
20   THE WITNESS:  I don't recall her saying that.
21   BY MR. FRANKLIN:
22   Q.    Did you discuss the Henry patent?
23   A.    Yes.
24   Q.    Did you discuss the embodiments of the
25   Henry patent during the conversation?

```
1    STATE OF ILLINOIS         )
2                              ) SS:
3    COUNTY OF IROQUOIS        )
4         I, GINA M. CALLAHAN, a Notary Public
5    within and for the County of Iroquois and State
6    of Illinois, do hereby certify that heretofore,
7    to-wit, on the 13th day of September, 2005,
8    personally appeared before me LARRY L. SARET, a
9    witness in a certain cause now pending and
10   undetermined in the United States District
11   Court, District of Massachusetts, wherein
12   FLEXI-MAT CORPORATION is the Plaintiff and
13   DALLAS MANUFACTURING, et al., are the
14   Defendants.
15        I further certify that the said LARRY L.
16   SARET was by me first duly sworn to testify the
17   truth, the whole truth, and nothing but the
18   truth in the cause aforesaid; that the testimony
19   then given by said witness was reported
20   stenographically by me in the presence of said
21   witness and afterwards reduced to typewriting by
22   Computer-Aided Transcription, and the foregoing
23   is a true and correct transcript of the
24   testimony so given by said witness as aforesaid.
25        I further certify that the signature to
```

1  the foregoing deposition was not waived by
2  counsel for the respective parties.
3      I further certify that the taking of this
4  deposition was pursuant to Notice and that there
5  were present at the deposition the attorneys
6  hereinbefore mentioned.
7      I further certify that I am not counsel
8  for nor in any way related to the parties to
9  this suit, nor am I in any way interested in the
10 outcome thereof.
11     IN TESTIMONY WHEREOF:  I have hereunto
12 set my hand and affixed my notarial seal this
13 13th day of September, 2005.

*Gina Callahan*

NOTARY PUBLIC, IROQUOIS COUNTY, ILLINOIS

OFFICIAL SEAL
GINA CALLAHAN
NOTARY PUBLIC  STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/05/08

61