**EXHIBIT G**

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF MASSACHUSETTS
 3      - - - - - - - - - - - - - - - -
 4      FLEXI-MAT CORPORATION, an        :
 5      Illinois corporation,            :
 6                 Plaintiff,            :
 7      VS.                              :
 8      DALLAS MANUFACTURING             :
 9      COMPANY, INC., a Texas           :   CASE NO.
10      corporation; BJ'S WHOLESALE      :   04 10162 DPW
11      CLUB, INC., a Delaware           :
12      corporation, and DOSKOCIL        :
13      MANUFACTURING COMPANY,           :
14      INC., a Texas corporation,       :
15                 Defendants.           :
16      - - - - - - - - - - - - - - - -
17
18             CONFIDENTIAL - ATTORNEYS' EYES ONLY
19                DEPOSITION OF JAMES M. PEREIRA
20                       APRIL 14, 2005
21      Confidential
22      For Attorney's Eyes Only              COPY
23
24      Job No: 3007
```

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 2

1     30(b)(6) DEPOSITION OF BJ'S WHOLESALE
2  CLUB, INC. by JAMES M. PEREIRA, a witness called
3  by and on behalf of the Plaintiff, taken
4  pursuant to the applicable provisions of the
5  Federal Rules of Civil Procedure, before
6  Sandra L. Bray, Registered Diplomate Reporter,
7  CSR Number 103593, and Notary Public in and for
8  Commonwealth of Massachusetts, at the offices of
9  Goodwin Procter, Exchange Place, Boston,
10 Massachusetts, on Thursday, April 14, 2005,
11 commencing at 8:33 a.m.
12
13
14
15
16
17
18
19
20
21
22
23
24

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 3

```
 1    APPEARANCES:

 2        Representing the Plaintiff:

 3            MICHAEL BEST & FRIEDRICH LLP

 4            401 North Michigan Avenue

 5            Suite 1900

 6            Chicago, Illinois  60611

 7            BY:  MANOTTI L. JENKINS, ESQUIRE and

 8                 LARRY SARET, ESQUIRE

 9

10        Representing the Defendants Dallas

11    Manufacturing Company Inc. And BJ's Wholesale

12    Club, Inc.:

13            SHEPPARD MULLIN RICHTER & HAMPTON LLP

14            333 South Hope Street

15            Los Angeles, California  90071-1448

16            BY:  DARREN M. FRANKLIN, ESQUIRE

17

18

19

20

21

22

23

24
```

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 4

1       Representing the Defendants Doskocil
2       Manufacturing Company, Inc. and BJ's Wholesale
3       Club, Inc.:
4               LOCKE LIDDELL & SAPP LLP
5               2200 Ross Avenue
6               Suite 2200
7               Dallas, Texas 75201-6776
8               BY:  M. SCOTT FULLER, ESQUIRE
9
10      Representing the Defendant BJ's Wholesale
11      Club, Inc.:
12              BJ'S WHOLESALE CLUB, INC.
13              One Mercer Road
14              Natick, Massachusetts   01760-9601
15              BY:  NANCY M. HANLEY, ESQUIRE
16
17
18
19
20
21
22
23
24

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 132

