**EXHIBIT H**

Page 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
FLEXI-MAT CORPORATION, an      )
Illinois corporation,          )
          Plaintiff,           )
                               )   Civil Action
    -vs-                       )   No. 04 10162 DPW
                               )
DALLAS MANUFACTURING COMPANY,  )
INC., a Texas corporation,     )
BJ'S WHOLSESALE CLUB, INC.,    )
a Delaware corporation, and    )
DOSKOCIL MANUFACTURING         )
COMPANY, INC., a Texas         )
corporation,                   )
          Defendants.          )
```

Videotaped deposition of SIMON F. HANDELSMAN taken before NADINE J. WATTS, CSR, RPR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at Suite 4500, 227 West Monroe Street, in the City of Chicago, Cook County, Illinois, commencing at 10:00 o'clock a.m. on the 1st day of November, A.D., 2005.

Page 2

1         There were present at the taking of this
2    deposition the following counsel:
3         MICHAEL, BEST & FRIEDRICH, LLP by
          MR. LARRY L. SARET
4         401 North Michigan Avenue
          Suite 1900
5         Chicago, Illinois  60611
          (312) 222-0800
6
              on behalf of the Plaintiff;
7
          SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP by
8         MR. GARY A. CLARK
          333 South Hope Street
9         Suite 4800
          Los Angeles, California  90071
10        (213) 620-1780
11            on behalf of Defendant Dallas
              Manufacturing Company;
12
          LOCKE, LIDDELL & SAPP, LLP by
13        MR. ROY W. HARDIN
          2200 Ross Avenue
14        Suite 2200
          Dallas, Texas  75201
15        (214) 740-8556
16            on behalf of Defendants BJ's Wholesale
              Club, Inc. and Doskocil Manufacturing
17            Company.
18
19
20   ALSO PRESENT:  Mr. Donald Peterson, videographer
21
22
23
24

Page 75

1    the circular portion.

2            Does that fairly characterize your testimony,
3    Mr. Handelsman, about what constitutes the bottom
4    portion and the perimeter of the bottom portion?
5        A    Yes.
6        MR. SARET:  Object to the form of the question.
7        THE WITNESS:  Yes.
8        MR. CLARK:  Q  Okay.  Now, going back to your
9    report, the paragraph at the top of page 4, the last
10   sentence I read talked about, quotes, substantially all
11   of the bolster is disposed exteriorly about at least a
12   portion of the perimeter of the bottom portion.
13           Looking back at the exhibit we just marked as
14   Exhibit 725, where in relationship to that bottom
15   portion is the area referred to in the sentence
16   exteriorly about at least a portion of the perimeter of
17   the bottom portion?  Where is the exterior it's talking
18   about?
19       A    It's the same as the perimeter if I understand
20   the question.
21       Q    Is it anything outside the perimeter?  Is it
22   exterior to the perimeter?
23       MR. SARET:  Object to the form of the question.
24       THE WITNESS:  I'm not sure I even understand the

Page 76

1   question. Is what exterior? The perimeter is the
2   outside edge of the bottom covering of the cushion.
3       MR. CLARK:  Q   And if something is exterior of
4   that, where is it?
5       A   On the outside of that --
6       Q   In other words --
7       A   -- as you asked for it.
8       Q   -- outside the red circle that's drawn in
9   Exhibit 725?
10      A   Yes.
11      MR. CLARK: All right. Let's mark this as Exhibit
12  726.
13          (Document marked as Deposition
14          Exhibit 726 for identification.)
15      THE WITNESS: Did you anticipate again?
16      MR. CLARK:  Q   On Exhibit 726 we've basically drawn
17  a donut in red around the circled bottom portion. Would
18  everything in that red cross-hatched area outside the
19  bottom portion be exterior -- exteriorly of the
20  perimeter of the bottom portion?
21      MR. SARET: Object to the form of the question.
22      THE WITNESS: Or exterior to the perimeter of the
23  bottom portion.
24      MR. CLARK:  Q   All right. Correct?

Page 77

1   A   I believe so.
2   Q   All right. And in Exhibit 726, as you look at
3   the bolster, is it exterior of the perimeter of the
4   bottom portion?
5   A   For the most part.
6   Q   Well, maybe it would be easier to look at the
7   actual patent drawing of Exhibit 509 without all the red
8   marking on it. Do you have that there, the actual
9   patent?
10  A   I have 725.
11  Q   How about Exhibit 509?
12  A   Yes, I have 509.
13  Q   Yes. Why don't you turn to the second sheet of
14  drawings which has figure 4.
15  A   Okay.
16  Q   As you look at figure 4, is figure 4 a bottom
17  view of the bed?
18  A   Yes.
19  Q   And figure 4 has the -- part of the covering
20  torn away, so to speak, so you can see the cushion and
21  the bolster within the covering?
22  A   Yes.
23  Q   And in figure 4 the actual cushion is designated
24  by the reference numeral 4 and the cushion is designated

Page 85

1   51, 52, 53.  I know I'd be very comfortable with 75, 85,
2   90, but I'm -- What's the difference between 51 and 50?
3   I don't know that I can give you a better answer than
4   that.
5        MR. CLARK:  Q   Do you have an opinion looking at
6   all of the drawing figures in the patent of Exhibit 509
7   as to how much of that bolster is not exterior of the
8   perimeter of the bottom portion?
9        MR. SARET:  Objection.  I think you referred to the
10  patent number 509, Gary.
11       MR. CLARK:  I'm sorry.  Let me restate it.
12       MR. SARET:  Yes.
13       MR. CLARK:  Q   Do you have an opinion looking at
14  all the drawing figures of Exhibit 509 as to how much of
15  that bolster is not exterior of the perimeter of the
16  bottom portion?
17       MR. SARET:  Object to the form of the question.
18       THE WITNESS:  The -- A minority.
19       MR. CLARK:  Q   Less than 5 percent?
20       MR. SARET:  Objection.
21       THE WITNESS:  I don't know that I can -- This is a
22  bolster -- I don't know that I can put a percentage on
23  it.  It would be very hard to work out a percentage.
24       MR. CLARK:  Q   Let me ask you to take a blue pen and

Page 86

1  on Exhibit 509 mark the part of the bolster that you
2  think is not exterior of the perimeter of the bottom
3  portion.
4      A   Which figure do you want me to mark?
5      Q   Whichever one you think makes the most sense.
6  Can you do it for figure 1?
7      A   I'm not able to draw in scale.  So you'll
8  understand this is not quite to scale.  That would be my
9  guess based upon looking at the sketch.
10     Q   All right.  Just so that is a little clearer,
11 could you take the pen and kind of color in the part of
12 the bolster that you think is overhanging the perimeter?
13     A   Oh, am I coloring the wrong thing?
14     Q   No, you're coloring the right thing.  I mean,
