UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | **FLEXI-MAT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** |
| Counter-claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-defendant. | ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) ) | |
| Counter-claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) ) | |
| Counter-defendant. | ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | |
| Counter-claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-defendant. | ) | |

1

**TABLE OF CONTENTS**

INTRODUCTION                                                                     1

ARGUMENT                                                                         2

    I.    The Accused Products                                        2

    II.    The Principles of Claim Interpretation                     3

    III.    Both the Dallas and the Doskocil Bolster Beds Have an
        "Outer Covering" as that Claim Term is Properly Interpreted      5

    IV.    "Substantially All" of Dallas' and Doskocil's Bolster is Disposed
        Exteriorly of the Bottom Portion                           9

    V.    The "Disposed Within the Covering" Limitation of Claim 1
        Is Not a Means-Plus-Function Limitation                    10

CONCLUSION                                                                       12

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) ........................................................ 11
*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364. 1371-71 (Fed. Cir. 2003) ........................................ 11
*Bell Atlantic Network Serv., Inc. v Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) ... 4
*Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615(Fed. Cir. 1995) ....... 9
*Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.*, 134 F.3d 1085 (Fed. Cir. 1998) ................................... 10
*Day Int'l, Inc. v. Reeves Brothers, Inc.*, 260 F.3d 1343 (Fed. Cir. 2001) ...................................................... 5
*Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336 (Fed. Cir. 2001) ........................................................ 10
*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) .................... 4
*Interactive Gift Express, Inc. v. Compuserve, Inc.* 231 F.3d 859 (Fed. Cir. 2000) ...................................... 5
*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ................................... 5
*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999) ................................................ 3
*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991) ................................................................. 4
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370
    (1996) ....................................................................................................................................................... 4
*Netword, LLC v. Central Corp.*, 242 F.3d 1347 (Fed. Cir. 2001) ................................................................. 4
*Omega Eng'g., Inc. v. Raytek Corp*, 334 F.3d 1314 (Fed Cir. 2003) ........................................................... 7
*Phillips v. AWH Corp.*, 363 F.3d 1207, 1212 (Fed. Cir. 2004) .................................................................. 11
*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) .................................................................... 4
*Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290 (Fed. Cir. 2005) ................................ 4
*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ................................................. 5
*V-Formation, Inc. v. Bennetton Group SpA*, 401 F.3d 1307 (Fed. Cir. 2005) .............................................. 5
*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ......................................................... 4
*Vitronics*, 90 F.3d at 1583 ............................................................................................................................ 5
*Watts v. XL Sys., Inc.*, 232 F.3d 877 (Fed. Cir. 2000) ................................................................................ 4

**13**
35 U.S.C. §112 ¶6 .............................................................................................................................. 10, 11

**INTRODUCTION**

This case involves pet beds and in particular, pet beds having a bottom cushion and a bolster within an outer covering.  Plaintiff Flexi-Mat Corporation ("Flexi-Mat"), a manufacturer of pet products, owns U.S. Patent No. 5,765,502 (the '502 patent), entitled "Pet Bed With Removable Bolster."  FM Infr. Ex. 1.  Defendant BJ's Wholesale Club, Inc. ("BJ's") is a wholesale club that sells various products including the accused pet beds.  FM Infr. Ex. 4 at p. 1.  Defendants Doskocil Manufacturing Company, Inc. ("Doskocil") and Dallas Manufacturing Company ("Dallas") are manufacturers and suppliers of the accused pet beds to BJ's.  FM Infr. Ex. 4 at p. 1.  Dallas also sells the accused pet beds to other wholesale clubs or retailers, such as Costco, Sam's Club, Bass Pro, and Big Lots. FM Infr. Ex. 4 at pp. 1, 16-19.

The '502 patent describes a pet bed comprising an outer covering, a removable cushion disposed within the outer covering to form a combined bottom portion, and a bolster also within the outer covering.  FM Infr. Ex. 1 at p.1, Abstract.  Figure 5 from the patent (below) is representative.



The patent describes the outer covering as "preferably fabricated from a durable material, such as a fabric that is easily cleaned."  FM Infr. Ex. 1, col. 2, lines 41-42.  A "removable cushion 4 [is] disposed within a bottom pocket 12 formed in the outer covering 2 to form a cushioned bottom portion of the pet bed 1."  FM Infr. Ex. 1, col. 2, lines 45-47.  A bolster is also provided in the outer covering "within a bolster pocket 10" and is "disposed about at least a portion of the perimeter of the cushioned bottom portion of the pet bed 1."  FM Infr. Ex. 1, col. 2, lines 51-54.

