# EXHIBIT 6

sf 11-3-05 amc.txt

```
0001
 1                 UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF MASSACHUSETTS
 3
 4     -------------------------------
 5     FLEXI-MAT CORPORATION, an     )  Civil Action No.
 6     Illinois corporation,         )  04 10162 DPW
 7                     PLAINTIFF,    )
 8          vs.                      )
 9     DALLAS MANUFACTURING COMPANY, )
10     INC., a Texas corporation;    )
11     BJ'S WHOLESALE CLUB, INC., a  )
12     Delaware corporation, and     )
13     DOSKOCIL MANUFACTURING COMPANY,)
14     INC., a Texas corporation,    )
15                     DEFENDANTS.   )  (Pages 285)
16     ------------------------------ )
17     AND RELATED COUNTERCLAIMS.    )
18     -------------------------------
19     VIDEOTAPED DEPOSITION OF:
20                     SUZANNE D. FESSLER
21                     THURSDAY, NOVEMBER 03, 2005
22                     9:19 A.M.
23     REPORTED BY:
24                     DONNIE A. STICKLEY
25                     C.S.R. 9510, R.P.R., R.M.R.
0002
 1             VIDEOTAPED DEPOSITION OF SUZANNE D.
 2     FESSLER, A WITNESS, TAKEN BY THE PLAINTIFF, ON
 3     THURSDAY, NOVEMBER 03, 2005, COMMENCING AT 9:19
 4     A.M., AT 333 SOUTH HOPE STREET, FORTY-SEVENTH FLOOR,
 5     LOS ANGELES, CALIFORNIA, BEFORE DONNIE A. STICKLEY,
 6     C.S.R. NO. 9510, R.P.R., R.M.R.
 7     APPEARANCES OF COUNSEL:
 8
 9          FOR THE PLAINTIFF:
10
11                  MICHAEL BEST & FRIEDRICH, LLP
12                  BY:  MICHAEL E. HUSMANN, ESQ.
13                  100 EAST WISCONSIN AVENUE
14                  SUITE 3300
15                  MILWAUKEE, WISCONSIN 53202-4108
16                  414.225.4972
17
18          FOR THE DEFENDANT DALLAS MANUFACTURING:
19
20                  SHEPPARD MILLIN RICHTER & HAMPTON, LLP
21                  BY:  DARREN M. FRANKLIN, ESQ.
22                  333 SOUTH HOPE STREET
23                  FORTY-EIGHTH FLOOR
24                  LOS ANGELES, CALIFORNIA 90071-1448
25                  213.617.5498
0003
 1     FURTHER APPEARANCES:
 2
 3          FOR THE DEFENDANT DOSKOCIL MANUFACTURING
 4     COMPANY:
 5
 6                  LOCKE, LIDDELL & SAPP, LLP
 7                  BY:  ROY W. HARDIN, ESQ.
 8                  2200 ROSS AVENUE
 9                  SUITE 2200
10                  DALLAS, TEXAS 75201-6776
```

Page 1

FM Infr. Ex. 6

sf 11-3-05 amc.txt

```
18          MR. HUSMANN:  Okay.
19   BY MR. HUSMANN:
20       Q.  If we look at Bates number DMC 000041.
21       A.  Actually, -40 was good, because it listed
22   everything that we were talking a minute ago.
23          Okay. - 41.
24       Q.  It's headed Remarks, I believe.
25       A.  Uh-huh.  Okay.
0200
1        Q.  And the discussion on Henry begins at the
2    bottom line of that --
3        A.  Yes.
4        Q.  -- Remarks section.
5        A.  Right, right.
6        Q.  And then it carries through the end of the
7    paragraph that's continued on to the following page,
8    correct?
9        A.  I believe I quoted all that.
10       Q.  Okay.  Well, your quote picks up "and Henry
11   suggests," correct, which is about the --
12       A.  "Henry suggests," yes.
13       Q.  -- fifth line on the second page --
14       A.  Okay.
15       Q.  -- correct?
16       A.  Yes.
17       Q.  Okay.
18          "...Henry suggests individual
19   liners for each cushion and requires
20   covers for the semi-circular cushions
21   14, 16 which are separate from the
22   cover" of the base cushion.
23          Correct?
24       A.  Yes.
25       Q.  What do you understand the applicant to be
0201
1    saying, when he says separate?
2          MR. FRANKLIN:  Objection; lack of
3    foundation.
4          THE WITNESS:  I think I asked and answered
5    that before.
6          They are totally enclosed with a piece of
7    fabric.  So you have to get into each one
8    separately.  You can't access all three covers in,
9    you know, and the bolsters and the cushions at the
10   same time.
11          MR. HUSMANN:  Would you read that back,
12   please.
13          (The record was read as follows:
14          They are totally enclosed with a
15   piece of fabric.  So you have to get
16   into each one separately.  You can't
17   access all three covers in, you know,
18   and the bolsters and the cushions at
19   the same time.)
20   BY MR. HUSMANN:
21       Q.  What do you mean by totally enclosed?
22       A.  It's surrounded, each one is surrounded by
23   a piece of fabric; bolster one, bolster two and the
24   cushion independently, they are surrounded by
25   fabric.  And then they are sewn together, so that
0202
1    they become a product of Henry's patent.
2        Q.  Okay.  "Separate" means "distinct from,"
```

