**EXPERT REPORT OF SUZANNE FESSLER**
**RE: INFRINGEMENT ISSUES FOR U.S. PATENT NO. 5,765,502**

## I.

## <u>INTRODUCTION</u>

I have been retained by the law firms of Sheppard, Mullin, Richter & Hampton LLP and Locke, Liddell & Sapp LLP to serve as an expert witness on behalf of Dallas Manufacturing Company, Inc., Doskocil Manufacturing Company, Inc., and BJ's Wholesale Club, Inc. I have been asked as an expert witness to analyze the disclosure and prosecution history of U.S. Patent No. 5,765,502 ("the '502 patent") and address issues relating to infringement or non-infringement of the '502 patent by certain pet beds sold by Dallas Manufacturing, Doskocil, and BJ's Wholesale Club. I am informed that the '502 patent is assigned to Flexi-Mat Corporation, as shown on the face of the patent. I have no past or present affiliation with any of these entities or with anyone associated with them to the best of my knowledge.

This report discusses the '502 patent and whether the inventions set forth in claims 1-3 of the '502 patent are infringed by seven specific beds sold by Dallas Manufacturing, Doskocil, and BJ's Wholesale Club. I understand that claims 1-3 are the only claims of the '502 patent that Flexi-Mat asserts are infringed by pet beds sold by Dallas Manufacturing, Doskocil, and BJ's Wholesale Club. In this report, I will refer to these claims and pet beds as the "asserted claims" and the "accused pet beds," respectively. All issues relating to whether the accused pet beds infringe the asserted claims will be addressed in this report. I conclude that none of the accused pet beds infringe any of claims 1-3 of the '502 patent.

# II.

## LEGAL STANDARDS

I am informed that the legal analysis of patent infringement involves two steps; first, the claims at issue must be construed; and second, the claims as construed are compared to the accused products. Claims are construed as a matter of law by assigning the ordinary and customary meaning of each term as would be understood by one of ordinary skill in the art. The claims are construed in view of the written specification, the drawings, and the prosecution history.

### Level of Ordinary Skill

The law regarding level of ordinary skill is discussed in my expert report concerning validity issues for the '502 patent, which is incorporated by reference.

### Claim Interpretation

The law regarding claim interpretation is discussed in my expert report concerning validity issues for the '502 patent, which is incorporated by reference.

### Infringement

I am informed that the second step of the infringement analysis is as follows: Once the claim language is interpreted, the accused product is compared to the claims to determine infringement. There are two types of infringement: literal infringement and infringement under the doctrine of equivalents.

I am informed that literal infringement of a claim requires that the accused device or process include each element of the claim exactly as claimed. For claim

elements in the "means-plus-function" format, the structures in the accused product must perform the identical function specified in the claim and the structures must be the same as or equivalent to the corresponding structures in the patent specification.

I am informed that if a claim element is not found directly in the accused product, infringement may still be established under the doctrine of equivalents if the accused product has a structure that is equivalent to the claim element. The structure of the accused product is equivalent to the claim element if the differences are insubstantial. Equivalence may be established under the doctrine of equivalents by showing that the structure of the accused product performs substantially the same function, in substantially the same way, to produce the same result as the claim element of the patented invention.

I am informed that the doctrine of equivalents is tempered by the doctrine of prosecution history estoppel. This estoppel potentially arises from amendment or cancellation of claims and arguments or representations made to the United States Patent and Trademark Office before the application issued as a patent. Where the applicant surrendered an equivalent product or process during prosecution history, the patentee is estopped from asserting infringement based on that equivalence.

I am informed that each claim is a definition of the invention. When the claim is stated as a full self-contained sentence without reference to elements stated elsewhere, the claim is "independent." When a claim expressly refers to another claim, the claim is "dependent." The dependent claim includes and requires all the elements recited in the claim itself as well as all the elements of the independent claim and any

intervening claims from which it depends.  As such, a dependent claim cannot be infringed unless the claim from which it depends is infringed.

## III.

## PERSON OF ORDINARY SKILL IN THE ART FOR THE '502 PATENT

My opinions regarding a person of ordinary skill in the art for the '502 patent are discussed in my expert report concerning validity issues for the '502 patent, which is incorporated by reference.

