# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FLEXI-MAT CORPORATION, an Illinois )
corporation, )
                          )
          Plaintiff, )
                          )
      v. )     Civil Action No. 04 10162 DPW
                          )
DALLAS MANUFACTURING COMPANY, )
INC., a Texas corporation, BJ'S )
WHOLESALE CLUB, INC., a Delaware )
corporation, and DOSKOCIL )     **DEFENDANT DOSKOCIL**
MANUFACTURING COMPANY, INC., a )     **MANUFACTURING COMPANY, INC.'s**
Texas corporation, )
                          )     **BRIEF IN SUPPORT**
          Defendants. )     **OF MOTION FOR**
_____ )     **SUMMARY JUDGMENT**
DALLAS MANUFACTURING COMPANY, )     **OF INVALIDITY AND**
INC., a corporation, )     **NON-INFRINGEMENT**
                          )     **OF THE '502 PATENT**
          Counter-Claimant, )
                          )
      v. )
                          )
FLEXI-MAT CORPORATION, a corporation, )
                          )
          Counter-Defendant. )
_____ )
BJ'S WHOLESALE CLUB, INC., a )
corporation, )
                          )
          Counter-Claimant, )
      v. )
FLEXI-MAT CORPORATION, a corporation, )
                          )
          Counter-Defendant. )
_____ )
DOSKOCIL MANUFACTURING )
COMPANY, INC., a corporation, )
                          )
          Counter-Claimant, )
      v. )
                          )
FLEXI-MAT CORPORATION, a corporation, )
                          )
          Counter-Defendant. )

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.    STATEMENT OF UNCONTESTED MATERIAL FACTS ............................................. 1
      A.    The Prior Art ................................................................................. 2
      B.    The Doskocil Accused Bed ........................................................... 6

II.   ARGUMENT – INVALIDITY OF CLAIMS 1, 2, 3, 7 AND 8 ..................................... 6
      A.    Legal Framework .......................................................................... 6
      B.    Claim Construction and Application of Prior Art
            to Construed Claims ..................................................................... 8
            i.      Invalidity of Claim 1 ......................................................... 8
            ii.     Invalidity of Claims 2 and 3 ............................................. 12
            iii.    Invalidity of Claim 7 ......................................................... 13
            iv.     Invalidity of Claim 8 ......................................................... 15

III.  ARGUMENT – NON-INFRINGEMENT ..................................................................... 15
      A.    Legal Framework .......................................................................... 15
      B.    Claim Construction ....................................................................... 16
      C.    Comparison of the Doskocil Accused Bed ................................... 17

IV.   CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

*Aquatex Industries, Inc. v. Techniche Solutions,* 419 F.3d 1374 (Fed. Cir. 2005) ...................... 16

*CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359 (Fed. Cir. 2002) ...................................... 15

*Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.,* 145 F.3d 1303 (Fed. Cir. 1998) .......... 15

*Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774 (Fed. Cir. 1983) ............................ 8

*Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358 (Fed. Cir. 2003) ........................... 8

*Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339 (Fed. Cir. 2004) ................................................. 7

*Graham v. John Deere Co.,* 383 U.S. 1 (1966) .............................................................................. 8

*In re Cruciferous Sprout Litig.,* 301 F.3d 1343 (Fed. Cir. 2002) ................................................... 7

*In re Dembiczak,* 175 F.3d 994 (Fed. Cir. 1999) ............................................................................ 7

*In re Donaldson Co.,* 16 F.3d 1189 (Fed. Cir. 1994) .................................................................... 15

*In re Fulton,* 391 F.3d 1195 (Fed. Cir. 2004) ................................................................................. 7

*In re Gartside,* 203 F.3d 1305 (Fed. Cir. 2000) .............................................................................. 7

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) .......................................... 6

*Mars, Inc. v. H.J. Hainz Co., L.P.,* 377 F.3d 1369 (Fed. Cir. 2004) ............................................ 15

*NTP, Inc. v. Research in Motion, Ltd.,* 392 F.3d 1336 (Fed. Cir. 2004) ........................................ 7

*Oney v. Ratliff,* 182 F.3d 893 (Fed. Cir. 1999) ............................................................................... 7

*Pandrol USA, LP v. Airboss Railway Products, Inc.,* 320 F.3d 1354 (Fed. Cir. 2003) ................ 12

*Playtex Products, Inc. v. Procter & Gamble Co.,* 400 F.3d 901 (Fed. Cir. 2005) ........................ 16

*Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556 (Fed. Cir. 1986) ........................................ 7

*Sentry Protection Products, Inc. v. Eagle Mfg. Co.,* 400 F.3d 910 (Fed. Cir. 2005) .................... 16

*SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.,* 225 F.3d 1349 (Fed. Cir. 2000) ........ 8

*Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316 (Fed. Cir. 2001) ........................... 7

*V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307 (Fed. Cir. 2005) ................................ 16

Defendant Doskocil Manufacturing Company, Inc. ("Doskocil") respectfully files this Brief in Support of its Motion for Summary Judgment of Invalidity of Claims 1, 2, 3, 7, and 8, and Non-Infringement, of United States Patent Number 5,765,502 ("the '502 Patent"). As set forth more fully herein, there are no genuine issues of material fact as to the invalidity of the referenced claims of the '502 Patent under either 35 U.S.C. §102 as anticipated, or under 35 U.S.C. §103 as obvious in view of the relevant and material prior art as identified herein below. Further, there are no genuine issues of material fact as to either the construction of, or non-infringement of any claim of the '502 Patent by, any Doskocil accused product. Thus, summary judgment of invalidity and non-infringement is appropriate.

## I.    Statement of Uncontested Material Facts

On August 31, 2004, Plaintiff Flexi-Mat Corporation filed its First Amended Complaint, asserting claims of direct, inducement, and contributory patent infringement by Doskocil based upon the sale of the "Berkley and Jensen Premium Quality Bolster Pet Bed" ("the Doskocil Accused Bed"). *See* A003-A004 at para. 12; A005 at para. 21 [Docket No. 18]. On March 18, 2005, Plaintiff Flexi-Mat moved for leave to file its Second Amended Complaint in order to broaden the scope of accused products. A118-A121 [Docket No. 44]. Flexi-Mat's Motion for Leave was allowed without opposition on April 4, 2005. Flexi-Mat has asserted ownership by assignment of United States Patent Number 5,765,502 ("the '502 Patent"), and it is the claims of this patent which are allegedly infringed by the Doskocil Accused Bed. *See* A003 at para. 10; A005 at para. 21.

Claims 1, 2, 3, 7, and 8 of the '502 Patent are straightforward and readily understood; being representative of a simple non-technical pet bed design. *See* A013. Generally, the '502 Patent discloses and claims a pet bed having an outer covering. *See* A009-A013. A removable cushion is disposed within the outer covering to form a bottom portion. *See id.* A bolster is also

removably disposed within the interior of the outer covering. *See id.* Each claim of the '502 Patent requires that the cushion and bolster be disposed within the outer covering of the pet bed. *See* A013. The figures of the '502 Patent illustrate a pet bed having a single zippered access opening for insertion and removal of both the bottom cushion and the bolster cushion. A010-A011; A185 at Request 6.

During prosecution of the application which matured into the '502 Patent, the patentee defined the invention and distinguished over a cited reference, U.S. Patent No. 5,010,843 ("the '843 Patent," as further discussed *infra*). *See* A045-046. In distinguishing the '843 Patent, the patentee argued that the pet bed covered by the '843 Patent required separate covers for the cushions and base, and as a result of utilizing separate covers, added manufacturing costs for material and added assembly time was required to manufacture the bed of the '843 Patent. *Id.* Since the '843 Patent did not disclose a single cover with a single interior space for the cushion and base, the patentee argued that the invention of the '502 Patent was not anticipated by the disclosure of the '843 Patent. *Id.* Based on these arguments, allowance of the application was secured. *See* A049-A050.

A.    **The Prior Art**

United States Patent No. 5,586,350 to Thönnessen ("the '350 Patent") entitled "Low Flammability Pillow," and German Patent (Gebrauchsmuster) No. 93 09 699.2 to Hoechst AG ("the DE '699 Patent")[1] disclose a bolstered pillow (1) having an outer covering (5), a removable cushion disposed within the outer covering to form a cushioned bottom portion (2), and a bolster cushion removably disposed within the interior of the outer covering (3). *See* A121 at col. 2, lines 49-54; A123 at claims 1 and 5; A119 (Fig. 1). The '350 Patent bolster pillow (*i.e.,* the

---

[1] The DE '699 Patent, also entitled "Low Flammability Pillow," was published in the German Patent Gazette on September 30, 1993. *See* A080 and A093. The DE '699 Patent attached hereto as Appendix pages A080 to A092 is the German language version. Doskocil further attaches hereto as Appendix pages A093 to A109 a certified English language translation of the DE '699 patent. All citations herein shall be made to the '350 Patent.

