UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>    Defendants. | Civil Action No. 04 10162 DPW<br><br>Flexi-Mat's Statement of Contested Facts in Response to Dallas' Motion for Summary Judgment of Non-Infringement |
| DALLAS MANUFACTURING COMPANY, INC., a corporation,<br><br>    Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-defendant. | |
| BJ'S WHOLESALE CLUB, INC., a corporation,<br><br>    Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-defendant. | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation,<br><br>    Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-defendant. | |

In accordance with Local Rule 56.1, Plaintiff Flexi-Mat Corporation hereby provides a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried or in which Flexi-Mat controverts the statement served by Dallas.

1. Plaintiff Flexi-Mat Corporation is the assignee of the patent-in-suit, U.S. Patent No. 5,765,502 ("the '502 patent"), entitled "Pet bed with Removable Bolster." (DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Clark Decl.," Exh. A.)

**Uncontested.**

2. The '502 patent discloses a pet bed having a bottom cushion and a separate bolster disposed within an outer covering. (Clark Decl., Exh. A.)

**Uncontested.**

3. The outer covering disclosed in the '502 patent is formed by sewing together several pieces of fabric, as shown in the patent drawings. (Id., Exh. A, FIGS. 1-3.)

**Uncontested.**

4. Both the bottom cushion and the bolster in the '502 patent are removable through a zippered opening in the outer covering. (Id., Exh. A, col. 3, lines 8-18.)

**Uncontested.**

5. The bolster in the '502 patent is positioned alongside the bottom cushion, so that both the bottom cushion and the bolster rest on the floor. (Id., Exh. A, FIGS 1-5.)

**Contested.** The bolster in the '502 patent is positioned so that substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter of the bottom cushion. FM Infr. Ex. 1, figs. 1-5, col. 2, lines 3-4, lines 51-54.

6. The only portion of the bolster that overlaps the bottom cushion in the '502 patent, as shown in the patent drawings, is the "gathering" or folds on the inside curved surface of the bolster. (Handelsman Depo., Exh. H to Clark Decl., at 85:24-87:7, and Deposition Exhibit 727, Exh. K to Clark Decl.)

**Contested.** The drawings show some overlap of the bolster and bottom cushion. Neither the patent drawings nor the written description limit the overlap to the folds. FM Infr. Ex. 1, figs. 1-6, col. 2, lines 2-5, lines 51-54, claim 1.

7. The bolster in the '502 patent is held in place within the outer covering by Velcro ® straps that removably affix it to the interior of the outer covering. (Id., Exh. A, col. 2, lines 61-67.)

**Contested.** One example of the '502 patent uses Velcro® straps, but the '502 patent teaches other ways of holding the bolster in place, including ties or straps with snaps or buckles and a bolster pocket. FM Infr. Ex. 1, col. 2 lines 7-12, 51-52, 61-67.

8. The only structures disclosed in the '502 patent to dispose the bolster in place relative to the bottom cushion are fasteners or straps. (Id., Exh. A.)

**Contested.** The '502 patent teaches several ways of disposing the bolster in place, including ties or straps with snaps or buckles and a bolster pocket. FM Infr. Ex. 1, col. 2 lines 7-12, 51-52, 61-67.

9. Flexi-Mat alleges that Dallas Manufacturing has infringed claims 1-3 of the '502 patent, which read as follows:

    1. A pet bed comprising:

    an outer covering;

    a removable cushion disposed within the outer covering to form a cushioned bottom portion; and a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

    2. The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening.

3

> 3. The pet bed of claim 2, wherein the reclosable access opening further includes a zipper.

(Clark Decl., Exh. A, col. 3, lines 37-46.)

**Uncontested.**

10. During prosecution of the application for the '502 patent, the patent examiner initially rejected claims 1-3 as anticipated by U.S. Patent No. 5,010,843 to Henry ("the Henry patent"). (Clark Decl., Exh. B at DMC000033-000036.)

**Uncontested.**

11. The Henry patent discloses a pet bed having a pair of top cushions that rest on a base cushion. (Id., Exh. C.)

**Uncontested.**

12. The Henry patent also discloses, in the alternative, that "the top cushions can extend beyond the edges of the base cushion 12." (Id., Exh. C, col. 3, lines 18-19.)

**Contested.** When read in context, the Henry patent states, "Also, in other alternative embodiments in accordance with the invention, the top cushions need not entirely cover the base cushion, and conversely, the top cushions can extend beyond the edges of the base cushion." FM Infr. Ex. 5, col. 3, lines 16-20.

13. Each cushion in the Henry patent has its own outer cover with its own zippered opening. (Id., Exh. C, col. 2, lines 44-65.)

**Uncontested.**

14. The covers for the top cushion in the Henry patent are joined to the covers for the base cushion by stitching or other means. (Id., Exh. C, col. 2, lines 19-28; col. 3, lines 22-27.)

**Contested.** The cover for each top cushion in the Henry patent is joined to the cover for the base cushion by stitching or other means. FM Infr. Ex. 5, col. 2, lines 19-28; col. 3, lines 22-27.

