UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>       Defendants. | Civil Action No. 04 10162 DPW |

And Related Counterclaims

## DECLARATION OF JAMES ELESH
## IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I hereby declare that:

1. I am Chief Executive Office of Flexi-Mat Corporation, the patent owner and plaintiff in this case.

2. I have been in the dog bed business since about 1967, and I am knowledgeable about the products and problems involved in that business.

3. In 1996, Flexi-Mat and others were selling various types of pet beds, including one that Flexi-Mat calls the Cuddler bed. This bed is primarily for small dogs. It has side walls composed of foam that are glued at the bottom to a foam floor. The

combination is covered in fabric. The wall acts as a minimal support for a dog's back and provides a sense of security for the dog, by defining its space. But that dog bed did not work for medium and large dogs which rested their heads on the foam walls, because the foam walls cannot support the weight of the dog's head. If a dog were to put its head on the foam wall, the wall would crush or collapse and would not be comfortable. Other pet beds then sold were essentially little more than flat mats or cushions, with no provision for supporting the dog's head.

4.   There was a need, then, for a bed with a pillow or cushion that would elevate and support a large dog's head and also provide the back support and sense of security that dogs seem to like. In addition, there was a need for the cover for such a pet bed to be removable from the cushions or stuffing inside, so that dog owners could easily remove and wash it. No one had previously designed a pet bed with all of these features, even though pet beds had been offered for sale long before I started in the business.

5.   Scott Haugh designed the pet bed that is shown and described in U.S. Patent No. 5,765,502 (the "'502 patent"). This pet bed solved the problem of the collapsing foam walls that occurred when a large dog used prior pet beds. With the bed of the '502 patent, a large dog could rest its head on or its back against the bolster, without the bolster collapsing accordion-style and being compressed beneath the dog's head. The bed also included the security feature by partially surrounding the bottom cushion with a bolster, and yet the bed left sufficient room on the bottom cushion for the large dog's body. The bed included the easy washability feature by designing the outer cover so that it could be easily removed from the bolster and bottom cushions.

6.    Flexi-Mat acquired the '502 patent and sold bolster beds as described in it. The Flexi-Mat bolster bed has been a very successful product. During the period July 2000 to June 2005, Flexi-Mat's sales of bolster beds totaled in excess of 150,000 units and $ 7.5 million. This product created an entirely new niche of luxury pet beds that retailed in the range of $100-$200. Previous pet beds were primarily round or rectangular cushions, with and without foam walls, that retailed for under $80. Flexi-Mat's bolster beds had a different construction, and were sold to the public through retailers such as Orvis, L.L. Bean, Frontgate, In the Company of Dogs, and Drs. Foster & Smith. Frontgate, for example, had only one pet bed in its catalog when Flexi-Mat began selling its bed to Frontgate. Once Frontgate began selling Flexi-Mat's bolster bed, Frontgate stopped selling the other round pet bed. Frontgate was so enthused with Flexi-Mat's bolster bed that it placed advertisements of the bolster bed in <u>SkyMall</u> magazine, the magazine commonly found on commercial airlines, and Frontgate has continued to place those advertisements over approximately a five year period. As another example, L.L. Bean had been selling only beds made pursuant to L.L. Bean's own designs, but when it saw Flexi-Mat's bolster bed, it purchased those beds from Flexi-Mat. I believe Flexi-Mat's bed remains the only pet bed sold by L.L. Bean that is not made according to L.L. Bean's own designs. As an additional example, Orvis sells a number of pet beds, but in September 2003 it described Flexi-Mat's bolster bed as "our strongest seller and getting stronger," as shown in the attached Exhibit 1, FM 010157. This email is dated just when defendant BJs began selling Dallas' and Doskocil's accused pet beds. Orvis referred to the bolster bed it purchased from Flexi-Mat and sold in 2003 as a "Comfort Couch," and this bed was covered by Flexi-Mat's patent.

7. In addition to the defendants in this case, others have copied the Flexi-Mat bolster bed shown in U.S. Patent No. 5,765,502. These companies are Trade Lines, Wynken, Blynken & Fido, American Recreation Products, and New England Serum. Each of these copiers have, by agreement, stopped making and selling infringing pet beds.

8. In late 2003, I instructed one of my employees to purchase a bolster bed from BJs. The bed I purchased is the same bed marked as King Deposition Exhibit 2 and is shown in the photographs attached as Exhibit 2. This bed bears a tag identifying its manufacturer as Dallas Manufacturing Company. In 2004, I instructed an employee to purchase another bolster bed from BJs. That bed is marked King Deposition Exhibit 3 and is pictured in the photograph attached hereto as Exhibit 3. The bed bears a tag listing an address belonging to Doskocil.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2006

James Elesh