UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>Defendants,<br><br>And Related Counterclaims. | Civil Action No. 04 10162 DPW |

### DECLARATION OF SIMON HANDELSMAN
### IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I hereby declare that:

1.  I am an expert witness retained by Plaintiff Flexi-Mat Corporation in this matter. I have examined the Dallas bolster bed that is accused of infringement in this case as well as the Doskocil bolster bed that is accused of infringement in this case. I submit this declaration for the purpose of detailing the facts concerning the construction of these accused beds.

2.  Attached as Exhibit 1 to this declaration is a photograph of the Doskocil accused bolster bed marked as Exhibit 3 to the King Deposition. The photograph shows the seam between the material surounding Doskocil's bolster and the material surrounding Doskocil's base or bottom cushion. The photograph shows that Doskocil uses a common seam for the green material surrounding the bolster and the khaki and fleece materials that form the bottom and top, respectively, of the covering around the bottom cushion. At the common seam, the two edges

of the green material are nested between the ends of the khaki and fleece materials, and a single stitch line attaches them altogether.

3. By constructing its pet bed this way, Doskocil has a single outer covering that encloses both a bolster and a bottom cushion. The bolster and bottom cushion are each within a pocket or interior compartment of the outer covering, and that construction is consistent with the description in the '502 patent of the bolster and bottom cushion each being disposed in "pockets" of the outer covering. If the single stitch line of Doskocil's pet bed were unsewn, both the bolster and bottom cushion would fall out and you would just have pieces of fabric, not covers for the bolster and bottom cushion. That would not be the case if each were in its own separate and complete cover. Thus, Doskocil does not have multiple separate outer coverings like those described in U.S. Patent No. 5,010,843, but a single outer covering.

4. Doskocil could have sewn the green material together lengthwise to form a first complete bolster cover, sewn or otherwise attached the edge of the khaki material to the edge of the fleece material to form a second complete bottom cushion cover, and then sewn the two completed covers together, like the top and bottom cushion covers in Henry U.S. Patent No. 5,010,843. Doskocil did not do so. By avoiding the multiple cover construction of Henry, Doskocil saved the time of sewing together two complete covers, and the additional time of sewing two complete covers to each other.

5. Dallas makes its outer covering slightly differently than does Doskocil. Instead of bringing its materials surrounding the bolster and the bottom cushion together at a common seam, Dallas forms an incomplete pocket of fleece and other material for the bolster and a pocket of fleece and other material for the bottom cushion. This is shown in the two photographs attached as Exhibit 2 to this Declaration, which are among the same photographs

identified and attached as Exhibit A in Dallas' Expert Report of Suzanne Fessler Re Infringement Issues for U.S. Patent No. 5,765,502. The material around the "bolster pocket" is incomplete because, as shown in the second photograph, the material forming the pocket is insufficient to completely surround the bolster, leaving a gaping opening. Dallas saves material by stitching the fleece panel (shown by its light color in the photograph) of the bolster pocket to the fleece panel on top of the material surrounding the bottom cushion, along a line spaced inwardly from the perimeter of the bottom cushion. Ms. Fessler refers to this stitch line as a black line added to the first photograph of Exhibit 2. Dallas also sews the other edge of the bolster pocket (shown by its dark color in the photograph) to the fleece panel on top of the bottom cushion, and to the dark material around the bottom cushion.

6.   By constructing its pet bed this way, Dallas has an outer covering as described in the '502 patent. Dallas' outer covering encloses both a bolster and a bottom cushion. The bolster and bottom cushion are each within a pocket or interior compartment of the outer covering. As previously described for Doskocil's pet bed, Dallas' construction is consistent with the description in the '502 patent of the "pockets" in the outer covering. FM Infr. Ex. 1, col. 2, lines 40-52. If either of the stitch lines attaching Dallas' incomplete bolster pocket were unsewn, the bolster would fall out because the "covers" do not in fact entirely surround or cover the individual components of the bed. That would not be true if the bolster and bottom cushion were each in its own separate and complete cover.

7.   Dallas could have made a complete bolster cover by using more fleece material around the bolster and sewing the fleece material to the dark material around the bolster, to completely enclose the bolster. Dallas then could have sewn that completed cover to the complete cover around the bottom cushion. Dallas did not do so. As previously described, Dallas saved fleece material by creating an incomplete bolster pocket and by "borrowing" or relying upon the fleece

3

material above the bottom cushion to keep the bolster from falling out of the pet bed. Dallas avoided the multiple separate cover construction of Henry, and by doing so saved material and the time of sewing together the ends of two complete covers, and the time of sewing two complete covers to each other.

8. I understand that Dallas argues in its Memorandum In Support of Motion for Summary Judgment of Non-Infringement of U.S. Patent 5,765,502 (p. 14) that its bolster is positioned on top of the bottom cushion and because of that, "substantially all of said bolster" is not "disposed exteriorly about at least a portion of the perimeter of the bottom portion" as stated in claim 1 of the '502 patent. I disagree. As I explained during my deposition (pp. 91-97 attached as Exhibit 3) when I examined the Dallas beds, I observed and felt with my hands where the bolster was in relation to the bottom portion or bottom cushion. Substantially all of Dallas' bolster is disposed exteriorly about at least a portion of the perimeter of the bottom portion. I believe that the bolster does not need to be "alongside" the bottom cushion, as I understand Dallas argues, to be "disposed exteriorly" as stated in claim 1. There is no requirement in the claim that the bolster lie on the floor. To do so would defeat the bolstering feature and change the bolster into another, adjacent bottom cushion. I further believe that during use of the pet bed, with a dog leaning against Dallas' bolster, even more of the bolster will flop over to the exterior of the bottom cushion, and that over time, the bolster of Dallas' pet bed will permanently and progressively move farther to the exterior of the perimeter of the bottom cushion, due to pet usage and the natural sagging or stretching of the cover.

9. On page 10 of the Declaration of Suzanne D. Fessler In Support of Dallas Manufacturing's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,765,502, Ms. Fessler refers to the Henry U.S. Patent No. 5,010,843 and states that a "bed filled with foam, beads, or cloth can be deformed, fluffed, or plumped up so that its shape

4

changes." Fessler then argues that it was foreseeable that someone might design a pet bed in which the bolster flops over the perimeter of the bottom portion. I do not know what Ms. Fessler means by "its shape changes," but I do know that the degree to which a pet bed "can be deformed, fluffed, or plumped up" depends on how much stuffing or filler has been inserted within the cover. For example, a pet bed that has been filled so much that its cover is taut will not deform as much as a pet bed that contains only half as much stuffing or filler. The density of the stuffing affects how much a pet bed will deform. Further, a stated purpose of the Henry bed is to form a "pocket ... between the ... [top] semi-circular and [bottom] circular cushions whereby a pet may crawl into the pocket for resting and sleeping ...." (Abstract). That purpose would not be met by top cushions that flop over the perimeter of the bottom portion, because the portion of the top cushions that flop over would not form any part of the pocket for resting and sleeping and would serve no purpose.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2006.

_____
Simon Handelsman