# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>        Defendants.<br>_____<br>AND RELATED COUNTERCLAIMS. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04 10162 DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO FLEXI-MAT'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND AND APPLICABLE LEGAL PRINCIPLES ........................................2

III.    ARGUMENT .....................................................................................................2

        A.      Claim 1 Requires the Bottom Cushion and Bolster to Be Disposed Within
                the Same Interior Space ...........................................................................2

                1.      Claim 1 refers to "*the* interior of the outer covering." ................................3

                2.      Claim 1 would be indefinite if it were to encompass an outer
                        covering with multiple interior spaces. ........................................3

                3.      Flexi-Mat disclaimed coverage over pet beds with separate covers
                        for the top and base cushions during prosecution. ........................3

                4.      Flexi-Mat's arguments regarding its prosecution disclaimer are
                        wrong. ...................................................................................5

                        a.      An inventor can relinquish claim coverage through either
                                amendment or argument. .................................................5

                        b.      The grounds on which the patent examiner ultimately
                                distinguished Henry are irrelevant. .................................5

                        c.      Flexi-Mat never retracted the "separate covers" argument in
                                the prosecution history. ..................................................7

                        d.      Flexi-Mat did not and could not distinguish <u>Henry</u> by
                                arguing that the top covers are "complete" before sewn to
                                the bottom cover. ..........................................................8

                5.      The limitation "without being secured to the removable cushion"
                        makes sense only if the bottom cushion and bolster are in the same
                        interior space. ...........................................................................10

        B.      Claim 1 Excludes Beds with a Significant Amount of the Bolster on Top
                of the Bottom Cushion ...........................................................................11

        C.      Claim 1 Recites a Means-Plus-Function Limitation that Requires Fasteners
                or Straps as the Corresponding Structure.............................................13

IV.     DEFENDANTS' ACCUSED BEDS DO NOT LITERALLY INFRINGE
CLAIM 1 ................................................................................................................15

      A.      All of the Bolsters Have Separate Covers with Separate Interior Spaces..............15

      B.      In None of the Accused Dallas Manufacturing Beds Is "Substantially All"
of the Bolster Disposed "Exteriorly" About the Perimeter of the Bottom
Cushion .............................................................................................................18

      C.      None of the Accused Beds Have Fasteners, Straps, or the Equivalent.................20

V.      CONCLUSION.......................................................................................................20

TABLE OF AUTHORITIES

Cases

Atlantic Thermoplastics Co. v. Faytex Corp.,
    970 F.2d 834 (Fed. Cir. 1992)..................................................................................10

Aventis Pharms., Inc. v. Barr Labs., Inc.,
    372 F. Supp. 2d 430 (D. N.J. 2005) ...........................................................................9

Ballard Med. Prods. v. Allegiance Healthcare Corp.,
    268 F.3d 1352 (Fed. Cir. 2001)..................................................................................4

Bayer AG v. Elan Pharm. Res. Corp.,
    212 F.3d 1241 (Fed. Cir. 2000)................................................................................10

In re Bell,
    991 F.2d 781 (Fed. Cir. 1993)........................................................................9, 10, 18

Ecolab, Inc. v. Envirochem, Inc.,
    264 F.3d 1358 (Fed. Cir. 2001)..........................................................................12, 13

Elkay Mfg. Co. v. Ebco Mfg. Co.,
    192 F.3d 973 (Fed. Cir. 1999)....................................................................................5

Exxon Research & Eng'g Co. v. United States,
    265 F.3d 1371 (Fed. Cir. 2001)..................................................................................3

Fairfax Dental (Ireland) Ltd. v. Sterling Optical Corp.,
    808 F. Supp. 326 (S.D.N.Y. 1992) .............................................................................9

Hockerson-Halberstadt v. Avia Group Int'l,
    222 F.3d 951 (Fed. Cir. 2000)................................................................................5, 6

Hoganas AB v. Dresser Indus., Inc.,
    9 F.3d 948 (Fed. Cir. 1993).........................................................................................5

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,
    381 F.3d 1111 (Fed. Cir. 2004)................................................................................11

Magnivision, Inc. v. Bonneau Co.,
    33 F. Supp. 2d 1218 (C.D. Cal. 1998) ......................................................................14

Mas-Hamilton Group v. LaGard, Inc.,
    156 F.3d 1206 (Fed. Cir. 1998)................................................................................14

Micro Chem. v. Great Plains Chem. Co.,
    194 F.3d 1250 (Fed. Cir. 1999)................................................................................14

Omega Engineering, Inc. v. Raytek Corp.,
    334 F.3d 1314 (Fed. Cir. 2003)..................................................................................8

Pfizer Inc. v. Ranbaxy Labs. Ltd., No.
  CIV.A. 03-209-JF, 2005 WL 3454227 (D. Del. Dec. 16, 2005) ...............................................9

Phillips v. AWH Corp.,
  415 F.3d 1303 (Fed. Cir. 2005)....................................................................................................14

Playtex Prods., Inc. v. Procter & Gamble Co.,
  400 F.3d 901 (Fed. Cir. 2005)......................................................................................................12

Southwall Techs. Inc. v. Cardinal IG Co.,
  54 F.3d 1570 (Fed. Cir. 1995).........................................................................................................4

Spectrum Int'l, Inc. v. Sterilite Corp.,
  164 F.3d 1372 (Fed. Cir. 1998).......................................................................................................4

Springs Window Fashions LP v. Novo Indus., L.P.,
  323 F.3d 989 (Fed. Cir. 2003)............................................................................................4, 6, 7, 8

