## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) ) | **DEFENDANTS' OPPOSITION BRIEF TO PLAINTIFF FLEXI-MAT CORP.'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY OF THE '502 PATENT** |
| Defendants. | ) ) | |
| _____ | ) | |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |
| _____ | ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |
| _____ | ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) ) | |
| Counter-Defendant. | ) ) | |

## TABLE OF CONTENTS

I.    STATEMENT OF MATERIAL FACTS ................................................................... 1

II.    ARGUMENT ........................................................................................... 7

    A.    Legal Standard ........................................................................ 8

    B.    Claim 1 is Anticipated by the Prior Art ........................................... 8

        1.    The "Walled Pet Beds" Are Anticipatory ............................... 9

        2.    The "Non-Pet Bed" References Are Anticipatory ................... 11

        3.    The "Top Bolster" References Are Anticipatory ................... 12

        4.    The Steensen ['044] patent is Anticipatory ........................ 15

        5.    The Bins ['248] Patent is Anticipatory ............................... 16

    C.    Claims 2 and 3 Would Have Been Obvious in View of the Prior Art ......... 16

    D.    Claims 1-3 of the '502 Patent Fail to Comply With 35 U.S.C. § 112 ......... 17

III.    CONCLUSION ..................................................................................... 19

DALLAS: 26935.00036: 1464216v1

## TABLE OF AUTHORITIES

*Akamai Technologies, Inc. v. Cable & Wireless Internet Services, Inc.,*
    344 F.3d 1186 (Fed. Cir. 2003).......................................................................8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2002).......................................................................11

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,*
    868 F.2d 1251 (Fed. Cir. 1989).....................................................................12

*Dayco Prods., Inc. v. Total Containment, Inc.,*
    329 F.3d 1358 (Fed. Cir. 2003)................................................................13, 14

*Intertool, Ltd. v. Texar Corp.,*
    369 F.3d 1289 (Fed. Cir. 2004).....................................................................11

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.,*
    392 F.3d 1317 (Fed. Cir. 2004).....................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .......................................................................................8

*Medical Instrumentation and Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205 (Fed. Cir. 2003).......................................................................1

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed. Cir. 1986).....................................................................17

*Rowe v. Dror*
    112 F.3d 473 (Fed. Cir. 1997).......................................................................11

*STX, LLC v. Brine, Inc.,*
    211 F.3d 588 (Fed. Cir. 2000)..................................................................11, 12

## FEDERAL STATUTES

35 U.S.C. § 102...............................................................................................1, 19

35 U.S.C. §103 ....................................................................................................19

35 U.S.C. § 112............................................................................................17, 18

Fed. R. Civ. P. 56..................................................................................................8

DALLAS: 26935.00036: 1464216v1

Defendants Doskocil Manufacturing Company, Inc. ("Doskocil"), Dallas Manufacturing Company, Inc. ("Dallas Manufacturing"), and BJ's Wholesale Club, Inc. ("BJ's Wholesale Club") respectfully file this Brief in Opposition to Plaintiff Flexi-Mat's Motion for Summary Judgment of Validity ("Plaintiff's Motion") of Claims 1, 2 and 3 of United States Patent Number 5,765,502 ("the '502 Patent"). As set forth more fully herein, Plaintiff's Motion fails to establish an absence of genuine issues of material fact in Plaintiff's favor as to the validity of the referenced claims of the '502 Patent in view of certain prior art references. Doskocil has previously moved for summary judgment of invalidity, and asserts that there are no genuine issues concerning any of the facts as presented therein, and that summary judgment of invalidity is proper. Accordingly, there is at least a question regarding each of the corresponding statements of fact as set forth in Plaintiff's Motion. Thus, summary judgment of validity is inappropriate, Plaintiff's Motion should be denied, and Doskocil's Motion should be granted. *Medical Instrumentation and Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1220-21 (Fed. Cir. 2003).

## I.    STATEMENT OF MATERIAL FACTS

In opposition to Plaintiff's Statement of Undisputed Facts in Support of its Motion for Summary Judgment of Validity, Defendants rely in part upon the Statement of Undisputed Material Facts as presented in Doskocil's Motion for Summary Judgment of Invalidity [Docket No. 90]. Defendants further present the following statements:

1.    All Defendants contend that the '502 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 in view of numerous references, including but not limited to the following: 5,421,044 to Steensen ("the '044 Patent"); 5,136,981 to Barreto ("the '981 Patent"); 5,588,393 to Heilborn ("the '393 Patent"); 5,826,537 to Heilborn ("the '537 Patent"); 4,754,513 to Rinz ("the '513 Patent"); 5,586,350 to Thönnessen ("the '350 Patent"); German Patent No. 93 09 699.2 to Hoechst AG ("the '699 Patent"); 4,872,228 to Bishop ("the '228 Patent"); Article by A.B. Murray and A.C. Ferguson, *Dust Free Bedrooms in the Treatment of Asthmatic Children With House Dust or House Dust Mite Allergy*

