## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| AND RELATED COUNTERCLAIMS. | ) | |

### DEFENDANT DALLAS MANUFACTURING'S SUPPLEMENTAL RESPONSE TO PLAINTIFF FLEXI-MAT'S INTERROGATORY NO. 4 AND SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5

Pursuant to FED. R. CIV. P. 26(e) and 33, Defendant and Counter-Claimant Dallas Manufacturing Company, Inc. ("Dallas Manufacturing") hereby objects and provides a supplemental response to Interrogatory No. 4 and a second supplemental response to Interrogatory No. 5 of *Plaintiff Flexi-Mat's First Set of Interrogatories to Defendant Dallas Manufacturing (Nos. 1-16)*, served by Plaintiff Flexi-Mat Corporation ("Flexi-Mat") on or about May 25, 2004.

### GENERAL OBJECTIONS

1. Dallas Manufacturing objects to each interrogatory insofar as it is vague, overly broad, oppressive, harassing or vexatious; imposes burden or expense that outweighs its likely benefit; seeks a legal conclusion; and/or seeks information not relevant to a claim or defense of any party.

W02-LA:LGA\70874231.2

DALLAS MANUFACTURING'S FURTHER SUPPL. RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5



EXHIBIT B

None of Dallas Manufacturing's pet beds use ties, straps, or equivalent structure to hold the bolsters in place relative to the base cushions. In the Dallas Manufacturing pet beds, the bolsters are enclosed within separate compartments formed by separate covers that are attached to the covers for the base cushions.

## INTERROGATORY NO. 5:

Identify in detail the factual basis for Dallas Manufacturing's affirmative defense that "[e]ach and every claim of the '502 patent is invalid and/or unenforceable under one or more provisions of the Patent Laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112."

## RESPONSE TO INTERROGATORY NO. 5:

In addition to the grounds set forth in the General Objections, Dallas Manufacturing objects to this interrogatory on the following grounds:

Dallas Manufacturing objects to this interrogatory as premature in that (1) discovery has just commenced; (2) Flexi-Mat has not identified the claims of U.S. Patent No. 5,765,502 ("the '502 patent") that it is asserting against Dallas Manufacturing; (3) Flexi-Mat has not provided any information concerning the dates of conception and reduction to practice of the claimed invention; (4) Flexi-Mat has not provided its contentions regarding the proper interpretation of the claims of the '502 patent; and (5) the claims of the '502 patent have not yet been interpreted by the Court.

Dallas Manufacturing objects to this interrogatory as overly broad, unduly burdensome, and not relevant to a claim or defense of any party to the extent it is not limited to the claims of the '502 patent that Flexi-Mat is asserting to have been infringed by the accused pet bed supplied to BJ's Wholesale Club, Inc. by Dallas Manufacturing that is identified in the *Complaint*.

Dallas Manufacturing objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine and/or the common interest doctrine.

Subject to and without waiving the foregoing objections, Dallas Manufacturing contends that if the claims of the '502 patent are construed broadly enough to cover the accused Dallas Manufacturing pet bed, then the claims are invalid as anticipated or obvious in view of several references, including U.S. Patent Nos. 4,872,228; 5,010,843; 5,421,044; 5,588,393; and 5,826,537.

Dallas Manufacturing reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against Dallas Manufacturing; (3) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) when the Court interprets the claims of the '502 patent.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

Dallas Manufacturing understands that the only claims of the '502 patent that it is charged with infringing are claims 1-3. Subject to and without waiving the foregoing objections, Dallas Manufacturing contends that claims 1-3 of the '502 patent are invalid as anticipated or obvious in view of several references, including U.S. Patent Nos. 4,754,513; 4,872,228; 4,873,734; 5,010,843; 5,136,981; 5,421,044; 5,586,350; 5,588,393; and 5,826,537; German Patent No. 93 09 699.2; and AB Murray and AC Ferguson, *Dust-free bedrooms in the treatment of asthmatic children with house dust or house dust mite allergy: a controlled trial*, 71 PEDRIATRICS 418-22 (March 1, 1983).

Claims 1-3 of the '502 patent read as follows:

1.  A pet bed comprising:

an outer covering;

-11-

a removable cushion disposed within the outer covering to

form a cushioned bottom portion; and

a bolster removably disposed within the interior of the outer

covering and substantially all of said bolster disposed

exteriorly about at least a portion of the perimeter of the

bottom portion without being secured to the removable

cushion.

2. The pet bed of claim 1, wherein the outer covering

further includes a reclosable access opening.

3. The pet bed of claim 2, wherein the reclosable access

opening further includes a zipper.

('502 patent, col. 3, lines 37-46.)

Preliminarily, as a matter of claim construction, the preamble of claim 1 ("A pet bed . . . ") is not a limitation because it neither recites essential structure nor gives life, meaning, and vitality to the claim. Also, due to statements during prosecution concerning and distinguishing U.S. Patent No. 5,010,843 to Henry ("the '843 patent") (*i.e.*, argument that the '843 patent required separate covers for the cushions and base), the term "outer covering" is limited to something that is placed over or about the cushion and the bolster with a single interior compartment for receiving both the cushion and the bolster.

