UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>Defendants. | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a corporation,<br><br>Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>Counter-defendant. | **FLEXI-MAT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** |
| BJ'S WHOLESALE CLUB, INC., a corporation,<br><br>Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>Counter-defendant. | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation,<br><br>Counter-claimant,<br><br>v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>Counter-defendant. | |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1
ARGUMENT......................................................................................................................1

    I.      Claim 1 Does Not Require that the Bottom Cushion and the Bolster Be Disposed Within "A Single Interior Space." ........................................................1

          A.      "The" Interior Does Not Limit The Outer Covering to Only Those Having a "Single Interior Space................................................................1

          B.      Claim 1 Is Not Indefinite Because It Encompasses Outer Coverings with Multiple Interior Spaces ...................................................2

          C.      Flexi-Mat Did Not Disclaim Coverage Over Pet Beds Such as the Accused Dallas and Doskocil Bolster Beds .............................................3

          D.      The Limitation "Without Being Secured to the Removable Cushion" Makes Sense.
…………………………………………………………………………..9

    II.     The '502 Patent Does Not Exclude Beds Which Have a "Significant" Part of the Bolster On Top of the Bottom Cushion......................................................10

    III.    Claim 1 Does Not Include a "Means Plus Function" Limitation..........................10

CONCLUSION.................................................................................................................13

-ii-

Cases
Amgen Inc. v. Hoechst Marion Roussel, 314 F.3d 1313, 1349 (Fed. Cir. 2003)     2
Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1254 (Fed. Cir. 2000)     9
Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 622-23 (Fed. Cir. 1995)     13
Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc., 134 F.3d 1085, 1089 (Fed. Cir. 1998)     13
Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1457 (Fed. Cir. 1998)     4, 9
Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1343 (Fed. Cir. 2001)     13
Hoganas AB v. Dresser Industries, Inc., 9 F.3d 948 (Fed. Cir. 1994)     6, 7
Magnivision, Inc. v. Bonneau Co., 33 F. Supp. 2d 1218 (C.D. Cal. 1998)     12
Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206 (Fed. Cir. 1998)     12
Northern Telecom Ltd. v. Samsung Electronics Company, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000)     6
Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003)     3, 4, 6, 8
Spectrum International, Inc. v. Sterilite Corp., 164 F. 3d 1372, 1378 (Fed. Cir. 1998)     3
Spring Window Fashions LP v. Novo Industries, L.P., 323 F.3d  989 (Fed. Cir. 2003)     5
Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325-26, 63 USPQ2d 1374, 1380-81 (Fed.Cir.2002)     3

Constitutional Provisions
BJ's in 2003     13

**INTRODUCTION**

Defendants argue that their bolster beds do not infringe claims 1-3 of the Flexi-Mat's '502 patent because they have neither: 1) an outer covering with a "single interior space," nor 2) straps or fasteners to keep the bolster in the bolster pocket. Defendant Dallas, additionally, contends that it does not infringe because a "significant amount" of its bolster is on top of its bottom cushion. Doskocil concedes that its bolster is positioned as required by claims 1-3 of the Flexi-Mat's '502 patent. All three non-infringement positions present legal issues of claim interpretation that are properly raised by Flexi-Mat's Motion for Summary Judgment of Infringement.

As properly interpreted, claims 1-3 of Flexi-Mat's '502 patent are not limited to outer covers having a "single interior space" and do not require any structure to keep the bolster in the bolster pocket. These claims do not exclude pet beds in which a "significant amount" of the bolster is on top of the bottom cushion. Consequently, Flexi-Mat's motion for Summary Judgment of Infringement on these issues should be granted.

**ARGUMENT**

I. **Claim 1 Does Not Require that the Bottom Cushion and the Bolster Be Disposed Within the "A Single Interior Space."**

   A. "The" Interior Does Not Limit the Clamed Outer Covering to Only Those Having a "Single Interior Space."

Defendants argue that the use of the article "the" before the word "interior" in claim 1 indicates that the claim is limited to a "single interior space." Claim 1 claims "an outer covering" in the "interior" of which the bolster and the bottom cushion are both disposed. The claim contains no language describing or otherwise limiting the construction of "the interior."

