UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 10162 DPW |
| | ) | |
| DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) | **FLEXI-MAT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF VALIDITY** |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) | |
| | ) | |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) | |
| | ) | |
| Counter-claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLEXI-MAT CORPORATION, a corporation, | ) | |
| | ) | |
| Counter-defendant. | ) | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT ......................................................................................................................1

    A. Claim 1 Is Not Invalid as Anticipated by Defendants' Cited References. ...................3

        1.  The Walled Beds Cited By Defendants Do Not Anticipate Claim 1................3

        2.  The Prior Art Showing Bolsters on Top of the Bottom Cushion Do Not
            Anticipate Claim 1. ...................................................................................5

        3.  The Steensen '044 Patent Does Not Anticipate Claim 1. ...........................7

        4.  The Bins '248 Patent Does Not Anticipate Claim 1. .....................................8

        5.  The Term "Pet Bed" Should Not Be Read Out of the Claims.........................9

    B.  Claims 2 and 3 Are Not Obvious...............................................................11

    C.  Defendants' Argument Under 35 U.S.C. § 112 Is Legally Erroneous. .....................12

CONCLUSION ...............................................................................................................13

Cases

Cont'l Can Co. v. Monsanto Co., 948 F.2d 1264, 1268-69, (Fed. Cir. 1991) ...............................5
Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251 (Fed. Cir. 1989)...............9
Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358 (Fed. Cir. 2003) ......................6
Electro Medical Sys., S.A. v. Cooper Life Sciences, 34 F.3d 1048, 1054 (Fed. Cir. 1994).........12
Ferguson Beauregard/Logic Controls v. Mega Sys. LLC., 350 F.3d 1327, 1347 (Fed. Cir. 2003) 2
In re Vamco Mach. & Tool, Inc., 752 F.2d 1564, 1577, n. 5 (Fed. Cir. 1985)...........................12
Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289 (Fed. Cir. 2004)..................................................10
Philips v. AWH, 415 F.3d 1303, 1317 (Fed. Cir. 2005).....................................................3, 11
Ralston Purina Co. v. Fav-Mar-Co, Inc., 772 F.2d 1570, 1575 (Fed. Cir. 1985) .......................12
Rowe v. Dror, 112 F.3d 473 (Fed. Cir. 1997) ............................................................................10
Stonkus v. City of Brockton School Dept., 322 F.3d 97, 102 (1st Cir. 2003) ...............................1
STX, LLC. v. Brine, Inc., 211 F.3d 588 (Fed. Cir. 2000) ...........................................................10
Transclean Corp. v. Bridgewood Services, Inc., 290 F.3d 1364, 1372-73 (Fed. Cir. 2002) ..........4

Rules

35 U.S.C. § 102 ......................................................................................................... 1, 10
35 U.S.C. § 103 ................................................................................................................1
35 U.S.C. § 112 ................................................................................................... 1, 12, 13
35 U.S.C. § 282 ................................................................................................................1
35 U.S.C. §§ 102 .............................................................................................................2

## INTRODUCTION

Each claim of a patent is presumed valid.  35 U.S.C. § 282.  Defendants' Opposition Brief To Plaintiff Flexi-Mat Corp.'s Motion For Summary Judgment of Validity of the '502 patent ("Defs.' Br.") raises no genuine issues of material fact to disturb this presumption.  Flexi-Mat's motion should be granted.

Defendants' arguments fall into three categories:

(1) claim 1 is invalid as anticipated under 35 U.S.C. § 102 by one or more references;

(2) claims 2 and 3 are invalid as obvious under 35 U.S.C. § 103;  and

(3) claims 1-3 are invalid as failing to comply with 35 U.S.C. § 112.

Because Defendants' arguments are premised upon the acceptance of their own erroneous interpretation of certain claim terms (a legal determination for the court) and the astonishing, and legally unwarranted, argument that prior art should be considered not for what it teaches, but for what it is "not limited to," Defendants' arguments have no merit.

