# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, <br><br> Defendants. <br> _____ <br> AND RELATED COUNTERCLAIMS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 04 10162 DPW |

# DALLAS MANUFACTURING'S REPLY IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
# OF U.S. PATENT NO. 5,765,502

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................1

III.   ARGUMENT .........................................................................................................3

       A.     Flexi-Mat's Claim Construction Arguments Are Wrong. ..........................4

            1.     Claim 1 requires the bottom cushion and bolster to be disposed within the same interior space......................................................4

                 a.     Claim 1 refers to "*<u>the</u> <u>interior</u>* of the outer covering."....................4

                 b.     Claim 1 would be indefinite if it were interpreted to encompass an outer covering with multiple interior spaces. ...........5

                 c.     Flexi-Mat's arguments regarding its prosecution disclaimer are wrong. ......................................................................6

                       (1)    The grounds on which the patent examiner ultimately distinguished Henry are irrelevant......................7

                       (2)    Flexi-Mat never retracted the "separate covers" argument in the prosecution history...................................8

                       (3)    Flexi-Mat did not and could not distinguish <u>Henry</u> by arguing that the top covers are "complete" before being sewn to the bottom cover. .........................................9

            2.     Claim 1 excludes beds with a significant amount of the bolster on top of the bottom cushion. .......................................................12

             3.     Claim 1 recites a means-plus-function limitation that requires fasteners or straps as the corresponding structure......................................15

       B.     Dallas Manufacturing's Accused Beds Do Not Literally Infringe Claim 1 ..........16

            1.     All of the bolsters have separate covers with separate interior spaces. .....................................................................16

            2.     In none of the accused Dallas Manufacturing beds is "substantially all" of the bolster disposed "exteriorly" about the perimeter of the bottom cushion..................................................................18

3.      None of the accused beds have fasteners, straps, or the equivalent...........20

IV.    CONCLUSION...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

<u>ACCO Brands, Inc. v. Micro Security Devices, Inc.</u>,
    346 F.3d 1075 (Fed. Cir. 2003)...............................................................................3

<u>Atlas Powder Co. v. IRECO Inc.</u>,
    190 F.3d 1342 (Fed. Cir. 1999).............................................................................14

<u>Aventis Pharms., Inc. v. Barr Labs., Inc.</u>,
    372 F. Supp. 2d 430 (D. N.J. 2005) ......................................................................11

<u>Ballard Med. Prods. v. Allegiance Healthcare Corp.</u>,
    268 F.3d 1352 (Fed. Cir. 2001)...............................................................................7

<u>Bayer AG  v. Elan Pharm. Research Corp.</u>,
    212 F.3d 1241 (Fed. Cir. 2000).............................................................................11

<u>In re Bell</u>,
    991 F.2d 781 (Fed. Cir. 1993)..................................................................11, 12, 18

<u>Datascope Corp. v. SMEC, Inc.</u>,
    879 F.2d 820 (Fed. Cir. 1989).................................................................................3

<u>Ecolab, Inc. v. Envirochem, Inc.</u>,
    264 F.3d 1358 (Fed. Cir. 2001).............................................................................13

<u>Exxon Research & Eng'g Co. v. United States</u>,
    265 F.3d 1371 (Fed. Cir. 2001)...............................................................................6

<u>Fairfax Dental (Ir.) Ltd. v. Sterling Optical Corp.</u>,
    808 F. Supp. 326 (S.D.N.Y. 1992) ........................................................................11

<u>Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.</u>,
    222 F.3d 951, 957 (Fed. Cir. 2000)........................................................................8

<u>Omega Engineering, Inc. v. Raytek Corp.</u>,
    334 F.3d 1314 (Fed. Cir. 2003)...............................................................................9

<u>Pfizer Inc. v. Ranbaxy Labs. Ltd., No. CIV.A. 03-209-JF</u>,
    2005 WL 3454227 (D. Del. Dec. 16, 2005)..........................................................11

<u>Playtex Prods., Inc. v. Procter & Gamble Co.</u>,
    400 F.3d 901 (Fed. Cir. 2005).............................................................................13

<u>Southwall Techs. Inc. v. Cardinal IG Co.</u>,
    54 F.3d 1570 (Fed. Cir. 1995).................................................................................5

<u>Spectrum Int'l, Inc. v. Sterilite Corp.</u>,
    164 F.3d 1372 (Fed. Cir. 1998)...............................................................................3

Springs Window Fashions LP v. Novo Indus., L.P.,
     323 F.3d 989 (Fed. Cir. 2003)......................................................................6, 7, 8, 9

In re Thorpe,
     777 F.2d 695 (Fed. Cir. 1985).......................................................................11, 12, 18

Unique Concepts, Inc. v. Brown,
     939 F.2d 1558 (Fed. Cir. 1991)......................................................................5

Vanguard Prods. Corp. v. Parker Hannifin Corp.,
     234 F.3d 1370 (Fed. Cir. 2000)......................................................................11

Verve, LLC v. Crane Cams, Inc.,
     311 F.3d 1116 (Fed. Cir. 2002)......................................................................13

**Statutes**

35 U.S.C. § 112, ¶ 6 ......................................................................2, 4, 15, 16, 18

## I.  INTRODUCTION

Regardless of how Defendant Dallas Manufacturing first envisioned its bolster pet beds, the beds were ultimately designed not to infringe U.S. Patent No. 5,765,502 ("the '502 patent").  It is indisputable that in the final form of Dallas Manufacturing's pet beds, the bolster (1) has a separate cover; (2) is on top of the bottom cushion; and (3) is not held in place by straps, fasteners, or equivalent structures.  Plaintiff Flexi-Mat's case should be put to bed by granting Dallas Manufacturing's summary judgment motion.

