**EXHIBIT B**

Page 1

1          IN THE UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2

3

4   FLEXI-MAT CORPORATION, an       )
    Illinois corporation,           )
5              Plaintiff,           )
                                    )  Civil Action
6        -vs-                       )  No. 04 10162 DPW
                                    )
7   DALLAS MANUFACTURING COMPANY,   )
    INC., a Texas corporation,      )
8   BJ'S WHOLSESALE CLUB, INC.,     )
    a Delaware corporation, and     )
9   DOSKOCIL MANUFACTURING          )
    COMPANY, INC., a Texas          )
10  corporation,                    )
               Defendants.          )
11

12

13

14         Videotaped deposition of SIMON F. HANDELSMAN

15  taken before NADINE J. WATTS, CSR, RPR, and Notary

16  Public, pursuant to the Federal Rules of Civil Procedure

17  for the United States District Courts pertaining to the

18  taking of depositions, at Suite 4500, 227 West Monroe

19  Street, in the City of Chicago, Cook County, Illinois,

20  commencing at 10:00 o'clock a.m. on the 1st day of

21  November, A.D., 2005.

22

23

24

Page 29

1  three weeks that was provided by the franchiser, my
2  employer, for the benefit of franchisees who knew
3  nothing about the business.  I took that full time.  And
4  I had the opportunity to learn about the business and
5  explore things that perhaps the average executive would
6  never have a chance.
7      Q    Have you ever made a study of how pets use pet
8  beds?
9      A    Not specifically.  Not a study.
10     Q    Looking back at your infringement report, which
11 is Exhibit 720, and I want to direct your attention
12 again to Section 1, the basis for your opinion, did
13 you --
14     A    What page is that please?
15     Q    That's on page 2, I'm sorry.
16     A    Thank you.
17     Q    Did you conduct any independent research for
18 purposes of your infringement report?
19     A    From the time that I was asked to become an
20 expert?
21     Q    Yes.
22     A    Only minor.  I became more aware of pet beds in
23 the marketplace perhaps.
24     Q    Did you specifically go out into the marketplace

Page 115

1  understand what you're asking me.

2    Q  Are the opinions expressed in your infringement
3  report relative to the Dallas Manufacturing beds in any
4  way dependent on whether or not a pet is on the bed?

5    A  My report does not reflect the -- whatever
6  effect a pet being on the bed would have because I
7  didn't have a pet with me.

8    Q  Did you believe it was necessary one way or the
9  other to use a pet?

10   A  No.

11   MR. SARET:  Object.

12   THE WITNESS:  Sorry.

13   MR. SARET:  That's okay.

14   MR. CLARK:  Q  You testified earlier that it's
15  common to push pet beds back against a wall or into a
16  corner.

17   A  Yes.

18   Q  If the Dallas beds were pushed against a wall or
19  into a corner, would that change your view at all as to
20  the position of the bolster relative to the base
21  cushion?

22   MR. SARET:  Object to the form of the question.

23   THE WITNESS:  If you push the bed up against the
24  wall, the wall will push the bolster into the center of

Page 161

1   plastic.
2       Q   And this picture of this dog with his head on
3   this, this is on hard plastic?
4       A   No, it's on the fabric.  Actually, that's plaid,
5   believe it or not.
6       Q   Does the plaid have a cushion or foam inside it?
7       A   It never developed much past that, but, yes, it
8   would have had some sort of padding.
9       Q   But that in your view is not a bolster?
10      A   No, sir.
11      Q   Okay.  Now, in connection with your design of
12  dog beds, did you ever actually construct a dog bed
13  yourself, cut material out, put it together, sew it
14  together, mold the pieces?
15      A   No.
16      Q   Did you ever design a pattern to do that?  Did
17  you ever design a pattern so that you --
18      A   No, sir.
19      Q   Did you ever tell someone that took one of your
20  designs and put it into production how many pieces to
21  make it out of or where the seams should be?
22      A   I don't believe I did it in that manner, but in
23  some cases the way the product was made would affect the
24  cost, and cost affects the success of the product.

1   Q   Is that a yes or a no?  My question was if you,
2   yourself, ever determined and designed where the seams
3   or pieces of fabric, how they would be cut and sewn
4   together.
5   A   I believe I might have.
6   Q   On what product?
7   A   There was a dog toy on which the --
8   Q   I'm sorry, but my question was meant to be
9   limited to beds.
10  A   I don't believe so.
11  Q   Okay.  Now when you looked at the dog beds at
12  issue here, my client -- You looked at a dog bed from my
13  client and you looked at several from Dallas
14  Manufacturing, correct?
15  A   Yes, sir.
16  Q   Did you -- How many pieces, how many fabric
17  pieces does my client's dog bed have?
18  A   Off the top of my head, I can't tell you.
19  Q   How many seams does it have?
20  A   I cannot tell you.
21  Q   How many zippers does it have?
22  A   I believe it has two -- No, it has four zippers
23  I believe, but I'm not sure.  I would have to examine it
24  to give you that information.

Simon F. Handelsman - 11/1/2005

```
1  STATE OF ILLINOIS   )
                       )  Ss:
2  COUNTY OF C O O K   )
3
4         The within and foregoing deposition of the
5  aforementioned witness was taken before NADINE J. WATTS,
6  CSR, RPR, and Notary Public, at the place, date and time
7  aforementioned.
8         There were present during the taking of the
9  deposition the previously named counsel.
10        The said witness was first duly sworn and was
11 then examined upon oral interrogatories; the questions
12 and answers were taken down in shorthand by the
13 undersigned, acting as stenographer and Notary Public;
14 and the within and foregoing is a true, accurate and
15 complete record of all of the questions asked of and
16 answers made by the aforementioned witness, at the time
17 and place hereinabove referred to.
18        The signature of the witness was not waived,
19 and the deposition was submitted, pursuant to
20 Rules 30 (e) and 32 (d) of the Rules of Civil Procedure
21 for the United States District Court, to the deponent
22 per copy of the attached letter.
23        The undersigned is not interested in the within
24 case, nor of kin or counsel to any of the parties.
```

180

1       Witness my official signature and seal as

2   Notary Public in and for Cook County Illinois on this

3   _____14th_____ day of _November_, A.D. 2005.

4

5   _____
    NADINE J. WATTS, CSR, RPR
6   License No. 084-002736
    Notary Public

7

8

9

10   OFFICIAL SEAL
     NADINE J WATTS
     NOTARY PUBLIC - STATE OF ILLINOIS
     MY COMMISSION EXPIRES: 05-05-07

11

12

13

14

15

16

17

18

19

20

21

22

23

24