```
 1    Q.    That -- okay.  But you don't know if it came
 2          from an Orvis catalog?
 3    A.    No.
 4    Q.    But it might have?
 5    A.    Possible.
 6    Q.    He says, "You've asked us to go back and
 7          re-evaluate modified bolster bed that could be
 8          lower price to hit the 29.99 targeted retail
 9          with an improved bolstered arrangement to allow
10          it to sit up better than our original version."
11                Do you see that?
12    A.    Yes.
13    Q.    Do you know what he meant by -- let's break it
14          down.  "Go back and re-evaluate the modified
15          bolster bed."  Do you remember telling him to do
16          that?
17    A.    Yes.
18    Q.    And that was based upon your seeing samples from
19          Dallas?
20    A.    Yes.
21    Q.    What was the problem with the original bolster
22          beds that you saw or the samples that you saw
23          that you were talking about?
24    A.    The bolster laid flat around the bed when you
```

Page 133

1  put it down. It laid flat.
2  Q. And was that on the -- was that on earlier beds
3     than these two samples that he brought you, one
4     big, one small?
5  A. It was on the one -- on the small one.
6  Q. On the small one?
7  A. Yes.
8  Q. It lay flat in your judgment?
9  A. Yes.
10 Q. What about the Doskocil bed that you saw
11    sometime after June 20th or before June 20th?
12    I'm sorry.
13           MR. FRANKLIN: Objection, vague.
14 Q. What about the Doskocil bed? Did the bolster
15    have a problem?
16 A. No.
17 Q. The bolster seemed to stand up?
18 A. Yes, stand up, yes.
19 Q. So is this what he's talking about -- well, he
20    also talks about hit the 29.99 target retail in
21    the context of a modified bolster bed. Was that
22    just an issue of size?
23 A. I think so.
24 Q. And he said the improved bolstered arrangement

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 135

1  A.  Yes.
2  Q.  Do you know what project he was talking about?
3  A.  Fixing the bolster so it doesn't lay flat on the
4      ground and look unaesthetically -- look
5      unaesthetic.
6  Q.  Then he says in the rest of that sentence or
7      near the end, "And the design will fall
8      somewhere between the two beds submitted." Do
9      you think he was talking about the big bed and
10     the small bed you were talking about or the
11     bigger bed and the smaller bed?
12 A.  Yes, the bigger bed and the smaller bed he
13     presented, it would fall in between there
14     somewhere.
15 Q.  Was he just talking about the size or was he
16     just talking about the bolster?
17 A.  I think both.
18 Q.  Both. What was your understanding of what he
19     meant by the design would fall somewhere in
20     between in connection with the bolster?
21 A.  That the bolster would stand up and not lay
22     flat.
23 Q.  And did you have a conversation with Mr. Moore
24     about this?

Page 151

1        (Pet Product Presentation, July 2003 was
2        marked Exhibit Number 96 for
3        identification.)
4   Q.   I'm handing you what has been marked as Exhibit
5        96. Do you know what Exhibit 96 is? Actually,
6        I'm sorry. It should be Exhibit 126. Let me
7        apologize for that. Let me write that on here.
8        Exhibit 126.
9   A.   Sure.
10  Q.   So, Mr. Pereira, I'm handing you what has been
11       marked as Exhibit 126. Would you take a look at
12       Exhibit 126?
13       (Document, Bates Number BWC 000017 was
14       marked Exhibit Number 126 for
15       identification.)
16       MR. FRANKLIN: I appear to have an
17  extra one.
18       MR. JENKINS: Oh, you do?
19       MR. SARET: Thanks.
20       MR. JENKINS: Thank you.
21  A.   Okay.
22  Q.   Do you know what Exhibit 126 is?
23  A.   Uh-huh.
24  Q.   What is Exhibit 126?

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 152

1  A.  It looks like the bed -- the final bed that we
2      agreed upon for Dallas Manufacturing.
3  Q.  And what makes you say that?
4  A.  Because that bed had a gusset -- 4-inch gusset
5      with a free chew toy on it.
6  Q.  Okay. Does the bolster appear to stand up
7      relative to the main cushion?
8  A.  Yep.
9  Q.  Had you seen a sample of this bed appearing in
10     Deposition Exhibit 126 prior to the production
11     of this flier, this advertising, July 7th, 2003?
12     Is that the date of it?
13 A.  I think this was shown with the bed at the same
14     time. Is my best recollection.
15 Q.  And do you know who showed you that, this bed
16     and this advertising?
17 A.  Curt Moore and possibility of Richard Mathews.
18     He may have been there. I'm not sure.
19 Q.  Was it at your office?
20 A.  At my office.
21 Q.  And do you remember what they said about it?
22 A.  They presented this as the bed that was hitting
23     my 29.99 price point that I wanted to be at, and
24     it came with a free chew toy and a 4-inch gusset

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 153

1   on the bed.
2   Q.   Did they give you any indication of how they had
3        modified the bed to make it appear in this
4        version?
5   A.   The only modification is the 4-inch gusset
6        that's on this bed.
7   Q.   Did they speak of what the 4-inch gusset did for
8        the bed?
9   A.   No, they just said they added a 4-inch gusset.
10  Q.   Did you guys -- did you and Mr. Moore and
11       possibly Mr. Mathews talk about the bolster, the
12       appearance of the bolster on the bed at that
13       time?
14  A.   Yes, they said it stands up on top of the bed
15       now.
16  Q.   Did they tell you what they did to make it stand
17       up on top of the bed?
18  A.   No.
19  Q.   Did they tell you whether or not they had looked
20       at another design?
21  A.   No.
22            MR. FRANKLIN:  Mr. Jenkins, I just
23       note that it's after 12 o'clock and lunch has
24       arrived.  I actually presumed pursuant to what

CONFIDENTIAL-ATTORNEYS' EYES ONLY

Page 211

1       CERTIFICATE

2

3    COMMONWEALTH OF MASSACHUSETTS

4    SUFFOLK, SS

5         I, Sandra L. Bray, Registered Diplomate
6    Reporter and Notary Public in and for the
7    Commonwealth of Massachusetts, do hereby
8    certify:
9         That JAMES M. PEREIRA, the witness whose
10   deposition is hereinbefore set forth, was duly
11   sworn by me and that such deposition is a true
12   record of my stenotype notes taken in the
13   foregoing matter, to the best of my knowledge,
14   skill and ability.
15        IN WITNESS WHEREOF, I have hereunto set
16   my hand this 1st day of May, 2005.

17

18           _SANDRA BRAY_____
             Sandra L. Bray, RDR
19           Registered Diplomate Reporter

20

21

22

23

24