15 that's on the interior of the perimeter of the bottom
16 portion.
17     A   That's based upon my looking at the sketch.
18     MR. CLARK:  All right.  Now, just for the record,
19 since the witness has modified Exhibit 509, I'm going to
20 ask the court reporter to mark this document as Exhibit
21 725 now.
22     MR. SARET:  27.
23     MR. CLARK:  I'm sorry, 727.
24         (Document marked as Deposition

1        Exhibit 727 for identification.)
2        MR. CLARK:  Q   And, Mr. Handelsman, would you
3   confirm for us that Exhibit 727 is a copy of Exhibit 509
4   on which you have in blue pen on figure 1 marked the
5   portion of the bolster which you think intrudes
6   interiorly beyond the perimeter of the bottom portion?
7        A   Yes.
8        Q   I just have a few more questions and then maybe
9   we can take a lunch break.
10       A   Okay.
11       Q   Okay.  A couple of times we've talked about your
12  understanding of the meaning of the term bolster and
13  you've talked about I think a long, cylindrical pillow.
14       A   A long, narrow pillow.
15       Q   A long, narrow pillow.  Does the -- Does a
16  bolster have to have any particular shape in
17  cross-section?
18       A   No, I don't think so.
19       Q   It could be -- It could be circular; is that
20  correct?
21       A   It could be circular.
22       Q   Or oval?
23       A   It could be oval.
24       Q   It could be square?

Page 88

1   A   It could be square I believe.

2   Q   It could be rectangular?

3   A   Yes.

4   Q   All right. Looking back at what now is Exhibit
5   727, how is the bolster maintained in the position in
6   which it's shown in those drawings?

7   A   You can't tell.

8   Q   If you look at the second page of drawings, does
9   it show Velcro straps holding the bolster in place
10  relative to the bottom portion?

11  A   In figure 4?

12  Q   Yes.

13  A   Yes.

14  Q   Are those Velcro straps needed to hold the
15  bolster in place relative to the bottom portion?

16  A   It's one way of doing it.

17  Q   Is there any other way shown in this patent of
18  doing it?

19  A   Shown? No.

20  Q   Is there any other way described in this patent
21  for holding the bolster in place?

22  A   I don't know the answer to that. I'd have to --
23  Can you point me to where it talks about this?

24  Q   If you look at the bottom of column 2, it's the

Page 89

1   last full paragraph.
2       A   Is there not -- How about line 7 of column 2?
3       Q   All right.  Well, can you read what you're
4   referring to there?
5       A   In one form of the invention the bolster may be
6   removably affixed to the interior of the outer covering
7   by a plurality of hooks-and-loop fastener straps.
8       Q   And that's in fact what's shown in figure 4 of
9   the drawings?
10      A   I believe so.
11      Q   All right.  And then down at the bottom of
12  column 2 there's another paragraph, is there not?
13      A   Can I have a line number please?
14      Q   It's line 61.  It says, quotes, the bolster's
15  held in place by a plurality of fasteners or straps 8.
16  The straps are preferably the well-known hook-and-loop
17  fasteners, such as Velcro, although other fasteners,
18  such as ties or straps with snaps or buckles, would
19  perform adequately in this application.  The fasteners
20  are sewn or otherwise secured to the interior of bolster
21  pocket 10 in the outer covering 2.  Do you see that?
22      A   Yes, sir.
23      Q   Are those all the ways between the portion you
24  read at the top of column 2 and the portion I just read

Page 90

1  at the bottom of column 2, are those all the ways in
2  this patent described for holding the bolster in place
3  relative to the bottom portion?
4      A   I believe it's all the ways that described.
5      MR. CLARK:  All right.  I'm at a good breaking point
6  if you want to take lunch.  It's almost 12:30, 12:25.
7      MR. SARET:  All right.  What time do you want to
8  resume?
9      MR. CLARK:  We'll come back at 1:30.
10     MR. SARET:  Okay.
11     MR. CLARK:  Or we can take a shorter break if you
12 want to try to move along.
13     MR. SARET:  No, I mean -- Well, Mr. Handelsman --
14 Let's go off the record.
15     THE VIDEOGRAPHER:  We're going off the record.  The
16 time is 12:25 p.m.
17         (Lunch recess was taken.)
18     THE VIDEOGRAPHER:  We're back on the record.  The
19 time is 1:26 p.m.
20     MR. CLARK:  Q  Mr. Handelsman, you had an
21 opportunity to talk to Mr. Saret at lunch; is that
22 correct?
23     A   Yes.
24     Q   Is there any testimony that you'd like to change

Page 113

1   around.

2       Q   All right.  Does the word about indicate to you
3   that the bolster essentially has to be side by side with
4   the base cushion?

5       A   No.

6       Q   Can the bolster be disposed about the base
7   cushion if it's basically up above the base cushion?

8       MR. SARET:  Object to the form of the question.

9       THE WITNESS:  Yes.

10      MR. CLARK:  Q   How is that?

11      A   Because about has to do with the relationship of
12  one object to another and how those objects are
13  positioned.

14      Q   Well, so you're saying that you think that the
15  bolster can be about the perimeter of the base cushion
16  if the bolster is essentially up above the perimeter as
17  you've drawn it in your drawings?

18      A   I believe that's -- Yes, I think that's exactly
19  right.

20      MR. CLARK:  All right.  Let's ask the court reporter
21  to mark this drawing as the next exhibit in order.

22          (Document marked as Deposition

23          Exhibit 728 for identification.)

24      MR. CLARK:  Q   Just for the record, would you agree

Page 114

1   that what we've now marked as Exhibit 728 are two
2   sketches you made of what you believe to be the
3   relationship between the bolster and the base cushion
4   for the Dallas Manufacturing bed, which is Exhibit 2B?
5       A   Is 2B the first bed?
6       Q   Yes.
7       A   Yes, the one with the arrow is.
8       Q   And you're now disclaiming the drawing above?
9       A   I like the one on the bottom.  As I told you,
10  I'm not an artist, so I have a hard time drawing.  But
11  that's as good -- that's as close as I can do it.
12      Q   Is it your testimony that that drawing is
13  representative of the position of the bolster relative
14  to the base cushion at every place around the bolster?
15      A   No.
16      Q   That's just at one location?
17      A   Yes.
18      Q   Is that your testimony?
19      A   Yes.
20      Q   Okay.  Is your opinion of -- in this case on
21  infringement in any way dependent on whether or not a
22  pet is on the bed?
23      A   Is it -- Are you asking me if it -- Would you
24  ask me again?  I'm sorry.  I understand -- I think I

Simon F. Handelsman - 11/1/2005