Claim 1 is the only independent claim at issue.  It states:

    1.  A pet bed comprising:

        an **outer covering**;

> a removable **cushion** disposed within the outer covering to form a cushioned bottom portion; and
>
> a **bolster** removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Infr. Ex. 1, col. 3, lines 38-46.

Claims 2 and 3 depend on claim 1 and state, respectively:

2. The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening.

3. The pet bed of claim 2, wherein the reclosable access opening further includes a zipper.

FM Infr. Ex. 1, col. 3, lines 47-50.

Only the above quoted three claims of the '502 patent are at issue. The infringement analysis here is not complex. There is no genuine issue of material fact as to the structure of the accused bolster beds. Defendants literally infringe the '502 patent. Accordingly, this case is ripe for summary judgment.

## ARGUMENT

### I.    The Accused Products.

There is no dispute regarding the construction of the accused beds.

Each of the Doskocil and Dallas accused bolster beds includes a removable bolster, a removable bottom cushion and an outer covering into which the bolster and cushion are placed. The outer covering of both accused beds are divided into interior spaces, one for the bolster and one for the bottom cushion, that are each removable through zippered openings. Neither of the accused beds includes straps or ties that affix the bolster to the outer covering. FM Infr. Ex. 3, pp. 3-5 and Exs. A, B. Defendants do not dispute these facts.

The infringement issues are defined in Defendants' responses to Flexi-Mat's interrogatories. In response to Flexi-Mat's interrogatory 4, which requesting identification of Defendants' non-infringement positions, Defendants identified three such arguments. FM Infr. Ex. 7, pp. 5-8; FM Infr. Ex. 8, p. 7.[1] Defendant's non-infringement arguments are also explained in Defendants' joint expert report. FM Infr. Ex. 4. They are:

---

[1] Defendant BJ's Wholesale Club, Inc. joined in Dallas' response to Flexi-Mat's interrogatories. See FM Infr. Ex. 9.

1) Defendants contend that the limitation of claim 1 requiring that the bolster and the bottom cushion be disposed within the interior of the outer covering "does not read on an outer covering with multiple interior spaces or compartments that are walled off from one another." (hereinafter the "outer covering limitation"). FM Infr. Ex. 4, p. 5.

2) Defendants contend that the limitation of claim 1 requiring that "substantially all" of the bolster be disposed exteriorly about the perimeter of the bottom portion requires that a "significant amount of the bolster cannot be on top of the bottom cushion because then it would be within the perimeter of the cushion" (hereinafter the "substantially all" limitation). FM Infr. Ex. 4, p. 8.

   Defendant Dallas contends that a significant portion of its bolster is on top of the bottom cushion. FM Infr. Ex. 4, pp. 14-15. Doskocil's expert has admitted that its accused bed meets this limitation of claim 1. FM Infr. Ex. 4, pp. 19-20; FM Infr. Ex. 6, p. 282, line 24 to p. 283, line 3.

3) Defendants contend that the following claim language is a "means-plus-function" limitation that requires an infringing product to include ties, straps or equivalent structure which their pet beds lack:

   a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

   (hereinafter the "disposed within the outer covering" limitation). FM Infr. Ex. 4, p. 13.

As explained herein, the outer covering of claims 1-3 of the '502 patent is not limited to those having a single interior compartment and reads on the Defendants' bolster beds that have walled off compartments. FM Infr. Ex. 3, pp. 3-5. Dallas' bolster bed does position the bolster such that substantially all of it is disposed exteriorly of the bottom cushion. FM Infr. Ex. 3, pp. 3-5. Finally, the alleged means-plus-function limitation is not governed by 35 U.S.C. § 112 and, even if it were erroneously found to be so governed, the accused beds employ structure identical or equivalent to the structure disclosed in the '502 patent.