Page 83

sf 11-3-05 amc.txt

3  does it not?
4       A.  Absolutely.
5       Q.  And if the cushions are attached to each
6  other, will they still be distinct from?
7            MR. FRANKLIN:  Objection; vague.
8            MR. HUSMANN:  I'm sorry.  You are right.
9  BY MR. HUSMANN:
10       Q.  If the covers for the cushions are separate
11  or attached to each other, would they still be
12  separate in your mind?
13            MR. FRANKLIN:  Same objection.
14            THE WITNESS:  If the bolsters are covered
15  and zipped, you have bolster one and bolster two
16  setting here.  Then you have the base cushion that
17  is covered and zipped.  And then you put all three
18  together.
19  BY MR. HUSMANN:
20       Q.  Yes.
21       A.  They are still separate.
22       Q.  Okay.
23       A.  Separately covered, separately covered.
24       Q.  And is that what you understand the
25  applicant to be saying, when he said separate?
0203
1       A.  Yes, that's what, that's what I believe
2  your --
3       Q.  You don't believe he meant separate,
4  meaning unattached?
5       A.  No.
6       Q.  Okay.  Why?  Why do you think that?
7       A.  Because your patent was, the inventor was
8  trying to talk about one cover that enclosed both
9  the bolster and the cushion.
10       Q.  Uh-huh.
11       A.  And Henry, he had to distinguish that Henry
12  was separate entities put together, so that he could
13  get around the Henry patent.  Henry, it could be
14  said --
15       Q.  Okay.
16       A.  -- it's a totally covered pet bed.
17       Q.  Okay.
18       A.  But until and unless he distinguishes that
19  the cushions, the cushion is separated from the
20  bolster with a separate, if you will, pocket, that
21  is closed and then they are sewn together, that's
22  the only way he can, he got around Henry in my view.
23            MR. HUSMANN:  Would you read that back.
24  That was a mouthful.  I want to listen to it again.
25  Thank you.
0204
1            (The record was read as follows:
2            But until and unless he
3       distinguishes that the cushions, the
4       cushion is separated from the bolster
5       with a separate, if you will, pocket,
6       that is closed and then they are sewn
7       together, that's the only way he can,
8       he got around Henry in my view. ).
9            MR. HUSMANN:  Okay.
10            MR. FRANKLIN:  Objection; the question
11  called for a legal conclusion.
12  BY MR. HUSMANN:
13       Q.  In which one, do you have open --
                                        Page 84