## IV.

## CLAIMS 1-3 OF U.S. PATENT NO. 5,765,502

Claims 1-3 of the '502 patent read as follows:

1.  A pet bed comprising:

an outer covering;

a removable cushion disposed within the outer covering to form a cushioned bottom portion; and

a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

2.  The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening.

3.  The pet bed of claim 2, wherein the reclosable access opening further includes a zipper.

('502 patent, col. 3, lines 37-46.)

## V.

## CLAIM CONSTRUCTION ISSUES

I understand that it is the Court that construes the claims of the patent. I understand that the Court first looks at the claims, specification, and prosecution history of the patent to construe the claims, and then considers extrinsic evidence if the claims remain ambiguous. Based on my reading of the patent claims, specification, prosecution history, and relevant extrinsic evidence, my understanding of the '502 patent is as follows:

**A.     "[D]isposed within the interior of the outer covering."**

I believe that this limitation, and in particular the reference to "the interior" in the singular, would indicate to one of ordinary skill that the claimed pet bed has just one interior space. In other words, the limitation does not read on an outer covering with multiple interior spaces or compartments that are walled off from one another. The claim would be indefinite if it allowed for multiple interior spaces, because then it would be unclear in which "interior" the bolster is disposed.

Moreover, each of the embodiments disclosed in the '502 specification shows just one interior space. The text of the specification also discloses just one access opening. (*See* '502 patent, col. 3, lines 9-14 ("[T]he bolster **6** is easily removable by the simple expedient of unzipping the zipper **7** on the bottom of the pet bed **1**, disengaging the straps **8**, and withdrawing the bolster through the reclosable access opening **11** that is sealed by the zipper **7**. The bottom cushion **4** can also be withdrawn in the same way.").)

Furthermore, the prosecution history for the '502 patent indicates that there is only one interior space. The prosecution history shows that the '502 patent was allowed following an amendment after the first office action. In the office action, the examiner rejected claims 1-3 as anticipated by U.S. Patent No. 5,010,843 to Beth Henry (the "Henry patent").

The Henry patent discloses a pet bed comprising "a pair of semi-circular cushions connected along their circumferential perimeters to a circular cushion having substantially the same radius as the semi-circular cushions." (Henry patent, Abstract.) Figure 5 of the Henry patent resembles the accused beds, except that it has two cushions or bolsters atop the bottom circular cushion instead of one. In the figure, **12** is a circular base cushion and **14** and **16** are top cushions. In rejecting claims 1-3 of the '502 patent, the examiner cited the embodiment in Figure 5 of the Henry patent with the two bolster cushions.

In response to the examiner's rejection, Flexi-Mat amended the bolster element of claim 1 as follows:

> . . . a bolster removably [affixed] <u>disposed</u> within the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion <u>without being secured to the removable cushion.</u>

Underlined words were added, while words in brackets were deleted. In its remarks accompanying the amendment, Flexi-Mat distinguished the Henry patent on the grounds that:

> <u>Henry</u> suggests individual liners for each cushion and requires covers for the semi-circular cushions 14, 16 which

are separate from the cover for the base cushion. See Col.
2, lines 44-50. These separate liners and covers add
manufacturing cost for material and assembly time. In
addition, Henry has a concern for exposed connections
between the semi-circular cushions and the base cushion,
which is not a concern with the present invention because a
single cover encompasses both cushions. Henry does not
suggest a single cover for all of the cushions, and it would
be difficult to design such a cover and assemble such a bed
using the interconnected cushions of Henry.

In short, the '502 patent can't include beds with separate covers (or separate interior
spaces) for the bolster and bottom cushion.

I am informed that explicit statements made by a patent applicant during
prosecution to distinguish a claimed invention over prior art may serve to narrow the
scope of a claim. Because Flexi-Mat distinguished its invention over the Henry patent on
the ground that "a single cover encompasses both cushions," the word "interior" should
be construed to mean the one compartment or space formed by a single covering.