"cylindrical roll") is disposed exteriorly about at least a portion of the perimeter of the bottom portion. *See* A119 (Figs. 1 and 2). The '350 Patent bolster pillow is connected "detachably" to the bottom cushion. *See* A121 at col. 2, lines 14-39; A123 at claim 5; A119 (Fig. 1). The '350 Patent discloses a reclosable single cover (5) having an access opening allowing for the insertion and removal of both the base cushion (2) and the bolster cushion (3). *See* A121 at col. 2, lines 1-54; A123 at claim 5; A119 (Fig. 1). The '350 Patent teaches the need to maintain the relative position of the bolster member (3) to the base member (2), utilizing hook and loop fasteners (Velcro) (4) to accomplish this objective. *See* A121 at col. 2, lines 14-39; A119 (Fig. 1). Finally, the '350 Patent discloses the use of a zipper as a means for closing the outer cover. *See* A122 at col. 4, line 64 to A123 at col. 5, line 6; A123 at claim 2.

United States Patent No. 5,421,044 to Steensen ("the '044 Patent") entitled "Air Bed" issued on June 6, 1995. *See* A125. The '044 Patent discloses a bed having an outer covering (12) made up of bottom panel (14), upper and lower vertical panels (16) and (18), and top panel (20). A126 (Fig.1); A135 at col. 3, lines 11-15. The '044 Patent further discloses a removable base cushion or foam pad (58), (59) and/or (42) disposed within the outer covering (12). *See* A126 (Fig. 1); A135 at col. 3, lines 58-61 and col. 4, lines 20-27. Cushions (58), (59) and/or (42) are removable via a reclosable zippered access opening (22). *See* A126 (Fig. 1); A135 at col. 3, lines 52-57. The '044 Patent further discloses a bolster tube or cushion, *e.g.* (31), removably disposed (via zipper (22)) within the interior of the outer covering (12) without being secured to the base cushion (58), (59) or (42). The bolster, *e.g.* (31), is disposed exteriorly about at least a portion of the perimeter of the bottom portion formed by base cushion (58), (59), and/or (42).

United States Patent No. 5,109,559 to West ("the '559 Patent") entitled "Flotation Mattress Pad Having a Cover With Pad Retaining Straps" issued on May 5, 1992. *See* A110.

The '559 Patent teaches the use of straps (54) to hold the inner member (15) in place. *See* A115 and A113 (Fig. 4).

United States Patent No. 5,588,393 to Heilborn ("the '393 Patent") entitled "Collapsible Pet Bed" issued on December 31, 1996. *See* A142. The '393 Patent discloses a pet bed comprising an outer covering configured to receive a removable bottom cushion. *See* A144; A148 at col. 2, lines 22-30; A149 at col. 4, line 15 to A150 at col. 5, line 7. The removable bottom cushion is disposed within the outer covering, as reflected in '393 Figures 5 and 6. A144. The '393 Patent further discloses a bolster disposed within the outer covering, as reflected in Figures 5 and 6 and as described at column 2, lines 23-35 and column 4, line 65 to column 5, line 7. A144; A148-150. As disclosed by the '393 Patent, substantially all of the bolster material is disposed exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the bottom cushion. This is reflected in '393 Figures 4-6. A144. The bolster disclosed by the '393 Patent is not secured to the bottom cushion, and is separately removable therefrom. A144 (Fig. 6).

United States Patent No. 5,136,981 to Barreto ("the '981 Patent") entitled "Pet Bed" issued on August 11, 1992. *See* A153. The '981 Patent discloses a pet bed comprising an outer covering configured to receive a removable bottom cushion. *See* A154-A155; A171 at col. 7, lines 14-45. The removable bottom cushion is disposed within the outer covering, as reflected in '981 Figures 2, 3, and 4. A154-A155. The '981 Patent further discloses a bolster disposed within the outer covering, as reflected in Figure 2 and as described at column 7, lines 9-45. A154; A171. As disclosed by the '981 Patent, substantially all of the bolster material is disposed exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the bottom cushion. This is reflected in '981 Figures 1-4. A154-A155. The bolster disclosed by the

'981 Patent is not secured to the bottom cushion, and is separately removable therefrom.  A154-A155; A171 at col. 7, lines 9-59.