4

15. The Henry patent states that the cushions may be "filled with any suitable cushion material, for example, layers of plastic foam or resilient foam particles, semi-rigid or rigid beading, cloth filler, and the like." (Id., col. 2, lines 44-47.)

**Uncontested.**

16. A bed filled with foam, beads, or cloth can be deformed, fluffed, or plumped up so that its shape changes. (EXPERT REPORT OF SUZANNE FESSLER RE: INFRINGEMENT ISSUES FOR U.S. PATENT NO. 5,765,502, "Fessler Rpt.," attached as Exhibit B to the DECLARATION OF SUZANNE FESSLER IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT, "Fessler Decl.," at 10.)

**Contested.** It is unclear what "its shape changes" means, but whether a bed can be deformed, fluffed, or plumped up depends on how much filling has been inserted. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶9.

17. It was foreseeable that someone might design a bed in accordance with the Henry patent in which the bolster covering is sewn to the top of the covering for the bottom cushion, but a significant amount of the bolster might extend or "flop" over the perimeter. (Id.)

**Contested.** It is not foreseeable (and it is irrelevant) that someone *might* design a bed as described. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶9.

18. In rejecting claims 1-3, the patent examiner cited to Figure 5 of the Henry patent (Id., Exh. B at DMC000034.).

**Uncontested.**

19. In response to the rejection of claims 1-3, Flexi-Mat filed an AMENDMENT in which it amended claim 1 to recite that the bolster is disposed within the interior of the outer covering "without being secured to the removable cushion." (Id., Exh. B at DMC000039.)

**Uncontested.**

5

20. In its remarks accompanying its response to the rejection of claims 1-3, Flexi-Mat distinguished the Henry patent on the grounds that the Henry patent disclosed separate covers for the top and base cushions, whereas in the claimed invention "a single cover encompasses both cushions." (Id., Exh. B at DMC000042.)

**Contested.** Flexi-Mat further explained that "Henry suggests individual liners for each cushion and requires covers for the semi-circular cushions 14,1 6 which are separate from the cover for the base cushion. ... These separate liners and covers add manufacturing cost for material and assembly time. In addition, Henry has a concern for exposed connections between the semi-circular cushions and the base cushion, which is not a concern with the present invention because a single cover encompasses both cushions. Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry." FM Infr. Ex. 2 at DMC000042.

21. In its remarks accompanying its response to the rejection of claims 1-3, Flexi-Mat argued that "Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry." (Id., Exh. B at DMC000042.)

**Uncontested.**

22. Following the AMENDMENT, the patent examiner held a telephone interview with Flexi-Mat's attorney, Larry Saret. (Clark Decl., Exh. B at DMC000044.)

**Uncontested.**

23. According to the INTERVIEW SUMMARY, during the telephone interview between the patent examiner and Flexi-Mat's attorney "[a]dditional language was discussed to insure that claim 1 read over the prior art patent to Henry." (Id., Exh. B at DMC000044.)

**Uncontested.**

24. The "additional language" discussed during the telephone interview was an amendment to claim 1 to recite that "substantially all of said bolster" is disposed "exteriorly" about at least a portion of the perimeter of the bottom portion. (Id., Exh. B at DMC000046.)

**Uncontested.**

25. After this additional amendment to claim 1, claims 1-3 were allowed and the '502 patent issued. (Id., Exh. B at DMC000045-DMC000048.)

**Uncontested.**

26. Dallas Manufacturing has made and sold bolster pet beds to five major retailers, including Defendant BJ's Wholesale Club, Inc., that are charged to infringe the '502 patent (hereinafter the "Accused Beds"). The Accused Beds sold to four of the retailers-Big Lots, Sam's Club, Bass Pro, and BJ's Wholesale Club- are the same except for features (fabric, size, etc.) that are immaterial to Dallas Manufacturing's alleged infringement of the '502 patent. (Declaration of Richard Mathews, "Mathews Decl.," ¶¶ 9-14,16 and Exhs. B-E.)

**Uncontested.**

27. The main difference in the Accused Bed sold to the fifth retailer, Costco, is that the zippered opening for the bolster is located inside the cover for the bottom cushion. (Id., ¶¶ 15, 17 and Exh. F.)

**Uncontested.**

28. In all of the Accused Beds, the bolster is disposed in a separate cover that is stitched to the top of the cover for the bottom cushion. (Mathews Decl., ¶¶ 9-17 and Exhs. B-F; Fessler Rpt., Exh. B to Fessler Decl., at 14-19 and Exh. A)

**Contested.** Dallas's bolster and bottom cushion are not in separate covers, but in the same outer covering. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶¶5-7 and exhibits thereto.

7

29. The photographs attached as Exhibit A to the Fessler Rpt. show a black line on the top panel of the cover for the bottom cushion. This black line indicates where the bolster cover is stitched in place. (Fessler Rpt., Exh. B to the Fessler Decl., at 15 and Exh. A.)