In re Thorpe,
  777 F.2d 695 (Fed. Cir. 1985).............................................................................................9, 10, 18

Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,
  157 F.3d 1311 (Fed. Cir. 1998).....................................................................................................15

Vanguard Prods. Corp. v. Parker Hannifin Corp.,
  234 F.3d 1370 (Fed. Cir. 2000).......................................................................................................9

Verve, LLC v. Crane Cams, Inc.,
  311 F.3d 1116 (Fed. Cir. 2002).....................................................................................................12

Wahpeton Canvas Co. v. Frontier, Inc.,
  870 F.2d 1546 (Fed. Cir. 1989)...................................................................................................2, 3

Statutes

35 U.S.C. § 112, ¶ 6 ...........................................................................................................14, 15

# I. __INTRODUCTION__

Plaintiff Flexi-Mat's bark is worse than its bite.  The patent in suit, U.S. Patent No. 5,765,502 ("the '502 patent"), is limited to a specific design for a particular bolster pet bed that excludes Defendants' accused beds.  No matter how hard Flexi-Mat pulls on its collar, it cannot shake off the fact that it surrendered coverage over pet beds with the bolster and bottom cushion in the same interior space.  Flexi-Mat also renounced beds, like the accused Dallas Manufacturing beds, with the bolster on top of the bottom cushion.

As Defendants discussed in their summary judgment motions, the accused beds resemble the prior art Henry patent, U.S. Patent No. 5,010,843, over which Flexi-Mat had to distinguish to obtain the '502 patent.  Like Henry, all of the accused beds have separate covers with separate interior spaces for the bottom cushion and the bolster.  Also like Henry, all of the accused Dallas Manufacturing beds have the bolster placed on top of the bottom cushion, not beside it.  Moreover, all of the accused beds lack fasteners, straps, or equivalent structure as required by the '502 patent for keeping the bolster in place.  Each of these differences avoids literal infringement of the asserted claims, and Flexi-Mat's motion does not argue for infringement under the doctrine of equivalents.

Flexi-Mat's counter-arguments lack merit.  First, Flexi-Mat contends that the bottom cushion and bolster have separate covers only if each cover is first completely formed to fully enclose its respective cushion, and only then are the covers sewn together.  This contention fails because the '502 patent claims a pet bed having an outer covering, _not_ a method of making one.  The method of making the outer covering is thus irrelevant.  What is important is that both Defendants' and Henry's _assembled_ covers are alike:  they are formed of multiple pieces of fabric that have been stitched together to create separate interior spaces for the cushions and bolsters.

Second, Flexi-Mat asserts that substantially all of Dallas Manufacturing's bolster is

-1-

capable of being disposed exteriorly about the bottom cushion.  This claim is blatantly false, as proven by the Dallas Manufacturing beds themselves.

Finally, Flexi-Mat ignores the testimony of the inventor and its own expert, who both confirmed that "fasteners or straps" are the structures disclosed in the '502 patent that are necessary to hold the bolster in place beside the bottom cushion.  It is undisputed that none of the accused beds have fasteners, straps, or the equivalent for holding their bolsters in place.

## II.  BACKGROUND AND APPLICABLE LEGAL PRINCIPLES

In order to avoid unnecessary repetition, Defendants rely in opposition to Flexi-Mat's summary judgment motion of infringement on the material facts and relevant legal standards set forth in their own summary judgment motions of non-infringement.

## III.  ARGUMENT

Flexi-Mat charges Defendants with infringement of claims 1-3 of the '502 patent. This brief focuses on independent claim 1 because claims 2 and 3 depend from claim 1.  As a matter of law, a dependent claim cannot be infringed unless the claim from which it depends is infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

## A.    Claim 1 Requires the Bottom Cushion and Bolster to Be Disposed Within the Same Interior Space

Flexi-Mat contends that the "outer covering" of claim 1 "includes the 'pockets,' 'interiors,' and/or 'compartments' that are featured in both Doskocil's and Dallas' bolster beds." (FLEXI-MAT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT, "Flexi-Mat's Infringement Memo.," at 6.)  This statement gets both the facts and law wrong.  As discussed below, the claimed pet bed has an outer covering with just one interior space or compartment in which both the bottom cushion and the bolster are disposed.

-2-

1. **Claim 1 refers to "_the_ interior of the outer covering."**

Claim 1 limits itself to one interior space or compartment by referring to "_the_ interior of the outer covering."  ('502 patent, Exh. 1 to Flexi-Mat's Infringement Memo., col. 3, lines 42-43; *see also id*., col. 2, lines 12-14 ("The bottom cushion rests within a bottom pocket _which communicates with_ the bolster pocket.").)  The definite article "the" denotes that the claimed pet bed has only one interior space or compartment in its outer covering.  In contrast, Flexi-Mat itself concedes that multiple "'pockets,' 'interiors,' and/or 'compartments' . . . are featured in both Doskocil's and Dallas' bolster beds."  (Flexi-Mat's Infringement Memo. at 6.)  This admission alone is a concession that the accused beds do not infringe claim 1.

2. **Claim 1 would be indefinite if it were to encompass an outer covering with multiple interior spaces.**

Additionally, claim 1 would be indefinite if it were to encompass an outer covering with multiple interior spaces or compartments that are walled off from one another.  It would then be unclear in which "interior" the bolster is disposed.  If a broad construction would make a claim indefinite, then a narrower construction should be adopted.  *See generally Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (rejecting indefiniteness argument after claim construction; "If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite.").  Here, claim 1 should be construed to encompass only one interior space and thus avoid indefiniteness.