-1-

(the "Murray Article"); Article by M. J. Walshaw and C.C. Evans, *Allergen Avoidance in House Dust Mite Sensitive Adult Asthma* (the "Walshaw Article"); Article by Marc L. Rivo and Floyd J. Malveaux, *Outpatient Management of Asthma in Adults* (the "Rivo Article"); 4,873,734 to Pollard ("the '734 Patent"); 5,010,843 to Henry ("the '843 Patent"); 655,087 to Jones ("the '087 Patent"); 2,408,382 to Dubick ("the '382 Patent"); 3,566,423 to Reinfeldt ("the '423 Patent"); 3,902,456 to David ("the '456 Patent"); 5,455,973 to Brumfield ("the '973 Patent"); 2,032,248 to Bins ("the '248 Patent"); 5,109,559 to West ("the '559 Patent"); Japanese patent publication number 07-051154; European patent number 633,338; DE 3138463; and all prior art referenced, discussed and/or cited in the prosecution of the '502 Patent.  Exhibit A at 9, 14, 17, 18, 19, 23, 27, 30, 31, 32, 37, 42; Exhibit B at 11; Exhibit C at 6.

2.    The references cited by Defendants either anticipate one or more of claims 1-3 of the '502 Patent, or render such claim(s) obvious in view of other cited art, if the claims are construed to cover Defendants' accused pet beds.  Exhibit A at 9.

3.    Each of the references cited by Defendants are within the field of the inventor's endeavor, or at a minimum are reasonably pertinent to pet beds and the problems addressed by the inventor.  Exhibit D at 5:23 to 10:2, 18:13 to 19:13; Exhibit H at 44:7 to 45:7, 89:21 to 90:2, 122:8-20.

4.    Each of the '981, '393, and '537 Patents disclose structures which are "bolsters." Exhibit A at 15-16, 44-45; Exhibit E; Exhibit F; Exhibit G.

5.    A "bolster" can be any structure that surrounds the base and provides support; the term broadly includes embodiments such as an upraised back rest on an article of furniture and can take on a variety of other embodiments. Exhibit D at 18:6 to 19:13; Exhibit A at 16; Exhibit H at 46:2-14, 73:18 to 74:5; 81:16 to 82:18; Exhibit I at 64:3-17.

6.    The '981 Patent discloses a sidewall 42 which can vary widely in shape, ranging from a slim wall to a wide cushion, *i.e.*, a "bolster."  Exhibit A at 16; Exhibit E at 6:52-58.

DALLAS: 26935.00036: 1464216v1

7.    The specification of the '981 Patent does not limit sidewall 42 to that of a thin, vertical member; sidewall 42 may be of virtually any size and shape, including a pillow-like configuration. The dimensional size of sidewall 42 is "dependent upon the size and weight of the pet, and the particular configuration of the embodiment selected."  Exhibit A at 16; Exhibit E at 6:55-58.

8.    Each of the '393 and '537 Patents disclose a foam core 106 which is not limited to any specific shape or size, *i.e.*,  a "bolster."  Exhibit A at 44.

9.    There is no difference for purposes of anticipation between the bolster structures of the '981, '393, and '537 Patents and the "bolster" of claims 1, 2 and 3 of the '502 Patent.  Exhibit I at 138:4 to 139:7; Exhibit H at 149:5 to 150:11; Exhibit A at 16, 44.

10.    According to Defendants' expert, Suzanne Fessler, the term "bolster" broadly encompasses structures providing either protection or comfort.  Exhibit H at 46:2-14.

11.    According to Defendants' expert, Suzanne Fessler, the terms "wall" and "bolster" are used interchangeably in the pet industry.  Exhibit H at 73:18 to 74:5, 81:16 to 82:18.

12.    Each of the '981, '393, and '537 Patents disclose a pet bed having a "bolster" within the meaning of the '502 Patent.  Exhibit E; Exhibit F; Exhibit G; Exhibit A at 15-16, 44-45; Exhibit H at 73:18 to 74:5, 145:17 to 150:3.

13.    The '502 Patent makes clear that pets customarily occupy furniture and human beds, that pet beds are sometimes designed with such furniture in mind, and that such furniture is related to pet bedding.  Exhibit J at 1:9-20.

14.    The '734 Patent makes clear that pets commonly occupy furniture and human beds. Exhibit L at 1:13-20.

15.    Both the '537 and '393 Patents disclose a pet bed having an upstanding foam core 106; such structure is not limited to any particular shape.  Exhibit F; Exhibit G; Exhibit A at 44; Exhibit H at 147:8 to 150:3.