**The '044 Patent Anticipates Claim 1 of the '502 Patent.**

U.S. Patent No. 5,421,044 to Steensen ("the '044 patent") anticipates claim 1 of the '502 patent. The '044 patent issued on June 6, 1995, based on an application filed on August 27, 1993. Both of these dates are before the presumptive date of invention of the subject matter of the claim 1 as represented by the April 18, 1996 filing date of the application for the '502 patent. Therefore the '044 patent is prior art to the '502 patent under 35 U.S.C. §§ 102(a) and (e).

-12-

The '044 patent discloses a human air bed. Figure 1 of the '044 patent shows that the air bed has an outer covering 12, which "is formed of flexible material and has a bottom panel 14 formed of rip stop nylon, upper and lower vertical panels 16 and 18, respectively, and a top panel 20." ('044 patent, col. 3, lines 13-15.)

The '044 patent states that "either or both of 'egg crate' polyurethane foam pad 58 and rectangular polyurethane foam pad 59 are . . . placed on top of . . . upper laterally disposed cushion air tubes 42 in the space bounded by upper side bolster air tubes 32, 33, 34 and 35 and upper end bolster air tubes 31 and 36." (Id., col. 4, lines 21-26.) "Top panel 20 . . . is removably joined to the upper vertical panel through the use of a zipper attachment means 22 which is disposed along the periphery of the top panel and the upper edge of the upper vertical panel." (Id., col. 3, lines 52-57.) The foam pads 58 and 59 and the air tubes 42 are removable from the outer covering 12 when the zipper attachment means 22 is unzipped. The foam pads 58 and 59, singly or in combination, with or without the air tubes 42, thus comprise a removable cushion disposed within the outer covering to form a cushioned bottom portion.

Each air tube 31-36 is a "bolster." (Id., col. 4, line 11.) Each air tube 31-36 is disposed within the interior of the outer covering 12 and exteriorly about at least a portion of the foam pads 58 and 59 and the air tubes 42, without being secured to the foam pads 58 and 59 or the air tubes 42. Each air tube 31-36 is removable from the outer covering 12 when the zipper 22 is unzipped. The air tubes 3-36, singly or in combination, thus comprise a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

This covers all the elements of claim 1 of the '502 patent. Although the bed disclosed in the '044 patent is flat when foam pads 58 and 59 are placed within the outer covering, the foam pads need not be used. The '044 patent states in that case that the top surface would "have its outside edges extending substantially above the interior portions of the top

-13-

surface due to the fact that the bolster air tubes . . . will typically be 8" diameter tubes, and the height of the two levels of bolster tubes will therefore be 2" greater than the height of the two levels of interior tubes." ('044 patent, col. 4, lines 28-37.) This statement further confirms that the '044 patent anticipates claim 1 of the '502 patent under 35 U.S.C. § 102(a).

Thus, the '044 patent satisfies each and every limitation of claim 1 of the '502 patent as set forth in the following chart:

| Claim | Element | '044 Patent Anticipation Analysis |
|-------|---------|-----------------------------------|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '044 patent discloses an outer covering 12. |
| | a removable cushion | The foam pads 58 and 59, singly or in combination, and/or the air tubes 42 comprise a removable cushion. |
| | disposed within the outer covering | The foam pads 58 and 59 and the air tubes 42 are disposed within the outer covering 12. |
| | to form a cushioned bottom portion; and | The foam pads 58 and 59, singly or in combination, and/or the air tubes 42 form a cushioned bottom portion. |
| | a bolster | The air tubes 3-36, singly or in combination, comprise a bolster. |
| | removably disposed within the interior of the outer covering | The air tubes 3-36, singly or in combination, are removably disposed within the interior of the outer covering 12. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | The air tubes 3-36, singly or in combination, are disposed exteriorly about at least a portion of the perimeter of the bottom portion formed by foam pads 58 and 59 and/or the air tubes 42. |
| | without being secured to the removable cushion. | The air tubes 31-36 are not secured to the removable cushion formed by foam pads 58 and 59 and/or the air tubes 42. |

**The '981 Patent Anticipates Claim 1 of the '502 Patent.**

U.S. Patent No. 5,136,981 to Barreto, III et al. ("the '981 patent") also anticipates claim 1 of the '502 patent. The '981 patent issued on August 11, 1992, more than one year before the April 18, 1996 filing date of the application for the '502 patent. Therefore the '981 patent is prior art to the '502 patent under 35 U.S.C. § 102(b).

The '981 patent discloses a pet bed 40 comprising an outer covering 46 configured to receive a removable bottom cushion 44. ('981 patent, col. 6, lines 40-45, and col. 7, lines 14-45.) The removable bottom cushion 44 is disposed within the outer covering 46, as reflected in Figures 2, 3, and 4. The '981 patent further discloses a foam wall 42 disposed within the outer covering 46, as shown in Figure 2 and as described at column 7, lines 9-45. As disclosed by the '981 patent, the foam wall 42 is disposed exteriorly about (*i.e.*, outside) the perimeter (*i.e.*, outermost limits) of the bottom cushion 44. This is reflected in Figures 1-4. The foam wall disclosed by the '981 patent is not secured to the bottom cushion, and is separately removable therefrom. ('981 patent, col. 7, lines 9-59.) As such, claim 1 of the '502 patent is invalid under 35 U.S.C. § 102(b) as anticipated by the disclosures of the '981 patent.