Seizing upon the article "the", Defendants argue that there must be "a single interior." Modifying the word "interior" by calling it "a **single** interior space" adds nothing but confusion to the claim interpretation analysis. An "interior" is nothing more than the space "lying . . . within

-1-

the limiting boundaries" (in this case the limiting boundaries of the outer covering). Merriam-Webster Online Dictionary. The claimed "outer covering" has an interior just as an apartment building or a house has an interior. The article "the" itself does not further define or limit the claimed "interior" just a referring to "the" interior of the apartment building or house does not define or limit the nature of the space that constitutes "the" interior.

So what do Defendants mean by adding the word "single" to the claimed interior? By "a single interior space" the Defendants mean a space <u>that does not have separate bolster and bottom cushion compartments "walled off" from each other</u>. In reality, Defendants are trying to rewrite claim 1 by adding the underlined language to that claim under the guise of "interpreting" the article "the" to require that the outer covering have "a single interior space."[1] There is nothing in the use of the article "the" however, that even suggests such an interpretation.

"The" interior of the outer covering set out in claims 1-3 is the space contained within the limiting boundaries of the outer covering without further limitation. Apartments (even though walled off from each other) are disposed within **the** interior of an apartment building just as rooms (even though walled off from each other) are disposed within **the** interior a house. Yet the apartment building and the house each have "a single interior," *i.e.*, the space lying within the boundaries of the outer walls of the apartment building or house. Defendants cannot stretch the definition of the article "the" to exclude walled off compartments.

> B. *Claim 1 Is Not Indefinite Because It Encompasses Outer Coverings with Multiple Interior Spaces.*

Apparently, Defendants contend that claims 1-3 of the '502 patent would be indefinite if they encompassed covers with "multiple interior spaces or compartments walled off from one

---

[1] Defendants need this added language in order to exclude their bolster beds from the coverage of Claims 1-3. They include the "walled off" description merely to distinguish their bolster beds from the outer covering shown in the preferred embodiment of the '502 patent. That preferred embodiment shows an outer covering with multiple interior spaces, i.e., the "pockets" described at Col. 2, lines 9-14, 45-46, 51-52, 65-67 and Col. 3, lines 1-2. Claims should not be interpreted to exclude the preferred embodiment. See *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

2

another." Defendants argue that if such were the case, it would be "unclear in which 'interior' the bolster is disposed."

The claim is quite clear. Both the bolster and the bottom cushion must be disposed within **the interior of the outer covering**, *i.e.*, they must be located within the limiting boundaries of the outer covering. There is no limitation requiring that the bolster be disposed in any specific space or compartment so long as that space or compartment is within the limiting boundaries of the outer cover.

### C. Flexi-Mat Did Not Disclaim Coverage Over Pet Beds Such as the Accused Dallas and Doskocil Bolster Beds.

In their claim disavowal argument, Defendants again attempt to limit the interpretation of the term "outer covering" to only those covers having "a single interior space."

> A reasonable competitor would conclude that the only way in which Flexi-Mat's "single cover" argument distinguishes Henry is that the '502 patent has just **one interior space or compartment** for both the bottom cushion and the bolster, while Henry has several.

Defendants' Opposition Infringement Brief at 4. Defendants are still wrong.

Arguments made by the applicant during prosecution of a patent to overcome prior art rejections can serve to narrow the scope of claim coverage. *Spectrum International, Inc. v. Sterilite Corp.,* 164 F. 3d 1372, 1378 (Fed. Cir. 1998). The Federal Circuit, however, has cautioned:

> We indulge a "heavy presumption" that claim terms carry their full ordinary and customary meaning, *CCS Fitness,* 288 F.3d at 1366, 62 USPQ2d at 1662, unless the patentee **unequivocally** imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution, *see Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325-26, 63 USPQ2d 1374, 1380-81 (Fed.Cir.2002).

*Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)(emphasis added). The ordinary and customary meaning of the term "outer covering" is not limited to only those coverings having what Defendants call a "single interior space." Nor did Flexi-Mat

3

unequivocally and unambiguously limit the claimed outer coverings to only those having a "single interior space."