## ARGUMENT

Defendants have failed to dispute any of Plaintiff's Statement of Undisputed Facts In Support Of Its Motion For Summary Judgment Of Validity.  Instead, pages 1-7 of Defs.' Brief presents new facts in a "Statement of Material Facts" which do not correlate with or dispute Plaintiff's Statement of Undisputed Facts.  This fails to comply with the Local Rule 56.1 which provides that "material facts of record set forth in the statement … by the moving party will be deemed … admitted by the opposing parties unless controverted by the statement required to be served by opposing parties."  As a result, Plaintiff's Statement should be taken as admitted. *Stonkus v. City of Brockton School Dept.*, 322 F.3d 97, 102 (1st Cir. 2003).

During discovery, Flexi-Mat (in its Interrogatory No. 5) requested the Defendants to identify in detail the factual basis for their claims of invalidity based on anticipation and obviousness.  In response, Dallas identified the allegedly anticipatory references and the prior

art combinations it was relying on for its claims of obviousness.  FM Validity Ex. 19, Defs.' Ex. B.[1]  Doskocil responded by attaching its request for reexamination that it filed with the United States Patent and Trademark Office.  Defs.' Ex. C.  The reexamination request provided a discussion of Doskocil's claims of invalidity, citing the allegedly anticipatory references and the prior art combinations it was relying on for its claims of obviousness.

In its opening brief, Flexi-Mat addressed each of the allegedly anticipatory references and the prior art combinations identified by Defendants.  In Defs.' Br. at pages 1-2, Defendants now claim that they "contend that the '502 Patent [without any identification of patent claims] is invalid under 35 U.S.C. §§ 102 [anticipation] and/or 103 [obviousness] in view of numerous references, **including but not limited to**" a laundry list of 36 prior art references.  In this section of their brief, Defendants do not identify which of the 36 are alleged to be anticipatory or any prior art combinations that allegedly render the patent obvious.  In their own motion for summary judgment of invalidity and in their response to Flexi-Mat's motion for summary judgment of validity, Defendants do not raise specific invalidity issues beyond those noted in their discovery responses.

Flexi-Mat should not have to guess what the defenses are, and it is now too late for Defendants to assert affirmative defenses involving new prior art or prior art combinations not disclosed during discovery.  Since discovery is closed and the time for serving expert reports has expired, Defendants are limited to the affirmative defenses noted in their discovery responses and Ms. Fessler's report.  *See Ferguson Beauregard/Logic Controls v. Mega Sys. LLC.,* 350 F.3d 1327, 1347 (Fed. Cir. 2003). Defendants' unidentified, unexplained and unargued invalidity positions cannot defeat Flexi-Mat's Motion for Summary Judgment of Validity.

---

[1] Flexi-Mat uses both the exhibit references it submitted to the Court and the parallel exhibit references used by defendants, for those exhibits submitted by both sides.

**A.     Claim 1 Is Not Invalid as Anticipated by Defendants' Cited References.**

The prior art upon which Defendants rely does not look like, is not constructed like, and does not disclose the pet bed claimed in the '502 patent.  Each cited prior art reference lacks at least one limitation of claim 1 and, therefore, none are anticipatory.

*1. The Walled Beds Cited By Defendants Do Not Anticipate Claim 1.*

Defendants argue that some prior art, *i.e.*, U.S. Patent Nos. 5,136,981 (Barreto), 5,588,393 and 5,826,537 (collectively Heilborn), featuring pet beds with a wall, are each anticipatory.  Defendants base this argument on their position that the claim term "bolster" "broadly encompasses structures providing either protection or comfort, and the terms 'wall' and 'bolster' are used interchangeably in the pet industry."  Defs.' Br. p. 9.  Under Defendants' theory, a "sleeping bag" or a "raincoat" is a "bolster" because they too provide protection and comfort.  Defendants' definition of a "bolster" is too broad.  A "bolster" is not a "wall."

The '502 patent expressly distinguishes a "wall" from a "bolster."  FM Validity Ex. 1, Ex. J, col. 2, lines 56-57.  The Federal Circuit has recently held that the primary focus for claim interpretation must be on intrinsic evidence (*i.e.*, the patent and its prosecution history) rather than extrinsic evidence such as that upon which Defendants rely.  *Philips v. AWH*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).  Ignoring the specification of the '502 patent as well as its file history, Defendants rely upon an inappropriate dictionary definition that broadly defines a "bolster" as "a structural part designed to eliminate friction or provide support or bearing,"  Defs.' Br. p 10.  The '502 patent is about pet beds, not ball bearings.