In addition to this and its opening brief, Dallas Manufacturing relies in support of its summary judgment motion on DEFENDANTS' MEMORANDUM IN OPPOSITION TO FLEXI-MAT'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT and supporting papers.

## II.  BACKGROUND

As discussed in the background section of Dallas Manufacturing's opening brief, Dallas Manufacturing designed its beds to overcome deficiencies in Flexi-Mat's design.  In response, Flexi-Mat makes allegations about a preliminary design of a bolster bed for Costco that was never sold.  Flexi-Mat itself concedes that "Costco lost interest" in this early design attempt. (*See* FLEXI-MAT'S MEMORANDUM IN OPPOSITION TO DALLAS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, "Flexi-Mat's Opp.," at 2; *see also* Deposition of Richard Mathews taken on June 28, 2005, "Mathews Depo.," Exh. A to the SUPPLEMENTAL DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Supp. Clark Decl.," at 38:6-16; DECLARATION OF RICHARD MATHEWS IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Mathews Decl.," ¶ 5 & Exh. A.)  The preliminary Costco design shows that Costco rejected a design like Flexi-Mat's

and wanted something different, not that Dallas Manufacturing copied Flexi-Mat's patent.

Flexi-Mat also makes allegations about Dallas Manufacturing's first submission in response to BJ's Wholesale Club's request for a bolster bed.  (Flexi-Mat's Opp. at 2-3.)  As discussed in Dallas Manufacturing's opening brief, the bolster in Dallas Manufacturing's first submission was placed alongside the bottom cushion.  (*See* Deposition of James M. Pereira taken on April 14, 2005, "Pereira Depo.," Exh. G to the DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Clark Decl.," at 132:24-133:1.)  This design differs from Dallas Manufacturing's final design, which has the bolster positioned on top of the bottom cushion.  (Pereira Depo., Exh. G to Clark. Decl., at 151:24-153:8; Mathews Decl., ¶¶ 7-8.)

Like the first Costco effort, the preliminary design attempt for BJ's Wholesale Club was never sold.  BJ's Wholesale Club rejected the design expressly because the bolster was on the floor and did not stand up on top of the bottom cushion.  The BJ's Wholesale Club buyer, Jim Pereira, explicitly asked Dallas Manufacturing to "fix[] the bolster so it doesn't lay flat on the ground . . . ."  (Pereira Depo., Exh. G to Clark Decl., at 135:3-5; *see also* Mathews Decl., ¶ 6.)  Dallas Manufacturing did just that.  Flexi-Mat itself concedes that there were "additional proposals and modifications to the bolster bed by Dallas."  (Flexi-Mat's Opp. at 3.)

Flexi-Mat stresses that, according to Dallas Manufacturing's sales representative, BJ's buyer felt "the bolster [of the first design], as it sits now, does not sit up very well against *the visuals from Orvis*."  (Flexi-Mat's Opp. at 3, emphasis added.)[1]  The relevance of a photograph of the Orvis bed, or of any of Flexi-Mat's other commercial products for that matter, is unclear.  For one thing, the Orvis photograph is misleading.  Through some form of trickery,

---

[1] All emphasis has been added unless otherwise indicated.

the Orvis bolster was made to appear to stand up somewhat, when in fact the bolster lays on the ground as shown in the '502 patent drawings.  (*See* Mathews Depo., Exh. A to Supp. Clark Decl., at 109:18-111:12.)  The Orvis photograph does <u>not</u> conform to any drawing in the '502 patent.

For this and other reasons, "[t]he language of the claim, not the patent owner's commercial product, is the measure of infringement."  *ACCO Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1081-82 (Fed. Cir. 2003); *see also Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1381 (Fed. Cir. 1998) ("To be sure, a court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment of his claimed invention."); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 824 (Fed. Cir. 1989) ("[I]t is claims, not commercial embodiments, that are infringed.").

Moreover, contrary to Flexi-Mat's assertion (Flexi-Mat's Opp. at 3), a comparison of the Dallas Manufacturing pet bed with Flexi-Mat's Orvis pet bed does not evidence copying, even assuming it was an issue on this motion.  Again, it is undisputable that the Dallas Manufacturing bed was designed to be different – to have its bolster in a separate cover and sit on top of the base cushion – to avoid the deficiencies of Flexi-Mat's Orvis bed.