```
 1  STATE OF ILLINOIS   )
                        )  Ss:
 2  COUNTY OF C O O K   )
 3
 4        The within and foregoing deposition of the
 5  aforementioned witness was taken before NADINE J. WATTS,
 6  CSR, RPR, and Notary Public, at the place, date and time
 7  aforementioned.
 8        There were present during the taking of the
 9  deposition the previously named counsel.
10        The said witness was first duly sworn and was
11  then examined upon oral interrogatories; the questions
12  and answers were taken down in shorthand by the
13  undersigned, acting as stenographer and Notary Public;
14  and the within and foregoing is a true, accurate and
15  complete record of all of the questions asked of and
16  answers made by the aforementioned witness, at the time
17  and place hereinabove referred to.
18        The signature of the witness was not waived,
19  and the deposition was submitted, pursuant to
20  Rules 30 (e) and 32 (d) of the Rules of Civil Procedure
21  for the United States District Court, to the deponent
22  per copy of the attached letter.
23        The undersigned is not interested in the within
24  case, nor of kin or counsel to any of the parties.
```

```
 1            Witness my official signature and seal as

 2   Notary Public in and for Cook County Illinois on this

 3   ____14th____ day of __November__, A.D. 2005.

 4

 5                              _____
                                NADINE J. WATTS, CSR, RPR
 6                              License No. 084-002736
                                Notary Public
 7

 8

 9
                          OFFICIAL SEAL
10                        NADINE J WATTS
                   NOTARY PUBLIC - STATE OF ILLINOIS
                   MY COMMISSION EXPIRES 05-05-07
11

12

13

14

15

16

17

18

19

20

21

22

23

24
```