## II.    The Principles of Claim Interpretation

Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). The infringement determination is a two step process: (1) the claims must first be interpreted; and (2) then the accused device must be compared to the claims as properly interpreted. *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed. Cir. 1999). Claim interpretation, the first step, is a question of law, while the second step is one of fact. *Id.* at 971, 974. Nevertheless, summary judgment on infringement is properly granted when the comparison of the properly interpreted claim and an uncontested description of the accused device shows no genuine issues of material fact. *Id.* at 975.    In comparing the properly construed claim and the accused device,

3

every limitation set forth in a claim must be found in an accused product, either exactly (literal infringement) or its substantial equivalent (doctrine of equivalents). *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

The non-infringement arguments raised by Defendants concern interpretation of certain terms and phrases used in the asserted claims of the '502 patent.

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). The claims, however, do not stand alone and the person of ordinary skill is deemed to read the claims in the context of the entire patent, including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314, 1315 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996); *Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1295 (Fed. Cir. 2005) ("It is presumed that the person of ordinary skill in the art read the claim in the context of the entire patent, including the specification, not confining his understanding to the claims at issue."). Regardless of whether the meaning of the claims appears clear from the claims themselves, "[o]ne purpose of examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). The claims do not have meaning removed from the context of the specification. *Netword, LLC v. Central Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001); *see also Markman*, 517 U.S. 370, 389 (1996).

Thus, a patent's "specification is always highly relevant to the claim construction analysis." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman*, 52 F.3d at 979. "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. "[T]he written description 'can provide guidance as to the meaning of the claims, thereby dictating the manner in which the claims are to be construed, even if the guidance is not provided in explicit definitional format'." *Bell Atlantic Network Serv., Inc. v Covad Communications Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001), quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001).

4

"While it is true that, as a general rule, the words of a patent claim are to be given their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art, … a court must nevertheless examine the remaining intrinsic evidence to determine whether the patentee has … disclaimed subject matter, or has otherwise limited the scope of the claims." *Day Int'l, Inc. v. Reeves Brothers, Inc.*, 260 F.3d 1343, 1348 (Fed. Cir. 2001).  The intrinsic record provides "the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention."  *V-Formation, Inc. v. Bennetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).  *See Research Plastics, Inc. 421 F.3d at 1295*.

Given the lack of technical complexity of the claims at issue here, as well as the lack of ambiguity in the patent and its prosecution history, the meaning of the claims as understood by a person of skill in the art should be readily apparent.  *Phillips*, 415 F.3d at 1314; *Interactive Gift Express, Inc. v. Compuserve, Inc.* 231 F.3d 859, 867 (Fed. Cir. 2000).  Indeed, where, as here, there is no ambiguity in the intrinsic evidence as to the scope of the patent claims, resort to extrinsic evidence, such as expert testimony, is improper.  *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1334 (Fed. Cir. 2001).  *See Vitronics*, 90 F.3d at 1583 ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper"). "Any other rule would be unfair to competitors who must be able to rely on the patent documents themselves, without consideration of expert opinion that then does not even exist, in ascertaining the scope of a patentee's right to exclude."  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).

**III.    Both the Dallas and the Doskocil Bolster Beds have an "Outer Covering" as that Claim Term Is Properly Interpreted.**

Defendants contend that the limitation of claim 1 requiring that the bolster and the bottom cushion be disposed within the interior of the outer covering "does not read on an outer covering with multiple interior spaces or compartments that are walled off from one another."  FM Infr. Ex. 4, p. 5.  Defendants are wrong.

The specification of the '502 patent is important in properly construing the construing the term "outer covering."  As previously described, the patent describes the outer covering as having a "bottom pocket" for the removable bottom cushion and a "bolster pocket" for the bolster.  FM Infr. Ex. 1, col. 2, lines 45-47, 51-54.  "Removably affixing the bolster 6 within the bolster pocket 10 of the outer covering 2

5

has the advantage of lending structural integrity to the pet bed 1.  Since the bolster 6 is much like a long,

slender pillow, holding the bolster 6 in the bolster pocket 10 keeps the bolster relatively fixed in position

with respect to the perimeter of the bottom portion of the pet bed 1."  FM Infr. Ex. 1, col. 3, lines 1-7.  The

patent specification supports a simple construction of "outer covering" that includes the "pockets,"

"interiors," and/or "compartments" that are featured in both Doskocil's and Dallas' bolster beds.  FM Infr.

Ex. 1, col. 2, lines 40-52 (identifying "pockets" formed in outer covering).