sf 11-3-05 amc.txt

```
17    doesn't state in it that there has to be any straps
18    or fasteners, does it?
19         A.  No, it does not.
20         Q.  So why does the lack of straps or fasteners
21    in the Dallas and Doskocil beds render them
22    non-infringing in your opinion?
23         A.  Well, we are still talking about the idea
24    of means and function of holding the bolster within
25    the outer cover.
0280
1         Q.  Okay.
2         A.  And if I read it right, and the way you are
3    informing me, that I should understand that straps
4    and fasteners are the way that your inventor
5    intended the '502 to be --
6         Q.  Uh-huh.
7         A.  -- okay, constructed, then I am just
8    pointing out here in this portion that the Dallas
9    bed and Doskocil do not have straps or fasteners.
10    They have other means of securing their bolsters
11    within their outer covering and other means to
12    secure their cushion in the outer covering.
13         Q.  What is the structure they use to so secure
14    their --
15         A.  Fabric enclosures.
16         Q.  -- fabric?
17         A.  Fabric covers.  They use independent covers
18    for the bolster and independent covers for the
19    cushions in both Doskocil and Dallas.
20         Q.  And that's the means they use to keep the
21    bolster secured?
22         A.  Correct.
23         Q.  Is it your opinion that the fact that the
24    beds to not have, the Dallas bed does not have
25    straps or fasteners means that that bed in your
0281
1    opinion does not infringe claims one, two or three
2    of the '502 patent?
3         A.  I think that's one of the essential
4    elements that controls your bolster in the '502
5    patent.  And, even though it's not stated, I think
6    it's implied that you have a means to secure your
7    bolster.
8            And I was trying to impress the fact that
9    ours does not have to use a means like that to
10    secure a bolster.
11         Q.  My question is, however:
12            Is it your opinion that the Dallas bed,
13    because it does not have a strap or fastener, does
14    not infringe claim one of the '502 patent?
15         A.  That's not the only reason it does not
16    infringe.
17         Q.  Is it one of the reasons?
18         A.  You can, you can say that it's one of the
19    reasons.
20         Q.  Okay.  In your opinion, a bed is that does
21    not use a strap or fastener, as shown in the '502
22    patent, would not infringe, is that correct?
23         A.  I'm not saying that it, that it, that,
24    because it doesn't have straps or fasteners, it
25    doesn't infringe.
0282
1         Q.  Okay.  You are not saying that?
```

                                    Page 116

sf 11-3-05 amc.txt

2       A.  I'm not saying that.
3       Q.  Okay.
4       A.  I'm just saying that it doesn't have straps
5   or fasteners.
6       Q.  Straps or fasteners.  Okay.
7           MR. HUSMANN:  Why don't we take a break and
8   let you go get that bed.
9           And I will look at my notes, because I
10  think I'm to the end.  I know it's hard to believe.
11  Okay?
12          Can we do that?
13          MR. FRANKLIN:  Yes.
14          MR. HUSMANN:  Okay.
15          THE VIDEOGRAPHER:  Let's go off the record
16  at 5:46.
17          (Recess taken.)
18          THE VIDEOGRAPHER:  Okay.  Let's go back on
19  the record at 5:59.
20  BY MR. HUSMANN:
21      Q.  Ms. Fessler, I want to ask you a question
22  or two about the Doskocil bed.
23      A.  Okay.
24      Q.  In your opinion, is the bolster on the
25  Doskocil bed, is substantially all of that bolster
0283
1   disposed about the perimeter of the bottom portion
2   of that bed?
3       A.  Yes.
4       Q.  Okay.
5           MR. HUSMANN:  Thank you.  I have no further
6   questions for you.
7           MR. FRANKLIN:  No questions for me.
8           THE VIDEOGRAPHER:  Okay.
9           MR. FRANKLIN:  This will conclude the
10  deposition of Suzanne Fessler.
11          THE VIDEOGRAPHER:  Okay.  Well, this
12  concludes the deposition of Suzanne Fessler, Volume
13  No. I.
14          The number of tapes used was four.  The
15  original videotapes will be retained by LegaLink -
16  Los Angeles at 16830 Ventura Boulevard, Encino,
17  California.
18          Going off of the record, the time is 6:00.
19              (WHEREUPON, AT 6:00 P.M.,
20              THE DEPOSITION OF SUZANNE D.
21              FESSLER WAS ADJOURNED.)
22
23
24
25
0284
1                   DECLARATION
2
3           I hereby declare I am the deponent in the
4   within matter; that I have read the foregoing
5   deposition and know the contents thereof, and I
6   declare that the same is true of my knowledge except
7   as to the matters which are therein stated upon my
8   information or belief, and as to those matters, I
9   believe it to be true.
10          I declare under the penalties of perjury
11  of the State of California that the foregoing is
12  true and correct.
                    Page 117

# EXHIBIT 7

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| AND RELATED COUNTERCLAIMS. | ) ) | |

## DEFENDANT DALLAS MANUFACTURING'S SUPPLEMENTAL RESPONSE TO PLAINTIFF FLEXI-MAT'S INTERROGATORY NO. 4 AND SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5

Pursuant to FED. R. CIV. P. 26(e) and 33, Defendant and Counter-Claimant Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") hereby objects and provides a supplemental response to Interrogatory No. 4 and a second supplemental response to Interrogatory No. 5 of *Plaintiff Flexi-Mat's First Set of Interrogatories to Defendant Dallas Manufacturing (Nos. 1-16)*, served by Plaintiff Flexi-Mat Corporation ("Flexi-Mat") on or about May 25, 2004.