I am also informed that arguments made during prosecution may give rise
to what is known as "prosecution history estoppel" if they show a surrender of subject
matter. Because Flexi-Mat distinguished the Henry patent's two-cover design, I
understand that Flexi-Mat may not argue that two coverings are equivalent to one
covering under the doctrine of equivalents.

Furthermore, if a person were to construe the limitation "disposed within
the interior of the outer covering" as allowing for two interior spaces, claim 1 would be
invalid for the reasons discussed in my expert report regarding validity issues for the '502
patent.

**B.**   **"[S]ubstantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion."**

I believe that this limitation would indicate to one of ordinary skill that substantially all of the bolster is disposed on the sides of or surrounding the perimeter of the bottom portion. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000).[1]  A significant amount of the bolster cannot be on top of the bottom cushion because then it would be within the perimeter of the cushion.

This construction is supported by the definition of "exterior" as meaning "outer" or "external." *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000).[2]  Thus, substantially all of the bolster must be disposed externally about or outside at least a portion of the perimeter of the bottom portion, which is inconsistent with the bolster being on top of the bottom portion.  A significant amount

---

[1] The American Heritage Dictionary of the English Language defines the preposition "about" as follows:

1. On all sides of; surrounding: *I found an English garden all about me.*
2. In the vicinity of; around: *explored the rivers and streams about the estate.*
3. Almost the same as; close to; near.
4.
   a. In reference to; relating to; concerned with: *a book about snakes.*
   b. In the act or process of: *While you're about it, please clean your room.*
5. In the possession or innate character of: *Keep your wits about you.*

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000), available at http://www.yourdictionary.com/ahd/a/a0021300.html.

[2] The American Heritage Dictionary of the English Language defines the adjective "exterior" as follows:

1. Outer; external: *the exterior door.*
2. Originating or acting from the outside: *exterior influences on the negotiations.*
3. Suitable for use outside: *an exterior paint.*

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000), available at http://www.yourdictionary.com/ahd/e/e0296200.html.

of the bolster cannot be on top of the bottom cushion because then it would be disposed

internally within or inside the perimeter of the cushion.

Moreover, each of the embodiments disclosed in the '502 patent

specification shows the bolster on the sides of or surrounding the perimeter of the bottom

cushion, not on top of the cushion.

Furthermore, the prosecution history for the '502 patent indicates that the

bolster must be on the sides of or surrounding the perimeter of the bottom cushion, not on

top of the cushion.  After Flexi-Mat amended the bolster element of claim 1, as discussed

above, the examiner held a telephone interview with Flexi-Mat's patent attorney.

According to the Interview Summary, "[a]dditional language was discussed to insure that

claim 1 read over the prior art patent to Henry."  As a result, claim 1 was amended as

follows:

> . . . a bolster removably disposed within the interior of the
> outer covering and <u>substantially all of said bolster</u> disposed
> <u>exteriorly</u> about at least a portion of the perimeter of the
> bottom portion without being secured to the removable
> cushion.

The examiner released Flexi-Mat from having to provide a record of the interview.  After

the amendment, claims 1 through 11 were allowed.

The Henry patent shows the top cushions or bolsters atop the bottom

circular cushion, not on the sides of or surrounding the bottom cushion.  Thus, the words

"substantially all of said bolster" and "exteriorly" must have been added to ensure that

claim 1 did not read on a bed in which a significant amount of the bolster was on top of

the bottom cushion.  Because Flexi-Mat added these words to distinguish its invention

over the Henry patent, these words should be construed to read on only a bed in which substantially all of the bolster is disposed on the sides of or surrounding the perimeter of the bottom portion.

Moreover, I believe that Flexi-Mat may not argue that claim 1 encompasses a pet bed in which the bolster is attached to the top of the bottom cushion, but a significant amount of the bolster flops over the perimeter of the bottom portion. First, the specification of the Henry patent states that "the top cushions can extend beyond the edges of the base cushion 12." (Henry patent, col. 3, lines 18-19.) Thus, in order to distinguish over Henry, the words "substantially all of said bolster" and "exteriorly" should be construed not to read on a bed in which the bolster flops over the perimeter of the bottom cushion.