United States Patent No. 2,032,248 to Bins ("the '248 Patent") entitled "Dog Bed or the Like" issued on February 25, 1936.  *See* A073.  The '248 Patent discloses a pet bed comprising an exterior fabric article configured to receive and enclose a removable bottom mattress.  *See* A073-A074.  The removable bottom mattress is disposed within the exterior fabric article, as reflected in '248 Figure 6.  *Id.*  The '248 Patent further discloses a bolster disposed within the exterior fabric article, as reflected in Figure 6 and as described at column 1, line 50 through column 2, line 15.  *Id.*  The '248 Patent bolster filler material is preferably cotton which is packed within the outer periphery of the bolster and is, inherently, removable by simply reversing the process and extracting the filler material.  *Id.*  As disclosed by the '248 Patent, substantially all of the bolster material is disposed exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the bottom mattress.  *Id.*  This is reflected in '248 Figures 1 and 6.  *Id.*  The bolster disclosed by the '248 Patent is not secured to the bottom mattress.  *Id.*  The '248 Patent also discloses an optional mattress cover (8) (*see* Figure 4).  *Id.*

United States Patent No. 5,010,843 to Henry ("the '843 Patent") entitled "Pet Bed" issued on April 30, 1991.  *See* A075.  The '843 Patent teaches the simple containment of bolster filler material within its own, separate liner.  *See* A078 at col. 2, lines 44-53.  As taught by the '843 Patent specification, this separate liner allows the inner fill material to be removed and cleaned as necessary or desired.  *See id*.  The '843 Patent utilizes zipper openings (34), (35), (36) for the insertion and removal of both the bolster cushion (14, 16) and the base cushion (12).  A076 (Figs. 1 and 2); A078 at col. 2, lines 44-53.  The '843 Patent discloses distinct fabric covers (12), (14), (16), each having a distinct and separate interior space for receiving and enclosing lined

cushion fillers.  A076 (Figs. 1 and 2); A078 at col. 2, lines 44-53.  The distinct interior spaces are physically separated by stitching.  A078 at col. 2, lines 16-29.

### B.    The Doskocil Accused Bed

The Doskocil Accused Bed includes four basic components: (1) a separately removable bottom cushion; (2) a separately removable bolster cushion; (3) a separate zippered fabric cover for the bottom cushion; and (4) a separate zippered fabric cover for the bolster cushion.  These four basic components are illustrated and identified in the accompanying photographs as components 1-4, respectively.  A200-A203.  In its final form, the separate zippered fabric cover for the bottom cushion [3] is stitched to the separate zippered fabric cover for the bolster [4], thereby creating a unified bed structure.  A200-A203; A193-A194 at Admission 18; A196-A197 at 46:12 to 47:20 (explaining construction of the Doskocil Accused Bed).  The bottom cushion [1] may be inserted through the zippered opening in the bottom fabric cover [3] to form the bottom portion of the Doskocil Accused Bed; similarly, the bolster cushion [2] may be inserted through the zippered opening in the bolster fabric cover [4] to form the bolster portion of the Doskocil Accused Bed.  A200-A203; A192 at Admission 15.  The bottom cushion [1] and bolster cushion [2] are thereby contained within two distinct and separate pockets.  A200-A203; A192-A193 at Admissions 16 and 17.  The Doskocil Accused Bed has no straps securing or affixing the bolster to the outer covering.  A185 at Admission 4.

### II.    Argument – Invalidity of Claims 1, 2, 3, 7, and 8

### A.    Legal Framework

The legal analysis of patent invalidity involves two steps; first, the claims at issue must be construed; and second, the claims as construed are compared to the prior art.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) (Mayer, J., concurring) ("A claim must be construed before determining its validity"), *aff'd,* 517 U.S. 370 (1996).  Claims

are construed as a matter of law by assigning the ordinary and customary meaning of each term as would be understood by one of ordinary skill in the art. *NTP, Inc. v. Research in Motion, Ltd.,* 392 F.3d 1336, 1346 (Fed. Cir. 2004). The claims are construed in view of the written specification, the drawings, and the prosecution history. *Id.*

Under 35 U.S.C. §102, a patent is "anticipated" if each and every element of the claimed invention is disclosed expressly or inherently in a single prior art reference. *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339, 1348 (Fed. Cir. 2004). Stated somewhat differently, "that which infringes if later, anticipates if earlier." *Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556, 1573 (Fed. Cir. 1986). "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1326 (Fed. Cir. 2001) (affirming summary judgment of invalidity in view of anticipatory prior art); *In re Cruciferous Sprout Litig.,* 301 F.3d 1343, 1352 (Fed. Cir. 2002) (affirming summary judgment of invalidity in view of anticipatory prior art); *Oney v. Ratliff,* 182 F.3d 893, 895 (Fed. Cir. 1999).

Further, under 35 U.S.C. §103(a), a patent is considered "obvious" if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Before an invention will be declared obvious in view of multiple prior art references, there must be some teaching, suggestion, or motivation to combine those references. *In re Fulton,* 391 F.3d 1195, 1200 (Fed. Cir. 2004). Obviousness is a "question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). On summary judgment, factual findings related to obviousness may include "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999),

*abrogated on other grounds in In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000); *see also Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). In a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact. *Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79 (Fed. Cir. 1983). The grant of summary judgment of invalidity for obviousness must be done on a claim by claim basis. *Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358, 1371 (Fed. Cir. 2003).