**Contested** as there is no testimony establishing that the referenced photographs relate to a Dallas production model or a pet bed actually sold or even establishing that the black line indicates where the portion of the cover that covers the bolster is stitched in place. FM Infr. Ex. 21 at pp. 107-110. Indeed, Ms. Fessler testified that she understood that the photos attached as Exhibit A to her report were "not [of] a production model of the bed that Dallas actually sells." Id. at 109. She further testified that "the line was already drawn" on the bed and that she had "no firsthand knowledge of who drew these lines." Id. at 109-110. Finally, she testified that she did not use the photographs in rendering her opinions contained in her expert report and that they had nothing to do with her report. Id. at 110. Her declaration in support of Dallas's summary judgment motion for non-infringement does not address these failings. All it says is: "Exhibit A to the expert report contains true and correct photographs of a Dallas Manufacturing bolster pet bed ('the BJ's Bed') that did not have the covering for the bolster cushion sewn onto the covering for the bottom cushion." Fessler November 29, 2005 Decl. at p. 2.

30. In all of the Accused Beds, the bolster and the bottom cushion are disposed in separate interior spaces. (Mathews Decl., ¶¶ 9-19 and Exhs. B-F; Fessler Rpt., Exh. B to Fessler Decl., at 14-19.)

**Contested**. The bolster is in a space or pocket that shares a common panel or wall of the outer cover with the bottom cushion. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶¶5-7 and exhibits thereto.

31. In all of the Accused Beds, the bolster cover creates a separate interior space for the bolster that is partitioned off from the interior space for the bottom cushion. (Id.)

**Contested**. The bolster is in a space or pocket that shares a common panel or wall of the outer cover with the bottom cushion. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶¶5-7 and exhibits thereto.

32. In each of the Accused Beds, the covering for the bolster has its own zippered opening separate from the zippered opening in the covering for the bottom cushion. (Id.)

**Contested.** The bolster for the Costco bed is accessed through the zippered opening in the covering for the bottom cushion. FM Infr. Ex. 4 at p. 18; Dallas' Statement of Fact 27.

33. In the Accused Beds, the bolster is disposed in place relative to the bottom cushion by the covering for the bolster. (Id.)

**Uncontested.**

34. None of the Accused Beds have fasteners, straps, or equivalent structure for holding the bolster in place. (Id.)

**Contested.** The bolster pockets are equivalent to fasteners and straps as disclosed by the patent. FM Infr. Ex. 2, col. 2, lines 51-52., col. 3, lines 1-7 ("holding the bolster 6 in the bolster pocket 10 keeps the bolster relatively fixed in position with respect to the perimeter of the bottom portion of the pet bed 1").

35. In the Accused Beds, all or substantially all of the bolster never "flops" over the side of the bottom cushion. (Mathews Decl., ¶¶ 10, 18; Fessler Rpt., Exh. B to Fessler Decl., at 14-19.)

**Contested.** Assuming that Mathews' own photos B1, B2, C1 and C2 are typical of beds actually sold by Dallas (which Flexi-Mat does not concede), they show that substantially all of the bolster has flopped or is disposed exteriorly about at least a portion of the perimeter of the bottom portion. In fact, the beds actually sold to BJ's by Dallas have bolsters substantially all of which extend exteriorly about the perimeter of the bottom portion. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶8.

36. All or substantially all of the bolsters in the Accused Beds are never disposed exteriorly about at least a portion of the perimeter of the bottom cushions. (Id.)

**Contested.** Assuming that Mathews' own photos B1, B2, C1 and C2 are typical of beds actually sold by Dallas (which Flexi-Mat does not concede), they show that substantially all of the bolster has flopped or is

9

disposed exteriorly about at least a portion of the perimeter of the bottom portion. In fact, the beds actually sold to BJ's by Dallas have bolsters substantially all of which extend exteriorly about the perimeter of the bottom portion. Handelsman Decl. in Opposition to Defendants' Motions for Summary Judgment at ¶8.

|  | Respectfully submitted, |
|---|---|
| Dated: January 9, 2006 | /s Richard B. Myrus |
|  | Richard B. Myrus (BBO # 638793)<br>GOODWIN PROCTER LLP<br>Exchange Place<br>Boston, MA 02109<br>Telephone: (617) 570-1058<br>Facsimile: (617) 523-1231<br><br>Michael Husmann<br>MICHAEL BEST & FRIEDRICH LLP<br>100 East Wisconsin Avenue<br>Suite 3300<br>Milwaukee, WI 53202-4108<br><br>Larry L. Saret<br>Lisa C. Childs<br>Gretchen M. Hosty<br>MICHAEL BEST & FRIEDRICH LLP<br>Two Prudential Plaza<br>180 North Stetson Avenue<br>Suite 2000<br>Chicago, IL 60601<br>Phone: (312) 222-0800<br>Fax: (312) 222-0818<br><br>Attorneys for Plaintiff<br>Flexi-Mat Corporation |

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by electronic on 1/09/06.

/s/ Richard B. Myrus