3. **Flexi-Mat disclaimed coverage over pet beds with separate covers for the top and base cushions during prosecution.**

Moreover, as detailed in Defendants' summary judgment motions, Flexi-Mat distinguished Henry during the application process for the '502 patent.  Specifically, Flexi-Mat argued that Henry disclosed separate covers for the top and base cushions, whereas in Flexi-Mat's claimed bed "a single cover encompasses both cushions."  (Flexi-Mat's Infringement Memo., Exh. 2

at DMC 000042.)  By making its "single cover" argument, Flexi-Mat triggered "the rule that explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim."  *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998); *see also Southwall Technologies Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

Henry discloses that its "separate covers" actually "are joined together by any suitable means in a permanent or releasable fashion, for example, by stitching . . . ."[1]  (Henry patent, Exh. 5 to Flexi-Mat's Infringement Memo., col. 2, lines 22-24; *see also id*., col. 3, lines 22-27.) Thus, both Henry and the '502 patent end up with one cover assembly, capable of encompassing multiple cushions and formed by stitching together several pieces of fabric.[2]  The only sense in which Henry has "separate covers" is in that the cover assembly forms separate interior spaces for the cushions.  A reasonable competitor would conclude that the only way in which Flexi-Mat's "single cover" argument distinguishes Henry is that the '502 patent has just one interior space or compartment for both the bottom cushion and the bolster, while Henry has several.  *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (looking at what "a reasonable competitor, reviewing the amendments and statements made by the applicant to distinguish the claimed invention . . ., would conclude"); *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1361 (Fed. Cir. 2001) ("[T]he scope of the disclaimer must be

---

[1] Dallas Manufacturing mistakenly added the phrase "into one cover assembly" to this quotation in its summary judgment brief.  Although it does not use those exact words, Henry's specification and drawings do make clear that the "separate covers" are joined into one cover assembly by stitching or other means.

[2] As clearly shown in the drawings of the '502 patent, the outer covering 2 is formed by stitching together several different pieces of fabric.

-4-

determined by what a competitor would reasonably believe that the applicant had surrendered.")
(quotation omitted).  *Cf. Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 953 (Fed. Cir. 1993)
(reasonable to conclude that examiner relied upon patentee's argument regarding one claim
distinction where argument as to other claim distinction was "of questionable validity" in
distinguishing over reference).

    **4.    Flexi-Mat's arguments regarding its prosecution disclaimer are wrong.**

      To excuse its prosecution disclaimer, Flexi-Mat tenders several counter-arguments
that get the facts and the law wrong.

        **a.    An inventor can relinquish claim coverage through either amendment or argument.**

      Flexi-Mat suggests that there was no disclaimer because "[s]ignificantly, the term
'outer covering' was not amended by Flexi-Mat."  (Flexi-Mat's Infringement Memo. at 7.)  This
suggestion is immaterial.  "[I]t is 'irrelevant whether [the inventor] relinquished [a] potential claim
construction in an amendment to the claim or in an argument to overcome or distinguish a
reference.'"  *Hockerson-Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 957 (Fed. Cir. 2000)
(quoting *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999)).

        **b.    The grounds on which the patent examiner ultimately distinguished Henry are irrelevant.**

      Flexi-Mat also asserts there was no disclaimer because the Patent and Trademark
Office was dissatisfied with Flexi-Mat's argument about Henry's separate covers, and thus proposed
additional claim language to insure that claim 1 avoided Henry.  (Flexi-Mat's Infringement Memo.
at 7.)  In other words, Flexi-Mat suggests that it should be excused from its prior argument to the
patent examiner because the examiner distinguished Henry on another ground.  This suggestion
bungles the law.

In *Springs Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989 (Fed. Cir. 2003), the examiner expressed doubt during prosecution that the patentee's claim amendments and argument sufficed to distinguish another patent to Pluber. *Id*. at 994. The patent eventually issued, and the patentee, during later litigation, claimed this was because the patent examiner ultimately found the Pluber patent not to be prior art because it postdated the application for the patentee's patent. *Id*. The patentee, akin to Flexi-Mat, contended that "the examiner did not agree that the amended claims distinguished over Pluber and that the claims therefore should not be limited based on the applicant's argument that they did." *Id*. The Federal Circuit disagreed, stating that "the examiner's remarks do not negate the effect of the applicant's disclaimer":

> The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. . . . "The prosecution history constitutes a public record of the patentee's representations concerning the scope and the meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct. . . . Were we to accept [the patentee's] position, we would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies."

*Id*. at 995 (quoting *Hockerson-Halberstadt*, 222 F.3d at 957).

Similarly, it is irrelevant whether the examiner was dissatisfied with Flexi-Mat's argument about Henry's separate covers. Moreover, the fact that the patent examiner proposed the additional claim language does not necessarily mean that she rejected Flexi-Mat's "separate cover" argument. Flexi-Mat's patent prosecutor, Larry L. Saret, testified that he did not recall whether it was his understanding that, without agreeing to at least some additional language, the examiner would not have allowed the patent. (Deposition of Larry L. Saret taken on Sept. 13, 2005, "9/13/05 Saret Depo.," Exh. E to the DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Clark Decl.," at 43:8-12.) Flexi-Mat is stuck with this testimony.