DALLAS: 26935.00036: 1464216v1

16.     The upstanding foam core 106 of the '537 and '393 Patents is a "bolster" within the meaning of the '502 Patent.  Exhibit A at 44-45; Exhibit H at 145:17 to 148:2.

17.     The apparent preference of animals, such as dogs, to sleep with their backs against a supporting structure (such as in a "cradle" or "trough") was well known in the art prior to the '502 Patent.  Exhibit E at 1:21-42; Exhibit M at 1:16-20.

18.     The '513 Patent discloses a structure in which, in certain configurations, "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 22.

19.     The '513 Patent states that the purpose of the invention disclosed therein is broader than simply relieving neck pain; rather, the invention may be useful in preventing and providing relief from morning headaches, stiff neck, pain in the back, shoulders and arms, tension, and generally proving for a comfortable, relaxing slumber.  Accordingly, it is well within the scope and teaching of the '513 Patent to rotate the bolstered insert as suggested in the expert report of Suzanne Fessler at page 22.  Exhibit A at 22; Exhibit N at 2:53-60.

20.     The '350 Patent discloses a structure in which, in certain configurations, "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 26.

21.     The '350 Patent places no functional or structural limitation as to the location of the bolster structure relative to the base cushion (pillow), and there is no function served by positioning the bolster structure at any given point around the base cushion.  Exhibit K.

22.     The bolster structure of the '350 Patent is not limited to any particular point of attachment or position relative to the base cushion (pillow), and may be "connected detachably to the pillow at a suitable position."  Exhibit K at 5:52-55.

23.     The bolster of the '228 Patent is disposed atop the mattress.  But if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '228 Patent, because then the '228 Patent

would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 30.

24.     The bolster of the '734 Patent is disposed atop the mattress.  But if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '734 Patent, because then the '734 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 35.

25.     The bolster of the '843 Patent is disposed atop the mattress.  But if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '843 Patent, because then the '843 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 40.

26.     The '843 Patent discloses an embodiment where the top cushions "extend beyond the edges of the base cushion."  Exhibit M at 3:18-19.

27.     The '843 Patent discloses an embodiment where the base cushion of the pet bed is a square shape, and the top cushions are complimentary portions of such square.  In such an embodiment, the top cushions may be stitched to the base cushion along only one side each, making the top cushions pivotable about the stitching such that the top cushions could rest either atop the base cushion or alongside it.  Exhibit M at 3:8-15.

28.     The '044 Patent discloses a removable bolster which is not secured to the bottom cushion.  The removable bolster is represented in the '044 Patent as tubes 31-36.  Each such air tube is removable from the interior of the outer covering 12 when zipper 12 is unzipped.  Exhibit A at 12; Exhibit H at 45:8-21.

29.     The '044 Patent suggests an embodiment wherein the perimeter bolster tubes 31-36 are utilized to prevent the user from falling out of the bed.  Exhibit O at 6:28-41.

30.    Bolster tubes 31-36 of the '044 Patent may be maintained at a selected air pressure by a set of hoses 77.  The base air tubes 42 of the '044 Patent may be maintained at a selected air pressure by a separate set of hoses 77.  The bolster tubes 31-36 of the '044 Patent are not secured to base air tubes 42.  Exhibit O at Fig. 9, 6:19-28.

31.    The foam pads 58 and 59 of the '044 Patent may be excluded.  Exhibit A at 12.

32.    The assorted structures of the bed disclosed in the '044 Patent are all "removable" because the bed is specifically disclosed in terms of a preferred "transport" embodiment.  Exhibit O at 3:11-15.

33.    The '248 Patent discloses a pet bed comprising a fabric article (*i.e.,* base sheet (3), band (4), and outer periphery of annular bolster (1)) configured to receive and enclose a removable bottom mattress (5).  Exhibit S at 2:5-11.

34.    The '248 Patent discloses and describes a bolster disposed within the fabric article; the bolster filler material is preferably cotton which is packed within the outer periphery of the bolster and is, inherently, removable by simply reversing the process and extracting the filler material.  *See* Exhibit S at 1:50 to 2:15.

35.    The bolster of the '248 Patent is disposed atop the mattress.  But if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '248 Patent, because then the '248 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit S at Fig. 6.

36.    The '502 Patent describes the "bolster" as being "disposed about" the perimeter of the bottom cushion.  The claims of the '502 Patent also include this limitation.  Exhibit J at 2:52-54; 3:1-7; 3:37 to 4:55.

37.    The '502 Patent discloses several specific means for maintaining the bolster in its described and claimed "disposed" location exteriorly about at least a portion of the perimeter of the

bottom portion; namely, hook and loop fasteners, and ties or straps with snaps or buckles. Exhibit J at 2:61-67.

38.    The '502 Patent does not teach or suggest that the bolster cushion can remain "disposed exteriorly about" at least a portion of the perimeter of the bottom portion without the use of means such as hook and loop fasteners, or ties or straps with snaps or buckles. Exhibit A at 46-48.