It is true that the '981 patent describes the foam wall 42 as a sidewall, rather than as a bolster. However, the patent specification states that the wall can vary widely in shape, ranging from a slim wall a quarter-inch thin to a wide cushion a half-foot thick. ('981 patent, col. 6, line 55.) The specification further notes that the thickness of the wall "is dependent upon the size and weight of the pet, and the particular configuration of embodiment selected." ('981 patent, col. 6, lines 56-58.) In short, the patent places no particular constraints on the shape of the wall, allowing for a thick wall that may be more pillow-like than flat and upright.

The foam wall described in the '981 patent thus comes within the scope of the "bolster" recited in claim 1 of the '502 patent. Claim 1 says nothing about the size, shape, or proportions of the bolster, leaving open the possibility of a square or rectangular bolster

-15-

encompassed by the disclosure of the '981 patent. Although the specification of the '502 patent describes an embodiment in which the bolster is cylindrical or banana-shaped, ('502 patent, col. 2, lines 56-57), this limitation does not appear in claim 1. The '502 patent emphasizes that the invention is not limited "except as may be necessary in view of the appended claims," which lack any limitation on the shape of the bolster. ('502 patent, col. 3, line 36.) Because the disclosure of the '981 patent comes within the scope of claim 1 of the '502 patent, claim 1 is invalid by anticipation under 35 U.S.C. § 102(b).

Thus, the '981 patent satisfies each and every limitation of claim 1 of the '502 patent as set forth in the following chart:

| Claim | Element | '981 Patent Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '981 patent discloses an outer covering 46. |
| | a removable cushion | The '981 patent discloses a removable bottom cushion 44. |
| | disposed within the outer covering | The removable bottom cushion 44 is disposed within the outer covering 46. |
| | to form a cushioned bottom portion; and | The removable bottom cushion 44 forms a cushioned bottom portion. |
| | a bolster | The '981 patent discloses a foam wall 42 that comprises a bolster. |
| | removably disposed within the interior of the outer covering | The foam wall 42 is removably disposed within the interior of the outer covering 46. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | The foam wall 42 is disposed exteriorly about at least a portion of the perimeter of the bottom cushion 44. |
| | without being secured to the removable cushion. | The foam wall 42 is not secured to the bottom cushion 44. |

-16-

**The '513 Patent Anticipates Claim 1 of the '502 Patent.**

U.S. Patent No. 4,754,513 to Rinz ("the '513 patent) also anticipates claim 1 of the '502 patent. The '513 patent issued on July 5, 1988, more than one year before the April 18, 1996 filing date of the application for the '502 patent. Therefore the '513 patent is prior art to the '502 patent under 35 U.S.C. § 102(b).

The '513 patent discloses a pillowcase 10 that comprises an outer covering. The '513 patent also discloses a pillow 17 disposed within the pillowcase 10 that comprises the outer covering: "A conventional pillow [17] is inserted in the inventive pillowcase . . ." (Col. 1, lines 54-55.)

The pillow 17 is removable from the pillowcase 10 because the pillowcase 10 may be open at one side: "The pillowcase 10 is thus substantially rectangular in shape, closed on three sides, specifically its opposite longer sides 13a, 13b and one of its short sides 14a. The pillowcase 10 is open at the other of its short sides 14b." (Col. 2, lines 29-32.) "The open side of the pillowcase 10 can be left open . . . ." (Col. 2, line 39.)

The '513 patent discloses a bolster (insert 16) that is removably disposed within the interior of the pillowcase 10: "Among the objectives of the present invention are to provide a conventional and inexpensive, pillowcase and removable insert . . . ." (Col. 1, lines 47-49.) "The pillowcase 10 has a pocket 15 formed on the inside of one panel 9, as presently described, for receiving and carrying an insert 16 to be used in combination with a conventional pillow 17. The insert 16 is preferably semi-cylindrical in cross section defining a curved surface 18 facing the panel 9 on which the pocket 15 is formed and a flat side 19. The insert may have a diameter in the range of about 4 inches to 5 inches, and preferably 5 inches, and may have a length in the range of about 17 inches to 19 inches, and preferably 17 inches. Alternatively the insert may be oval in cross section. . . ." (Col. 2, lines 15-26.)

-17-

The insert 16 is removable from the pillowcase 10 because the pillowcase has a pocket 15 that may be open at one side: "The pocket 15 is formed by a flat rectangular panel 22 and has opposed long sides 23 and short sides 24. The panel 22 is secured, as by sewing, to the inside of the pillowcase 10 on its opposite longer sides 23 and on one short side 24a furthest from the open side 14b of the pillowcase, near and parallel to one of the longer sides 13a, 13b of the panel 9." (Col. 2, lines 42-48.) The insert 16 is not secured to the removable pillow 17.