When analyzing a claim disavowal issue, the prosecution **as a whole** must be examined, not just an isolated argument made by the applicant. *Intervet Am. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989). In order to find that claim disavowal has attached and, if so, the scope of that disavowal, one must determine "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998). In this case the issue presented is: whether a competitor would reasonably believe that Flexi-Mat surrendered coverage of all outer coverings that had multiple interior spaces.[2] "[F]or prosecution disclaimer to attach, [Federal Circuit] precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-6 (Fed. Cir. 2003).

The file history of the prosecution of the '502 patent reveals that, after receiving a rejection based on Henry, Flexi-Mat attempted to distinguish the Henry reference by arguing that Henry teaches "separate" covers and does not suggest the claimed "single cover." FM Infr. Ex. 2 at DMC042. The patent examiner was not satisfied with Flexi-Mat's arguments. The examiner, "in order to insure that claim 1 read over the prior art patent to Henry," suggested that an additional limitation be added to claim 1. FM Infr. Ex. 2 at DMC046; Flexi-Mat, without comment, acquiesced in that claim amendment.

Defendants suggest that the examiner's response to Flexi-Mat's arguments is "irrelevant" and Flexi-Mat's subsequent silence should be ignored. This portion of the

---

[2] At pages 6 and 7 of their responsive brief, Defendants discuss Attorney Saret's recollection of the events during the prosecution of the '502 patent and conclude that "Flexi-Mat is stuck with this testimony." Attorney Saret's recollection is irrelevant to the issues of this case. The issue is not what the prosecuting attorney remembers or even what he thought but did not express at the time of the prosecution. The issue is what a competitor would reasonably believe given the facts set forth in the written prosecution history.

4

prosecution history is neither irrelevant nor can it simply be ignored. These facts make this case considerably different from *Springs Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989 (Fed. Cir. 2003), the case upon which Defendants rely. In *Springs Window,* the applicant made a clear argument distinguishing the Pluber reference from the proposed claims after receiving a rejection based on Pluber. Following that argument the examiner again rejected the proposed claims in view of Pluber. Nonetheless, as noted in *Springs Window:*

> In response to that office action, the applicant argued that Pluber was not a prior art reference. In addition, the applicant adhered to his argument distinguishing his invention from Pluber:
>
> > **Applicant maintains the arguments set forth in the prior Amendment concerning distinguishing of Pluber from the claims previously presented, on the merits**. However, in light of the Examiner's concession that Claim 1 finds full support in the application filed September 11, 1995, it is not believed necessary to go any further than to point out that fact and request a Notice of Allowance.

*Springs Window* at 994. As specifically noted in the Federal Circuit's decision in *Springs Window*: "The applicant, however, never retracted any of his statements distinguishing Pluber **nor did he acquiesce in the examiner's comments** regarding the overlapping scope of Pluber." *Id.* at 995.

Like the applicant in *Springs Window*, Flexi-Mat made its argument to distinguish a cited prior art reference. Like the examiner in *Springs Window,* the examiner did not accept the argument. The examiner here actually requested that additional language be added to the claim so that it defined over Henry and unlike the applicant in *Springs Window,* Flexi-Mat acquiesced in the examiner's proposal. What would a competitor reasonably believe from that acquiescence? Did Flexi-Mat maintain its argument attempting to distinguishing its claims from Henry or did Flexi-Mat abandon that argument? At worst for Flexi-Mat, its actions are susceptible to multiple reasonable interpretations and render its actions ambiguous.

> We have, however, declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is **ambiguous**. For instance, in *Northern Telecom Ltd. v. Samsung Electronics Company,* 215 F.3d 1281,

5

> 1293-95 (Fed. Cir. 2000), the accused infringer relied on remarks made by the inventors to overcome a rejection as the basis for narrowing the broad language of the claims. Having independently considered the prosecution history, we viewed the inventors' statements as amenable to **multiple reasonable interpretations** and deemed the remarks so **ambiguous** that, "[l]ike the district court, we simply cannot tell." *Id.* at 1294. Since the prosecution statements were "far too slender a reed to support the judicial narrowing of a clear claim term," we declined to apply the doctrine of prosecution disclaimer under those circumstances.

*Omega Engineering, Inc. v. Raytek Corp*, 334 F.3d 1314, 1324 (Fed Cir. 2003) (emphasis added).