In a misguided effort to convince the Court that a "bolster" can be just about anything, Defendants cite to the testimony of the experts and the inventor.  That testimony does not support Defendants' position.  Defendants' own expert, Ms. Suzanne Fessler, when asked what "bolster" means in the '502 patent, actually testified that a "bolster is something that the pet can lay its head on … A bolster could be a pillow …."  Defs.' Ex. H at 46:2-5.  While Ms. Fessler's experience in the pet industry is modest, at best, when asked how the terms "wall" and "bolster"

are used in "the industry," she opined "interchangeably." FM Validity Ex. 24, Defs.' Ex. H at 74:3-5. But she admitted that when a customer asked her to design a bolster, she "made a pillow that looked like a sausage," not a wall. FM Validity Ex. 24 at 15:12-16 and 74:17-23, Defs.' Ex. H at 74:17-23. Ms. Fessler's actions belie her litigation opinions. Ms. Fessler's testimony is consistent with how the term is used in the '502 patent and the industry but inconsistent with Defendants' definition. Defendants also cite Flexi-Mat's expert, Mr. Simon Handelsman, but he, too, testified that a bolster is a "long, narrow pillow." Defs.' Ex. I at 64:18-21. Next, Defendants cite the inventor Scott Haugh. His testimony, however, is consistent with the '502 patent: "a bolster is more of a rounded pillow … it's just like a sausage shaped pillow." FM Validity Ex. 25, Defs.' Ex. D at 18:22-19:2; FM Validity Ex. 26 at 21:5-9. A "wall" is not a "bolster."

Defendants also attempt to support their overly broad interpretation of the claim term "bolster" by arguing that none of the prior art "**limit**" its "wall" to any particular size or shape. Defs.' Br. p. 9. Defendants' argument implicitly acknowledges that these references do not expressly disclose a "bolster." It is an argument that one must transform the "wall" into a "bolster" because the patents do not "limit" the size or shape of the disclosed "wall."

"A single prior art reference that discloses, either expressly or inherently, each limitation of a claim invalidates that claim by anticipation." *Perricone v. Medicis Pharm. Corp.*, 2005 U.S. App. LEXIS 28061, *15 (Fed. Cir. 2005). Defendants' "not limited" argument is at best an argument of an inherent disclosure. Anticipation under the principles of inherency, however, requires that the prior art "**necessarily** functions in accordance with, or includes, the claims limitations." *Perricone* at *15 (emphasis added).

In *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1372-73 (Fed. Cir. 2002), the Federal Circuit held that inherent anticipation cannot be established by showing possibilities. The patent at issue in *Transclean* concerned an automatic automobile transmission fluid changing apparatus. After concluding that the claim term "equalizing the fluid

flow" required the equalization of the flow rates, the Court reviewed the asserted inherently anticipatory art, a Japanese patent. In regard to the disclosure of the equalization of flow rates, the Court held:

> Although it is possible that the detection means could under some circumstances (e.g., if the response time for the feedback loop is sufficiently fast) effectively equalize the flow rates as well, it is also possible for that not to be the case. Because **anticipation by inherent disclosure is appropriate only when the _reference_ discloses prior art that _must_ necessarily include the unstated limitation**, _Cont'l Can Co. v. Monsanto Co._, 948 F.2d 1264, 1268-69, (Fed. Cir. 1991) (emphasis added), the Japanese patent cannot inherently anticipate the claims of the '080 patent. We conclude, as did the district court, that Bridgewood did not raise any genuine issue of material fact regarding anticipation of claim 1 by the Japanese patent.

_Id._ at 1373. Arguing that possibly one could change the size or shape of the prior art walls so that they are transformed into bolsters simply because these patents do not "limit" the size or shape of their disclosed wall does not establish that any change, let alone a change to a "bolster," is inherently disclosed in those patents. Defendants have not and cannot meet their burden of presenting clear and convincing evidence of inherent anticipation by arguing mere possibilities, as they have done in this case.