### III.  <u>ARGUMENT</u>

As discussed in Dallas Manufacturing's opening brief and in Defendants' opposition to Flexi-Mat's summary judgment motion on infringement, the accused Dallas Manufacturing beds resemble the prior art Henry patent, U.S. Patent No. 5,010,843, over which Flexi-Mat had to distinguish to obtain the '502 patent.  Like Henry, all of the accused Dallas Manufacturing beds have separate covers with separate interior spaces for the bottom cushion and the bolster.  Also, like Henry, all of the accused Dallas Manufacturing beds have the bolster placed on top of the bottom cushion, not beside it.  Moreover, all of the accused Dallas

Manufacturing beds lack fasteners, straps, or equivalent structure as required by the '502 patent for keeping the bolster in place. Each of these differences avoids literal infringement of the asserted claims. Flexi-Mat does not argue for infringement under the doctrine of equivalents, although it does assert "literal" equivalents to the fasteners or straps under 35 U.S.C. § 112, ¶ 6.

## A.   Flexi-Mat's Claim Construction Arguments Are Wrong.

### 1.   Claim 1 requires the bottom cushion and bolster to be disposed within the same interior space.

In asserting that claim 1 of the '502 patent encompasses beds with multiple interior spaces, Flexi-Mat continues to get the law wrong, the facts wrong, and Dallas Manufacturing's arguments wrong. Apparently, you can't teach an old dog new tricks.

#### a.   Claim 1 refers to "*the interior* of the outer covering."

According to Flexi-Mat, "Dallas argues that the use of definite article 'the' before 'outer covering' indicates that the required outer covering must have only one interior space." (Flexi-Mat's Opp. at 5.) This statement mischaracterizes Dallas Manufacturing's argument, which concerns the word "the" before the word "interior." As Dallas Manufacturing's opening brief shows, claim 1 limits itself to one interior space or compartment by referring to "*the interior* of the outer covering." ('502 patent, Exh. A to Clark Decl., col. 3, lines 42-43.) The definite article "the," along with the use of "interior" in the singular, denotes that the claimed pet bed has only one interior space or compartment in its outer covering. Claim 1 never recites "an interior," which would indicate that there could be more than one interior.

Having misstated Dallas Manufacturing's argument, Flexi-Mat then links the word "the" with the word "an," and asserts that both are definite articles. (Flexi-Mat's Opp. at 5.) This assertion is false. "An" is an indefinite article. Flexi-Mat then alleges that "the claimed invention is limited to those beds that have **at least one** outer covering in which the bolster and the bottom

cushion are disposed." (Flexi-Mat's Opp. at 5, original emphasis.) This allegation contradicts Flexi-Mat's statements in the prosecution history, wherein Flexi-Mat argued that, in its invention, "a single cover encompasses both cushions." (Clark Decl., Exh. B. at DMC 000042.) Flexi-Mat may not argue one construction to the patent examiner and another to the Court: "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (citing *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991)).

Because Flexi-Mat mischaracterizes Dallas Manufacturing's argument, Flexi-Mat's coat analogy is extraneous. (Flexi-Mat's Opp. at 5.) Dallas Manufacturing focused upon the word "the" before "interior," not before "outer covering." If anything, Flexi-Mat's reference to "the space which surrounds the torso" helps Dallas Manufacturing because it denotes that there is only one space surrounding the torso, which is Dallas Manufacturing's point regarding claim 1's reference to "the interior of the outer covering." The coat analogy also helps Dallas Manufacturing by making clear that a covering need not completely enclose an object to be a "covering."

### b.    Claim 1 would be indefinite if it were interpreted to encompass an outer covering with multiple interior spaces.

Regarding Dallas Manufacturing's indefiniteness argument, Flexi-Mat responds that "[n]othing in the claim even references, let alone differentiates, the interior space or spaces into which the bolster and/or bottom cushion are disposed." (Flexi-Mat's Opp. at 6.) But that is exactly Dallas Manufacturing's point. Claim 1 states that the bolster must be "disposed within the interior of the outer covering," without referencing a separate interior space for the bottom cushion. The necessary conclusion is that the outer cover has only one interior space. Otherwise, the claim is indefinite, since it would then be unclear in which "interior" the bolster is

disposed.  If a broad construction would make a claim indefinite, then a narrower construction should be adopted.  *See generally Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

Flexi-Mat also asserts that "the outer covering shown in the preferred embodiment of the '502 patent is a cover having multiple interior spaces."  (Flexi-Mat's Opp. at 5.)  Again, this assertion is false.  The preferred embodiment does have two pockets, but these pockets are not separate interior spaces walled off from one another.  There is one interior space divided into two pockets that communicate with each other.  ('502 patent, Exh. A to Clark Decl., col. 2, lines 12-14 ("The bottom cushion rests within a bottom pocket *which communicates with* the bolster pocket.").)  By conflating "pocket" with "interior space," it is Flexi-Mat that reads claim 1 so that the claim is indefinite and fails to cover the preferred embodiment, not Dallas Manufacturing.  Construing "the interior" as a single interior space, claim 1 covers the preferred embodiment because the interior space may have two pockets, as long as the pockets are not walled off from one another, and thus do not create two interior spaces.

      c.      **Flexi-Mat's arguments regarding its prosecution disclaimer are wrong.**

As detailed in Defendants' summary judgment motions and oppositions, Flexi-Mat distinguished Henry during the application process for the '502 patent.  Specifically, Flexi-Mat argued that Henry disclosed separate covers for the top and base cushions, whereas in Flexi-Mat's claimed bed "a single cover encompasses both cushions."  (Clark Decl., Exh. B at DMC 000042.)  A reasonable competitor would conclude that the only way in which Flexi-Mat's "single cover" argument distinguishes Henry is in that the '502 patent has just one interior space or compartment for both the bottom cushion and the bolster, while Henry has several.  *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (looking

at what "a reasonable competitor, reviewing the amendments and statements made by the applicant to distinguish the claimed invention . . ., would conclude"); *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1361 (Fed. Cir. 2001) ("[T]he scope of the disclaimer must be determined by what a competitor would reasonably believe that the applicant had surrendered.") (quotation omitted).