Defendants seek to add limitations to the claim term "outer covering."  They argue that the claim

should include a limitation that not all "outer coverings" are included, *i.e.*, those that have "walled off

compartments."  FM Infr. Ex. 4, p. 5.  In support of their argument to add this limitation to the claims,

Defendants argue that Flexi-Mat disclaimed claim coverage for outer coverings with :walled off

compartments" when it argued that the invention was patentable over U.S. Patent 5,010,843 (Henry) (FM

Infr. Ex. 5).  There was no such claim disavowal.

Some of the claims originally filed by Flexi-Mat were initially rejected by the patent examiner, who

stated:

> Claims 1-3, 7 and 8 are rejected … as being anticipated by Henry …. Henry shows a pet
> bed 10, see figure 5, having an outer covering (unnumbered) containing a zippered
> opening 34 for access to the interior, a base cushion 12 and semi-circular top cushions or
> bolsters 14" or 16".  The top cushions or bolsters 14" or 16" are affixed to the edge 22 of
> the base cushion 12 in either a permanent (stitched) or removable (zippered or snapped)
> fashion, see column 2, lines 19-29.

FM Infr. Ex. 2 at DMC034.

> In response, Flexi-Mat argued that Henry did not anticipate its invention because:

> Henry suggests individual liners for each cushion and requires covers for the semi-
> circular cushions 14, 16 which are <u>separate</u> from the cover for the base cushion. . . .
> Henry does not suggest a single cover for all of the cushions, and it would be difficult to
> design such a cover and assemble such a bed using the interconnected cushions of
> Henry.

FM Infr. Ex. 2 at DMC042 (emphasis in original).  Thus, Flexi-Mat argued that Henry does not disclose a

"single cover" encompassing the bolster and the bottom cushion.  FM Infr. Ex. 2 at DMC042.  Henry

discloses "separate" covers for each top cushion and yet a third separate cover for the bottom cushion.

FM Infr. Ex. 2 at DMC042.  These separate and complete covers are then connected together.  FM Infr.

Ex. 2 at DMC042.  Henry so states:  "To this end, the filler may be contained in its own liner (not shown)

which is put into <u>respective covers</u> of the cushions 12, 14, 16 through zipper openings… provided in

6

these covers." FM Infr. Ex. 5, col. 2. lines 47-50. Significantly, the term "outer covering" was not amended by Flexi-Mat. FM Infr. Ex. 2 at DMC039.

The Patent and Trademark Office, however, was not satisfied with this argument. The patent examiner proposed "[a]dditional language … to insure that claim 1 read over the prior art patent to Henry," specifically, that "<u>substantially all of said bolster</u> [ must be] disposed <u>exteriorly</u> about at least a portion of the perimeter of the bottom portion." FM Infr. Ex. 2 at DMC046; see also handwritten additions at DMC039. Without continuing its argument concerning Henry, Flexi-Mat agreed to the proposal made by the examiner. FM Infr. Ex. 2 at DMC044, DMC046.

No claim scope was disclaimed or disavowed by this argument. The application of the doctrine of claim disavowal was explained by Federal Circuit.

> We have, however, declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is **ambiguous**. For instance, in *Northern Telecom Ltd. v. Samsung Electronics Company,* 215 F.3d 1281, 1293-95 (Fed. Cir. 2000), the accused infringer relied on remarks made by the inventors to overcome a rejection as the basis for narrowing the broad language of the claims. Having independently considered the prosecution history, we viewed the inventors' statements as amenable to **multiple reasonable interpretations** and deemed the remarks so **ambiguous** that, "[l]ike the district court, we simply cannot tell." *Id.* at 1294. Since the prosecution statements were "far too slender a reed to support the judicial narrowing of a clear claim term," we declined to apply the doctrine of prosecution disclaimer under those circumstances. *Id.; see also Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1347 (Fed. Cir. 2001) (refusing to limit the ordinary meaning of the claim because the alleged disclaimer in the file wrapper was at best "inconclusive"); *Pall Corp. v. PTI Techs. Inc.,* 259 F.3d 1383, 1393-94 (Fed. Cir. 2001) (finding that the scope of disclaimer over the prior art reference was **ambiguous** and thus remanding for clarification), *vacated on other grounds,* 535 U.S. 1109 (2002); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1326-27 (Fed. Cir. 2001) (refusing to rely on **ambiguity** surrounding examiner's silence or patentee's lack of argument during prosecution to construe claim term); *Vanguard Prods. Corp. v. Parker Hannifin Corp.,* 234 F.3d 1370, 1372 (Fed. Cir. 2000) (refusing to narrow the asserted claim based on prosecution disclaimer because "the prosecution history does not support [the infringer]'s argument that the Vanguard inventors 'expressly disclaimed' claim scope beyond products made by co-extrusion"); *Serrano v. Telular Corp.,* 111 F.3d 1578, 1584 (Fed. Cir. 1997); *cf. Spectrum Int'l, Inc. v. Sterilite Corp.,* 164 F.3d 1372, 1378 (Fed. Cir. 1998) (noting that "explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim").