## GENERAL OBJECTIONS

1.     Dallas Manufacturing objects to each interrogatory insofar as it is vague, overly broad, oppressive, harassing or vexatious; imposes burden or expense that outweighs its likely benefit; seeks a legal conclusion; and/or seeks information not relevant to a claim or defense of any party.

**FM Infr. Ex. 7**

-1-

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

seeks to impose upon Dallas Manufacturing an obligation to investigate or discover information from third parties or sources who are equally accessible to Flexi-Mat.

6.    In responding to these interrogatories, Dallas Manufacturing does not waive the foregoing objections or the specific objections that are set forth in response to particular interrogatories.  In addition, Dallas Manufacturing does not concede by responding that the information sought or provided is relevant to the subject matter of this action or admissible in trial or in any other proceeding in this action.  Dallas Manufacturing expressly reserves the right to object to further discovery into the subject matter of these interrogatories, to object to the introduction into evidence of any responses to any of these interrogatories, and to supplement its responses should further investigation and discovery uncover responsive information.

7.    Dallas Manufacturing's responses to Flexi-Mat's interrogatories are made to the best of its current employees' present knowledge, information and belief based upon reasonable investigation and inquiry.  The responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and are subject to such refreshing of recollection and such additional knowledge of facts as may result from further discovery or investigation.  Dallas Manufacturing reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to Flexi-Mat's interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information obtained in discovery herein.

## SPECIFIC OBJECTIONS AND RESPONSES
## TO FLEXI-MAT'S INTERROGATORIES

### INTERROGATORY NO. 4:

Identify in detail the factual basis for Dallas Manufacturing's affirmative defense that "[d]efendant Dallas Manufacturing has not infringed and does not infringe any valid claim

of the '502 patent, either literally or under the doctrine of equivalents," including but not limited to, the claimed elements or features allegedly missing from the "Berkeley & Jensen Premium Quality Bolster Pet Bed."

## RESPONSE TO INTERROGATORY NO. 4:

In addition to the grounds set forth in the General Objections, Dallas Manufacturing objects to this interrogatory on the following grounds:

Dallas Manufacturing objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against Dallas Manufacturing; (3) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) the claims of the '502 patent have not yet been interpreted by the Court.

Dallas Manufacturing objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the accused pet bed supplied to BJ's Wholesale Club, Inc. ("BJ's Wholesale Club") by Dallas Manufacturing that is identified in the *Complaint*.

Dallas Manufacturing objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed by the accused pet bed supplied to BJ's Wholesale Club by Dallas Manufacturing.

Dallas Manufacturing objects that this interrogatory seeks contention discovery on an issue as to which Flexi-Mat bears the burden of proof. Dallas Manufacturing is awaiting Flexi-Mat's answer directed to this issue.

-4-

Dallas Manufacturing objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, Dallas Manufacturing states that, as presently advised, it has not infringed, and does not infringe, any claims of the '502 patent. The accused Dallas Manufacturing pet bed lacks at least the following limitations of the independent claims:

Claim 1

1.    A bolster "disposed within the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster, "substantially all" of which is "disposed exteriorly about at least a portion of the perimeter of the bottom portion," as those phrases must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

Claim 4

1.    A bolster "removably affixed within the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

-5-

3.    A "plurality of straps secured to the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

Claim 7

1.    A bolster "removably secured to the interior of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3.    A removable cushion and bolster that are "separately removable from the outer covering interior through the reclosable access opening," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

Claim 9

1.    An outer covering "including a bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A bolster "removably affixed within the bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

-6-

3.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

4.    A "removably cushion and bolster" that are "separately removably from the outer covering interior through the reclosable access opening," as those phrases must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

5.    A "plurality of straps," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

Claim 11

1.    An outer covering "including a bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

2.    A reclosable access opening "through a bottom portion of the outer covering," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

3.    A bolster "removably affixed within the bolster pocket," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

4.    A "plurality of straps that are secured about the bolster," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

5.    A bolster "disposed about at least a portion of the perimeter of the bottom portion," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

6.    A removable cushion and bolster that are "separately removable from the outer covering interior through the reclosable access opening," as that phrase must be construed in view of the specification, prosecution history, patent claims, and other intrinsic and extrinsic evidence.

All of the remaining claims of the '502 patent depend, directly or indirectly, from independent claims 1, 4, 7, 9, or 11.  Therefore, Dallas Manufacturing does not infringe any of the remaining claims of the '502 patent for at least the reason that there can be no infringement unless an independent claim is infringed.  *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (holding that the absence of at least one limitation from an independent claim precludes a finding that any of its dependent claims are infringed).