Second, the Henry specification states that the cushions may be "filled with any suitable cushion material, for example, layers of plastic foam or resilient foam particles, semi-rigid or rigid beading, cloth filler, and the like." (Henry patent, col. 2, lines 44-47.) A bed filled with foam, beads, or cloth can be deformed, fluffed, or plumped up so that its shape changes. Hence, it was foreseeable that someone might design a pet bed in which the bolster is attached to the top of the bottom cushion, but a significant amount of the bolster flops over the perimeter of the bottom portion. Flexi-Mat has given away the right to claim this subject matter.

Third, I believe it would render claim 1 indefinite if infringement depended on how the bed was deformed or distorted during use. A bed filled with foam, beads, or cloth is inherently malleable and pliable. If infringement depends on how the

bed happens to be used, then a bed could be infringing at one moment and non-infringing the next.

Fourth, the '502 bolster must be disposed on the ground about the perimeter of the bottom cushion, and not on top, because the '502 specification won't allow it any other way. The specification states, "Since the bolster **6** is more cylindrical or banana-shaped than flat, and more like a pillow than a wall, the bolster **6** tends to retain its shape even when used as a pillow by the pet, and does not easily collapse from the weight of the pet as in some prior art products." ('502 patent, col. 2, lines 56-60; *see also* '502 patent, col. 1, lines 24-26 (discussing prior art beds: "The wall tends to collapse under the weight of heavier animals unless it is made of material so rigid that it is uncomfortable for lighter animals.").) In my opinion, a pet bed in which the bolster flops or collapses over the perimeter of the bottom portion can't infringe claim 1 of the '502 patent because the specification admits that such a bed is part of the prior art.

Finally, construing claim 1 to encompass a floppy, top-attached bolster would render the '502 patent invalid for the reasons discussed in my expert report regarding validity issues for the '502 patent.

## C.    Means-plus-function issues.

Claim 1 of the '502 patent does not set forth any structure for holding the bolster in place so that it is "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." Claim 1 fails to state how the patented pet bed ensures that the bolster remains disposed beside the bottom cushion, as required by the claim.

On looking at the pictures in the patent and reviewing the patent embodiments, it is clear that the inventor intended to secure the bolster to the outer covering with a series of straps and/or fasteners.  The '502 patent states:

> The bolster is held in place by a plurality of fasteners or straps 8.  The straps 8 are preferably the well-known hook-and-loop fasteners, such as Velcro®, although other fasteners, such as ties or straps with snaps or buckles, would perform adequately in this application.  The fasteners are sewn or otherwise secured to the interior of the bolster pocket 10 and the outer covering 2.

('502 patent, col. 2, lines 61-67.)

Without the fasteners or straps 8, it is my opinion that the bolster would be loosely floating within the outer covering.  The bolster could move around within the outer covering so that it would be no longer "disposed exteriorly about at least a portion of the perimeter of the bottom portion."  The fasteners or straps 8 are the only means disclosed in the patent to keep the bolster in the required position with respect to the bottom cushion.

In my opinion, claim 1 requires the pet bed to perform the function of keeping the bolster "disposed exteriorly about at least a portion of the perimeter of the bottom portion," but fails disclose or explain how this is done or accomplished.  This is because claim 1 does not disclose any straps, fasteners, or other means for keeping the bolster in place.

I am informed that, when a claim element is expressed in terms of a function performed without reciting structure or acts to do so, the claim element is called a "means-plus-function" element and covers the structure disclosed in the specification

that performs the function, which is defined in the claim, and structures equivalent to those disclosed structures. As written, claim 1 of the '502 patent does not disclose the structure for keeping the bolster "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." On looking at the pictures and reviewing the patent embodiments, it becomes clear that the inventor intended to secure the bolster in place with a series of straps and fasteners.

Straps and fasteners are the only structures disclosed in the '502 patent for holding the bolster in place so that it is "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." Specifically, the '502 patent states, "The bolster is held in place by a plurality of fasteners or straps 8. The straps 8 are preferably the well-known hook-and-loop fasteners, such as Velcro®, although other fasteners, such as ties or straps with snaps or buckles, would perform adequately in this application." ('502 patent, col. 2, lines 62-65.) The '502 patent requires the straps 8 to hold the bolster in place within the outer covering; otherwise, the bolster would move, meander, wander, and/or float out of position.