It is noted here that a number of references cited herein were not considered by the examiner during the prosecution of the '502 Patent application. Thus, the presumption of patent validity is more easily overcome. *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.,* 225 F.3d 1349, 1355-56 (Fed. Cir. 2000).

## B.    Claim Construction and Application of Prior Art to Construed Claims

### i.    *Invalidity of Claim 1*

Claim 1 of the '502 Patent is directed to a pet bed generally comprising three distinct elements: (1) an outer covering, (2) a removable bottom cushion, and (3) a removable bolster. Due to the statements in the original prosecution concerning and distinguishing the '843 Patent discussed *supra* (*i.e.,* argument that the '843 Patent required separate covers for the cushions and base), the term "outer covering" must be limited to a single article for receiving and enclosing both the removable bottom cushion and the removable bolster within a single interior space. Moreover, the claims of the '502 Patent require that the bolster be "removably disposed within *the interior* of *the outer covering*." A013. Thus, the "outer covering" limitation cannot read on an article having multiple interior spaces that are walled off or otherwise separated from each other; otherwise the claims would be indefinite since it would then be unclear as to which "interior" the bolster is disposed. Finally, the '502 specification discloses and teaches only an "outer covering" having a single access opening through which both the bolster and base

cushions are inserted and removed from the single interior space.  A013 at col. 3, lines 9-14;
A186 at Admission 6.

The '044 Patent discloses a bed having an outer covering (12).  A135 at col. 3, lines 11-
12.  The bed of the '044 Patent further includes bottom cushions or foam pads (58) and (59)
which are removable via zippered attachment means (22).  A135 at col. 3, lines 52-57 and col. 4,
lines 21-26.  Further, the '044 Patent discloses a bolster, *e.g.* (31), removably disposed (via
zipper (22)) within the interior of the outer covering (12).  Bolsters, *e.g.* (31), are disposed
exteriorly about at least a portion of the perimeter of the bottom cushions or foam pads (58)
and/or (59) without being secured thereto.  Accordingly, claim 1 of the '502 Patent is invalid
under 35 U.S.C. § 102(b) as anticipated by the disclosures of the '044 Patent.

The '393 Patent discloses a pet bed (100) comprising an outer covering (110) configured
to receive a removable bottom cushion (108).  *See* A120, A124-A126 at col. 2, lines 22-30 and
col. 4, line 15 to col. 5, line 7.  The removable bottom cushion (108) is disposed within the outer
covering (110), as reflected in '393 Figures 5 and 6.  A120.  The '393 Patent further discloses a
bolster (106) disposed within the outer covering (110), as reflected in Figures 5 and 6 and as
described at column 2, lines 23-35 and column 4, line 65 to column 5, line 7.  A120, A124-A126.
As disclosed by the '393 Patent, substantially all of the bolster material (106) is disposed
exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the
bottom cushion (108).  This is reflected in '393 Figures 4-6.  A120.  The bolster disclosed by the
'393 Patent is not secured to the bottom cushion, and is separately removable therefrom.  A120,
A124-126.  As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. § 102(b) as anticipated
by the disclosures of the '393 Patent.

Likewise, the '981 Patent discloses a pet bed (40) comprising an outer covering (46)
configured to receive a removable bottom cushion (44).  *See* A154-A155; A170 at col. 6, lines

40-45; and A171 at col. 7, lines 14-45. The removable bottom cushion (44) is disposed within the outer covering (46), as reflected in '981 Figures 2, 3, and 4. A154-A155. The '981 Patent further discloses a bolster (42) disposed within the outer covering (46), as reflected in Figure 2 and as described at column 7, lines 9-45. A154; A171; A176 (correcting references from "74" to "42"). As disclosed by the '981 Patent, substantially all of the bolster material (42) is disposed exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the bottom cushion (44). This is reflected in '981 Figures 1-4. A154-A155. The bolster disclosed by the '981 Patent is not secured to the bottom cushion, and is separately removable therefrom. A154-A155; A171 at col. 7, lines 9-59 (also identifying alternative embodiment for removal of bolster (sidewall) (42)). As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. § 102(b) as anticipated by the disclosures of the '981 Patent.