-6-

**c.    Flexi-Mat never retracted the "separate covers" argument in the prosecution history.**

Having messed up the law on prosecution disclaimers, Flexi-Mat then contends that its agreement "to the examiner's proposed additional limitation at most creates an ambiguity as to whether Flexi-Mat still contended that Henry had 'separate' covers in distinction to its claims." (Flexi-Mat's Infringement Memo. at 7.)  Again, Flexi-Mat is wrong.  There is no ambiguity that Flexi-Mat argued in its response to the patent examiner's Office Action dated June 27, 1997 that Henry had separate covers, and that this fact distinguished claim 1.  There is no ambiguity that Flexi-Mat never retracted the "separate covers" argument in the prosecution history.  And there is no ambiguity that Flexi-Mat never stated in the prosecution history that it agreed with the patent examiner's comments in the Office Action about the argument.  (*See also* 9/13/05 Saret Depo., Exh. E to Clark Decl., at 45:4-6 (showing that Mr. Saret did not remember at his deposition whether or not he agreed with the reasons why the examiner wanted the additional language).)

Moreover, as a matter of law, Flexi-Mat may not create an ambiguity as to whether it maintained the "separate covers" argument by staying silent on the record.  If Flexi-Mat no longer wished to assert the "separate covers" argument, it had an affirmative duty to retract that argument. As *Springs Window* states:

> If the applicant mistakenly disclaimed coverage of the claimed invention, then the applicant should have amended the file to reflect the error, as the applicant is the party in the best position to do so.  The applicant, however, never retracted any of his statements distinguishing Pluber nor did he acquiesce in the examiner's comments regarding the overlapping scope of Pluber.  Springs therefore must be held to the restrictive claim construction that was argued during prosecution.

323 F.3d at 995.  Here, Flexi-Mat never retracted the "separate cover" argument and never stated in the prosecution history that it agreed with the patent examiner's comments about the argument.

Disregarding the law, Flexi-Mat tries to prop up its "ambiguity" claim with a string cite from *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003). (Flexi-Mat's Infringement Memo. at 7.) But *Omega Engineering* and the cases it cites concern circumstances where the "prosecution statements [are] too vague or ambiguous to qualify as a disavowal of claim scope" in the first place. *Id.* at 1325. Here, in contrast, Flexi-Mat asserts "an ambiguity as to whether Flexi-Mat *still contended* that Henry had 'separate' covers in distinction to its claims." (Flexi-Mat's Infringement Memo. at 7.)[3] *Springs Window* governs this situation and makes clear that Flexi-Mat's claim of ambiguity must fail.

### d.    Flexi-Mat did not and could not distinguish <u>Henry</u> by arguing that the top covers are "complete" before sewn to the bottom cover.

Finally, Flexi-Mat contends that "[e]ven assuming that there was some disavowal, the disavowal is not of the scope defendants argue." (Flexi-Mat's Infringement Memo. at 8.) According to Flexi-Mat, it "argued that its claims differed from Henry in that Henry taught to make separate complete covers and then connect these separate covers together." (*Id.*) This statement rewrites the prosecution history.

Flexi-Mat never argued to the patent examiner that Henry requires the covers to be "complete" (i.e., fully enclosing the cushion) before they are sewn together. (Flexi-Mat's Infringement Memo., Exh. 2 at DMC 000041-000042.) Rather, Flexi-Mat argued that Henry "requires covers for the semi-circular cushions 14, 16 which are <u>separate</u> from the cover for the base cushion," whereas, in the '502 patent, "a single cover *encompasses* both cushions." (*Id.* at DMC 000042.) Flexi-Mat added that "<u>Henry</u> does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions

---

[3] All emphasis has been added unless otherwise indicated.

of Henry."  (*Id*.)  In other words, Flexi-Mat distinguished Henry, not because the top covers are

"complete" before they are sewn to the bottom cover, but merely because they are separate pieces of

fabric that separately cover the top cushions.  (Deposition of Larry L. Saret taken on Sept. 21, 2005,

"9/21/05 Saret Depo.," Exh. A to the DECLARATION OF GARY A. CLARK IN OPPOSITION TO FLEXI-

MAT'S MOTIONS FOR SUMMARY JUDGMENT, "Clark Opp. Decl.," at 63:18-64:10 ("I believe my

argument was that they were separate from the cover for the base cushion.").)

        Flexi-Mat's rewriting of the prosecution history also makes no sense as a matter of

law.  The '502 patent claims a product, *not a manufacturing process*.  Thus, Flexi-Mat has never had

any basis for arguing that the claims distinguish over Henry on the basis of the method or sequence

of steps by which the outer coverings are formed.  The Federal Circuit is clear that "'[t]he

patentability of a product does not depend on its method of production.'"  *In re Bell*, 991 F.2d 781,

785 (Fed. Cir. 1993) (quoting *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985)); *see also id*. ("Bell

claims compositions, and the issue is the obviousness of the claimed compositions, not of the

method by which they are made."); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. CIV.A. 03-209-JF, 2005

WL 3454227, *14 (D. Del. Dec. 16, 2005) ("[T]he compound recited in claim 6 does not depend for

patentability on the method by which it is made."); *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 372 F.

Supp. 2d 430, 436 (D. N.J. 2005) ("'A novel product that meets the criteria of patentability is not

limited to the process by which it was made.'") (quoting *Vanguard Prods. Corp. v. Parker Hannifin

Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000)); *Fairfax Dental (Ir.) Ltd. v. Sterling Optical Corp.*,

808 F. Supp. 326, 338 (S.D.N.Y. 1992) ("[A] patentee who does not distinguish his product from

the prior art, except in the manner by which he produced it, will not secure exclusive patent rights.")

(citing *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834 (Fed. Cir. 1992)).