39.    The named inventor of the '502 Patent, Scott Haugh, testified that the purpose of including the straps in the invention was to "hold the bolstered pillow in position." Mr. Haugh did not create any other embodiment. Exhibit D at 29:5-11; 32:5 to 33:13.

40.    Claim 1 of the '502 Patent requires a removable bolster, substantially all of which must be "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion." Claim 1 of the '502 Patent does not include any structure for maintaining the bolster cushion in its required "disposed" location with respect to the bottom cushion. Exhibit J at 3:42-46; Exhibit A at 47-48.

41.    Claims 1-3 of the '502 Patent fail to disclose any structure for maintaining the bolster in its position "disposed exteriorly about at least a portion of the perimeter of the bottom portion," and are thus indefinite. Exhibit A at 46-48.

## II.    <u>ARGUMENT</u>

Plaintiff seeks summary judgment as to the validity of claims 1, 2 and 3 of the '502 Patent. As set forth in Doskocil's corresponding Motion for Summary Judgment of Invalidity [Docket Nos. 89, 90] ("Doskocil's Motion"), there are no genuine issues of material fact concerning the invalidity of a number of the claims of the '502 Patent, including at least claims 1, 2 and 3. As will be shown, Plaintiff fails to establish an absence of material issues of fact in its favor concerning the alleged validity of claims 1, 2 and 3 of the '502 Patent. Accordingly, Plaintiff's Motion must be denied.

A.    **Legal Standard**

Doskocil's Motion for Summary Judgment of Invalidity presents a statement of the Legal Framework in assessing patent validity, upon which Defendants rely to avoid burdening the Court with unnecessary repetition.  Further, Plaintiff's Motion for Summary Judgment of Validity may be granted only "if [the evidence before the Court shows] that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  On a motion for summary judgment, the evidence and any disputed factual issues are viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Determination of whether a given prior art reference discloses each and every limitation of a claim, either expressly or inherently, is a determination of fact dependent upon a proper claim construction.  *Akamai Technologies, Inc. v. Cable & Wireless Internet Services, Inc.,* 344 F.3d 1186, 1192-93 (Fed. Cir. 2003).

B.    **Claim 1 is Anticipated by the Prior Art**

Plaintiff argues that no single reference cited by Defendants discloses each and every limitation of claim 1 of the '502 Patent.  Plaintiff is wrong.  As has been set forth in Doskocil's Motion for Summary Judgment of Invalidity, there is no genuine issue concerning the fact that claim 1 is anticipated by at least one, if not several, references.  At minimum, there exists a genuine issue concerning the alleged validity of claim 1 and, accordingly, Plaintiff's Motion must be denied.

In arguing its case for validity, Plaintiff groups the cited prior art references into several categories, asserting that each such category is deficient as to certain limitations of claim 1. Generally, Plaintiff claims that the so-called "walled pet beds" cannot be anticipatory references because there is a purported distinction between structures characterized as "bolsters" versus those characterized as "walls."  Plaintiff further claims that references from related arts which are not specifically directed to a "pet bed" cannot be anticipatory.  Plaintiff further claims that references in which there is no figure illustrating an embodiment wherein the bolster is located about the exterior

perimeter of the base cannot be anticipatory.  Finally, Plaintiff makes arguments as to certain individual references, alleging generally that each such reference fails to disclose at least one limitation of claim 1.

### 1.    The "Walled Pet Bed" References Are Anticipatory

Plaintiff contends that prior art pet beds illustrating and/or describing their respective perimeter structures as "walls" rather than using the term "bolster" cannot anticipate the claims of the '502 Patent.  The references categorized by Plaintiff as allegedly disclosing such "walled pet beds" are the '981, '393, and '537 Patents.  Plaintiff's Memorandum in Support, at 3.

According to Defendants' expert, Suzanne Fessler, the term "bolster" broadly encompasses structures providing either protection or comfort, and the terms "wall" and "bolster" are used interchangeably in the pet industry.  Exhibit H at 46:2-14, 73:18 to 74:5, 81:16 to 82:18.  Moreover, a "bolster" can be any structure that surrounds the base and provides support; the term broadly includes embodiments such as an upraised back rest on an article of furniture and can take on a variety of other embodiments.  Exhibit D at 18: 6 to 19:13; Exhibit A at 16; Exhibit H at 46:2-14, 73:18 to 74:5; 81:16 to 82:18; Exhibit I at 64:3-17.  Each of the '981, '393, and '537 Patents disclose a pet bed having a "bolster" within the meaning of the '502 Patent.  Exhibit E; Exhibit F; Exhibit G; Exhibit A at 15-16, 44-45; Exhibit H at 73:18 to 74:5, 145:17 to 150:3.  There is no difference for purposes of anticipation between the bolster structures of the '981, '393, and '537 Patents and the "bolster" of claims 1, 2 and 3 of the '502 Patent.  Exhibit I at 138:4 to 139:7; Exhibit H at 149:5 to 150:11; Exhibit A at 16, 44.