Although the drawings of the '513 patent show the insert 16 atop the pillow 17, the patent states that "[t]he position of the insert 16 can be adjusted by simply rotating the pillowcase 10 having the pocket 15 and insert 16 received therein, about the conventional pillow 17 in accordance with the preference [sic] of the user . . . ." (Col. 2, lines 53-56.)

Thus, the '513 patent satisfies each and every limitation of claim 1 of the '502 patent as set forth in the following chart:

| Claim | Element | U.S. Patent No. 4,754,513 Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
|  | an outer covering; | The '513 patent discloses a pillowcase 10 that comprises an outer covering. |
|  | a removable cushion | The '513 patent discloses a removable pillow 17. |
|  | disposed within the outer covering | The removable pillow 17 is disposed within the pillowcase 10 that comprises the outer covering. |
|  | to form a cushioned bottom portion; and | The removable pillow 17 forms a cushioned bottom portion. |
|  | a bolster | The '513 patent discloses an insert 16 that comprises a bolster. |
|  | removably disposed within the interior of the outer covering | The insert 16 is removably disposed within the interior of the pillowcase 10 that comprises the outer covering. |

-18-

| Claim | Element | U.S. Patent No. 4,754,513 Anticipation Analysis |
|---|---|---|
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | Although the drawings of the '513 patent show the insert 16 atop the pillow 17, the patent states that "[t]he position of the insert 16 can be adjusted by simply rotating the pillowcase 10 having the pocket 15 and insert 16 received therein, about the conventional pillow 17 in accordance with the preference [sic] of the user . . . ." (Col. 2, lines 53-56.) |
| | without being secured to the removable cushion. | The insert 16 is not secured to the removable pillow 17. |

**The '513 Patent, the '350 Patent, and the DE '699 Patent Each Anticipates Claim 1 of the '502 Patent if it is Construed to Cover a Bed with the Bolster Atop the Bottom Cushion.**

Claim 1 of the '502 patent requires that "substantially all of said bolster [be] disposed exteriorly about at least a portion of the perimeter of the bottom portion." ('502 patent, col. 3, lines 43-45.) This limitation indicates that substantially all of the bolster must be disposed on the sides of or surrounding the perimeter of the bottom portion. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000), available at http://www.yourdictionary.com/ahd/a/a0021300.html (defining the preposition "about" as "[o]n all sides of; surrounding"). A significant amount of the bolster cannot be on top of the bottom cushion because then it would be within the perimeter of the cushion. This construction is supported by the definition of "exterior" as meaning "outer" or "external." *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000), available at http://www.yourdictionary.com/ahd/e/e0296200.html (defining the adjective "exterior" as "[o]uter; external"). Thus, substantially all of the bolster must be disposed externally about or outside the perimeter of the bottom portion, which is inconsistent with the bolster being on top of the bottom portion.

If claim 1 of the '502 patent were construed to cover a bed with the bolster atop the bottom cushion, then it would be anticipated by the '513 patent for the reasons discussed in the preceding section.

In addition, if claim 1 of the '502 patent were construed to cover a bed with the bolster atop the bottom cushion, then it also would be anticipated by U.S. Patent No. 5,586,350 to Thönnsessen et al. ("the '350 patent") and German Patent No. 93 09 699.2 to Hoechst AG ("the DE '699 patent"). The application for the '350 patent was filed on June 28, 1994, which is before the presumptive date of invention of the subject matter of the claim 1 as represented by the April 18, 1996 filing date of the application for the '502 patent. Therefore the '350 patent is prior art to the '502 patent under 35 U.S.C. § 102(e). The DE '699 patent was published on September 30, 1993, more than one year before the April 18, 1996 filing date of the application for the '502 patent. Therefore the DE '699 patent is prior art to the '502 patent under 35 U.S.C. § 102(b).

The '350 patent and the DE '699 patent each disclose a bolstered pillow 1 having an outer covering 5, a removable cushion disposed within the outer covering to form a cushioned bottom portion 2, and a bolster cushion removably disposed within the interior of the outer covering 3. (*See* Fig. 1 of both patents). The bolster pillow (*i.e.,* the "cylindrical roll") of the '350 patent and the DE '699 patent is disposed atop the bottom portion. The bolster pillow is also connected "detachably" to the bottom cushion.