Even Defendants recognize the ambiguity present in the file history in this case. At page 6 of their response brief, Defendants argue that "the fact that the patent examiner proposed the additional claim language does not **necessarily** mean that she rejected Flexi-Mat's 'separate cover' argument." (emphasis added) That is the point. It is ambiguous - ambiguous not only as to what the examiner did but also ambiguous as to what Flexi-Mat did in response. Ambiguity does not result in claim disavowal.

The facts of this case are very similar to those in *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948 (Fed. Cir. 1994). In *Hoganas*, the applicant sought to distinguish his proposed claims from a reference by Matheny. The applicant made two arguments: 1) the composition claimed called for only 0.05 to 0.35% by weight of channel-forming elements whereas Matheny disclosed at least 1% (the applicant stated in the prosecution that Matheny's percentages were by volume) and 2) the thickness of the channel-forming elements in the claimed composition was 100 or more times the thickness of that disclosed in Matheny. *Id*. at 952. After analyzing the file history, the Federal Circuit concluded that "a reasonable competitor was entitled to conclude" that the first argument made by Matheny did not really distinguish the claimed composition from Matheny and was not part of the claim coverage disavowed. After concluding that a reasonable competitor reviewing the file history was entitled to conclude that Hoganas' alleged distinction did not really distinguish Matheny from the proposed claims, the Federal Circuit held:

> Consequently, **such a one would not be justified in concluding the examiner relied on this distinction in allowing the claims, or in concluding the relinquished subject matter incorporated this distinction**.

*Id*. at 953 (emphasis added).   Like the file history in *Hoganas*, the Flexi-Mat file history presents a situation in which there were two claimed distinctions over Henry, one argued by Flexi-Mat and one proposed by the examiner in the form of a claim amendment.  The Flexi-Mat file history shows that after reviewing Flexi-Mat's claimed distinction of Henry, examiner concluded that additional claim language was needed to define over Henry.  Flexi-Mat then acquiesced in that amendment.  Just like the reasonable competitor reading the *Hoganas* file history, a reasonable competitor reading the Flexi-Mat file history was entitled to conclude that Flexi-Mat's' alleged distinction did not really distinguish Henry from the proposed claims.  Consequently, that reasonable competitor would not be justified in concluding that the examiner relied on Flexi-Mat's distinction in allowing the claims, or in concluding that Flexi-Mat relinquished any subject matter incorporated in Flexi-Mat's attempted distinction.  *Id*. at 953

Even if one assumes *arguendo* that some claim disavowal attaches by virtue of Flexi-Mat's arguments concerning Henry, the scope of that disavowal must be limited to the argument actually made by Flexi-Mat during the prosecution of the '502 patent.  Defendants argue that "[t]he only sense in which Henry has 'separate covers' is in that the cover assembly forms separate interior spaces for the cushions."  That statement is simply untrue and ignores the actual argument contained in the file history.  Flexi-Mat's actual argument was that:

> Henry suggests individual liners for each cushion and requires covers for the semi-circular cushions 14, 16 which are <u>separate</u> from the cover for the base cushion. See Col. 2, lines 44-50.  These separate liners and covers add manufacturing costs for material and assembly time.  In addition, Henry has a concern for exposed connections between the semi-circular cushions and the base cushions, which is not a concern with the present invention because a single cover encompasses both cushions.  Henry does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry.

FM Infr. Ex. 2 at DMC042 (emphasis in original).

7

> Merriam-Webster Online Dictionary defines "separate" as:
>
> 1 a : set or kept apart : <u>DETACHED</u> b *archaic* : <u>SOLITARY</u>, <u>SECLUDED</u> c : <u>IMMATERIAL</u>, <u>DISEMBODIED</u>
> 2 a : not shared with another : <u>INDIVIDUAL</u> <*separate* rooms> b *often capitalized* : estranged from a parent body <*separate* churches>
> 3 a : existing by itself : <u>AUTONOMOUS</u> b : dissimilar in nature or identity

The argument Flexi-Mat actually made was that Henry's outer covering, comprised of multiple "separate" covers," *i.e.,* covers detached and kept apart from one another, result in increased material and manufacturing costs as well as exposed connections between the separate covers. The increased material and manufacturing costs and exposed connections results only if the "separate" covers are complete before being attached to one another. Flexi-Mat argued nothing about "interior spaces" as suggested by Defendants. The scope of any claim disavowal must be based on the actual argument made by Flexi-Mat during the prosecution of the '502 patent. *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1327-8 (Fed. Cir. 2003).