   2. _The Prior Art Showing Bolsters on Top of the Bottom Cushion Do Not Anticipate Claim 1._

Defendants argue that some prior art, i.e., U.S. Patent Nos. 4,754,513 (Rinz) and 5,586,350 (Thönnessen), that feature orthopedic pillows with the bolster placed on top of the bottom pillow, are anticipatory. Defendants again rely on an erroneous legal theory of inherent anticipation.

In regard to the Rinz '513 patent, Defendants cite the testimony of their expert that the '513 patent discloses a bolster disposed as required by Flexi-Mat's patent. What Defendants do not cite in their responsive brief is the actual Rinz disclosure upon which their expert reaches this conclusion. The '513 Rinz patent states: "[I]nsert 16 can be adjusted by simply rotating the pillowcase 10 . . . about the conventional pillow 17." FM Validity Ex. 6, Defs.' Ex. N, col. 2, lines 53-56. Ms. Fessler's expert "opinion" is that, if one follows this teaching, the bolster can be

rotated to **various** positions, only one of which is the position claimed in Flexi-Mat's patent.  "So **inherently**, I believe that they are showing how you can rotate and move the insert within the **various** places to be more comfortable for the user."  FM Validity Ex. 24, 92:22-25.  As explained above and even accepting Ms. Fessler's opinion as accurate, inherent anticipation cannot be established by showing possibilities of what might happen.  The disclosure "must necessarily include the unstated limitation." *Transclean* at 1373.

Defendants rely on *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003), to support their expert's suggestion that the human pillowcase of the Rinz '513 patent could be modified to anticipate the '502 patent.  *Dayco*, however, refutes Defendants' position by rejecting an expert's report that stated that a prior art device "inherently" discloses a particular claim feature.  The court found that report to be insufficient because it was "unsupported and equivocal."  In this case, the expert states that "*[i]f* a person rotated the pillowcase 10 far enough, the person *could* adjust the position of the insert …. FM Validity Ex. 17, Defs.' Ex. A, p. 22.  This kind of testimony does not rise to the level of an inherent disclosure;  it is sheer speculation and should be rejected as "unsupported."

Defendants' argument in regard to the '350 Thönnessen patent is based on the same faulty legal analysis of inherent anticipation as that attempted in regard to the "walled" pet beds.  Defendants argue:  "The bolster structure of the '350 Patent is **not limited** to any particular point of attachment or position relative to the base cushion."  Defs.' Br. p. 13.  That possibilities exist for changing the prior art is legally insufficient to establish anticipation.  *Id.*

Defendants next argue that some prior art, i.e., U.S. Patent Nos. 4,754,513 (Rinz), 5,586,350 (Thönnessen),  4,872,228 (Bishop), 4,873,734 (Pollard), and 5,010,843 (Henry) and 2,032,248 (Bins), each of which feature structures with the bolster placed on top of the bottom cushion, are each anticipatory "**if claim 1 of the '502 Patent were read to cover**" the accused Dallas bolster beds.  This hypothetical anticipation argument is based on an assumption that the Dallas accused bolster bed has a bolster atop the bottom cushion.  The issue Defendants

actually raise is one of infringement: Are Dallas's bolsters placed on top of the bottom cushion, like the prior art? Defendants simply assume that "substantially all" of the Dallas bolster is not "disposed exteriorly about the perimeter of the bottom cushion" like the prior art and as required by claim 1 of the '502 patent. As set forth in Flexi-Mat's summary judgment briefs regarding infringement, Dallas' bolster, unlike the prior art, is positioned as required by claim 1 of Flexi-Mat's patent. By reading claim 1 to cover Dallas' bed, claim 1 is not anticipated by the aforesaid prior art.

   3. *The Steensen '044 Patent Does Not Anticipate Claim 1.*

   Defendants' argument based upon the Steensen '044 patent suffers from many of the previously described deficiencies.