To excuse its prosecution disclaimer, Flexi-Mat tenders several counter-arguments that, again, get the facts and the law wrong as discussed below.

### (1) The grounds on which the patent examiner ultimately distinguished Henry are irrelevant.

Flexi-Mat asserts that there was no disclaimer because "the Patent and Trademark Office did not accept Flexi-Mat's arguments with respect to Henry," and thus the patent examiner proposed additional claim language. (Flexi-Mat's Opp. at 6.) As a factual matter, just because the patent examiner proposed the additional claim language does not necessarily mean that she rejected Flexi-Mat's "separate cover" argument. Flexi-Mat's patent prosecutor, Larry L. Saret, testified that he did not recall whether it was his understanding that, without agreeing to at least some additional language, the examiner would not have allowed the patent. (Deposition of Larry L. Saret taken on Sept. 13, 2005, "9/13/05 Saret Depo.," Exh. E to Clark Decl., at 43:8-12.) Flexi-Mat is stuck with this testimony.

In any event, it is irrelevant whether the examiner was dissatisfied with Flexi-Mat's argument about Henry's separate covers. In *Springs Window Fashions LP v. Novo Industries, L.P.*, 323 F.3d 989 (Fed. Cir. 2003), the examiner expressed doubt during prosecution that the patentee's claim amendments and argument sufficed to distinguish another patent to Pluber. *Id*. at 994. The patent eventually issued, and the patentee, during later litigation, asserted this was because the patent examiner ultimately found the Pluber patent not to be prior

art because it postdated the application for the patentee's patent.  *Id*.  The patentee, akin to Flexi-Mat, contended that "the examiner did not agree that the amended claims distinguished over Pluber and that the claims therefore should not be limited based on the applicant's argument that they did."  *Id*.  The Federal Circuit disagreed, stating that "the examiner's remarks do not negate the effect of the applicant's disclaimer":

> The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. . . . "The prosecution history constitutes a public record of the patentee's representations concerning the scope and the meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct. . . . Were we to accept [the patentee's] position, we would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies."

*Id*. at 995 (quoting *Hockerson-Halberstadt*, 222 F.3d at 957).  This case dooms Flexi-Mat's first counter-argument.

### (2)    Flexi-Mat never retracted the "separate covers" argument in the prosecution history.

Having messed up the law on prosecution disclaimers, Flexi-Mat then contends that it acquiesced in the patent examiner's additions to claim 1 and that "[s]uch acquiescence, at most, creates an ambiguity as to whether Flexi-Mat continued to take the position that Henry's covering was not within the scope of the claim term 'outer covering.'"  (Flexi-Mat's Opp. at 6.) Again, Flexi-Mat is wrong.  There is no ambiguity that Flexi-Mat argued in its response to the patent examiner's Office Action that Henry had separate covers in order to distinguish claim 1 from Henry.  There is no ambiguity that Flexi-Mat never retracted the "separate covers" argument in the prosecution history.  And there is no ambiguity that Flexi-Mat never stated in the prosecution history that it agreed with the patent examiner's comments in the Office Action about the argument.  (*See also* 9/13/05 Saret Depo., Exh. E to Clark Decl., at 45:4-6 (showing

that Mr. Saret did not remember at his deposition whether or not he agreed with the reasons why the examiner wanted the additional language).)

Moreover, as a matter of law, Flexi-Mat may not create an ambiguity as to whether it maintained the "separate covers" argument by staying silent on the record. If Flexi-Mat no longer wished to assert the "separate covers" argument, it had an affirmative duty to retract that argument. As *Springs Window* states:

> If the applicant mistakenly disclaimed coverage of the claimed invention, then the applicant should have amended the file to reflect the error, as the applicant is the party in the best position to do so. The applicant, however, never retracted any of his statements distinguishing Pluber nor did he acquiesce in the examiner's comments regarding the overlapping scope of Pluber. Springs therefore must be held to the restrictive claim construction that was argued during prosecution.

323 F.3d at 995. Here, Flexi-Mat never retracted the "separate cover" argument and never stated in the prosecution history that it agreed with the patent examiner's comments about the argument.

Flexi-Mat tries to prop up its "ambiguity" argument by citing *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003). (Flexi-Mat's Opp. at 6.) But *Omega Engineering* concerns a circumstance in which the "prosecution statements [are] too vague or ambiguous to qualify as a disavowal of claim scope" in the first place. *Id*. at 1325. Here, in contrast, Flexi-Mat asserts an ambiguity as to whether Flexi-Mat "abandoned its initial argument in regard to Henry." (Flexi-Mat's Opp. at 7.) *Springs Window* governs this situation and makes clear that Flexi-Mat's assertion of ambiguity must fail. Flexi-Mat clearly and unmistakably renounced separate covers in the prosecution history, and never retracted this disavowal.