*Omega Eng'g., Inc. v. Raytek Corp*, 334 F.3d 1314, 1324 (Fed Cir. 2003) (emphasis added).

That Flexi-Mat agreed to the examiner's proposed additional limitation at most creates an ambiguity as to whether Flexi-Mat still contended that Henry had "separate" covers in distinction to its claims. Claim disavowal does not arise out of ambiguity.

Even assuming that there was some disavowal, the disavowal is not of the scope defendants argue. Flexi-Mat argued that its claims differed from Henry in that Henry taught to make separate complete covers and then connect these separate covers together. If there was a disavowal of claim coverage, its scope extends no farther than that argument. When questioned about the '502 prosecution history and Henry, even Defendants' own expert agreed that the disavowal was only to covers like Henry's that are complete and separate and then sewn together.

> Q. What do you mean by totally enclosed?
> A. It's surrounded, each one is surrounded by a piece of fabric; bolster one, bolster two and the cushion independently, they are surrounded by fabric. And **then they are sewn together, so that they become a product of Henry's patent**.
> . . . .
>
> Q. You don't believe he meant separate, meaning unattached?
> A. No.
> Q. Okay. Why? Why do you think that?
> A. Because your patent was, the inventor was trying to talk about one cover that enclosed both the bolster and the cushion.
> Q. Uh-huh.
> A. And Henry, he had to distinguish that Henry was separate entities put together, so that he could get around the Henry patent. Henry, it could be said --
> Q. Okay.
> A. -- it's a totally covered pet bed.
> Q. Okay.
> A. But until and unless he distinguishes that the cushions, the cushion is separated from the bolster with a separate, if you will, pocket, **that is closed and then they are sewn together**, that's the only way he can, he got around Henry in my view.

FM Infr. Ex. 6, p. 201, line 21 to p. 202, line 1; p. 203, lines 3-22 (emphasis added).

When the term "outer covering" is properly construed to ignore the "walled off compartments" limitation Defendants propose, Dallas' and Doskocil's infringement is not only apparent but admitted. Neither Dallas nor Doskocil makes two separate covers, one for the bolster and one for the bottom cushion, and then sews them together as taught by Henry. Dallas' and Doskocil's covers are both made of various pieces of material sewn together at a common seam to form a single cover with pockets for the bolster and cushion. FM Infr. Ex. 10, p. 27, line 1 to p. 28, line 11; FM Infr. Ex. 11, p. 133, lines 1-8; last photo in FM Infr. Ex. 4 (showing "unsewn" bolster cover). If Henry's covers were unsewn from each other, each cushion would remain fully enclosed within its respective cover. FM Infr. Ex. 5, col. 5, lines 49-50. If either Dallas' or Doskocil's alleged two separate "covers" were unsewn, their bolsters and bottom cushions would fall out of the outer covering because the seam in between the bolster and bottom cushion is what keeps them in the outer covering. See last photo in FM Infr. Ex. 4 (showing "unsewn"

8

bolster cover).  Neither Dallas' nor Doskocil's cover is like the cover Flexi-Mat argued was different from

the cover of the '502 patent.

Flexi-Mat did not disclaim coverage of outer coverings of the type used in Dallas' and Doskocil's

bolster beds.

**IV.    "Substantially All" of Dallas' and Doskocil's Bolster Is Disposed Exteriorly of the Bottom Portion.**

There is no dispute in this case that Doskocil's bolster bed meets the "substantially all" limitation.

As admitted by Doskocil's expert:

> Q.  In your opinion, is the bolster on the Doskocil bed,is substantially all of that bolster
>      disposed about the perimeter of the bottom portion of that bed?
> A.  Yes.

FM Infr. Ex. 6, p. 282, line 24 to p. 283, line 3.