Dallas Manufacturing reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against Dallas Manufacturing; (3) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) when the Court interprets the claims of the '502 patent.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

In addition to the facts set forth in the Response to Interrogatory No. 4 above, Dallas Manufacturing contends that the following recitations in the independent claims of the '502 patent are means-plus-function elements subject to the interpretation requirements of 35 U.S.C. § 112, sixth paragraph:

-8-

1.    Claim 1: "a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion."

2.    Claim 7: "a bolster removably secured to the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion."

3.    Claim 9: "a bolster removably affixed within the bolster pocket and disposed about at least a portion of the perimeter of the bottom portion."

Each of these elements is written in purely functional terms, without the recital of specific structure or material sufficient to perform the function of disposing the bolster in the prescribed position relative to the bottom portion. Without structure for disposing the bolster within the outer covering in the prescribed position, the bolster may be subject to movement within the outer covering from the prescribed position.

In accordance with section 112, paragraph 6, the corresponding structure for performing the function of disposing the bolster in the prescribed position relative to the bottom portion, is described in the specification as follows:

The bolster is held in place by a plurality of fasteners or straps 8. The straps 8 are preferably the well-known hook-and-loop fasteners, such as Velcro®, although other fasteners, such as ties or straps with snaps or buckles, would perform adequately in this application. The fasteners are sewn or otherwise secured to the interior of bolster pocket 10 in the outer covering 2.

(Col. 2, lines 61-67.)

DALLAS MANUFACTURING'S FURTHER SUPPL. RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

None of Dallas Manufacturing's pet beds use ties, straps, or equivalent structure to hold the bolsters in place relative to the base cushions. In the Dallas Manufacturing pet beds, the bolsters are enclosed within separate compartments formed by separate covers that are attached to the covers for the base cushions.

**INTERROGATORY NO. 5:**

Identify in detail the factual basis for Dallas Manufacturing's affirmative defense that "[e]ach and every claim of the '502 patent is invalid and/or unenforceable under one or more provisions of the Patent Laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112."

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the grounds set forth in the General Objections, Dallas Manufacturing objects to this interrogatory on the following grounds:

Dallas Manufacturing objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against Dallas Manufacturing; (3) Flexi-Mat has not provided any information concerning the dates of conception and reduction to practice of the claimed invention; (4) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (5) the claims of the '502 patent have not yet been interpreted by the Court.

Dallas Manufacturing objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed by the accused pet bed supplied to BJ's Wholesale Club, Inc. by Dallas Manufacturing that is identified in the *Complaint*.

-10-

3.    Claim 9: "a bolster removably affixed within the bolster pocket and disposed about at least a portion of the perimeter of the bottom portion."

Since each of these elements is written in purely functional terms, they are indefinite in the absence of specific structure or material sufficient to perform the function of disposing the bolster in the prescribed position relative to the bottom portion. *See* Supplemental Response to Interrogatory No. 4 above.

Attorneys for Defendant and Counter-Claimant
DALLAS MANUFACTURING COMPANY, INC.

*Darren M. Franklin (BC)*

Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
(213) 620-1780

Dated:  September 14, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA  02109-1775
(617) 535-4000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon Plaintiff's counsel, William Meunier, Esq. Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, and Larry L. Saret, Esq., Michael, Best & Friedrich LLP, 401 N. Michigan Avenue, Suite 1900, Chicago, Illinois 60611, via first class mail, postage pre-paid, on September 14, 2005.

I hereby certify that a true copy of the above document was also served upon counsel for Defendant Doskocil Manufacturing Company, Inc., Roy W. Hardin, Esq., Locke Liddell & Sapp LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776, via first class mail, postage pre-paid, on September 14, 2005.

_____
Darren M. Franklin

-33-

William Meunier, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Larry L. Saret, Esq.
Michael, Best & Friedrich LLP
401 N. Michigan Avenue, Suite 1900
Chicago, Illinois 60611

Roy W. Hardin, Esq.
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776

-34-

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

# EXHIBIT 8



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) | **DEFENDANT DOSKOCIL MANUFACTURING COMPANY, INC.'s** |
| Defendants. | ) ) ) | **SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES** |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | **TO PLAINTIFF FLEXI-MAT'S FIRST SET OF INTERROGATORIES** |
| Counter-Claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |

**FM Infr. Ex. 8**

Notwithstanding any disclosures herein, Doskocil expressly reserves the right to amend by addition or deletion the identification of prior art at any time.