## VI.

### NON-INFRINGEMENT ISSUES

A.     **Dallas Manufacturing Bolster Pet Bed Sold at BJ's Wholesale Club, Deposition Exhibit No. 2B ("BJ's Bed by Dallas Manufacturing")**

<u>Claim 1</u>

The bolster of the BJ's bed by Dallas Manufacturing is not "disposed within the interior of the outer covering," as that phrase must be construed under the '502 patent specification and prosecution history. Also, "substantially all of said bolster" is

not "disposed exteriorly about at least a portion of the perimeter of the bottom portion,"
as those phrases must be construed under the intrinsic evidence.

**"[D]isposed within the interior of the outer covering"**:  The bolster of the
BJ's bed by Dallas Manufacturing has a covering that is separate from the bottom
cushion.  In other words, the bed has two coverings, and the bolster is situated in its own
separate compartment.  The bolster is completely partitioned off from the bottom
cushion.  The two coverings are sewn together, but sewing does not turn two coverings
into one, as Flexi-Mat's remarks concerning the Henry patent show.  The construction of
the BJ's bed by Dallas Manufacturing is completely different than the one piece outer
covering disclosed in the '502 patent.

As discussed above, claim 1 refers to one interior of one outer covering in
which both the bottom cushion and bolster are disposed.  The BJ's bed by Dallas
Manufacturing cannot literally infringe this claim because it has two interiors and two
outer coverings, one for the bottom cushion and one for the bolster.  The bed cannot
infringe under the doctrine of equivalents because Flexi-Mat surrendered the subject
matter of a two-covering, two-interior bed during prosecution.

**"[S]ubstantially all of said bolster disposed exteriorly about at least a
portion of the perimeter of the bottom portion"**:  The bolster of the BJ's bed by Dallas
Manufacturing is set on top of the bottom cushion and is <u>not</u> "disposed exteriorly about
the perimeter."  The bed is designed and constructed to have the bolster on top of the
bottom cushion by use of a side fabric gusset.  By virtue of the fabric gusset, the bolster
cannot slide down to the side or over the perimeter of the bottom cushion.  Although a

person or pet could push the bolster so that part of it leans over the side of the bottom cushion, at no time does substantially all of the bolster lean over the side of the bottom cushion. One benefit of the top-situated bolster on the BJ's bed by Dallas Manufacturing is that it gives more protection for the pet, by insuring that the pet's body is not making contact with the floor or other hard surface under the pet bed. For all these reasons, the BJ's bed by Dallas Manufacturing does not infringe claim 1 of the '502 patent either literally or under the doctrine of equivalents.

In preparing this expert report, I examined a BJ's bed by Dallas Manufacturing that did not have the covering for the bolster cushion sewn onto the covering for the bottom cushion. Photographs of this bed are attached to this expert report as Exhibit A. A black line was drawn on top of the covering for the bottom cushion where the bolster covering would normally be sewn on. This bed further confirms that the bolster of the BJ's bed by Dallas Manufacturing is set on top of the bottom cushion and is <u>not</u> "disposed exteriorly about the perimeter."

***Lack of straps, fasteners or equivalent structure***: The BJ's bed by Dallas Manufacturing has no straps, fasteners, or equivalent structure for holding the bolster in place so that it is "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." For this additional reason, the bed does not infringe claim 1 of the '502 patent either literally or under the doctrine of equivalents.

**Claim 2**

I am informed that there can be no infringement of a dependent claim unless the corresponding independent claim is infringed. Because the BJ's bed by Dallas Manufacturing does not infringe claim 1 of the '502 patent, it also does not infringe claim 2 of the '502 patent.

**Claim 3**

Because the BJ's bed by Dallas Manufacturing does not infringe claims 1 and 2 of the '502 patent, it also does not infringe claim 3 of the '502 patent.