The '248 Patent discloses a pet bed comprising a fabric article (*i.e.,* base sheet (3), band (4), and outer periphery of annular bolster (1) (*see* A073A at col. 2, lines 5-11)) configured to receive and enclose a removable bottom mattress (5). The removable bottom mattress (5) is disposed within (surrounded by) the exterior fabric article, as reflected in '248 Figure 6. A073. The '248 Patent further discloses a bolster disposed within the fabric article, as reflected in Figure 6 and as described at column 1, line 50 through column 2, line 15. A073-A073A. The '248 Patent bolster filler material is preferably cotton which is packed within the outer periphery of the bolster and is, inherently, removable by simply reversing the process and extracting the filler material. *See* A073A at col. 1, line 50 to col. 2, line 5. As disclosed by the '248 Patent, substantially all of the bolster material is disposed exteriorly (*i.e.,* outside) about at least a portion of the perimeter (*i.e.,* outermost limits) of the bottom mattress. *See* A073 (Figs. 1, 2, and 6). The bolster disclosed by the '248 Patent is not secured to the bottom mattress. Accordingly, each and every limitation in claim 1 of the '502 Patent is expressly or inherently disclosed by the

'248 Patent. As such, claim 1 of the '502 Patent is invalid under 35 U.S.C. § 102(b) as anticipated by the disclosures of the '248 Patent.

In the event the Court finds remaining issues of material fact as to the anticipation of claim 1 of the '502 Patent by the disclosures of any of the '044, '393, '981, or '248 Patents, claim 1 is invalid under 35 U.S.C. § 103(a) as obvious. The '843 Patent teaches the simple containment of bolster filler material within its own, separate liner. *See* A078 at col. 2, lines 44-53. As taught by the '843 Patent specification, this separate liner allows the inner fill material to be removed and cleaned as necessary or desired. *Id.* Thus, the removability of the bolster from within the outer covering in claim 1 of the '502 Patent is an obvious limitation.

Furthermore, the '248 Patent discloses an optional mattress cover (8). *See* A073 (Fig. 4). The mattress cover serves the purpose of keeping the mattress (5) clean. *See* A073B at col. 1, lines 5-16. As taught by the '248 Patent, the optional cover is not physically attached to the remainder of the exterior fabric article (*i.e.,* the outer cover). A073A to A073B, and A073 (Fig. 4). The absence of any physical attachment allows for the removable insertion of the base mattress (5) within the exterior fabric article.

Still further, the '350 Patent discloses a bolstered pillow (1) having an outer covering (5), a removable cushion disposed within the outer covering to form a cushioned bottom portion (2), and a bolster cushion removably disposed within the interior of the outer covering (3). *See* A121 at col. 2, lines 49-54; A123 at claims 1 and 5; *see also* A119 (Fig. 1). The '350 Patent bolster pillow (*i.e.,* the "cylindrical roll") is disposed exteriorly about at least a portion of the perimeter of the bottom portion. *See* A119 (Figs. 1 and 2). Finally, the '350 Patent bolster pillow is connected "detachably" to the bottom cushion. *See* A121 at col. 2, lines 14-39; A123 at claim 5; *see also* A119 (Fig. 1) (indicating connecting element (4)). Thus, claim 1 of the '502 Patent is

invalid under 35 U.S.C. § 103(a) as obvious in view of the '350 Patent, if not anticipated thereby under 35 U.S.C. § 102(b).

### ii.    *Invalidity of Claims 2 and 3*

Claim 2 of the '502 Patent recites: "[t]he pet bed of claim 1, wherein the outer covering further includes a reclosable access opening."  A013.  The "reclosable access opening" language is used only twice in the '502 specification, once at column 3, line 12, and again as part of the Abstract.  *See* A009 and A013.  "It is well-settled that claims must be read in view of the specification, of which they are a part.  This includes consulting the preferred embodiment and the abstract."  *Pandrol USA, LP v. Airboss Railway Products, Inc.,* 320 F.3d 1354, 1363 n.1 (Fed. Cir. 2003) (internal citations omitted).  The Abstract states that "[t]he outer covering further includes a reclosable access opening permitting both the bottom cushion and bolster to be removed as needed."  A009.  At column 3, the reclosable access opening (11) is defined and discussed in terms of receiving both the bottom cushion and the bolster.  A013 (lines 8-18).  Thus, one of ordinary skill in the art would understand the "reclosable access opening" limitation to mean "a reclosable opening in the outer covering for the insertion and removal of both the bottom cushion and the bolster."  This construction is further supported in view of the "the interior of the outer covering" limitation of claim 1.  As the "outer covering" has only a single interior space for receiving both the base cushion and the bolster cushion, the "access opening" must facilitate and enable this assembly.