In a last gasp to save its contorted reading of the prosecution history, Flexi-Mat cites the deposition testimony of Defendants' sewing and patternmaking expert, Suzanne D. Fessler. (Flexi-Mat's Infringement Memo. at 8.)  Ms. Fessler is not a lawyer and, while she is qualified to opine on technical issues, she is not competent to opine on whether Flexi-Mat's patent lawyer limited his prosecution disclaimer to covers that are complete and separate before being sewn together.  Moreover, "testimony as to what a reasonable competitor would conclude from the prosecution history cannot create a genuine issue of material fact so as to bar summary judgment." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1254 (Fed. Cir. 2000) (holding that such testimony did not create genuine issue of fact since issue of whether particular subject matter was relinquished during prosecution is determined as matter of law).

In any event, Ms. Fessler never agreed that Flexi-Mat disclaimed only covers that are complete and separate before being sewn together.  Ms. Fessler recognized that the manufacturing process for Henry likely involved surrounding each cushion independently with a piece of fabric and then sewing them together, but never said Flexi-Mat limited its prosecution disclaimer to this process for making a pet bed.  (Deposition of Suzanne D. Fessler taken on Nov. 3, 2005, "Fessler Depo.," Exh. 6 to Flexi-Mat's Infringement Memo., at 200:25-203:22.)  Further, any such testimony would be trumped by the Federal Circuit cases establishing that "[t]he patentability of a product does not depend on its method of production."  *In re Bell*, 991 F.2d at 785; *In re Thorpe*, 777 F.2d at 697.

### 5.    The limitation "without being secured to the removable cushion" makes sense only if the bottom cushion and bolster are in the same interior space.

Finally, at the same time that it presented its "single cover" argument, Flexi-Mat amended claim 1 to provide that the bolster is disposed within the interior of the outer covering "without being secured to the removable cushion."  ('502 patent, Exh. 1 to Flexi-Mat's Infringement

Memo., col. 3, lines 45-46.)  This limitation makes sense only if the bottom cushion and bolster are in the same interior space or compartment.  If the bottom cushion and bolster were in separate interior spaces, walled off from one another, there would be no occasion to secure them together.  A court should avoid claim constructions that make a claim limitation superfluous.  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[A]ll claim terms are presumed to have meaning in a claim.").

For at least the above reasons, claim 1 is limited to a pet bed having an outer covering with a single interior space for both the bottom cushion and the bolster.

**B.     Claim 1 Excludes Beds with a Significant Amount of the Bolster on Top of the Bottom Cushion**

Claim 1 requires that "substantially all of said bolster [be] disposed exteriorly about at least a portion of the perimeter of the bottom portion."  ('502 patent, Exh. 1 to Flexi-Mat's Infringement Memo., col. 3, lines 43-45.)  In its motion, Flexi-Mat appears to concede that this means substantially all of the bolster is disposed around or outside the perimeter of the bottom cushion, not on top of it.  (Flexi-Mat's Infringement Memo. at 9.)  Despite this apparent concession, Flexi-Mat also seems to maintain that a significant amount of the bolster may be disposed on top of the bottom cushion.  (*Id*.)  This latter stance conflicts with the claim language, patent specification, and prosecution history of the '502 patent.  As discussed below, a significant amount of the bolster cannot extend over the top of the bottom cushion because then "substantially all" of the bolster would not be exterior to the cushion's perimeter.

Regarding the "substantially all" limitation, the <u>*only*</u> part of the bolster that Flexi-Mat's expert, Simon F. Handelsman, identified as overlapping the bottom cushion was the "gathering" or folds on the inside curved surface of the bolster.  During his deposition, Mr. Handelsman marked Figure 1 of the '502 patent to show the overlapping portion in a copy of the

-11-

patent, Deposition Exhibit 727.  (Deposition of Simon F. Handelsman taken on Nov. 1, 2005,

"Handelsman Depo.," Exh. H to Clark Decl., at 85:24-87:7; *see also* Deposition Exhibit 727, Exh. K

to Clark Decl.)  Deposition Exhibit 727 comports with the ordinary meaning of "substantially" as

"largely but not wholly," and "all" as the "totality" of the bolster.  (*See* Exh. M to Clark Decl.)

   In other words, "substantially all" means largely, but not wholly, the totality of the

bolster.  Importantly, "substantially all" does _not_ mean merely a "substantial" part of the bolster, as

in "considerable in quantity."  *See generally Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d

901, 907 (Fed. Cir. 2005) ("[W]ords of approximation, such as 'generally' and 'substantially,' are

descriptive terms commonly used in patent claims to avoid a _strict numerical boundary_ to the

specified parameter.") (quotations omitted); *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120

(Fed. Cir. 2002) ("Expressions such as 'substantially' are used in patent documents when warranted

by the nature of the invention, in order to accommodate the _minor variations_ that may be

appropriate to secure the invention."); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed.

Cir. 2001) ("[O]rdinarily . . . 'substantially' means 'considerable in . . . extent,' or 'largely but not

wholly that which is specified.'") (citations and quotations omitted).