The '981 Patent discloses a sidewall 42 which can vary widely in shape, ranging from a slim wall to a wide cushion, *i.e.*, a "bolster."  Exhibit A at 16; Exhibit E at 6:52-58.  The specification of the '981 Patent does not limit sidewall 42 to that of a thin, vertical member; sidewall 42 may be of virtually any size and shape, including a pillow-like configuration.  Exhibit A at 16; Exhibit E at 6:56-58.  The dimensional size of sidewall 42 is *"dependent upon the size and weight of the pet, and*

DALLAS: 26935.00036: 1464216v1

*the particular configuration of the embodiment selected."* Exhibit E at 6:55-58. Accordingly, the '981 Patent discloses a "bolster."

Each of the '393 and '537 Patents discloses a pet bed having an upstanding foam core 106, and such structure is not limited to any particular shape. Exhibit F; Exhibit G; Exhibit A at 44; Exhibit H at 147:8 to 150:3. The upstanding foam core 106 of the '537 and '393 Patents is a "bolster" within the meaning of the '502 Patent. Exhibit A at 44-45; Exhibit H at 145:17 to 148:2.

Plaintiff argues that the common understanding of the term "bolster," as defined by Merriam-Webster, establishes that the structures disclosed in the '981, '393, and '537 Patents cannot be anticipatory. Plaintiff's Memorandum in Support, at 4. In fact, Plaintiff's hand-picked definition, which is not shown to reflect the pet industry usage as discussed by Defendants' expert (*see supra*), places no restriction on the cross-sectional shape of the member as Plaintiff attempts to read in. A "pillow or cushion" simply establishes that bolsters are commonly understood to be made of soft materials. Further, Merriam-Webster defines "bolster" to mean "a structural part designed to eliminate friction or provide support or bearing." http://www.m-w.com/dictionary; Plaintiff's Exhibit 22. Clearly, the structures disclosed in the '981, '393, and '537 Patents are soft structures which cushion the animal and otherwise provide support or bearing. Plaintiff's further argument that certain embodiments of the so-called "wall beds" do not provide adequate support for heavier animals, and therefore cannot be "bolsters," is of no merit. The claims of the '502 Patent are not directed specifically to pet beds "for heavy animals" or, for that matter, even a particular species of animal. In any event, Plaintiff has made no showing that a so-called "walled pet bed," even assuming the wall "collapses" entirely under the weight of a large animal as alleged by Plaintiff, does not yet still provide a "bolster" within the meaning of the '502 Patent. Even in an unintended disfigured condition, the foam structures disclosed in the '981, '393, and '537 Patents provide soft, cushioned support for the animal. Plaintiff fails to explain any distinction between the disclosure of the '981 Patent, which specifically recognizes that the relative size and shape of its sidewall 42 is *"dependent*

-10-

*upon the size and weight of the pet, and the particular configuration of the embodiment selected,"* and the argument that the "bolster" must supposedly accommodate larger animals.  Exhibit E at 6:55-58.

In view of the foregoing, each of the '981, '393, and '537 Patents disclose a "bolster" within the meaning of the '502 Patent, and anticipate at least claim 1.  At minimum, there exists a question of fact as to anticipation, and Plaintiff's Motion must be denied.

### 2.    The "Non-Pet Bed" References Are Anticipatory

Plaintiff contends that prior art directed to human beds and the like cannot anticipate the claims of the '502 Patent.  The references categorized by Plaintiff as allegedly disclosing such "non-pet beds" are the '044, '513, '350, '228, and '734 Patents.  Plaintiff's Memorandum in Support, at 5.

No litmus test defines when a preamble limits claim scope.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002).  A preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.  *Rowe v. Dror,* 112 F.3d 473, 478 (Fed. Cir. 1997).  "In general, a claim preamble is limiting if it recites essential structure or steps, or if it is necessary to give 'life, meaning, and vitality' to the claim.  However, if the body of the claim describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention, the preamble is generally not limiting unless there is clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."  *Intertool, Ltd. v. Texar Corp.,* 369 F.3d 1289, 1295 (Fed. Cir. 2004) (internal citations omitted).

The preamble of claims 1-3 of the '502 Patent was not relied upon during prosecution to distinguish the claimed invention from the prior art, and Plaintiff does not so contend.  Further, the body of claim 1 recites a structurally complete invention; the preamble states only an intended use or description of the article itself.  Accordingly, the preamble of claims 1-3 is not a limitation on the claims.  *STX, LLC v. Brine, Inc.,* 211 F.3d 588, 589, 591 (Fed. Cir. 2000) (claim preamble identifying

the claimed apparatus as a head for a lacrosse stick, and identifying certain benefits, was not limiting because the body of the claim could stand alone without the preamble). The case cited by Plaintiff, *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251 (Fed. Cir. 1989), is clearly distinguishable on its facts. The preamble at issue in *Corning* was: "An optical waveguide, comprising . . .." The term "optical waveguide" was explicitly defined in the specification in fine detail, including complex equations. *Corning,* 868 F.2d at 1256-57. Such is not the case in the claims and specification of the '502 Patent.