Thus, both the '350 patent and the DE '699 patent satisfy each and every limitation of claim 1 of the '502 patent as set forth in the following chart:

| Claim | Element | '350 Patent and DE '699 Patent Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '350 patent and the DE '699 patent disclose an outer covering 5. |

| Claim | Element | '350 Patent and DE '699 Patent Anticipation Analysis |
|---|---|---|
| | a removable cushion | The '350 patent and the DE '699 patent disclose a removable cushion 2. |
| | disposed within the outer covering | The removable cushion 2 is disposed within the outer covering 5. |
| | to form a cushioned bottom portion; and | The removable cushion 2 forms a cushioned bottom portion. |
| | a bolster | The '350 patent and the DE '699 patent disclose a cylindrical roll 3 that comprises a bolster. |
| | removably disposed within the interior of the outer covering | The cylindrical roll 3 is removably disposed within the interior of the outer covering 5. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | Like the bolster of the accused Dallas Manufacturing pet bed, the cylindrical roll 3 of the '350 patent and the DE '699 patent is disposed atop the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '350 patent and the DE '699 patent would include this claim limitation. |
| | without being secured to the removable cushion. | The cylindrical roll 3 is not secured to the removable cushion 2. The cylindrical roll 3 is "detachably" connected to the removable cushion 2. |
| 2 | The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening. | The '350 patent and the DE '699 patent disclose a zipper for a reclosable access opening. |
| 3 | The pet bed of claim 2, wherein the reclosable access opening further includes a zipper. | The '350 patent and the DE '699 patent disclose a zipper for a reclosable access opening. |

**The '228 Patent, the '734 Patent, the '843 Patent, the '393 Patent, and the '537 Patent Each Anticipates Claim 1 of the '502 Patent if it is Construed to Cover a Bed with the Bolster Atop the Bottom Cushion.**

If claim 1 of the '502 patent is construed broadly enough to cover the accused Dallas Manufacturing pet beds, then it is invalid as anticipated by several additional references,

-21-

namely, U.S. Patent Nos. 4,872,228 to Bishop ("the '228 patent"); 4,873,734 to Pollard ("the '734 patent"); 5,010,843 to Henry ("the '843 patent"); 5,588,393 to Heilborn ("the '393 patent"); and 5,826,537 to Heilborn ("the '537 patent").

       The '228 patent issued on October 10, 1989, the '734 patent issued on October 17, 1989, and the '843 patent issued on April 30, 1991, all more than one year before the April 18, 1996 filing date of the application for the '502 patent. Therefore each of these patents is prior art to the '502 patent under 35 U.S.C. § 102(b).

       The application for the '393 patent was filed on June 19, 1995, and the application for the '537 patent was a continuation of the application for the '393 patent, which means that it also has an effective filing date of June 19, 1995. These filing dates are before the presumptive date of invention of the subject matter of claim 1 as represented by the April 18, 1996 filing date of the application for the '502 patent. Therefore the '393 patent and the '537 patent are each prior art to the '502 patent under 35 U.S.C. § 102(e).

       The manner in which each of the foregoing patents satisfies the limitations of claim 1 of the '502 patent is set forth in the following charts:

| Claim | Element | U.S. Patent No. 4,872,228 Anticipation Analysis |
|-------|---------|--------------------------------------------------|
| 1 | A pet bed comprising: | Not a limitation. |
|   | an outer covering; | The '228 patent discloses a fitted bottom sheet 13 that comprises an outer covering. |
|   | a removable cushion | The '228 patent discloses a mattress 12. The mattress 12 is removable from the fitted bottom sheet 13. |
|   | disposed within the outer covering | The mattress 12 is disposed within the fitted bottom sheet 13 that comprises the outer covering. |
|   | to form a cushioned bottom portion; and | The mattress 12 forms a cushioned bottom portion. |
|   | a bolster | The '228 patent discloses a bolster 10. |

-22-

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

| Claim | Element | U.S. Patent No. 4,872,228 Anticipation Analysis |
|---|---|---|
| | removably disposed within the interior of the outer covering | The bolster 10 is removably disposed beneath the fitted bottom sheet 13 that comprises the outer covering. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | Like the bolster of the accused Dallas Manufacturing pet bed, the bolster 10 of the '228 patent is disposed atop the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '228 patent would include this claim limitation. |
| | without being secured to the removable cushion. | The bolster 10 is not secured to the mattress 12. |

| Claim | Element | U.S. Patent No. 4,873,734 Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '734 patent discloses a fitted sheet 12 that comprises an outer covering. |
| | a removable cushion | The '734 patent discloses a mattress 11. The mattress 11 is removable from the fitted sheet 12. |
| | disposed within the outer covering | The mattress 11 is disposed within the fitted sheet 12 that comprises the outer covering. |
| | to form a cushioned bottom portion; and | The mattress 11 forms a cushioned bottom portion. |
| | a bolster | The '734 patent discloses inserts 17 and 20 that comprise bolsters. |
| | removably disposed within the interior of the outer covering | Like the bolster of the accused Dallas Manufacturing pet bed, the inserts 17 and 20 of the '734 patent are disposed within a different outer covering than the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '734 patent would include this claim limitation. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | Like the bolster of the accused Dallas Manufacturing pet bed, the inserts 17 and 20 of the '734 patent are disposed atop the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '734 patent would include this claim limitation. |
| | without being secured to the removable cushion. | The inserts 17 and 20 that comprise the bolsters are not secured to the mattress 11. |