The evidence before the Court as to how a competitor would reasonably interpret Flexi-Mat's argument is undisputed. Both the experts, Flexi-Mat's as well as the Defendants, agree. Defendants' own expert explained:

> Q. What do you by totally enclosed?
> A. It's surrounded, **each one is surrounded by a piece of fabric**; bolster one, bolster two and the cushion independently, they are surrounded by fabric. **And then they are sewn together**, so that they become a product of Henry's patent.
> . . . .
> A. And Henry, he [Flexi-Mat's attorney] had to distinguish that Henry was **separate entities put together**, so that he could get around the Henry patent. Henry, it could be said --
> Q. Okay.
> A. -- it's a totally covered pet bed.
> Q. Okay.
> A. But until and unless he distinguishes that the cushions, the cushion is separated from the bolster **with a separate, if you will, pocket, that is closed** and **then** they are sewn together, that's the only way he can, he got around Henry in my view.

FM Infr. Ex. 6, p. 201, line 21 to p. 202, line 1; p. 203, lines 3-22 (emphasis added). Mr. Handelsman, Flexi-Mat's expert, agrees. Handelsman Declaration at ¶¶ 5-7.

8

Defendants argue that their own expert's testimony should be ignored because she "is not a lawyer" and issues of claim disavowal are questions of law. Defendants cite *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1254 (Fed. Cir. 2000), in support of this argument. The Federal Circuit in Bayer AG, however, specifically noted that testimony on the question of how a competitor would reasonably interpret an argument made during patent prosecution is admissible and in fact a "tool" that the Court may use in answering the ultimate legal questions regarding claim disavowal. The Court explained:

> To allow a particular part of the prosecution history estoppel inquiry (such as the matter of what a reasonable competitor would conclude was surrendered during prosecution) to be a question of fact would hamper the promotion of uniformity by binding this court to the deference required with respect to fact findings at the trial level. *See, e.g.*, *Cybor*, 138 F.3d at 1455, 46 U.S.P.Q.2D (BNA) at 1173-74. (noting that if claim construction had underlying factual inquiries, the goal of national uniformity would be frustrated). Consequently, testimony as to what a reasonable competitor would conclude from the prosecution history cannot create a genuine issue of material fact so as to bar summary judgment. **Such testimony is only a tool, which the judge can use at his or her discretion, to aid in the legal determination of prosecution history estoppel**.

*Id.* at 1254.

At most, all that Flexi-Mat disavowed during the prosecution of the '502 patent is a claim covering a pet bed in which separate covers are completed, one for the bolster and one for the bottom cushion, before these covers are attached to each other. That is the argument actually made by Flexi-Mat to distinguish its bed from Henry.

At page 9 of their responsive brief, Defendants argue that Flexi-Mat's argument made during prosecution "makes no sense as a matter of law" because "[t]he '502 patent claims a product, not a manufacturing process." Even assuming *arguendo* that Flexi-Mat's prosecution argument was directed at a manufacturing process and not at the product resulting from that process, Defendants' argument results in a conclusion of **no** claim disavowal. If Flexi-Mat's argument made to the examiner to distinguish its claims from Henry "makes no sense as a matter of law," how could a competitor reasonably believe that Flexi-Mat made any claim disavowal based on that erroneous argument? Again the *Hoganas* case is instructive.

9

> The distinction made by Hoganas based on the percentage of fibers or elements added to the composition is of **questionable validity** in terms of distinguishing over Matheny. . . . Consequently, such a one [a reasonable competitor] would **not be justified in concluding the examiner relied on this distinction in allowing the claims, or in concluding the relinquished subject matter incorporated this distinction**.

*Hoganas AB* at 953 (emphasis added). If Defendants are correct, a reasonable competitor would not be justified in concluding either that the examiner relied on the erroneous distinction or that Flexi-Mat relinquished any claim coverage.

### D. The Limitation "Without Being Secured to the Removable Cushion" Makes Sense.

Dallas' last argument is that unless the "outer covering" is limited to coverings with "a single interior space," the limitation requiring that the bolster not be secured to the bottom cushion is meaningless. The limitation requiring that the bolster and bottom cushion not be secured to each other would be meaningless only if the claims were limited to **only** covers with separate walled off interior spaces. Defendants do not, and could not, argue that the claims are so limited.