   First, Defendants respond to Flexi-Mat's analysis that Steensen's air tubes 31-36 are not bolsters as that term is used in the '502 patent, but rather are part of a mattress without a "bolster," by simply asserting that the word "bolster is broad in scope." As noted above, Defendants' arguments regarding the scope of the claim term "bolster" are erroneous. Defendants appear to suggest that Steensen has a "bolster" because it "suggests an embodiment wherein the perimeter bolster tubes 31-36 are utilized to prevent the user from falling out of the bed." Defs.' Br. p. 15. Actually, Steensen teaches the opposite. Steensen teaches placing foam pads 58, 59:

> on top of the upper laterally disposed cushion air tubes 42 in the space bounded by upper side bolster air tubes 32, 33, 34 and 35 and upper end bolster air tubes 31 and 36 … *to provide a soft cushioned feel to the user, and to provide a level top surface.* The top surface would otherwise have its outside edges extending substantially above the interior portions of the top surface ….

FM Validity Ex. 11, Defs.' Ex. D at col. 4, lines 24-37 (emphasis added).

   Defendants misconstrue the teaching of Steensen in their argument that "one of ordinary skill would understand that the exterior bolsters may be higher than the adjoining base" to prevent users from falling out of bed. Defs.' Br. p. 15. The cited support for this opinion is a passage from Steensen that deals with maintaining the air pressure in air tubes 31-36, not with

making the bed unlevel. Defendants' expert also misconstrues the teaching of Steensen when she opines that the foam pads need not be used. The passage of Steensen upon which she bases that conclusion actually warns that without the foam pads, the outside edges of the bed would be above the interior portions of the top surface, thereby resulting in an unwanted, unleveled bed. FM Validity Ex. 11, Defs.' Ex. O, col. 4, lines 26-37.

Next, Defendants argue that Steensen's alleged bolster(s) are not secured to one another because "bolster tubes 31-36" are connected "by a set of hoses 77" and base air tubes 42" are connected by a "separate set of hoses 77." The Steensen patent actually states (and shows in Figure 9) that hose assembly 77 is connected to manifold block 71, thereby connecting all of the hoses of assembly 77 together. "The manifold block outputs are connected to the air tubes by air hose assembly 77." FM Validity Ex. 11, Defs.' Ex. O, col. 5, lines 51-52.

Lastly, Defendants argue that the air tubes of Steensen are "removable" because Steensen refers to a "transport" embodiment. By referring to a "transport" embodiment, Steensen did not even discuss, let alone disclose, removable bolsters or bottom cushions. Steensen's air bed is "transportable" in the sense that it is "intended for use in vehicles (such as trucks, recreational vehicles, and boats)." FM Validity Ex. 11, Defs.' Ex. O, col. 3, lines 9-10. Steensen's air tubes are not removable because they are connected to hoses and an air pump and manifold, as described in Flexi-Mat's Memo. pp. 9-10.

Significantly, Defendants did not take issue with the interpretation of the claim term "removable" as explained by Flexi-Mat in its opening brief.

> A pet bed with a removable cushion as described in the '502 patent is one that is specifically designed in a manner such that the bolster and bottom cushion can readily be removed and replaced and excludes the removal by a means that would require excessive effort as to discourage a pet bed owner from removing the bolster and bottom cushion or destroy the bed.

FM Validity Ex. 16 at p. 7.

*4. The Bins '248 Patent Does Not Anticipate Claim 1.*

Defendants continue to promote the Bins '248 patent as anticipatory, even though it does not disclose a removable bolster or a bolster substantially all of which is disposed exteriorly about the perimeter of the bottom portion.  Defendants argue that the cotton filler of Bins' bolster is "inherently" removable by reversing the manufacturing process.  Defendants neglect to mention that such reversal would require destroying the bolster by unsewing it (see Flexi-Mat's Memo., p. 11 and the citations to Bins therein).  The '502 patent's reference to "removable" plainly does not include destruction by unsewing, and it does not envision removal of the filler as opposed to the bolster and the bottom cushion.