> **(3)    Flexi-Mat did not and could not distinguish <u>Henry</u> by arguing that the top covers are "complete" before being sewn to the bottom cover.**

Finally, Flexi-Mat contends that "at most, all that Flexi-Mat has given up is a

claim covering a pet bed in which separate covers are made, one for the bolster and one for the bottom cushion, and then these separate covers are attached to each other." (Flexi-Mat's Opp. at 7.) Flexi-Mat asserts that "[t]his is how Flexi-Mat distinguished its bed from Henry." (Flexi-Mat's Opp. at 7.) These statements rewrite the prosecution history.

Flexi-Mat never argued during prosecution that Henry required each cover to be "complete" before the two covers were sewn together. (Clark Decl., Exh. B at DMC 000041-000042.) Rather, Flexi-Mat argued that Henry "requires covers for the semi-circular cushions 14, 16 which are <u>separate</u> from the cover for the base cushion," whereas, in the '502 patent, "a single cover <u>*encompasses*</u> both cushions." (*Id*. at DMC 000042.) Flexi-Mat added that "<u>Henry</u> does not suggest a single cover for all of the cushions, and it would be difficult to design such a cover and assemble such a bed using the interconnected cushions of Henry." (*Id*.) In other words, Flexi-Mat distinguished Henry, not because the top covers are "complete" before they are sewn to the bottom cover, but merely because they are separate pieces of fabric that separately cover the top cushions. (Deposition of Larry L. Saret taken on Sept. 21, 2005, "9/21/05 Saret Depo.," Exh. A to the DECLARATION OF GARY A. CLARK IN OPPOSITION TO FLEXI-MAT'S MOTIONS FOR SUMMARY JUDGMENT, "Clark Opp. Decl.," at 63:18-64:10 ("I believe my argument was that they were separate from the cover for the base cushion.").)

Flexi-Mat did argue to the patent examiner that Henry's separate covers "add manufacturing cost," have "a concern for exposed connections," and "would be difficult to design." (Clark Decl., Exh. B at DMC 000042.) But Flexi-Mat linked these problems to the use of separate covers, not with the use of covers that are first formed separate and complete and then sewn together. (*Id*.) Moreover, these problems would arise regardless of whether the covers are first formed complete.

Flexi-Mat's rewriting of the prosecution history also makes no sense as a matter of law. The '502 patent claims a product, _not a manufacturing process_. Thus, Flexi-Mat has never had any basis for arguing that the claims distinguish over Henry on the basis of the method or sequence of steps by which the outer coverings are formed. The Federal Circuit is clear that "'[t]he patentability of a product does not depend on its method of production.'" *In re Bell*, 991 F.2d 781, 785 (Fed. Cir. 1993) (quoting *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985)); *see also id.* ("Bell claims compositions, and the issue is the obviousness of the claimed compositions, not of the method by which they are made."); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. CIV.A. 03-209-JF, 2005 WL 3454227, *14 (D. Del. Dec. 16, 2005) ("[T]he compound recited in claim 6 does not depend for patentability on the method by which it is made."); *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 372 F. Supp. 2d 430, 436 (D. N.J. 2005) ("'A novel product that meets the criteria of patentability is not limited to the process by which it was made.'") (quoting *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000)); *Fairfax Dental (Ir.) Ltd. v. Sterling Optical Corp.*, 808 F. Supp. 326, 338 (S.D.N.Y. 1992) ("[A] patentee who does not distinguish his product from the prior art, except in the manner by which he produced it, will not secure exclusive patent rights.").

In a last gasp effort to save its contorted reading of the prosecution history, Flexi-Mat cites the deposition testimony of Defendants' sewing and patternmaking expert, Suzanne D. Fessler. (Flexi-Mat's Opp. at 8.) Ms. Fessler is not a lawyer and, while she is qualified to opine on technical issues, she is not competent to opine on whether Flexi-Mat's patent lawyer limited his prosecution disclaimer to covers that are complete and separate before being sewn together. Moreover, "testimony as to what a reasonable competitor would conclude from the prosecution history cannot create a genuine issue of material fact so as to bar summary judgment." *Bayer AG*

*v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1254 (Fed. Cir. 2000) (holding that such

testimony did not create genuine issue of fact since issue of whether particular subject matter

was relinquished during prosecution is determined as matter of law).

Ms. Fessler never agreed that Flexi-Mat disclaimed only separate covers that are

complete before being sewn together.  She simply recognized that the manufacturing process for

Henry likely involved surrounding each cushion independently with a piece of fabric and then

sewing them together.  (Deposition of Suzanne D. Fessler taken on Nov. 3, 2005, "Fessler

Depo.," Exh. 6 to Flexi-Mat's Memorandum in Support of Its Motion for Summary Judgment of

Infringement, "Flexi-Mat's Infringement Memo.," at 200:25-203:22.)  Regardless, any such

testimony would be trumped by the Federal Circuit cases establishing that "[t]he patentability of

a product does not depend on its method of production."  *In re Bell*, 991 F.2d at 785; *In re*

*Thorpe*, 777 F.2d at 697.