Dallas' bolster beds also have bolsters "substantially all of [which are] disposed exteriorly about at

least a portion of the perimeter of the bottom portion."  Dallas argues that its pet bed does not satisfy the

"substantially all" limitation, because its bed is designed and constructed to have the bolster on top of the

bottom cushion.  FM Infr. Ex. 4 at pp. 14-15.  Such an argument ignores reality; regardless of how Dallas

claims its product was designed and constructed, substantially all of its bolster is disposed exteriorly to

the perimeter of the bottom cushion, as shown in Exhibit B of FM Infr. Ex. 3.

The "substantially all" limitation does not require that *all* of the bolster be exterior, or that a

significant portion be atop the bottom cushion.  If "substantially all" is exterior, then the amount remaining

on top need not be expressly quantified, and it should not be quantified because such an expression

would only confuse the meaning of the claim limitation.  Dallas' bed certainly is not like Henry's bed,

where all of the top cushion lies over the bottom cushion.  Compare Ex. B of FM Infr. Ex. 3 with Figs. 1

and 2 of FM Infr. Ex. 5.

Further, Dallas' pet beds are constructed so that if a pet were to lean on or against the bolster,

even more of the bolster would be exterior to the perimeter of the bottom portion.  If an accused product

infringes some of the time, it is an infringement even if it does not infringe all of the time. *Bell*

*Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)

("an accused product that sometimes, but not always, embodies a claimed [apparatus] nonetheless

infringes");  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("in determining whether a product claim is infringed, we have held that an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation");  and *Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998) ("Even assuming that [defendant] establishes that its [product] will not infringe under a particular set of controlled circumstances …, this has little bearing on whether its [product] will avoid infringement under other foreseeable operating conditions").  Defendants' expert concedes that if a pet leans on Dallas' bolster, as is expected and intended, the bolster "would move so that part of it leans over the side of the bottom cushion."  FM Infr. Ex. 4, pp. 14, 15.  Substantially all of the Dallas' bolster is "capable" of being disposed exteriorly of the bottom cushion and it is "foreseeable" that a pet will push against it.  If Dallas is arguing that it escapes infringement merely because the top of its bolster is higher vertically than the top of its bottom portion, that argument should be rejected.  Such a configuration is, in fact, what is shown in the figures of the '502 patent, and nothing in the claims limits the elevation of the bolster relative to the bottom portion.  See Fig. 2 of FM Infr. Ex. 1.

**V.      The "Disposed Within the Covering" Limitation of Claim 1 Is Not a Means-Plus-Function Limitation.**

Defendants contend that the following limitation of claim 1 is a means-plus-function limitation and that the accused bolster beds do not use the structure disclosed in the '502 patent for performing the alleged function:

> a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

FM Inf. Ex. 4, pp. 11-12, 15 (Dallas), p. 20 (Doskocil).

A "means-plus-function" limitation is one governed by 35 U.S.C. §112 ¶6.  The sixth paragraph of §112 states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

10

Whether or not a claim limitation is governed by §112 ¶6 is a question of claim construction and, therefore, a question of law for the Court to determine. *Phillips*, 363 F.3d 1207 at 1212 . Since the claim limitation argued by Dallas does not use the term "means," it is presumed that §112 ¶6 does not apply.

> It is well settled that "[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies. By contrast, a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply." *CCS Fitness,* 288 F.3d at 1369, 62 USPQ2d at 1664. "[T]he term 'means' is central to the analysis."

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003), citing *Personalized Media Communications v. Int'l Trade Comm'n,* 161 F.3d 696, 703 (Fed.Cir.1998).

To invoke the application of §112, ¶6, the limitation must use functional language, *i.e.*, it must recite a means for performing a function. The limitation Dallas argues is a means-plus-function limitation contains **no** functional language. A "bolster" is a structure, *i.e.*, a long, slender pillow, as the '502 Patent explains. FM Infr. Ex. 1, col. 2, line 4. The remaining language in the cited limitation, rather than recite any function for the claimed structure, simply describes that bolster structure in relation to other structures. The bolster:

1) must be "disposed within the interior of the [structure of the] outer covering";
2) "substantially all of said bolster [must be] disposed exteriorly about at least a portion of the perimeter of the [structure that is the] bottom portion" and
3) must not be "secured to the [structure that is the] removable cushion."