Subject to and without waiving these objections, Doskocil answers by identifying the following: all patents, publications, and prior art identified or cited in the prosecution of the '502 patent, including U.S. Patent No. 5,010,843 to Henry entitled "Pet Bed." Doskocil further identifies the following United States Patents: (a) 655,087; (b) 2,408,382; (c) 3,566,423; (d) 3,902,456; (e) 4,872,228; (f) 4,873,734; (g) 5,455,973; (h) 4,754,513; (i) 2,032,248; (j) 5,586,350; (k) 5,109,559; (l) 5,421,044; (m) 5,588,393; and (n) 5,136,981. Doskocil further identifies the following foreign patent documents: (a) German patent (gebrauchsmuster) number 9,309,699; (b) Japanese patent publication number 07-051154; (c) European patent number 633,338; and (d) DE 3138463 (abstract).

**Interrogatory No. 3:**  Identify each person involved in any investigation, consideration, report, opinion, analysis or review of the validity, enforceability and/or infringement of the '502 patent.

**Doskocil's Objection and Response to Interrogatory No. 3:**  Doskocil objects to this Interrogatory to the extent it seeks information covered by the attorney-client or attorney work product privileges. Doskocil further objects to this Interrogatory as being vague and ambiguous with respect to the terms "investigation, consideration, report, opinion, analysis or review."

Subject to and without waiving these objections, Doskocil answers that Roy W. Hardin, Martin Korn, and M. Scott Fuller, attorneys in the firm Locke Liddell & Sapp, are the persons most involved in the analysis of the '502 patent.

**Interrogatory No. 4:**  Identify in detail the factual basis for Doskocil Manufacturing's affirmative defense that "[d]efendant Doskocil has not infringed and does not infringe any valid

claim of the '502 patent, either literally or under the doctrine of equivalents," including but not

limited to, the claimed elements or features allegedly missing from the "Berkeley & Jansen

Premium Quality Bolster Pet Bed."

**Doskocil's Objection and Response to Interrogatory No. 4**:   Doskocil objects to this

Interrogatory to the extent the claims at issue in this litigation have not been construed by the

Court as a matter of law, and Doskocil expressly reserves the right to amend its non-infringement

and invalidity arguments in accordance with the Court's construction.  Doskocil further objects

to this Interrogatory to the extent it seeks information covered by the attorney-client or attorney

work product privileges.

Subject to and without waiving these objections, Doskocil answers that the "Berkeley &

Jansen Premium Quality Bolster Pet Bed" does not infringe any claim of the '502 patent because,

at minimum: (a) it does not include "an outer covering" or any equivalent thereof; (b) it does not

have straps for affixing the bolster within the bolster pocket; and (c) the claims of the '502 patent

are invalid.


**Interrogatory No. 5**:    Identify in detail the factual basis for Doskocil Manufacturing's

affirmative defense that "[e]ach and every claim of the '502 patent is invalid and/or

unenforceable under one or more provisions of the Patent Laws of the United States, including,

without limitation, 35 U.S.C. §§ 101, 102, 103 and 112."

**Doskocil's Objection and Response to Interrogatory No. 5**:   Doskocil objects to this

Interrogatory as premature because discovery is incomplete.  Doskocil further objects to this

Interrogatory to the extent it calls for information covered by the attorney-client and/or attorney

work product privileges.

Subject to and without waiving these objections, Doskocil answers that the claims of the '502 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of at least the patents identified in response to Interrogatory No. 2. Doskocil further answers that its position with respect to at least claims 1, 2, 3, 7, and 8 of the '502 patent are set forth in the Request for Reexamination filed with the Patent and Trademark Office, a copy of which has been provided to Plaintiffs and to the Court.

**Interrogatory No. 6:** Identify in detail the factual basis for Doskocil Manufacturing's affirmative defense that "[b]y virtue of the arguments made during the prosecution of the application for the '502 patent in order to obtain allowance of the claims, and statements made in the '502 patent, Plaintiff Flexi-Mat is estopped from asserting a claim construction that would encompass any pet beds supplied, manufactured or sold by Defendant Doskocil Manufacturing," including but not limited to, an identification of each of the arguments referenced in this affirmative defense.

**Doskocil's Objection and Response to Interrogatory No. 6:** Doskocil objects to this Interrogatory to the extent it seeks information covered by the attorney-client or attorney work product privileges.