**B.    Dallas Manufacturing Bolster Pet Bed Sold by Bass Pro, Deposition Exhibit No. 2E ("Bass Pro Bed")**

The Bass Pro bed appears to have the same construction as the BJ's bed by Dallas Manufacturing. The only difference appears to be that the Bass Pro bed is missing the "Berkeley & Jensen" embroidery. This difference is not relevant to the '502 patent. For the same reasons that the BJ's bed by Dallas Manufacturing does not infringe claims 1-3 of the '502 patent, the Bass Pro bed does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

**C.    Dallas Manufacturing Bolster Pet Bed Sold at Sam's Club, Deposition Exhibit No. 2D ("Sam's Club Bed")**

The Sam's Club bed appears to have the same construction as the BJ's bed by Dallas Manufacturing. The only differences appear to be that the Sam's Club bed is missing the "Berkeley & Jensen" embroidery. Also, the Sam's Club bed has a different fabric than the BJ's bed by Dallas Manufacturing. These differences are not relevant to the '502 patent. For the same reasons that the BJ's bed by Dallas Manufacturing does not

infringe claims 1-3 of the '502 patent, the Sam's Club bed does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

**D.    Dallas Manufacturing Bolster Pet Bed Sold at Big Lots, Deposition Exhibit No. 2C ("Big Lots Bed")**

The Big Lots bed appears to have the same construction as the BJ's bed by Dallas Manufacturing, except that the Big Lots bed is proportionately smaller. The only other difference appears to be that the Big Lots bed is missing the "Berkeley & Jensen" embroidery. These differences are not relevant to the '502 patent. In particular, although a person or pet could push the bolster of the Big Lots bed so that part of it leans over the side of the bottom cushion, at no time does substantially all of the bolster lean over the side of the bottom cushion. For the same reasons that the BJ's bed by Dallas Manufacturing does not infringe claims 1-3 of the '502 patent, the Big Lots bed does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

Drawings that accurately depict the BJ's bed by Dallas Manufacturing, Bass Pro bed, Sam's Club bed, and Big Lots bed are attached to this expert report as Exhibit B. Figure 1 is a top plan view of any of these beds. Figure 2 is a perspective view of any of these beds. Figure 3 is a bottom plan view of any of these beds. Figure 4 is a bottom view of any of these beds, with a portion of the covering for the bottom cushion cut away. Figure 5 is an exploded view of any of these beds. Figure 6 is a front view of any of these beds. Figure 7 is a right side view of any of these beds. Figure 8 is a left side view of any of these beds.

E.    **Dallas Manufacturing Bolster Pet Bed Sold at Costco, Deposition Exhibit No. 2F ("Costco Bed")**

The Costco bed appears to have mostly the same construction as the BJ's bed by Dallas Manufacturing. One difference appears to be that the Costco bed is missing the "Berkeley & Jensen" embroidery. Also, the Costco bed has a different fabric than the BJ's bed by Dallas Manufacturing.

The Costco bed also has an inside zipper opening that allows for removal of the top bolster from its separate enclosure. This zipper can be reached only after opening the zipper to the compartment for the bottom cushion. Because the inside zipper opening sections off the bolster compartment, the bolster of the Costco bed is enclosed in a covering that is separate from the bottom cushion. The bolster is completely partitioned off from the bottom cushion. The coverings for the bottom cushion compartment and bolster compartment are sewn together, but again sewing does not turn two coverings into one, as Flexi-Mat's remarks concerning the Henry patent show.

Claim 1 refers to one interior of one outer covering in which both the bottom cushion and bolster are disposed. The Costco bed cannot literally infringe this claim because it has two interiors and two outer coverings, one for the bottom cushion and one for the bolster. The bed cannot infringe under the doctrine of equivalents because Flexi-Mat surrendered the subject matter of a two-covering, two-interior bed during prosecution.

The bolster for the Costco bed is set on top of the bottom cushion and is not "disposed exteriorly about the perimeter." The bed also has no straps, fasteners, or equivalent structure for holding the bolster in place so that it is "disposed exteriorly about

at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." Thus, for the same reasons that the BJ's bed by Dallas Manufacturing does not infringe claims 1-3 of the '502 patent, the Costco bed does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

The drawings in Exhibit B accurately depict the Costco bed, except for the zipper attached to the bolster covering in Figures 2-5, 7, and 8.