Under this construction, claim 2 of the '502 Patent is anticipated by the teachings of at least the '350 and '044 Patents.  The '350 Patent discloses a reclosable single cover (5) having an access opening allowing for the insertion and removal of both the base cushion (2) and the bolster cushion (3).  *See* A121 at col. 2, lines 14-39; A122 at col. 4, lines 64-66; A123 at claim 1 (cover is closable); A123 at claim 2 (use of zipper closure); *see also* A119 (Fig. 1).  Similarly, as

discussed *supra*, the bed of the '044 Patent includes a zippered access opening (22).  A126 at Fig. 1.

Claim 3 of the '502 Patent recites "[t]he pet bed of claim 2, wherein the reclosable access opening further includes a zipper."  A013.  As discussed *supra*, the use of a zipper to facilitate the closure of the access opening was known in the art and would have been anticipated and/or obvious in view of the '350 Patent, the '044 Patent, and/or the '843 Patent.

### iii.    *Invalidity of Claim 7*

Claim 7 of the '502 Patent (*see* A013) recites the following:

A pet bed comprising:

> an outer covering including a reclosable access opening;

> a removable cushion disposed within the outer covering to form a cushioned bottom portion;

> a bolster removably secured to the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion;

> such that the removable cushion and bolster are separately removable from the outer covering interior through the reclosable access opening.

Each of the following claim elements have been shown herein *supra* to be in the prior art: "outer covering," "reclosable access opening," "removable cushion," and "bolster."  Claim 7 of the '502 Patent further limits the pet bed therein to one in which the bolster is "removably secured to the interior of the outer covering" and in which the bolster and cushion "are separately removable from the outer covering interior through the reclosable access opening."  There is no explicit teaching in the '502 Patent specification with respect to "removably securing" the bolster to the interior of the outer covering, and the issue was addressed without clarifying elaboration during prosecution.  *See* A046-A047.  Thus, this claim is invalid as indefinite or not enabled,

according to 35 U.S.C. § 112. Alternatively, if there is determined to be an absence of distinction between the use of the terms "securing" and "affixing," claim 7 is nevertheless unpatentable as will be shown below.

The '502 Patent specification discusses "removably affixing" the bolster to the interior of the outer covering, with the purpose of providing structural integrity to the pet bed. Preferably, this is accomplished by means such as straps (8). *See* A012-A013 (at col. 2, lines 7-9 and col.2, line 51 to col. 3, line 13; A011 (Fig. 4); *see also* A046-A047 (Prosecution Amendment, September 29, 1997: removably securing bolster to the interior of outer covering increases stability of the bed by fixing the position of the bolster). The need for structural integrity was known in the art, as the '248 Patent taught the use of a stiffening wire (10) for this purpose. A073 (Fig. 4) and A073A to A073B (discussing construction and function of cover (8) and wire (10)). Further, the '350 Patent teaches the need to maintain the relative position of the bolster member (3) to the base member (2), utilizing hook and loop fasteners (Velcro) (4) to accomplish this objective. *See* A121 at col. 2, lines 14-54; *see also* A119 (Fig. 1). Still further, the '559 Patent teaches the use of straps (54) to hold the inner member (15) in place. *See* A115 at col. 3, line 51 to col. 4, line 11; A0113 (Fig. 4). Thus, the removable securing (or "affixing") of the bolster using, for example, straps and/or hook and loop material would have been obvious to one of ordinary skill in the art at the time of the '502 Patent application. With respect to the final limitation of claim 7 of the '502 Patent, the separate removability of the bolster and cushion from the outer covering, reference is again made to the teachings of the '350 Patent, as discussed *supra* with respect to obviousness of claim 2 of the '502 Patent. More specifically, the '350 Patent discloses a reclosable single cover (5) having an access opening allowing for the separate insertion and removal of both the base cushion (2) and the bolster cushion (3). *See* A121 at col. 2, lines 14-39; A122 at col. 4, lines 64-66; *see also* A119 (Fig. 1). Thus, the separate

removability of the bolster and cushion from the outer covering is a limitation rendered obvious in view of the '350 Patent.  As further discussed *supra,* the separate removability of the bolster and bottom cushion from the outer covering is anticipated by either of the '393 or '981 Patents, as both disclose such separate removability.