   Additionally, Flexi-Mat amended claim 1 by adding the words "substantially all of

said bolster" and "exteriorly" to ensure that the claim distinguished over Henry.  Henry expressly

states that "the top cushions can extend _beyond the edges_ of the base cushion 12."  (Henry patent,

Exh. 5 to Flexi-Mat's Infringement Memo., col. 3, lines 18-19.)  Moreover, Henry states that the

cushions may be "filled with any suitable cushion material, for example, layers of plastic foam or

resilient foam particles, semi-rigid or rigid beading, cloth filler, and the like."  (*Id.*, col. 2, lines 44-

47.)  A bed filled with foam, beads, or cloth can be deformed, fluffed, or plumped up so that its

shape changes.  (EXPERT REPORT OF SUZANNE FESSLER RE: INFRINGEMENT ISSUES FOR U.S. PATENT

No. 5,765,502, "Fessler Rpt.," at 10, attached as Exhibit 4 to Flexi-Mat's Infringement Memo.)  It is thus misleading for Flexi-Mat to suggest that, in Henry, "all of the top cushion lies over the bottom cushion."  (Flexi-Mat's Infringement Memo. at 9.)  It was foreseeable that someone might design a bed in accordance with Henry in which the bolster covering is sewn to the top of the covering for the bottom cushion, but a significant amount of the bolster might extend over the perimeter. (Fessler Rpt. at 10, Exh. 4 to Flexi-Mat's Infringement Memo.)

For these reasons, the phrase "substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion" must be construed to exclude beds with a significant amount of the bolster extending over the top of the bottom cushion.

## C.    Claim 1 Recites a Means-Plus-Function Limitation that Requires Fasteners or Straps as the Corresponding Structure

Claim 1 of the '502 patent recites the limitation "substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion."  ('502 patent, Exh. 1 to Flexi-Mat's Infringement Memo., col. 3, lines 43-45.)  Flexi-Mat contends that this limitation contains no functional language or any other language that "requires any 'means' to keep the bolster so disposed."  (Flexi-Mat's Infringement Memo. at 11.)  Flexi-Mat asserts that the claim language "simply describes that bolster structure in relation to other structures," and is thus not a means-plus-function limitation.  *Id.*

Contrary to Flexi-Mat's assertions, the claim limitation does state a function— disposing substantially all of the bolster exteriorly about at least a portion of the perimeter of the bottom portion.  Moreover, the claim limitation fails to identify any structure for performing the function.  Although courts presume that a claim limitation falls outside of 35 U.S.C. § 112, ¶ 6 if the limitation lacks the word "means," the Federal Circuit holds that the "presumption can collapse when an element lacking the term 'means' nonetheless relies on functional terms rather than

-13-

structure or material to describe performance of the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999). Means-plus-function claiming thus applies "to purely functional limitations that do not provide the structure that performs the recited function." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311 (Fed. Cir. 2005).

      The inventor, Scott Haugh, admitted that, without fasteners or straps holding the bolster in place, "[i]t would be sloppy, you know, and not stay where it should stay. It could in theory go anywhere inside that loose bag is all you'd have without those ties." (Deposition of Scott Haugh taken on Sept. 14, 2005, "9/14/05 Haugh Depo.," Exh. F to Clark Decl., at 68:24-69:18; *see also id.* at 46:14-47:1.) In other words, claim 1 is missing the structure (fasteners or straps) needed to perform the function of disposing the bolster beside the bottom cushion. Thus, even though claim 1 lacks the word "means," it must be construed under 35 U.S.C. § 112, ¶ 6 to be limited to that corresponding structure. *See Micro Chem.*, 194 F.3d at 1257; *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-14 (Fed. Cir. 1998) (holding that the claim phrase "lever moving element" merits a means-plus-function treatment because it "is described in terms of its function not its mechanical structure"); *Magnivision, Inc. v. Bonneau Co.*, 33 F. Supp. 2d 1218, 1237 (C.D. Cal. 1998), *aff'd in part, rev'd in part on other grounds*, 250 F.3d 758 (Fed. Cir. 2000) (finding to be in means-plus-function form the phrase "cantilever support engaging said eyeglass contacting members . . . so that . . . said temples . . . are substantially parallel to the folded temples of any other pair of eyeglasses," despite the lack of the word "means").

      Moreover, the patent specification states that "the bolster is held in place by a plurality of fasteners or straps 8." ('502 patent, Exh. 1 to Flexi-Mat's Infringement Memo., col. 2, lines 61-62.) Thus, it is the fasteners or straps 8 that perform the function of *disposing* the bolster exteriorly about at least a portion of the perimeter of the bottom portion.

-14-

Flexi-Mat asserts that the '502 patent also teaches the use of "pockets" as a corresponding structure.  (Flexi-Mat's Infringement Memo. at 11.)  But Flexi-Mat gives no support for this assertion.  Although the patent specification mentions "pockets," it merely states that the outer covering has a bolster pocket, in which a bolster is removably affixed.  The specification makes clear that it is the fasteners or straps that keep the bolster in place, _not_ the pocket itself.  ('502 patent, Exh. 1 to Flexi-Mat's Infringement Memo., col. 2, lines 9-12 ("The outer covering may include a bolster pocket sized to accommodate the bolster, where _the plurality of straps_ removably affixes the bolster within the bolster pocket."); _see also id_., col. 2, lines 61-62.)  The specification thus fails to link the pockets to the function of disposing the bolster exteriorly about at least a portion of the perimeter of the bottom portion.  _See generally Unidynamics Corp. v. Automatic Prods. Int'l, Ltd._, 157 F.3d 1311, 1319 (Fed. Cir. 1998) ("Structure disclosed in the specification . . . is only 'corresponding' structure to the claimed means under § 112, ¶ 6 if the structure is clearly linked by the specification or the prosecution history to the function recited in the claim.").

Additionally, both the inventor, Mr. Haugh, and Flexi-Mat's expert, Mr. Handelsman, confirmed that fasteners or straps are the only structures disclosed in the '502 patent to keep the bolster in place alongside the bottom cushion.  (9/14/05 Haugh Depo., Exh. F to Clark Decl., at 46:14-47:1, 68:24-69:18; Handelsman Depo., Exh. H to Clark Decl., at 88:8-90:4.)  Thus, the pockets are not corresponding structure under 35 U.S.C. § 112, ¶ 6.