It is noted that the Examiner of the application for the '502 Patent independently cited a number of non-pet bed references against the claims. Among these were 984,324 to Von Below ("the '324 Patent), entitled "Terrace Mattress," directed generally to an auxiliary bolstered mattress. Exhibit P. Also among these was 1,469,523 to McGarvey ("the '523 Patent), entitled "Reversible Cushion," directed generally to a skirted chair cushion. Exhibit Q. Also among these was 3,890,658 to Petersilie ("the '658 Patent"), entitled "Fold Open Convertible Occupant-Receiving Unit of Furniture," directed generally to folding, geometric furniture. Exhibit R. Thus, the Patent Office Examiner recognized the applicability of non-pet bed art to the claims of the '502 Patent.

In sum, the preamble language of claims 1, 2, and 3 of the '502 Patent is not a limitation on claims. The body of claims 1, 2, and 3 stands on its own, and defines structurally complete articles of manufacture. Without regard to the preamble, claim 1 defines an article having an outer covering, a removable bottom cushion within the outer covering, and a bolster cushion within the outer covering. As was the case in *STX, LLC v. Brine, Inc.,* 211 F.3d 588 (Fed. Cir. 2000), discussed *supra*, the preamble of claims 1, 2, and 3 is superfluous and merely provides a name for the claimed article.

### 3.    The Alleged "Top Bolster" References Are Anticipatory

Plaintiff contends that prior art references in which there is no figure illustrating an embodiment wherein the bolster is located about the exterior perimeter of the base cannot be anticipatory of the claims of the '502 Patent. The references categorized by Plaintiff as disclosing

-12-

such "top bolsters" are the '513, '350, '228, '734, and '843 Patents.  Plaintiff's Memorandum in Support, at 6.

According to Defendants' expert, Suzanne Fessler, the '513 Patent discloses a structure in which, in certain configurations, "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 22.  The '513 Patent states that the purpose of the invention disclosed therein is broader than simply relieving neck pain as stated by Plaintiff; rather, the invention may be useful in preventing and providing relief from morning headaches, stiff neck, pain in the back, shoulders and arms, tension, and generally proving for a comfortable, relaxing slumber.  Accordingly, it is well within the scope and teaching of the '513 Patent to rotate the bolstered insert as suggested in the expert report of Suzanne Fessler at page 22.  Exhibit A at 22; Exhibit N at 2:53-60. *Dayco Prods., Inc. v. Total Containment, Inc.,* 329 F.3d 1358, 1368 (Fed. Cir. 2003) ("[T]he dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference").

The '350 Patent discloses a structure in which, in certain configurations, "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit A at 26.  The '350 Patent places no functional or structural limitation as to the location of the bolster structure relative to the base cushion (pillow), and there is no function served by positioning the bolster structure at any given point around the base cushion.  Exhibit K.  The bolster structure of the '350 Patent is not limited to any particular point of attachment or position relative to the base cushion (pillow), and may be "connected detachably to the pillow at a suitable position."  Exhibit K at 5:52-55.

The bolster of the '228 Patent is disposed atop the mattress.  But if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '228 Patent, because then the '228 Patent

would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion." Exhibit A at 30.

The bolster of the '734 Patent is also disposed atop the mattress. But, again, if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '734 Patent, because then the '734 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion." Exhibit A at 35.

The bolster of the '843 Patent is also disposed atop the mattress. Likewise, if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '843 Patent, because then the '843 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion." Exhibit A at 40. The '843 Patent discloses an embodiment where the top cushions "extend beyond the edges of the base cushion." Exhibit M at 3:18-19. The '843 Patent also discloses an embodiment where the base cushion of the pet bed is a square shape, and the top cushions are complimentary portions of such square. In such embodiment, the top cushions may be stitched to the base cushion along only one side each, making the top cushions pivotable about the stitching such that the top cushions could rest either atop the base cushion or alongside it. Exhibit M at 3:8-15.

In sum, Defendants' expert has opined that each of the '513, '350, '228, '734, and '843 Patents disclose a bolster disposed exteriorly about the perimeter of the bottom cushion, and that one of skill in the art would reasonably so understand, if claim 1 of the '502 patent is construed to cover Defendants' accused pet beds. *Dayco Prods., Inc.,* 329 F.3d at 1368. Thus, there remains at least a question of fact regarding anticipation, and Plaintiff's Motion should be denied.