-23-

| Claim | Element | U.S. Patent No. 5,010,843 Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '843 patent discloses an outer covering for cushion 12. |
| | a removable cushion | The '843 patent discloses removable filler for cushion 12. |
| | disposed within the outer covering | The removable filler is disposed within the outer covering for cushion 12. |
| | to form a cushioned bottom portion; and | Cushion 12 forms a cushioned bottom portion. |
| | a bolster | The '843 patent discloses cushions 14 and 16 that can each be contoured to comprise a bolster. |
| | removably disposed within the interior of the outer covering | Like the bolster of the accused Dallas Manufacturing pet bed, the filler of cushions 14 and 16 is disposed within a different outer covering than the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '843 patent would include this claim limitation. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | Like the bolster of the accused Dallas Manufacturing pet bed, the cushions 14 and 16 of the '843 patent are disposed atop the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '843 patent would include this claim limitation. |
| | without being secured to the removable cushion. | The filler of cushions 14 and 16 is not secured to the filler for cushion 12. |

| Claim | Element | U.S. Patent Nos. 5,588,393 and 5,826,537 Anticipation Analysis |
|---|---|---|
| 1 | A pet bed comprising: | Not a limitation. |
| | an outer covering; | The '393 patent and the '537 patent disclose an outer covering. |
| | a removable cushion | The '393 patent and '537 patent disclose a removable horizontal foam core 108 that comprises a removable cushion. |

-24-

DALLAS MANUFACTURING'S FURTHER SUPPL. RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

| Claim | Element | U.S. Patent Nos. 5,588,393 and 5,826,537 Anticipation Analysis |
|---|---|---|
| | disposed within the outer covering | The horizontal foam core 108 that comprises the removable cushion is disposed within the outer covering. |
| | to form a cushioned bottom portion; and | The horizontal foam core 108 that comprises the removable cushion forms a cushioned bottom portion. |
| | a bolster | The '393 patent and '537 patent disclose an upstanding foam core 106 that comprises a bolster. |
| | removably disposed within the interior of the outer covering | Like the bolster of the accused Dallas Manufacturing pet bed, the upstanding foam core 106 that comprises the bolster is disposed within a different outer covering than the bottom portion. But if the '502 patent were construed to cover the accused Dallas Manufacturing pet bed, then the '393 patent and the '537 patent would include this claim limitation. |
| | and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion | The upstanding foam core 106 is disposed exteriorly about at least a portion of the perimeter of the horizontal foam core 108. |
| | without being secured to the removable cushion. | The upstanding foam core 106 is not secured to the horizontal foam core 108. |

## Claim 2 of the '502 Patent Is Invalid

Claim 2 of the '502 patent recites: "The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening."

As discussed above, the '044 patent anticipates claim 1 of the '502 patent. The '044 patent in addition discloses a reclosable access opening—the zipper 22 ('044 patent, col. 3, line 55). Therefore, the '044 patent also invalidates claim 2 of the '502 patent by anticipation.

Similarly, as discussed above, the '350 patent and the DE '699 patent both anticipate claim 1 of the '502 patent. These patents additionally disclose a reclosable single cover 5 having an access opening allowing for the insertion and removal of both the base cushion

-25-

2 and the bolster cushion 3. Therefore, both the '350 patent and the DE '699 patent also invalidate claim 2 of the '502 patent by anticipation.

The '513 patent also was shown to anticipate claim 1 of the '502 patent. The '513 patent further states that "[t]he open side of the pillowcase 10 can be left open but is preferably closed by fasteners that can be opened such as a zipper 21." ('513 patent, col. 2, lines 39-41.)

Likewise, it was shown above that the '981 patent anticipates claim 1 of the '502 patent. The '981 patent has an access opening 84. The patent specification states that "[e]lastic material 86 urges opening 84 toward *at least* a partial closure." ('981 patent, col. 7, lines 62-63 (emphasis added); *see also id.*, col. 7, lines 27-29 ("Sidewall enclosure 62 is capable of *at least* partially enclosing sidewall 42. Base enclosure 64 is capable of *at least* partially enclosing base 44.") (emphasis added).) The inventors of the '981 patent thus contemplated that the elastic material 86 might cause the opening 84 to close completely, although a partial closure would suffice. The '981 patent thus invalidates claim 2 of the '502 patent by anticipation.

The '981 patent also renders claim 2 of the '502 patent obvious in light of the '393 patent. The '393 patent discloses a pet bed with foam cores that form a bottom cushion and surrounding wall. ('393 patent, Abstract.) The bottom cushion and foam wall are enclosed in separate fabric enclosures. (*Id.*) The patent specification states that "the bottom cushion core may be retained in its enclosure . . . by a continuous bottom panel which is releasably secured to the edges of the enclosure by a zipper, Vector™ (hook and loop) material, snaps, or other means." ('393 patent, col. 7, lines 53-58.) In other words, the '393 patent discloses a bottom panel that can be used to close the access opening 134 into the bottom cushion enclosure.