## II. The '502 Patent Does Not Exclude Beds Which Have a "Significant" Part of the Bolster On Top of the Bottom Cushion.

Dallas agrees that the "substantially all" limitation does not require that *all* of the bolster be disposed exteriorly about the bottom portion. Its own definition states "largely, **but not wholly**." If "substantially all" is exterior, then the amount remaining on top need not and should not be quantified. Such a procedure would only confuse the meaning of the express claim limitation and add a limitation not found in the claim. The claim requires only that substantially all of the bolster be disposed exteriorly of the bottom cushion. There is no claim limitation that any portion of the bolster that is not so exteriorly disposed be "significant" no matter how one defines "significant," *e.g.*, by volume, function, etc. Defendants cannot avoid infringement by arguing that their beds are missing an unclaimed feature.

10

Defendants seek to enhance their arguments regarding whether a significant amount of the bolster can be placed on top of the bottom cushion by citing the testimony of Flexi-Mat's expert. During that testimony, Mr. Handelsman, when asked, attempted to identify the portion of the bolster on top of the bottom cushion in the preferred embodiment as disclosed in the drawings of the '502 patent. The claims of a patent, however, are not limited to the embodiments shown in the drawings of the patent. *General Foods Corp. v. Studiengesellschaft Köhle mbh*, 972 F.2d 1272, 1274 (Fed. Cir. 1992).

### III. Claim 1 Does Not Include a "Means Plus Function" Limitation.

To invoke the application of §112, ¶6, the limitation must use functional language, *i.e.*, it must recite a specified function that the means or element is to perform. The limitation upon which Dallas relies contains **no** specified function. A "bolster" is a structure, *i.e.*, a long, slender pillow, as the '502 Patent explains. FM Infr. Ex. 1, col. 2, line 4. The remaining language in the cited limitation, rather than recite any function, simply describes the location or disposition of the bolster structure in relation to other structures. The bolster:

1) must be "disposed within the interior of the [structure of the] outer covering";
2) "substantially all of said bolster [must be] disposed exteriorly about at least a portion of the perimeter of the [structure that is the] bottom portion" and
3) must not be "secured to the [structure that is the] removable cushion."

FM Infr. Ex. 1, col. 3, lines 38-46. The claim does not specify a function that a means or element is to perform. It simply claims a specified spatial relationship between two structures. Consequently, the limitation is not governed by §112 ¶6.

Defendants assert that claim 1 does state a function. The function Defendants assert is noted at page 13 of their response brief: *i.e.*, "dispos**ing** substantially all of the bolster exteriorly about at least a portion of the perimeter of the bottom portion." That language is not in the actual claim. The claim defines a bolster that is so "dispos**ed.**" It does not claim any means, element, mechanism, *etc.* for performing any identified function, let alone any means, element or mechanism for disposing the bolster in the specified position.

11

The cases cited by the Defendants do not support their argument. The claim limitation at issue in *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998) recited a "lever mov**ing** element" – an element that performs a claimed function, *i.e.,* moving a lever. Similarly, in *Magnivision, Inc. v. Bonneau Co.*, 33 F. Supp. 2d 1218 (C.D. Cal. 1998), the claim limitation recited a "support" that performed a specified function, *i.e.*, "engaging said contacting members . . . so that . . . said temples . . . are substantially parallel to the folded temples of any other pair of eyeglasses." The functional language used in these case is unlike the language used in Flexi-Mat's patent. Flexi-Mat does not claim a means or an element for placing the bolster in a specified position, it claims a bolster that is so placed. That is the difference between claiming a means for performing a specified function and claiming the location of a specified structure. Claim 1 contains no means-plus-function limitation.

### IV. Defendants Literally Infringe Claims 1-3.

When the term "outer covering" is properly construed to ignore the "single interior" limitation Defendants propose, Defendants' infringement is clear, even if claim disavowal attaches. Neither Doskocil nor Dallas complete two separate covers, one for the bolster and one for the bottom cushion, and then sew them together as taught by Henry. The resulting outer covering is not like Henry's covering. See Flexi-Mat's opening brief at p. 8.