     5.  *The Term "Pet Bed" Should Not Be Read Out of the Claims.*

Claim 1 of the '502 patent begins with "a pet bed comprising," and each of claims 2 and 3 also begin with "The pet bed of claim ___."  Defendants ask this Court to ignore those words so that prior art disclosing such diverse products as human air mattresses (Steensen '044), orthopedic neck pillows (Rinz '513 and Thönnessen '350), and guards to prevent humans from falling out of bed (Bishop '228 and Pollard '734) can be asserted as anticipatory.  Defendants argue that the preamble of the claims was not relied upon during prosecution to distinguish the prior art and that the body of claim 1 recites a structurally complete invention, although Defendants concede that the preamble states "an intended use or description of the article itself."  Defs.' Br. p. 11.  Defendants' arguments do not change the fact that the patent, entitled "Pet Bed With Removable Bolster," describes and claims precisely that.

The preamble of claims 1-3 was referenced repeatedly during prosecution but not relied upon to distinguish the prior art because the only prior art that was addressed was Henry, U.S. Patent No. 5,010,843, directed to another pet bed.  The body of claim 1 does not recite a structurally complete invention.  Without the preamble, someone reading the claim could not identify what it is.  Defendants unsuccessfully attempt to distinguish *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989), "on its facts," by arguing that the preamble term at issue there, "optical waveguide," was "explicitly defined in the specification in

fine detail ...." Defs.' Br. p. 12. The same is true here -- the '502 patent is replete with references to a pet bed, leaving the reader no doubt what the invention is. Similarly, in *Rowe v. Dror*, 112 F.3d 473 (Fed. Cir. 1997), a case cited by Defendants, the court held that the preamble phrase "balloon angioplasty catheter" was a claim limitation and the claim did not cover prior art comprising a "balloon catheter of general utility" as concluded by the Board of Patent Appeals. *Id.* at 479-80. To reach its conclusion, the court relied, among other reasons, on the patent specification which included repeated references to "balloon angioplasty catheters," and the court noted disapprovingly that the Board's decision "gave no meaning to the word 'angioplasty'" in the claims. *Id.* at 478. Defendants here attribute "no meaning" to the words "pet bed," which would be contrary to the result in *Rowe*.

Defendants also cite *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289 (Fed. Cir. 2004), for the proposition that a preamble is not a claim limitation if the body of the claim describes a structurally complete invention. In *Intirtool*, the challenged preamble term "connecting" was referenced in the patent specification only once and there was no "clear reliance" on that term in the prosecution history. *Id.* at 1295. In contrast, here, as previously stated, the '502 patent includes dozens of references to "pet bed," and in the prosecution history the applicant flatly stated that "Claims 1-3 are directed towards a pet bed ...." and repeated that term at least 5 more times. FM Validity Ex. 2 at DMC041. There is no doubt that the '502 patent applicant relied upon that term in the patent and prosecution history to define and explain his invention.

Defendants' third case, *STX, LLC. v. Brine, Inc.,* 211 F.3d 588 (Fed. Cir. 2000), is also distinguishable. At issue was whether the patent owner violated the on-sale bar of 35 U.S.C. § 102 by offering the product for sale. The patent owner argued that there could not have been a sale of the invention because it did not know at that time whether the lacrosse stick head had "improved playing and handling" characteristics as recited in the claim preamble. The court rejected such language as not being a structural limitation, thereby resolving the on-sale bar against the patent owner. *Id.* at 589-90. Unlike the laudatory preamble language in *STX*, the

term "pet bed" at issue defines the invention and distinguishes it from other things, including orthopedic pillows and human air mattresses.

To ignore "pet bed" in the claims would be contrary to the Federal Circuit's recent admonition:

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).  Under *Phillips*, whether a claim term in the preamble is a limitation on the claims and, thus, a distinguishing limitation from the prior art, should be determined and confirmed from an understanding of what was invented and intended to envelop with the claim.  In this case, the '502 patent leaves no doubt that "pet bed" is a claim term.