2.    **Claim 1 excludes beds with a significant amount of the bolster on top of the bottom cushion.**

Claim 1 requires that "substantially all of said bolster [be] disposed exteriorly

about at least a portion of the perimeter of the bottom portion." ('502 patent, Exh. 1 to Flexi-

Mat's Infringement Memo., col. 3, lines 43-45.)  In its opposition, Flexi-Mat appears to concede

that this means substantially all of the bolster is disposed around or outside the perimeter of the

bottom cushion, not on top of it.  (Flexi-Mat's Opp. at 10-11.)  Despite this apparent concession,

Flexi-Mat also seems to maintain that a significant amount of the bolster may be disposed on top

of the bottom cushion.  (Flexi-Mat's Opp. at 11.)  This latter stance conflicts with the claim

language, patent specification, and prosecution history of the '502 patent, as well as common

sense.  If the plain, ordinary meaning of a claim term requires a certain conclusion, then drawing

that conclusion does not constitute adding a limitation not found in the claim.

As discussed in Dallas Manufacturing's summary judgment motion and opposition, a significant amount of the bolster cannot extend over the top of the bottom cushion because then "substantially all" of the bolster would not be exterior to the cushion's perimeter. (*See also* Deposition of Simon F. Handelsman taken on Nov. 1, 2005, "Handelsman Depo.," Exh. H to Clark Decl., at 85:24-87:7; *see also* Deposition Exhibit 727, Exh. K to Clark Decl.; Exh. M to Clark Decl. *See generally Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005) ("[W]ords of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a *strict numerical boundary* to the specified parameter.") (quotations omitted); *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the *minor variations* that may be appropriate to secure the invention."); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001) ("[O]rdinarily . . . 'substantially' means 'considerable in . . . extent,' or 'largely but not wholly that which is specified.'") (citations and quotations omitted).)

Additionally, as noted in Dallas Manufacturing's prior briefs, Flexi-Mat amended claim 1 by adding the words "substantially all of said bolster" and "exteriorly" to ensure that the claim distinguished over Henry.  Henry explicitly states that "the top cushions can extend *beyond the edges* of the base cushion 12."  (Henry patent, Exh. C to Clark Decl., col. 3, lines 18-19.) Henry also expressly states that the cushions may be "filled with any suitable cushion material, for example, layers of plastic foam or resilient foam particles, semi-rigid or rigid beading, cloth filler, and the like."  (*Id.*, col. 2, lines 44-47.)  Flexi-Mat does not dispute that a bed filled with foam, beads, or cloth can be deformed or fluffed so that its shape changes.  (*See also* EXPERT REPORT OF SUZANNE FESSLER RE: INFRINGEMENT ISSUES FOR U.S. PATENT NO. 5,765,502,

"Fessler Rpt.," at 10, attached as Exhibit B to the DECLARATION OF SUZANNE FESSLER IN

SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT, "Fessler Decl.")

Flexi-Mat dismisses the above statements in Henry by alleging that the

prosecution history contains no "clear and unmistakable" disavowal of claim coverage.  (Flexi-

Mat's Opp. at 11.)  Flexi-Mat is off base.  It was Flexi-Mat's patent attorney, Larry Saret, who

authorized the amendment adding the "substantially all" limitation.  (Clark Decl., Exh. B at

DMC 000046.)  Mr. Saret authorized the amendment "to insure that claim 1 read over the prior

art patent to Henry."  (Clark Decl., Exh. B at DMC 000044.)  During his deposition, Mr. Saret

confirmed that the amendment was made for reasons of patentability concerning the Henry

patent.  (9/13/05 Saret Depo., Exh. E to Clark Decl., at 42:5-11; 43:13-44:2; 44:13-45:3.)  Not

only does Henry expressly state that "the top cushions can extend beyond the edges of the base

cushion 12," (Henry patent, Exh. C to Clark Decl., col. 3, lines 18-19), but it is inherent in the

patent that a soft bed could be deformed, fluffed, or plumped up so that its shape changes.  *See*

*generally Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999) ("Under the

principles of inherency, if the prior art necessarily functions in accordance with, or includes, the

claimed limitations, it anticipates.").  Having amended claim 1 to ensure that it avoided Henry,

Flexi-Mat may not now assert that claim 1 includes a bolster positioned as expressly or

inherently disclosed in Henry.

Finally, Flexi-Mat asserts that claim 1 "allows the bolster to sit up in a horizontal

plane exteriorly of the perimeter of the bottom cushion without being alongside that cushion,

*e.g.*, in a horizontal plane elevated above the horizontal plane of the bottom cushion."  (Flexi-

Mat's Opp. at 12.)  This assertion is wrong.  First, the claim states that substantially all of the

bolster must be disposed "exteriorly about" the perimeter.  The bolster cannot be "exteriorly

about" the perimeter if it is above the perimeter.  Second, nothing in the patent specification or drawings suggests that the bolster can be anywhere but alongside the bottom cushion.  Third, it is hard to see how the bolster could be disposed as Flexi-Mat suggests.  Because the bed is made of soft materials, something has to hold the bolster up.  If the bolster is not resting on the floor, then it has to be resting on top of the bottom cushion.  Flexi-Mat's expert, Mr. Handelsman, contradicts the patent when he asserts that having "the bolster lie on the floor" would "defeat the bolstering feature and change the bolster into another, adjacent bottom cushion."  (DECLARATION OF SIMON HANDELSMAN IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, "Handelsman Decl.," ¶ 8.)  In fact, the patent specification and drawings indicate that the bolster lies on the floor.