FM Infr. Ex. 1, col. 3, lines 38-46. There is no function claimed in the limitation. Consequently, it is not governed by §112 ¶6.

Defendants argue that claim 1 requires "the pet bed to perform the function of keeping the bolster 'disposed exteriorly about at least a portion of the perimeter of the bottom portion.'" FM Infr. Ex. 4 at p. 12. There is no language in claim 1 that requires any "means" to keep the bolster so disposed.

Even if one were to erroneously read this "means" limitation into claim 1, the claim would nonetheless be infringed by the accused products. As §112, ¶6 states, the limitation would cover the "corresponding structure, material, or acts described in the specification and equivalents thereof." The '502 patent teaches the use of "pockets," "straps" or "fasteners" to retain the bolster and bottom cushion in the claimed spatial relationship. FM Infr. Ex. 1, col. 2, lines 51-67.

As noted above, the outer covering of both accused beds have interior spaces, one for the bolster and one for the bottom cushion, that are separately accessible through their respective zippered

11

openings.  The defendants have made walled compartments or "pockets" for their bolster for "keeping the bolster 'disposed exteriorly about at least a portion of the perimeter of the bottom portion.'"  This is the same structure disclosed in the '502 patent.  That Defendants' pockets are walled off from each other distinguish them from the pockets of the '502 patent because they too retain the bolster and bottom cushion in the claimed spatial relationship.

CONCLUSION

The bolster beds manufactured and sold by both Dallas and Doskocil literally infringe claims 1-3 of the '502 patent.  Defendant BJ's sells those beds and, consequently, also infringes claims 1-3.

Defendants do not contest that many of the limitations of claims 1-3 are present in their bolster beds.  The following chart outlines the Defendants' arguments for non-infringement as set forth in their answers to Flexi-Mat's interrogatories.

| Claims 1-3 of the '502 Patent | The Dallas Bolster Bed | The Doskocil Bolster Bed |
|---|---|---|
| 1.        A pet bed comprising | *Admitted* | *Admitted* |
| an outer covering | | |
| a removable cushion disposed within the outer covering to form a cushioned bottom portion; and | *Admitted* | *Admitted* |
| a bolster removably disposed | *Admitted* | *Admitted* |
| within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | | |
| without being secured to the removable cushion. | *Admitted* | *Admitted* |
| 2.  a reclosable access opening | *Admitted* | *Admitted* |
| 3.  a zipper | *Admitted* | *Admitted* |

Only three infringement issues are presented.

1.   Does the claim term "outer covering" exclude covers that provide for separate interior spaces?

2.   Is the limitation of Claim 1 that requires that the bolster be disposed in the outer cover in a particular relationship with the bottom portion a means-plus-function limitation?  If so, do the accused bolster beds use the same or equivalent structure as that disclosed in the '502 patent to perform the limitation's function?

3.   Is "substantially all" of Dallas' bolster disposed about the exterior perimeter of the bottom portion?

These issues should each be resolved in Flexi-Mat's favor.  Flexi-Mat did not disclaim claim

coverage for pet beds using outer coverings that include walled-off interior spaces.  The outer coverings

of the accused beds are covered by Claims 1-3 of the '502 patent.  Substantially all of Dallas' bolster is

disposed as required by Claims 1-3 of the '502 patent.  Claims 1-3 do not include any means-plus

function limitations.  Consequently, both Dallas' and Doskocil's bolster beds infringe claims 1-3 and

summary judgment of infringement against BJ's, Dallas and Doskocil should be entered.


                                                            Respectfully submitted,

Dated: November 30, 2005                          /s  Michael Husmann
                                                            Michael Husmann
                                                            Larry L. Saret
                                                            Lisa C. Childs
                                                            Gretchen M. Hosty
                                                            Michael Best & Friedrich LLP
                                                            401 North Michigan Avenue, Suite 1900
                                                            Chicago, IL  60611
                                                            (312) 222-0800
                                                            (312) 222-0818 (fax)

                                                            Richard B. Myrus (BBO # 638793)
                                                            GOODWIN PROCTER LLP
                                                            Exchange Place
                                                            Boston, MA 02109
                                                            Telephone:  (617) 570-1058
                                                            Facsimile:  (617) 523-1231

                                                            Attorneys for Plaintiff
                                                            Flexi-Mat Corporation