Subject to and without waiving these objections, Doskocil answers that the multiple statements made during prosecution of the '502 patent with respect to the teachings of U.S. Patent No. 5,010,843, as well as the prosecution amendments to the claims, prevent any coverage of a pet bed comprising two separate pockets for the cushion and bolster, respectively. Doskocil further answers that its position with respect to this Interrogatory is at least partially set forth in the Request for Reexamination filed with the Patent and Trademark Office, a copy of which has been provided to Plaintiffs and to the Court.

---

**Doskocil's Responses to First Interrogatories (Second Supplemental)**                    8

As to Objections,

_____

Roy W. Hardin
Martin Korn
M. Scott Fuller
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000
Fax: (214) 756-8800

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4000

Dated: ~~April~~ MAY 4 ___, 2005

As to Responses,

_____

For Doskocil Manufacturing Company, Inc.
VICE PRESIDENT & CFO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were caused to be served on the following by the manner indicated on ~~April~~ MAY 4 , 2005:

### By Facsimile and First Class Mail

William A. Meunier, Esq.,
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
Facsimile: (617) 523-1231

Larry L. Saret, Esq.
Manotti L. Jenkins, Esq.
Michael Best & Friedrich LLP
401 N. Michigan Avenue, Suite 1900
Chicago, IL 66011
Facsimile: (312) 222-0818

Darren M. Franklin
Gary A. Clark
Sheppard, Mullin, Richter & Hampton LLP
48th Floor
333 South Hope Street
Los Angeles, CA 90071-1448
Telephone: (213) 617-5498
Facsimile: (213) 620-1398

Attorneys for Defendant
Doskocil Manufacturing Company, Inc.

# EXHIBIT 9



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. 04 10162 DPW |

### BJ'S WHOLESALE CLUB'S JOINDER IN DALLAS MANUFACTURING'S RESPONSES AND OBJECTIONS TO FLEXI-MAT'S INTERROGATORY NOS. 2, 4, AND 5

Defendant and Counter-Claimant BJ's Wholesale Club, Inc. ("BJ's Wholesale Club") hereby joins in DEFENDANT DALLAS MANUFACTURING'S SUPPLEMENTAL RESPONSES TO PLAINTIFF FLEXI-MAT'S INTERROGATORY NOS. 2 AND 5 and in DEFENDANT DALLAS MANUFACTURING'S SUPPLEMENTAL RESPONSE TO PLAINTIFF FLEXI-MAT'S INTERROGATORY NO. 4 AND SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5.

Attorneys for Defendant and Counter-Claimant
BJ'S WHOLESALE CLUB, INC.

*Darren Franklin*

Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
(213) 620-1780

Dated: October 25, 2005

W02-LA:1DAF1\70887556.1                         -1-

**FM Infr. Ex. 9**

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109-1775
(617) 535-4000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiff's counsel, William Meunier, Esq. Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, and Larry L. Saret, Esq., Michael, Best & Friedrich LLP, 401 N. Michigan Avenue, Suite 1900, Chicago, Illinois 60611, via first class mail, postage pre-paid, on October 25, 2005.

I hereby certify that a true copy of the above document was also served upon counsel for Defendant Doskocil Manufacturing Company, Inc., Roy W. Hardin, Esq., Locke Liddell & Sapp LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776, via first class mail, postage pre-paid, on October 25, 2005.

Darren M. Franklin

# EXHIBIT 10

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Jesus Benavides   June 30, 2005

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
2

    FLEXI-MAT CORPORATION, an   )   CASE NO. 04 10162 DPW
3   Illinois corporation,       )
                                )
4        Plaintiff,             )
                                )
5   VS.                         )
                                )
6   DALLAS MANUFACTURING        )
    COMPANY, INC., a Texas      )
7   corporation, and BJ'S       )
    WHOLESALE CLUB, INC., a     )
8   Delaware corporation,       )
    DOSKOCIL MANUFACTURING      )
9   COMPANY, INC., a Texas      )
    corporation,                )
10                              )
         Defendants.            )
11

12   ------------------------------------------
              ORAL AND VIDEOTAPED DEPOSITION OF
                        JESUS BENAVIDES
13                       JUNE 30, 2005
     ------------------------------------------
14