**F.    Doskocil Bolster Pet Bed Sold at BJ's Wholesale Club ("Doskocil Bed")**

The Doskocil bed appears to have a somewhat different construction than the BJ's bed by Dallas Manufacturing. This construction also does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

*"[D]isposed within the interior of the outer covering"*: The bolster of the Doskocil bed has a covering that is separate from the bottom cushion. In other words, the bed has two coverings, and the bolster is situated in its own separate compartment. This separate fabric covering is attached to the bottom cushion covering along the knife seam edge of the bottom cushion covering. The bolster is completely partitioned off from the bottom cushion. The two coverings are sewn together, but sewing does not turn two coverings into one, as Flexi-Mat's remarks concerning the Henry patent show. The construction of the Doskocil bed is completely different than the one piece outer covering disclosed in the '502 patent.

As discussed above, claim 1 refers to one interior of one outer covering in which both the bottom cushion and bolster are disposed. The Doskocil bed cannot literally infringe this claim because it has two interiors and two outer coverings, one for

-19-

the bottom cushion and one for the bolster. The bed cannot infringe under the doctrine of equivalents because Flexi-Mat surrendered the subject matter of a two-covering, two-interior bed during prosecution.

*Lack of straps, fasteners or equivalent structure*: The Doskocil bed has no straps, fasteners, or equivalent structure for holding the bolster in place so that it is "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." For this additional reason, the bed does not infringe claim 1 of the '502 patent either literally or under the doctrine of equivalents.

## Claim 2

I am informed that there can be no infringement of a dependent claim unless the corresponding independent claim is infringed. Because the Doskocil bed does not infringe claim 1 of the '502 patent, it also does not infringe claim 2 of the '502 patent.

## Claim 3

Because the Doskocil bed does not infringe claims 1 and 2 of the '502 patent, it also does not infringe claim 3 of the '502 patent.

**G.    Doskocil Bolster Pet Bed, SKU no. 27251 ("Smaller Doskocil Bed")**

The Smaller Doskocil Bed appears to have the same basic construction as the Doskocil Bed. The only differences appear to be the respective amounts of fabric and the respective locations of the zipper for the bolster cover. These differences are not relevant to the '502 patent. For the same reason that the Doskocil Bed does not infringe

claims 1-3 of the '502 patent, the Smaller Doskocil Bed does not infringe claims 1-3 of the '502 patent either literally or under the doctrine of equivalents.

## VIII.

## <u>QUALIFICATIONS AND PUBLICATIONS</u>

I own my own patternmaking, consulting and design business in Los Angeles.  My qualifications, as well as a list of my publications, are set forth in my curriculum vitae, which is attached as Exhibit A to my expert report regarding validity issues for the '502 patent.

## VIII.

## <u>COMPENSATION</u>

I am being compensated at my normal rate of $250-$275 per hour, depending on services rendered.  My compensation does not depend in any way upon the outcome of this litigation.

## IX.

## <u>PREVIOUS TESTIMONY</u>

My expert witness testimony experience/history is set forth in my curriculum vitae, which is attached as Exhibit A to my expert report regarding validity issues for the '502 patent.

## X.

## RESERVATION OF RIGHTS

I reserve the right to amend and/or supplement this report as appropriate after reviewing further documents or information available after the date of execution of this report.  Furthermore, I may study additional materials, documentation and testimony as it becomes available during the discovery process.  I may also provide graphic materials.

## XI.

## DEMONSTRATIVE EXHIBITS

If called to testify at trial, I may prepare demonstrative exhibits, such as charts, graphs, patterns, and models, to further explain my opinions.

## XII.

## INFORMATION CONSIDERED

I have considered the following materials in reaching the opinions set forth is this report:  All patents, publications, and pet beds cited in this report, as well as the prosecution history for the '502 patent, parts of the transcript of the deposition of Jesus Benavides, and Simon Handelsman's Expert Report on Infringement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 2/, 2005, at Los Angeles, California.

_____
SUZANNE D. FESSLER

-22-