### iv.    *Invalidity of Claim 8*

Claim 8 of the '502 Patent depends from claim 7 and further recites a "means for closing the reclosable access opening."  A013.  Notwithstanding the questionable distinction between claim 7 comprising a "reclosable" opening and claim 8 comprising "means for closing" that which is already said to be "reclosable," it is noted that claim 8 is  governed by 35 U.S.C. § 112(6) as incorporating a "means plus function" limitation.  *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1369 (Fed. Cir. 2002).  Accordingly, the "means for closing" element is limited to the particular embodiments linked to the "closing" operation in the specification and any equivalents therefor.  *In re Donaldson Co.,* 16 F.3d 1189, 1193 (Fed. Cir. 1994) (*en banc*); *Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1308 (Fed. Cir. 1998). The '502 Patent specification limits its disclosure in this regard to the use of a zipper.  *See* A013 at col. 3, lines 6-13.  As discussed *supra,* the use of a zipper to facilitate the closure of the access opening was known in the art and would have been anticipated and/or rendered obvious in view of '350 Patent, the '044 Patent, and/or the '843 Patent.

## III.    <u>Argument – Non-Infringement</u>

### A.    **Legal Framework**

"Determination of patent infringement requires a two-step analysis: (1) the scope of the claims must be construed; and (2) the allegedly infringing device must be compared to the construed claims."  *Mars, Inc. v. H.J. Heinz Co., L.P.,*  377 F.3d 1369, 1373 (Fed. Cir. 2004). "The meaning of a disputed claim term to a person of ordinary skill in the art, on the patent's

filing date, is ascertained first by reference to the claim, the written description, and, if it is part of the record, the prosecution history." *Playtex Products, Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 906 (Fed. Cir. 2005). "Courts look to the prosecution history as intrinsic evidence of the meaning of claim terms. The prosecution history modifies the scope of a claim term if the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *Sentry Protection Products, Inc. v. Eagle Mfg. Co.,* 400 F.3d 910, 915 (Fed. Cir. 2005) (internal citations omitted).

An accused product literally infringes a patent claim only if it embodies each and every limitation of the claim. *V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307, 1312 (Fed. Cir. 2005). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." *Aquatex Industries, Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed. Cir. 2005) (internal citations omitted). "Prosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument. The doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Id.*

**B.     Claim Construction**

The first step in the non-infringement analysis is claim construction. As discussed *supra,* the "an outer covering" limitation of the '502 Patent must be construed in view of the "the

interior" limitation, as well as the specification and prosecution history, to mean "a single article for receiving and enclosing both the removable bottom cushion and the removable bolster within a single interior space." Likewise, the "reclosable access opening" limitation must be construed in view of the "outer covering" to mean "a reclosable opening in the outer covering for the insertion and removal of both the bottom cushion and the bolster."

### C. Comparison of the Doskocil Accused Bed

The second step in the non-infringement analysis is a comparison of the allegedly infringing product to the construed claims. There are no material issues of fact concerning the construction of the Doskocil Accused Bed. The Doskocil Accused Bed has two separate and distinct zippered access openings for two separate and distinct interior spaces of the bed. The interior spaces are defined by separate and distinct coverings; one covering receives and encloses the bolster, and the other covering receives and encloses the base cushion. The respective coverings are stitched together to form a single composite article. Accordingly, the Doskocil Accused Bed does not meet the "an outer covering" limitation, and therefore does not literally infringe any claim of the '502 Patent.

Likewise, the Doskocil Accused Bed does not include any equivalent to an "outer cover." The dual-compartment design of the Doskocil Accused Bed is substantially different from that which was claimed, and performs its function in a substantially different way. In any event, the doctrine of prosecution history estoppel bars Flexi-Mat from asserting the doctrine of equivalents against the Doskocil Accused Bed. As discussed *supra*, the patentee expressly distinguished the '502 patented invention from the '843 Patent on the grounds that the invention of the '502 Patent did not include interconnected, separate covers.

**IV.    <u>Conclusion</u>**

As set forth herein, claims 1, 2, 3, 7, and 8 of the '502 Patent are invalid under either 35 U.S.C. §102 as anticipated, or under 35 U.S.C. §103 as obvious in view of the relevant and material prior art as identified herein.  The claims placed at issue herein may be construed as a matter of law by the Court, and there are no genuine issues as to the teachings of the prior art references cited herein.  Likewise, there are no genuine issues of material fact concerning the construction of the Doskocil Accused Bed, and of the non-infringement of the properly construed claims of the '502 Patent.  Accordingly, summary judgment is appropriate, and Doskocil's Motion for Summary Judgment should be granted.

Respectfully submitted,

Dated:  November 30, 2005

/s/ M. Scott Fuller
Roy W. Hardin
Martin Korn
M. Scott Fuller
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776
Telephone:  214.740.8556
Facsimile:  214.740.8800

/s/ James J. Marcellino
David M. Mello (BBO #634722)
James J. Marcellino (BBO #318840)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, Massachusetts  02109
Telephone:  617.535.4000
Facsimile:  617.535.3800

Attorneys for Defendant
Doskocil Manufacturing Company, Inc.