### IV.  **DEFENDANTS' ACCUSED BEDS DO NOT LITERALLY INFRINGE CLAIM 1**

None of the accused beds literally meet any of the limitations discussed in the preceding Section III.

### A.    **All of the Bolsters Have Separate Covers with Separate Interior Spaces**

All of the accused beds have their bolsters disposed in a cover that is separate from the cover for the bottom cushion.  The bolster cover creates a separate interior space for the bolster

-15-

that is partitioned off from the interior space for the bottom cushion. (Fessler Rpt., Exh. 4 to Flexi-Mat's Infringement Memo., at 13-20 & photographs attached at end.) The two covers are sewn together, but sewing does not turn two coverings into one *in the context of the '502 patent*, as Flexi-Mat's remarks concerning Henry show.

Yet, Flexi-Mat asserts that "[n]either Dallas nor Doskocil makes two separate covers, one for the bolster and one for the bottom cushion, and then sews them together as taught by Henry." (Flexi-Mat's Infringement Memo. at 8.) This assertion is not only irrelevant, it is false. In all of the accused Dallas Manufacturing beds, the bolster is disposed in a separate cover that is stitched to the top of the cover for the bottom cushion. This is shown by the photographs attached at the end of the Fessler Rpt. The photographs show the black line on the top panel of the cover for the bottom cushion where the bolster cover is stitched in place. The photographs also explicitly show the separate bolster cover before it is stitched to the cover for the bottom cushion. (Fessler Rpt., Exh. 4 to Flexi-Mat's Infringement Memo., at 15; *see also* Deposition of Neil Nivert, Dallas Manufacturing's plant manager, taken on June 29, 2005, "Nivert Depo.," Exh. B to Clark Opp. Decl., at 133:10-14 ("[A]s separate pieces, the cushion . . . is made, the empty cushion, with no fiber in it. The bolster is attached to the top of the cushion.").) The photographs leave no doubt that the accused Dallas Manufacturing beds have separate covers for the bolster and bottom cushion, just like Henry.

Thus, in all of the accused Dallas Manufacturing beds, the bolster and bottom cushion are disposed in separate interior spaces or compartments. (DECLARATION OF RICHARD MATHEWS IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Mathews Decl.," ¶¶ 9-15 and Exhs. B-F.) In each

-16-

of the accused Dallas Manufacturing beds, the bolster cover has its own zippered opening separate from the zippered opening in the covering for the bottom cushion.  (*Id.*)

As for the accused Doskocil bed, it includes four basic components:  (1) a separately removable bottom cushion; (2) a separately removable bolster cushion; (3) a separate zippered fabric cover for the bottom cushion; and (4) a separate zippered fabric cover for the bolster cushion. These four basic components are illustrated and identified in the photographs accompanying Doskocil's summary judgment motion as components 1-4, respectively.  (Appendix to DEFENDANT DOSKOCIL MANUFACTURING COMPANY, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT OF THE '502 PATENT, "Doskocil's Appendix," at A200-A203.)  In its final form, the separate zippered fabric cover for the bottom cushion [3] is stitched to the separate zippered fabric cover for the bolster [4], thereby creating a unified bed structure.  (*Id.* at A200-A203; A193-A194 at Admission 18; A196-A197 at 46:12-47:20 (explaining construction of the accused Doskocil bed).)  The bottom cushion [1] may be inserted through the zippered opening in the bottom fabric cover [3] to form the bottom portion of the accused Doskocil bed; similarly, the bolster cushion [2] may be inserted through the zippered opening in the bolster fabric cover [4] to form the bolster portion of the accused Doskocil bed.  (*Id.* at A200-A203; A192 at Admission 15.)  The bottom cushion [1] and bolster cushion [2] are thereby contained within two distinct and separate pockets.  (*Id.* at A200-A203; A192-A193 at Admissions 16 and 17.)

All of the accused beds thus differ completely from the '502 patent's one-piece outer covering.  Even the inventor, Mr. Haugh, said his design was "different" from a design with a completely contained bolster pocket with its own opening.  (9/14/05 Haugh Depo., Exh. F to Clark Decl., at 49:1-5.)  For at least this reason, none of the accused beds literally infringe.

-17-

In a final salvo, Flexi-Mat contends that, unlike Henry's covers, "[i]f either Dallas' or Doskocil's alleged two separate 'covers' were unsewn, their bolsters and bottom cushions would fall out of the outer covering . . . ." (Flexi-Mat's Infringement Memo. at 8.)  Even if true, this would be irrelevant.[4]  Once sewn together, the covers of Henry form one article with separate interior spaces, just like the accused beds.  Whether the covers start off "complete" or not is immaterial; all that matters for an apparatus claims is the end product.  *See In re Bell*, 991 F.2d at 785; *In re Thorpe*, 777 F.2d at 697.

**B.**    **In None of the Accused Dallas Manufacturing Beds Is "Substantially All" of the Bolster Disposed "Exteriorly" About the Perimeter of the Bottom Cushion**

Each of the accused Dallas Manufacturing beds has its bolster disposed on or over the top of the bottom cushion, not "exteriorly about at least a portion of the perimeter" of the bottom cushion.  This is made clear by the photographs attached at the end of the Fessler Rpt. and as Exhibits B-F to the Mathews Decl.  It is never true that all or substantially all of the bolster "flops" or extends over the side of the bottom cushion.  (Fessler Rpt., Exh. 4 to Flexi-Mat's Infringement Memo., at 14-19; Mathews Decl., ¶¶ 10, 18.)