### 4.    The Steensen ['044] Patent is Anticipatory

Plaintiff argues that the '044 Patent does not anticipate claims 1-3 of the '502 Patent because it allegedly fails to disclose: (i) a bolster, (ii) a removable bolster, or (iii)a bolster that is not secured to the bottom cushion. Plaintiff's Memorandum in Support, at 9.

As discussed *supra,* the term "bolster" is broad in scope, and reads on the structures of the '044 Patent. The '044 Patent discloses a removable bolster which is not secured to the bottom cushion. The removable bolster is represented in the '044 Patent as tubes 31-36. Each such air tube is removable from the interior of the outer covering 12 when zipper 12 is unzipped. Exhibit A at 12; Exhibit H at 45:8-21.

The '044 Patent suggests an embodiment wherein the perimeter bolster tubes 31-36 are utilized to prevent the user from falling out of the bed. Exhibit O at 6:28-41. Moreover, the foam pads 58 and 59 of the '044 Patent may be excluded. Exhibit A at 12. Thus, one of ordinary skill would understand that the exterior bolsters may be higher than the adjoining base.

Bolster tubes 31-36 of the '044 Patent may be maintained at a selected air pressure by a set of hoses 77. The base air tubes 42 of the '044 Patent may be maintained at a selected air pressure by a separate set of hoses 77. The bolster tubes 31-36 of the '044 Patent are not secured to base air tubes 42. Exhibit O at Fig. 9, 6:19-28. Because the bolster tubes of the '044 Patent are maintained by a separate and distinct set of hoses 77, they are not "connected to the cushion tubes" as alleged by Plaintiff.

The assorted structures of the bed disclosed in the '044 Patent are all "removable" because the bed is specifically disclosed in terms of a preferred "transport" embodiment. Exhibit O at 3:11-15. Plaintiff ignores this teaching in arguing that the bolsters of the '044 Patent are not removable.

In view of the foregoing, the '044 Patent discloses each of the referenced limitations of claims 1-3 of the '502 Patent. Thus, summary judgment of invalidity, as set forth in Doskocil's Motion for

Summary Judgment, is appropriate.  At minimum, there exists a question of fact as to anticipation, and Plaintiff's Motion must be denied.

### 5.    The Bins ['248] Patent is Anticipatory

Plaintiff argues that the '248 Patent does not anticipate claims 1-3 of the '502 Patent because it allegedly fails to disclose: (i) a removable bolster, or (ii) a bolster "substantially all of which" is disposed exteriorly about the perimeter of the bottom portion.  Plaintiff's Memorandum in Support, at 11.

The '248 Patent discloses a pet bed comprising a fabric article (*i.e.,* base sheet (3), band (4), and outer periphery of annular bolster (1) (*see* Exhibit S at 2:5-11)) configured to receive and enclose a removable bottom mattress (5).  The '248 Patent further discloses and describes a bolster disposed within the fabric article.  Exhibit S at Fig. 6, *see also* 1:50 to 2:15.  The '248 Patent bolster filler material is preferably cotton which is packed within the outer periphery of the bolster and is, inherently, removable by simply reversing the process and extracting the filler material.  *See* Exhibit S at 1:50 to 2:5.  Like the references discussed in Section II.B.3, *supra*, the bolster of the '248 Patent is disposed atop the mattress.  Also like those references, if claim 1 of the '502 Patent were read to cover a bed, like the accused Dallas Manufacturing beds, with the bolster atop the bottom cushion, then claim 1 would be anticipated by the '248 Patent, because then the '248 Patent would disclose a structure in which "substantially all of the bolster is disposed exteriorly about the perimeter of the bottom portion."  Exhibit S at Fig. 6.   Accordingly, the limitations allegedly not disclosed or embodied in the '248 Patent are, in fact, disclosed, if claim 1 of the '502 patent is construed to cover the accused Dallas Manufacturing pet beds, and Plaintiff's Motion should be denied.  At minimum, there exists a question of fact regarding such disclosure.

### C.    Claims 2 and 3 Would Have Been Obvious in View of the Prior Art

Plaintiff argues that Defendants' alleged failure to present expert testimony on the issue of obviousness "entitles Flexi-Mat to summary judgment."  Plaintiff's Memorandum in Support, at 12.

Plaintiff thus seeks to limit Defendants to obviousness determinations limited to those expressly discussed by Defendants' expert, Suzanne Fessler, in her expert opinion.  *Id.*

Obviousness is a question of law, based on underlying factual findings.  *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.,* 392 F.3d 1317, 1323 (Fed. Cir. 2004).  The Court is able to determine obviousness without the assistance of expert testimony, and this is especially true when the technology is simple.  *Id.*; *see also Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1270 (Fed. Cir. 1986).  In fact, it is Plaintiff who has failed to present any objective evidence as to non-obviousness, such as commercial success or new and unexpected results.