The bottom panel disclosed in the '393 patent also could be used to close the access opening 84 in the '981 pet bed. Both the opening 134 in the '393 pet bed and the opening 84 in the '981 bed are oval- or circle-shaped holes through which a person can remove a

-26-

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

bottom cushion. As discussed above, the '981 patent contemplated that the opening 84 might be closed completely. A person who wanted to accomplish this (to keep the bottom cushion from getting dirty, for example) would be motivated to use the bottom panel disclosed in the '393 patent. The '537 patent similarly discloses a bottom panel that can be used to close the access opening 134 into the bottom cushion enclosure.

For similar reasons, Dallas Manufacturing contends that if the claims of the '502 patent are construed broadly enough to cover the accused Dallas Manufacturing pet bed, then claim 2 is invalid as anticipated by, or obvious in view of, the '513 patent; the '228 patent; the '734 patent; the '843 patent; and AB Murray and AC Ferguson, *Dust-free bedrooms in the treatment of asthmatic children with house dust or house dust mite allergy: a controlled trial*, 71 PEDRIATRICS 418-22 (March 1, 1983) ("Murray-Ferguson article"). As noted above, the '513 patent states that "[t]he open side of the pillowcase 10 can be left open but is preferably closed by fasteners that can be opened such as a zipper 21." ('513 patent, col. 2, lines 39-41.) The '843 patent discloses that cushions 12, 14, and 16 include zipper openings 34, 35, and 36, with zippers 37, 38, and 39. ('843 patent, col. 2, lines 47-60.)

The '228 patent and '734 patent each render claim 2 of the '502 patent obvious in light of the Murray-Ferguson article. The article abstract states, "Twenty asthmatic children with prick tests positive for house dust or house dust mites were allocated to two groups that were matched for severity. One group was provided with *zippered vinyl covers for pillows, mattresses, and box springs . . .*" (emphasis added). A person of ordinary skill in the art who wanted to use either the '228 patent or '734 patent with an asthmatic child would be motivated to use a bed sheet that could completely enclose the bed mattress and keep dust mites away from the child. The Murray-Ferguson article discloses such a bed sheet.

### Claim 3 of the '502 Patent Is Invalid

Claim 3 of the '502 patent recites "[t]he pet bed of claim 2, wherein the reclosable access opening further includes a zipper." As discussed above, the '044 patent, the '350 patent, the DE '699 patent, the '393 patent, and the '537 patent all disclose zippers for the reclosable access opening. By extension of the arguments made for claim 2, the '044 patent, the '350 patent, the DE '699 patent, the '393 patent, and the '537 patent invalidate claim 3 of the '502 patent by anticipation. Likewise, the '981 patent renders claim 3 of the '502 patent obvious in light of either the '393 patent or the '537 patent for the reasons discussed in the preceding section.

For similar reasons, if the claims of the '502 patent are construed broadly enough to cover the accused Dallas Manufacturing pet bed, then claim 3 is invalid as anticipated by, or obvious in view of, the '513 patent; the '228 patent; the '734 patent; the '843 patent, and the Murray-Ferguson article for the reasons discussed in the preceding section.

Dallas Manufacturing reserves the right to amend and/or supplement its response (1) as its investigations and discovery progress; (2) when Flexi-Mat identifies the claims of the '502 patent that it is asserting against Dallas Manufacturing; (3) when Flexi-Mat provides its contentions regarding the proper interpretation of the claims of the '502 patent; and (4) when the Court interprets the claims of the '502 patent.

### SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

In addition to the facts set forth in the Supplemental Response to Interrogatory No. 5 above, Dallas Manufacturing makes the following contentions:

### Invalidity of Claims 1-3 over the Prior Art

Claims 2 and 3 are anticipated by U.S. Patent Nos. 5,588,393 to Heilborn ("the '393 patent"); and 5,826,537 to Heilborn ("the '537 patent") based on the facts discussed above in the Supplemental Response to Interrogatory No. 5.

-28-

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

If claim 1 is interpreted as set forth in the Supplemental Response to Interrogatory No. 4 above, then claims 1-3 are anticipated by U.S. Patent No. 5,421,044 to Steensen ("the '044 patent") as discussed above in the Supplemental Response to Interrogatory No. 5, and for the additional reason that the '044 patent discloses the use of belts 55 and 56 that "are sewn into the bottom panel and have sufficient length to fit around the upper and lower side bolster air tubes 32, 33, 34, 35, 37 and 38 as illustrated in FIG. 6." (Col. 4, lines 12-15.)

## Invalidity of Claims 7-8 over the Prior Art

Although Flexi-Mat has not asserted infringement of claims 7 and 8 of the '502 patent, Dallas Manufacturing notes that these claims also are anticipated or obvious in view of the facts set forth above and the Supplemental Response to Interrogatory No. 5 above.  Dallas Manufacturing reserves the right to supplement this response in the event claims 7 and 8 are asserted.

## Invalidity of Claims 1-3 under 35 U.S.C. § 112

Claims 1-3 are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, first paragraph.  In the application as filed, the invention was described in the "Summary of the Invention" as comprising:

> . . . a pet bed having an outer covering, a removable cushion disposed within the outer covering to form a cushioned bottom portion, and a bolster _removably affixed_ to the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion. The outer covering includes a reclosable access opening that may be opened and closed with a zipper.