Claim one does not include a means-plus-function limitation. The fact that neither of Defendants' bolster beds utilize straps or fasteners is irrelevant to the question of whether those beds infringe claims 1-3 of the '502 patent. Additionally, even if one were to erroneously read a "means" limitation into claim 1 as Defendants argue, Defendants' would nonetheless infringe for the reason stated in Flexi-Mat's earlier briefs. Flexi-Mat's Brief in Support of Its Motion for Summary Judgment of Infringement at 11-12. Doskocil does not even argue that its accused bolster fails to meet the "substantially all" limitation of claims 1-3 of the '502 patent. The Dallas bolster beds actually sold to BJ's have a bolster substantially all of which is disposed about the perimeter of the bottom cushion. Mr. Handelsman, in his expert report, so states. See FM Infr.

12

Ex. 3 at 3-5.[3]  Observation of the Dallas bolster bed purchased by Flexi-Mat from <u>BJ's in 2003</u> clearly shows that the bolster is positioned such that "substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter of the bottom cushion."



Further, Dallas' pet beds are constructed so that if a pet were to lean on or against the bolster, even more of the bolster would be exterior to the perimeter of the bottom portion. Handelsman Declaration at ¶8.  If an accused product infringes some of the time, it is an infringement even if it does not infringe all of the time.  *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998).

At page 19 of Defendants' Response Brief, Dallas argues that Flexi-Mat has not cited to any evidence showing infringement of any Dallas bolster except that bed sold to BJ's Wholesale Club.  In doing so, Dallas suggests that some difference exists between the construction of the beds Dallas sells to BJ's and those sold to other entities.  The Dallas Plant Manager, Mr. Neil Nivert, however, testified that the beds sold to companies other than BJ's are constructed the same as the beds sold to BJ's.

---

[3] Defendants have suggested that the copy of Mr. Handelsman's expert report file with Flexi-Mat's motion had illegible photos attached.  A color copy of FM Infr. Ex. 3 is being filed with this brief and again being provided to Defendants.

> Q. And is there any difference, other than size, on the construction of this bed [sold to Big Lots] from the bed sold to BJ's by Dallas, the bolster bed sold to BJ's?
> A. No, there isn't.
> . . .
> Q. And is -- is the bolster bed sold to Sam's of the same construction as the bolster bed sold to BJ's?
> A. Yes, it is.
> . . .
> Q. And is that bed [sold to Bass Pro] -- does -- is it of the same construction as the bed -- the bolster bed sold to BJ's?
> A. Yes, it is.
> . . .
> Q. And is there any difference between the construction of the Costco bed and the bolster bed sold to BJ's other than fabric?
> A. No.

FM Inf. Ex. 3 (Ex. H).   Evidence that Dallas' bolster bed sold to BJ's infringes Flexi-Mat's '502 patent is evidence that all of its bolster beds infringe.

## CONCLUSION

The bolster beds manufactured and sold by Defendants Dallas and Doskocil literally infringe claims 1-3 of the '502 patent.  Summary judgment of infringement against both Defendants should be entered.

|  | Respectfully submitted, |
|---|---|
|  |  |
| Dated:  January 30, 2006 | /s/ Richard B. Myrus |
|  | Richard B. Myrus (BBO # 638793)<br>GOODWIN PROCTER LLP<br>Exchange Place<br>Boston, MA 02109<br>Telephone:  (617) 570-1058<br>Facsimile:  (617) 523-1231<br><br>Michael Husmann<br>MICHAEL BEST & FRIEDRICH LLP<br>100 East Wisconsin Avenue<br>Suite 3300<br>Milwaukee, WI 53202-4108<br><br>Larry L. Saret<br>Lisa C. Childs<br>Gretchen M. Hosty<br>MICHAEL BEST & FRIEDRICH LLP<br>Two Prudential Plaza |

|  | 180 North Stetson Avenue<br>Suite 2000<br>Chicago, IL 60601<br>Phone: (312) 222-0800<br>Fax: (312) 222-0818<br><br>Attorneys for Plaintiff<br>Flexi-Mat Corporation |
|---|---|

**CERTIFICATE OF SERVICE**

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 30, 2006.

/s/ Richard B. Myrus