Defendants argue that the examiner of the '502 patent "cited a number of non-pet bed references against the claims."  Defs.' Br. p. 12.  Defendants are mistaken.  Only the aforesaid Henry pet bed patent was cited against the claims.  The other references mentioned by Defendants were made of record by the Examiner, but not relied upon against the claims.  FM Validity Ex. 2 at DMC035.  The Examiner obviously recognized that those non-pet bed references were as immaterial as Defendants' non-pet bed references:  the Steensen '044, Rinz '513, Thönnessen '350, Bishop '228, and Pollard '734 patents.

**B.    Claims 2 and 3 Are Not Obvious.**

Defendants' obviousness argument rests solely on their expert's testimony about what the prior art supposedly discloses.  As described previously, Defendants' expert does not rely on what the prior art actually discloses, but what it is "not limited to."  For that reason alone, Defendants have failed to raise a genuine issue of material fact regarding obviousness.

As noted in Flexi-Mat's earlier brief, even were it obvious to combine the prior art references as Defendants suggest, the combination does not result in the combination of

limitations defined in claims 1-3 of the '502 Patent.  Consequently, Defendants' obviousness argument fails as a matter of law.

Defendants also comment that plaintiff has failed to present objective evidence of non-obviousness.  To the contrary, the Declaration of James Elesh submitted in opposition to Defendants' Motion For Summary Judgment of Invalidity summarizes such evidence.

**C.     Defendants' Argument Under 35 U.S.C. § 112 Is Legally Erroneous**.

Defendants argue that claims 1-3 are invalid as violating  35 U.S.C. § 112 by failing to provide support for an imaginary limitation:  a "means for maintaining" substantially all of the bolster exteriorly of the perimeter of the bottom cushion.  Defendants apparently find it necessary that each claim contain this imaginary limitation because the specification, but not claims 1-3, of the '502 patent teaches that the bolster may be "affixed" to the outer covering, thereby maintaining its position about the perimeter of the bottom cushion.  See Defs.' Br. p. 17.

Claims need not, and ordinarily do not, include every feature described in the specification.  *Electro Medical Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).  Claims are not technical descriptions of the inventions but define and provide the metes and bounds of the patent right.  *In re Vamco Mach. & Tool, Inc.*, 752 F.2d 1564, 1577, n. 5 (Fed. Cir. 1985).  It does not matter that the claim is broader than the embodiment disclosed in the patent.  *Ralston Purina Co. v. Fav-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985). Defendants lose track of these basic principles when they argue that claim 1 of the '502 patent does not include "any limitation of means for maintaining the bolster cushion in its required 'disposed' location with respect to the bottom cushion."  Defs.' Br. p. 17.  The '502 patent need not do so.

Additionally, as previously discussed in Flexi-Mat's briefs on infringement, claim 1 of the '502 patent does not include a means-plus-function limitation.  Further, even had claim 1 included a limitation requiring a "means for maintaining," the specification contains the required structure ("straps" or "pockets") for "maintaining the bolster in a position relative to the bottom

cushion. Flexi-Mat's Memo. p. 14. Thus, there is support in the patent specification for Defendants' imaginary means-plus-function limitation, as required by 35 U.S.C. § 112.

## CONCLUSION

For the foregoing reasons and those expressed in Flexi-Mat's Memo. filed with its motion, summary judgment should be granted finding the '502 patent not invalid.

|  | Respectfully submitted, |
|  |  |
| Dated:  January 30, 2006 |   /s/ Richard B. Myrus                              |
|  | Richard B. Myrus (BBO # 638793) GOODWIN PROCTER LLP Exchange Place Boston, MA 02109 Telephone:  (617) 570-1058 Facsimile:  (617) 523-1231 <br><br> Michael Husmann MICHAEL BEST & FRIEDRICH LLP 100 East Wisconsin Avenue Suite 3300 Milwaukee, WI 53202-4108 <br><br> Larry L. Saret Lisa C. Childs Gretchen M. Hosty MICHAEL BEST & FRIEDRICH LLP Two Prudential Plaza 180 North Stetson Avenue Suite 2000 Chicago, IL 60601 Phone: (312) 222-0800 Fax: (312) 222-0818 <br><br> Attorneys for Plaintiff Flexi-Mat Corporation |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 30, 2006.

/s/ Richard B. Myrus