For these reasons, Flexi-Mat's interpretation should be rejected.

### 3.    Claim 1 recites a means-plus-function limitation that requires fasteners or straps as the corresponding structure.

Flexi-Mat's opposition on the means-plus-function issue largely parrots its summary judgment motion on infringement.  Flexi-Mat's only new argument concerns "pockets" as equivalent structures.  For its reply, therefore, Dallas Manufacturing relies on Defendants' opposition to Flexi-Mat's motion for all but this equivalents issue.

Relying on its expert, Mr. Handelsman, Flexi-Mat contends that, even if pockets are not corresponding structures under 35 U.S.C. § 112, ¶ 6, they are structural equivalents under that section to the straps and fasteners disclosed in the '502 patent.  (Flexi-Mat's Opp. at 15.)  To support this argument, Mr. Handelsman asserts that one of ordinary skill in the art would have recognized that another way to dispose the bolster would have been to "separate the bolster pocket from the bottom pocket by stitching the bolster pocket closed and providing for an access to the bolster pocket separate from the access to the bottom pocket."  (*Id.*)  These so-called "pockets" are

what Flexi-Mat alleges are structural equivalents to the '502 patent's straps and fasteners.

What Mr. Handelsman alleges are structural equivalents, however, runs afoul of the arguments that Flexi-Mat made during prosecution to distinguish over Henry.  As discussed above, Flexi-Mat distinguished Henry by limiting the '502 patent to a bed with a single covering enclosing both the bottom cushion and bolster.  Separating the bolster pocket from the bottom pocket by stitching the bolster pocket closed would create two separate and distinct interior spaces, one for the bolster and one for the bottom cushion.  These two interior spaces would be defined by two separate coverings—one that encloses the bolster and one that encloses the base cushion.  This is the very structure that Flexi-Mat surrendered during prosecution.

As a matter of law, Flexi-Mat cannot make a structural equivalents argument under 35 U.S.C. § 112, ¶ 6 that runs afoul of the arguments it made to distinguish over Henry.  Therefore, so-called "pockets" that have been stitched closed cannot be structural equivalents to straps and fasteners.

**B.**     **Dallas Manufacturing's Accused Beds Do Not Literally Infringe Claim 1**

       **1.**     **All of the bolsters have separate covers with separate interior spaces.**

As discussed in Dallas Manufacturing's summary judgment motion and opposition, all of the accused Dallas Manufacturing beds have their bolsters disposed in a cover that is separate from the cover for the bottom cushion.  The bolster cover creates a separate interior space for the bolster that is partitioned off from the interior space for the bottom cushion.  (Fessler Rpt., Exh. B to Fessler Decl., at 13-20 & photographs attached at end; Deposition of Scott Haugh taken on September 14, 2005, "9/14/05 Haugh Depo.," Exh. F to Clark Decl., at 49:1-5.)

Yet, Flexi-Mat asserts that "Dallas does not complete two separate covers, one for the bolster and one for the bottom cushion, and then sew them together as taught by Henry." (Flexi-Mat's Opp. at 8.)  This assertion is not only irrelevant, it is misleading.  In all of the

accused Dallas Manufacturing beds, the bolster is disposed in a separate cover that is stitched to the top of the cover for the bottom cushion. This is shown by the photographs attached at the end of the Fessler Rpt. The photographs show the black line on the top panel of the cover for the bottom cushion where the bolster cover is stitched in place. The photographs also explicitly show the separate bolster cover before it is stitched to the cover for the bottom cushion. (Fessler Rpt., Exh. B to Fessler Decl., at 15; *see also* Deposition of Neil Nivert, Dallas Manufacturing's plant manager, taken on June 29, 2005, "Nivert Depo.," Exh. B to Clark Opp. Decl., at 133:10-14 ("[A]s separate pieces, the cushion . . . is made, the empty cushion, with no fiber in it. The bolster is attached to the top of the cushion.").) The photographs leave no doubt that the accused Dallas Manufacturing beds have separate covers for the bolster and bottom cushion, just like Henry. Whether the bolster cover is first completely formed is irrelevant as a matter of law, for the reasons discussed above.

Thus, in all of the accused Dallas Manufacturing beds, the bolster and bottom cushion are disposed in separate interior spaces or compartments. (Mathews Decl., ¶¶ 9-15 and Exhs. B-F.) In each of the accused Dallas Manufacturing beds, the bolster cover has its own zippered opening separate from the zippered opening in the covering for the bottom cushion. (*Id.*)

In a final salvo, Flexi-Mat presents new opinions by its expert, Mr. Handelsman, that were not included in his expert reports or otherwise disclosed before the parties filed their summary judgment oppositions. Mr. Handelsman's declaration should be stricken for the reasons discussed in DEFENDANTS' OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN AND MOTION TO STRIKE, filed concurrently.