15        ORAL AND VIDEOTAPED DEPOSITION OF JESUS
16   BENAVIDES, produced as a witness at the instance of the
17   Plaintiff, and duly sworn, was taken in the above-styled
18   and numbered cause on the 30th day of June, 2005, from
19   12:24 p.m. to 1:51 p.m., before Kimberly Byrns Buchanan,
20   CSR in and for the State of Texas, reported by machine
21   shorthand, at the offices of Hughes & Luce, LLP,
22   1717 Main Street, Suite 2900, Dallas, Texas 75201,
23   pursuant to the Federal Rules of Civil Procedure and the
24   provisions stated on the record or attached hereto.
25

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Jesus Benavides   June 30, 2005

Page 26

REDACTED

Page 28

1     A.   Uh-huh.
2     Q.   -- and the top piece for the cushion all in
3   one --
4     A.   All in one seam.
5     Q.   -- one swipe?
6     A.   Yes.
7     Q.   And why did you do it -- make it in that
8   manner?
9     A.   You know, all the times that I create beds, I
10  try to develop beds on -- on the saving part, you know,
11  how I can save in material.

REDACTED

Page 27

1     Q.   The -- the bottom cover for the -- the cushion
2   that's under -- that's on -- that sets on the bottom,
3   the base cushion, has the top which you call the berber?
4     A.   The berber.
5     Q.   And then there's a material underneath it?
6     A.   Yes.  The base -- we -- we call the bottom.
7     Q.   Okay.  And so you'd have those unsewn like
8   this?
9     A.   Uh-huh.
10    Q.   Okay.  And then you would have a bolster
11  that -- that was sewn in a couple places, but it too
12  would have two pieces if it came around, so it would be
13  like this, approximately, you know.  So you'd have two
14  pieces?
15    A.   Yes.  Bottom --
16    Q.   Okay.  And the top?
17    A.   -- top --
18    Q.   Okay.
19    A.   -- bolster in the middle.
20    Q.   Right.  Okay.
21    A.   So we only sew on the edge.
22    Q.   All right.  So you make one stitch?
23    A.   Exactly.
24    Q.   And you'll be sewing the bottom material for
25  the base cushion and the two pieces for the bolster --

Page 29

REDACTED

8 (Pages 26 to 29)

# EXHIBIT 11

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Neil Nivert    June 29, 2005

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
 2
      FLEXI-MAT CORPORATION, an   )   CASE NO. 04 10162 DPW
 3    Illinois corporation,       )
                                  )
 4       Plaintiff,               )
                                  )
 5    VS.                         )
                                  )
 6    DALLAS MANUFACTURING        )
      COMPANY, INC., a Texas      )
 7    corporation, and BJ'S       )
      WHOLESALE CLUB, INC., a     )
 8    Delaware corporation,       )
      DOSKOCIL MANUFACTURING      )
 9    COMPANY, INC., a Texas      )
      corporation,                )
10                                )
         Defendants.              )
11
12          ----------------------------------------
                ORAL AND VIDEOTAPED DEPOSITION OF
13                        NEIL NIVERT
                        JUNE 29, 2004
14          ----------------------------------------
15       ORAL AND VIDEOTAPED DEPOSITION OF NEIL NIVERT,
16    produced as a witness at the instance of the Plaintiff,
17    and duly sworn, was taken in the above-styled and
18    numbered cause on the 29th day of June, 2005, from
19    10:06 a.m. to 2:36 p.m., before Kimberly Byrns Buchanan,
20    CSR in and for the State of Texas, reported by machine
21    shorthand, at the offices of Hughes & Luce, LLP,
22    1717 Main Street, Suite 2900, Dallas, Texas 75201,
23    pursuant to the Federal Rules of Civil Procedure and the
24    provisions stated on the record or attached hereto.
25
```

CONFIDENTIAL  - ATTORNEYS' EYES ONLY
Neil Nivert    June 29, 2005

Page 130

```
1
2
3
4
5
6
7
8
9
10
11        REDACTED
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 132

```
1
2
3
4
5
6
7
8
9
10
11        REDACTED
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 131

```
1
2
3
4
5
6
7
8
9         REDACTED
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 133

```
1     A.  Save costs.
2     Q.  So the way you manufactured the cover was to
3  make the cover first and then stuff it, rather than make
4  a separate cover for the bolster, stuff it, make a
5  separate cover for the bottom cushion, stuff it, and sew
6  the two together.  Correct?
7     A.  The way we constructed it was to make the
8  entire cover together.
9
10
11
12
13
14
15
16        REDACTED
17
18
19
20
21
22
23
24
25
```

34 (Pages 130 to 133)