During his deposition, Flexi-Mat's expert, Mr. Handelsman, made sketches (Deposition Exhibit 728) that grossly overstate the amount of the bolster that may extend over the perimeter of the bottom cushion in certain places, as proven by a simple inspection of the accused Dallas Manufacturing beds.  But even these sketches show a substantial part of the bolster on top of the bottom cushion.  (Handelsman Depo., Exh. H to Clark Decl., at 113:24-114:19; Deposition Exhibit 728, Exh. L to Clark Decl.)  No reasonable jury could conclude, after inspecting the accused Dallas Manufacturing beds and seeing Mr. Handelsman's sketches, that "substantially all" of the

---

[4] For example, if the cover for the bolster on the Dallas Manufacturing beds was unsewn, the bottom cushion would stay in its cover because it completely surrounds the cushion.

-18-

bolster is "disposed exteriorly about . . . the perimeter . . . ."

The only evidence that Flexi-Mat cites to "bolster" its claim is Exhibit B of Mr. Handelsman's EXPERT REPORT ON INFRINGEMENT, "Handelsman Rpt." (*See* Flexi-Mat's Infringement at 9.)  As an initial matter, Mr. Handelsman's Exhibit B shows only the Dallas Manufacturing bolster pet bed sold at BJ's Wholesale Club.  (Flexi-Mat's Infringement Memo., Exh. 3.)  Flexi-Mat cites to no evidence regarding any of the other accused Dallas Manufacturing beds.  Moreover, Flexi-Mat e-filed and e-served a very poor copy of Exhibit B with its motion, so it is hard to see anything from the photographs.  There are clearer photographs in supermarket tabloids of Bigfoot and the Loch Ness Monster.

A somewhat clearer copy of Mr. Handelsman's Exhibit B boosts Dallas Manufacturing's case because it shows the bolster clearly on top of the bottom cushion.  (Clark Opp. Decl., Exh. C.)  In particular, Dallas Manufacturing refers the Court to the second photograph in Mr. Handelsman's Exhibit B.  Only the third photograph of Mr. Handelsman's Exhibit B shows the bolster alongside the bottom cushion, but only because in that photograph the bolster and bottom cushion have been removed from their outer coverings and laid beside each other.

Flexi-Mat asserts that "Dallas's pet beds are constructed so that if a pet were to lean on or against the bolster, even more of the bolster would be exterior to the perimeter of the bottom portion."  (Flexi-Mat's Infringement Memo. at 9.)  But Flexi-Mat offers no evidence that "substantially all" of the bolster is ever disposed exteriorly about the perimeter.  Dallas Manufacturing's expert, Ms. Fessler, clearly opined that, "[a]lthough a person or pet could push the bolster so that part of it leans over the side of the bottom cushion, at no time does substantially all of the bolster lean over the side of the bottom cushion."  (Fessler Rpt., Exh. 4 to Flexi-Mat's Infringement Memo., at 14-15.)  Mr. Handelsman offers no comparable opinion in his skeletal

-19-

expert report, and a simple inspection of the beds confirms why. This is not a case of "occasional" infringement, since the Dallas Manufacturing beds *never* infringe.

## C. None of the Accused Beds Have Fasteners, Straps, or the Equivalent

In each of the accused beds, the bolster is held in place by its separate cover. (Mathews Decl., ¶¶ 9-19; Fessler Rpt. at 14-20, attached as Exh. 4 to Flexi-Mat's Infringement Memo.) None of the accused beds has fasteners, straps, or equivalent structure for holding the bolster in place. (*Id.*) Moreover, Flexi-Mat's expert, Mr. Handelsman, offered absolutely no opinion on this issue. For this additional reason, none of the accused beds literally infringe.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Flexi-Mat's motion for summary judgment of infringement and grant Defendants' cross-motions for summary judgment.

| | |
|---|---|
| Attorneys for Defendants & Counterclaimants | Attorneys for Defendants & Counterclaimants |
| DALLAS MANUFACTURING COMPANY, INC. | DOSKOCIL MANUFACTURING COMPANY, INC. |
| and BJ'S WHOLESALE CLUB, INC. | and BJ'S WHOLESALE CLUB, INC. |
| /s/ Darren M. Franklin | /s/ M. Scott Fuller |
| Gary A. Clark (*pro hac vice*) | Roy W. Hardin (*pro hac vice*) |
| Darren M. Franklin (*pro hac vice*) | Martin Korn (*pro hac vice*) |
| SHEPPARD MULLIN RICHTER & HAMPTON LLP | M. Scott Fuller (*pro hac vice*) |
| A Limited Liability Partnership | LOCKE LIDDELL & SAPP LLP |
| Including Professional Corporations | 2200 Ross Avenue, Suite 2200 |
| 333 South Hope Street, 48th Floor | Dallas, Texas 75201-6776 |
| Los Angeles, California 90071-1448 | Telephone: (214) 740-8556 |
| Telephone: (213) 620-1780 | Facsimile: (214) 740-8800 |
| Facsimile: (213) 620-1398 | E-mail: rhardin@lockeliddell.com |
| E-mail: gclark@sheppardmullin.com | mkorn@lockeliddell.com |
| dfranklin@sheppardmullin.com | sfuller@lockeliddell.com |

Dated: January 9, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street, Boston, Massachusetts 02109-1775
Telephone: (617) 535-4000; Facsimile: (617) 535-3800
E-mail: jmarcellino@mwe.com; dmello@mwe.com

-20-