In any event, the combinations set forth by Defendants' expert do disclose each of the limitations of claims 2 and 3 of the '502 Patent, and such disclosures have been set forth and discussed *supra*.

### D.    Claims 1-3 of the '502 Patent Fail to Comply With 35 U.S.C. § 112

Plaintiff argues that the claims of the '502 Patent in which there is no requirement that the bolster be affixed to the outer covering are not in violation of 35 U.S.C. § 112.  Plaintiff's Memorandum in Support, at 13-14.

The requirement that the bolster be affixed to the outer covering is required in view of the further express limitation of claim 1 that the bolster be "disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion."  As has been pointed out by Defendants, there is no teaching in the specification of the '502 Patent regarding how the bolster can be maintained in its required position relative to the bottom cushion without affixing the bolster to the outer cover, and Claim 1 of the '502 Patent does not include any limitation of means for maintaining the bolster cushion in its required "disposed" location with respect to the bottom cushion.  Exhibit J at 3:42-46; Exhibit A at 47-48.

The '502 Patent describes the "bolster" as being "disposed about" the perimeter of the bottom cushion.  The claims of the '502 Patent also include this limitation.  Exhibit J at 2:52-54; 3:1-7; 3:37

to 4:55.  The '502 Patent discloses several specific means for maintaining the bolster in its described and claimed "disposed" location exteriorly about at least a portion of the perimeter of the bottom portion; namely, hook and loop fasteners, and ties or straps with snaps or buckles.  Exhibit J at 2:61-67.  Importantly, the '502 Patent does not teach or suggest that the bolster cushion can remain "disposed exteriorly about" at least a portion of the perimeter of the bottom portion without the use of means such as hook and loop fasteners, or ties or straps with snaps or buckles.  Exhibit A at 46-48.  Although the patent describes one advantage of affixing the bolster with straps (providing structural integrity), the named inventor of the '502 Patent, Scott Haugh, testified that the purpose of including the straps in the invention was to "hold the bolstered pillow in position."  Mr. Haugh did not create any other embodiment.  Exhibit D at 29:5-11; 32:5 to 33:13.  The provision of "structural integrity" to the claimed structure means that the bolster is maintained in its proper position relative to the bottom cushion.

Accordingly, claims 1-3 of the '502 Patent fail to disclose any structure for maintaining the bolster in its "disposed exteriorly about at least a portion of the perimeter of the bottom portion," and are thus indefinite.  Exhibit A at 46-48.  These claims fail under 35 U.S.C. § 112, and summary judgment of invalidity is proper.  At minimum, a factual issue exists, and Plaintiff's Motion must be denied.

Plaintiff next argues that claim 1 of the '502 Patent is not governed by 35 U.S.C. § 112(6).  The claim sets forth a function without disclosing means for performing the function; namely, there is no means disclosed for maintaining the bolster in its proper location "exteriorly about at least a portion of the perimeter of the bottom portion."  Exhibit J.  Accordingly, the claim is limited to those corresponding structures disclosed in the specification; namely, hook and loop fasteners, or ties or straps with hooks or buckles.  Exhibit J at 2:61-67.

DALLAS: 26935.00036: 1464216v1

## III.    Conclusion

As set forth herein, and in Doskocil's Motion for Summary Judgment of Invalidity, claims 1, 2 and 3 of the '502 Patent are invalid under either 35 U.S.C. §102 as anticipated, or under 35 U.S.C. §103 as obvious in view of the relevant and material prior art.  In the event the Court determines that questions of material fact remain as to the facts as set forth by Defendants or the invalidity of the referenced claims, there remain substantial questions regarding the validity of such claims. Accordingly, it is respectfully requested that the Court issue an Order denying Plaintiff's Motion in its entirety.

Respectfully submitted,

Attorneys for Defendants & Counterclaimants DOSKOCIL MANUFACTURING COMPANY, INC. and BJ'S WHOLESALE CLUB, INC.

/s/ M. Scott Fuller

Roy W. Hardin (*pro hac vice*)
Martin Korn (*pro hac vice*)
M. Scott Fuller (*pro hac vice*)
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Telephone:  (214) 740-8556
Facsimile:  (214) 740-8800
E-mail:  rhardin@lockeliddell.com
        mkorn@lockeliddell.com
        sfuller@lockeliddell.com

Dated:   January 9, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, Massachusetts  02109-1775
Telephone:  (617) 535-4000
Facsimile:  (617) 535-3800
E-mail:  jmarcellino@mwe.com; dmello@mwe.com

Attorneys for Defendants & Counterclaimants DALLAS MANUFACTURING COMPANY, INC. and BJ'S WHOLESALE CLUB, INC.

/s/ Darren M. Franklin

Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398
E-mail:  gclark@sheppardmullin.com
        dfranklin@sheppardmullin.com