(_See_ col. 1, line 67 – col. 2, line 5, emphasis added.)  The specification repeatedly referred to the fact that the bolster is "affixed" within the outer covering. See Abstract; col. 2, lines 7-8; col. 2,

-29-

line 29; and col. 2, line 52. Nowhere did the specification disclose or suggest that the bolster can be anything other than "affixed" within the outer covering.

Consistent with the Summary of the Invention, all of the claims as filed in the application for the '502 patent required the bolster to be "affixed" within the outer covering. This includes application claim 1, which ultimately issued as claim 1 in the '502 patent. Application claim 1 as filed was limited to "a bolster removably affixed within the interior of the outer covering . . ." However, during prosecution Flexi-Mat amended claim 1 to delete the word "affixed" and substitute the word "disposed," so that the limitation reads, "a bolster removably disposed within the interior of the outer covering . . ."

The ordinary definition of the word "affix" is "to attach physically." http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=affix&x=14&y=14. In contrast, the ordinary definition of the word "dispose" is "to put in place." http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=dispose&x=15&y=11.

It is clear that, by its amendment Flexi-Mat broadened the scope of claim 1, and that the broadened scope of claim 1 was beyond any invention described in the application for the '502 patent as filed. The "affixed" limitation was important to claim 1 in light of the further claim requirement that the bolster be disposed in a prescribed position relative to the bottom portion without being attached to the removable cushion. Nothing in the application of the '502 patent as filed indicated that the named inventor had possession of the invention of somehow disposing the bolster in the prescribed position relative to the bottom portion without affixing the bolster within the interior of the outer covering. Therefore, for these reasons, claims 1-3 are invalid for failing to meet the written description requirement of 35 U.S.C. § 112, first paragraph.

Further, the description of the invention quoted above from the "Summary of the Invention" included the statement that the bolster is "disposed about at least a portion of the perimeter of the bottom portion." The bolster bed disclosed in the application for the '502 patent

-30-

was shown and described as having the bolster disposed about at least a portion of the perimeter of the bottom portion. *See* Figures 1-5; Abstract; col. 2, lines 52-54. Nowhere did the specification disclose or suggest that any substantial part of the bolster could be disposed on top of the bottom portion.

Similarly, all of the claims as filed in the application for the '502 patent, including application claim 1, required the bolster to be "disposed about at least a portion of the perimeter of the bottom portion." During prosecution, however, Flexi-Mat amended claim 1 to recite that "substantially all" of the bolster is disposed exteriorly about at least a portion of the perimeter of the bottom portion.

The word "substantially" in claim 1 is vague and ambiguous and renders claims 1-3 indefinite, and therefore invalid under 35 U.S.C. § 112, second paragraph. Also, to the extent that claim 1 as amended is construed to cover a bolster bed in which any significant or substantial part of the bolster is disposed on top of the base cushion, claims 1-3 are invalid for failing to meet the written description requirement of 35 U.S.C. § 112, first paragraph.

Claims 1-3 and 7-10 are also invalid for claim indefiniteness under 35 U.S.C. § 112, second paragraph, if the following recitations in the independent claims of the '502 patent are *not* construed as means-plus-function elements subject to the interpretation requirements of 35 U.S.C. § 112, sixth paragraph:

1.  Claim 1: "a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion."

2.  Claim 7: "a bolster removably secured to the interior of the outer covering and disposed about at least a portion of the perimeter of the bottom portion."

-31-

3.    Claim 9: "a bolster removably affixed within the bolster pocket and disposed

about at least a portion of the perimeter of the bottom portion."

Since each of these elements is written in purely functional terms, they are

indefinite in the absence of specific structure or material sufficient to perform the function of

disposing the bolster in the prescribed position relative to the bottom portion. *See* Supplemental

Response to Interrogatory No. 4 above.

Attorneys for Defendant and Counter-Claimant
DALLAS MANUFACTURING COMPANY, INC.

*Darren M. Franklin (BC)*

Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
(213) 620-1780

Dated:  September 14, 2005

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA  02109-1775
(617) 535-4000

-32-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon Plaintiff's counsel, William Meunier, Esq. Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, and Larry L. Saret, Esq., Michael, Best & Friedrich LLP, 401 N. Michigan Avenue, Suite 1900, Chicago, Illinois 60611, via first class mail, postage pre-paid, on September 14 2005.

I hereby certify that a true copy of the above document was also served upon counsel for Defendant Doskocil Manufacturing Company, Inc., Roy W. Hardin, Esq., Locke Liddell & Sapp LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776, via first class mail, postage pre-paid, on September 14, 2005.

_____
Darren M. Franklin

W02-LA:LGA\70874231.2

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5

William Meunier, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Larry L. Saret, Esq.
Michael, Best & Friedrich LLP
401 N. Michigan Avenue, Suite 1900
Chicago, Illinois 60611

Roy W. Hardin, Esq.
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776

DALLAS MANUFACTURING'S FURTHER SUPPL.
RESPONSES TO INTERROGATORY NOS. 2, 4 AND 5