Among other things, Mr. Handelsman declares that "[i]f either of the stitch lines attaching Dallas' incomplete bolster pocket were unsewn, the bolster would fall out because the

'covers' do not in fact entirely surround or cover the individual components of the bed."
(Handelsman Decl., ¶ 6.)  Even if true, this would be irrelevant.  Once sewn together, the covers
of Henry form one article with separate interior spaces, just like the accused Dallas
Manufacturing beds.  Whether or not the covers start off "complete" is immaterial; all that
matters for an apparatus claim is the end product.  *See In re Bell*, 991 F.2d at 785; *In re Thorpe*,
777 F.2d at 697.

> **2.**    **In none of the accused Dallas Manufacturing beds is "substantially all" of the bolster disposed "exteriorly" about the perimeter of the bottom cushion.**

As discussed in Dallas Manufacturing's summary judgment motion and
opposition, each of the accused Dallas Manufacturing beds has its bolster disposed on or over the
top of the bottom cushion, not "exteriorly about at least a portion of the perimeter" of the bottom
cushion.  (*See* photographs attached at the end of the Fessler Rpt., Exh. B to Fessler Decl.;
Mathews Decl., Exhs. B-F; Handelsman Depo., Exh. H to Clark Decl., at 113:24-114:19;
Deposition Exhibit 728, Exh. L to Clark Decl.)  It is never true that all or substantially all of the
bolster "flops" or extends over the side of the bottom cushion.  (Fessler Rpt., Exh. B to Fessler
Decl., at 14-19; Mathews Decl., ¶¶ 10, 18.)

In support of its position, Flexi-Mat has submitted a grainy photograph of what it
says is a Dallas Manufacturing bed purchased by Flexi-Mat in 2003.  (Flexi-Mat's Opp. at 12;
Declaration of James Elesh in Opposition to Defendants' Motions for Summary Judgment,
"Elesh Decl.," ¶ 8 & Exh. 2.)  The photograph apparently shows Flexi-Mat's best stab at
manipulating the bed to get the bolster to lean over as much as possible.  But even this grainy
photograph shows that most of the bolster remains on top of the bottom cushion.  Something is
keeping the bolster from flopping completely over onto the table, and that something is the
bottom cushion.  To make this even clearer, Dallas Manufacturing plans to bring physical

samples of the accused beds to the summary judgment hearing that has been scheduled.

Flexi-Mat also asserts that "Dallas' pet beds are constructed so that if a pet were to lean on or against the bolster, even more of the bolster would be exterior to the perimeter of the bottom portion." (Flexi-Mat's Opp. at 13.) But, as discussed above, Flexi-Mat offers no evidence that "substantially all" of the bolster is ever disposed exteriorly about the perimeter. Moreover, Dallas Manufacturing's expert, Ms. Fessler, clearly opined that, "[a]lthough a person or pet could push the bolster so that part of it leans over the side of the bottom cushion, at no time does substantially all of the bolster lean over the side of the bottom cushion." (Fessler Rpt., Exh. 4 to Flexi-Mat's Infringement Memo., at 14-15.) Mr. Handelsman offers no comparable opinion in his skeletal expert report, and a simple inspection of the beds confirms why. This is not a case of "occasional" infringement, since the Dallas Manufacturing beds _never_ infringe.

Finally, Flexi-Mat's expert asserts "that during use of the pet bed, with a dog leaning against Dallas' bolster, even more of the bolster will flop over to the exterior of the bottom cushion, and that over time, the bolster of Dallas' pet bed will permanently and progressively more farther to the exterior of the perimeter of the bottom cushion, due to pet usage and the natural sagging or stretching of the cover." (Handelsman Decl., ¶ 8.) This allegation is riddled with problems. First, there's no evidence that Mr. Handelsman ever inspected a used pet bed. In fact, Mr. Handelsman testified that he had not made a study of how pets use pet beds and that it formed no part of his opinion. (Supp. Clark Decl., Exh. B, Handelsman Depo. at 29:7-9 & 115:12-20.) Second, Flexi-Mat presents no evidence of how long it allegedly takes the cover to sag and stretch enough so that substantially all of the bolster is exterior. For all we know, even if this is an issue, none of the beds have had enough time to sag and stretch, and there's no present case or controversy. Finally, the rate of sagging and

stretching would presumably depend upon the type of dog and the frequency with which the bed is used, factors for which Flexi-Mat has presented no evidence.

**3.      None of the accused beds have fasteners, straps, or the equivalent.**

In each of the accused beds, the bolster is held in place by its separate cover. (Mathews Decl., ¶¶ 9-19; Fessler Rpt. at 14-20, attached as Exh. 4 to Flexi-Mat's Infringement Memo.)  None of the accused beds has fasteners, straps, or equivalent structure for holding the bolster in place.  (*Id.*)  For this additional reason, none of the accused beds literally infringe.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Dallas Manufacturing's motion for summary judgment of non-infringement.

Attorneys for Defendant & Counterclaimant
DALLAS MANUFACTURING COMPANY, INC.

/s/ Darren M. Franklin
Gary A. Clark (*pro hac vice*)
Darren M. Franklin (*pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 48th Floor
Los Angeles, California  90071-1448
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398
E-mail:  gclark@sheppardmullin.com
         dfranklin@sheppardmullin.com

Dated:   January 30, 2006

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street, Boston, Massachusetts  02109-1775
Telephone:  (617) 535-4000;  Facsimile:  (617) 535-3800
E-mail:  jmarcellino@mwe.com; dmello@mwe.com