## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>                 Plaintiff,<br><br>     v.<br><br>DALLAS MANUFACTURING COMPANY, INC., a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>                 Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. 04 10162 DPW |

### **<u>DEFENDANTS' OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN AND MOTION TO STRIKE, AND MEMORANDUM IN SUPPORT THEREOF</u>**

# DEFENDANTS' OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN AND MOTION TO STRIKE

Defendants Dallas Manufacturing Company, Inc., BJ's Wholesale Club, Inc., and Doskocil Manufacturing Company, Inc. hereby object to paragraphs 2-9 of the DECLARATION OF SIMON HANDELSMAN IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, filed January 9, 2006 ("Handelsman Declaration"), and move to strike those paragraphs.

The grounds for this motion are that paragraphs 2-9 of the Handelsman Declaration constitute an entirely new, belated, and improper expert report, submitted three-and-a-half months after the deadline for submitting opening expert reports in this case and long after the close of discovery. Flexi-Mat has offered no excuse for its delay in presenting the opinions contained in the Handelsman Declaration, and no good explanations for the wait are apparent. Flexi-Mat failed to disclose these opinions in either of Mr. Handelsman's expert reports, failed to seek leave to supplement his reports, and failed to otherwise submit these opinions to Defendants before filing their summary judgment opposition briefs.

In support of this motion, Dallas Manufacturing relies upon its supporting Memorandum, the Supplemental Declaration of Gary A. Clark in Support of Dallas Manufacturing's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,765,502, the pleadings and other papers on file in this case, and such argument as may be permitted at a hearing of this motion.

Pursuant to Local Rule 7.1(a)(2), counsel certifies that it conferred and attempted in good faith to resolve or narrow the issues raised by this motion.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN AND MOTION TO STRIKE**

## I.
## INTRODUCTION

Defendants Dallas Manufacturing Company, Inc., Doskocil Manufacturing Company, Inc., and BJ's Wholesale Club, Inc., hereby object to paragraphs 2-9 of the Handelsman Declaration and ask the Court to strike them. The paragraphs constitute an entirely new, belated, and improper expert report, submitted three-and-a-half months after the deadline for submitting opening expert reports in this case and long after the close of discovery. Flexi-Mat has offered no excuse for its delay in presenting the opinions contained in the Handelsman Declaration, and no good explanations for the wait are apparent. Flexi-Mat failed to disclose these opinions in either of Mr. Handelsman's expert reports, failed to seek leave to supplement his reports, and failed to otherwise submit these opinions to Defendants before filing their summary judgment opposition briefs.

Before filing new expert opinions relating to summary judgment, a party must seek leave and show good cause to allow the new opinions. Flexi-Mat never sought leave at any time or otherwise tried to disclose the opinions sooner. Moreover, Flexi-Mat cannot show good cause. Flexi-Mat had ample opportunity to conduct expert discovery and plenty of time to supplement Mr. Handelsman's expert report on infringement earlier. By contrast, it would prejudice Defendants to allow the latest opinions now, three-and-a-half months after they were due and more than two months after Defendants took Mr. Handelsman's deposition.

Flexi-Mat is gaming the system. Mr. Handelsman's Expert Report on Infringement (the "Handelsman Infringement Report") was a seven-page skeletal report with only conclusory assertions of why Defendants' products allegedly infringe Flexi-Mat's patent.

Mr. Handelsman compressed the statement of his opinion on infringement into just over three pages of the report. Having stiffed Defendants during expert discovery, Flexi-Mat now tries to sneak in additional expert opinions in a desperate attempt to get to a jury, without having given Defendants the benefit of cross-examination during deposition. This chicanery should not stand.

## II.
## BACKGROUND

Flexi-Mat filed this case on January 23, 2004. The deadline for serving expert reports was September 16, 2005. The deadline for serving expert rebuttal reports was October 21, 2005. Flexi-Mat agreed to these dates in the parties' Stipulation to Amend Scheduling Order dated July 8, 2005, which the Court granted on July 14, 2005. (SUPPLEMENTAL DECLARATION OF GARY A. CLARK IN SUPPORT OF DALLAS MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,765,502, "Supp. Clark Decl.," Exh. C (July 14, 2005 Order on Motion to Amend).) This request was the third time the case schedule had been amended. In August 2005, the parties agreed amongst themselves to postpone the deadline for opening expert reports by one week to September 23, 2005.

On September 23, 2005, Flexi-Mat served Simon Handelsman's Expert Report on Infringement ("Handelsman Infringement Report"), a minimal, seven-page report not including the exhibits. The Handelsman Infringement Report is attached as Exhibit 3 to Flexi-Mat's Memorandum in Support of Its Motion for Summary Judgment of Infringement ("Flexi-Mat's Infringement Memo.") The statement of Mr. Handelsman's infringement opinions comprises just over three pages of the report. In these three pages, Mr. Handelsman repeated the following lines five times for the various accused products:

> This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

(*Id*. at pp. 3-5.) These sentences contain the entirety of Mr. Handelsman's opinions, and mostly just parrot the words of claims 1-3 of U.S. Patent No. 5,765,502 ("the '502 patent").

Neither Flexi-Mat nor Mr. Handelsman ever sought to supplement Mr. Handelsman's conclusory report before summary judgment briefing. Defendants took Mr. Handelsman's deposition on November 1, 2005.

On January 9, 2006, concurrently with its summary judgment oppositions, Flexi-Mat filed and served the Handelsman Declaration. The Handelsman Declaration includes eight paragraphs (paragraphs 2-9) containing new opinions not presented either in the Handelsman Infringement Report or in Mr. Handelsman's Expert Report on Validity.

Among other things, Mr. Handelsman now opines that "Dallas avoided the multiple separate cover construction of Henry, and by doing so saved material and the time of sewing together the ends of two complete covers, and the time of sewing two complete covers together." (Handelsman Decl., ¶ 7.) Mr. Handelsman never previously opined that Dallas Manufacturing's pet bed design saves sewing time, and still provides no basis for how he comes to this conclusion. In his deposition, Mr. Handelsman testified that, in connection with his design of dog beds, he had never actually constructed a dog bed himself, never designed a dog bed pattern, and never determined or designed where the seams and pieces of fabric should be on a dog bed. (Deposition of Simon F. Handelsman taken on Nov. 1, 2005, "Handelsman Depo.," Exh. B to Supp. Clark Decl., at 161:11-162:10.)

Mr. Handelsman also now asserts that having "the bolster lie on the floor" would "defeat the bolstering feature and change the bolster into another, adjacent bottom cushion." (Handelsman Decl., ¶ 8.) Defendants never got a chance to question Mr. Handelsman during his deposition about this curious statement and ask him how it could be true, since the patent specification and drawings indicate that the bolster lies on the floor.

Additionally, Mr. Handelsman now asserts "that during use of the pet bed, with a dog leaning against Dallas' bolster, even more of the bolster will flop over to the exterior of the bottom cushion, and that over time, the bolster of Dallas' pet bed will permanently and progressively more farther to the exterior of the perimeter of the bottom cushion, due to pet usage and the natural sagging or stretching of the cover." (Handelsman Decl., ¶ 8.) This allegation is riddled with problems that Defendants never got the chance to explore fully in deposition. First, Mr. Handelsman testified that he had not made a study of how pets use pet beds and that it formed no part of his opinion. (Supp. Clark Decl., Exh. B, Handelsman Depo. at 29:7-9 & 115:12-20.) Second, Mr. Handelsman offers no opinion on how long it allegedly takes the cover to sag and stretch enough so that substantially all of the bolster is exterior. Finally, the rate of sagging and stretching would presumably depend upon the type of dog and frequency with which the bed is used, factors for which Mr. Handelsman presents no opinion.

Defendants do not object to the exhibits attached to the Handelsman Declaration.

### III.
### DISCUSSION

A. **Before filing new expert opinions relating to summary judgment, a party must (1) seek the Court's permission, and (2) demonstrate good cause to allow the new expert opinions.**

This Court's scheduling order established a schedule for expert discovery. Not surprisingly, expert discovery was supposed to conclude before summary judgment motions

were filed. Indeed, that sequence—completed expert discovery, then summary judgment motions—makes good sense and in some cases is necessary, because if expert discovery were allowed to overlap with summary judgment motions, a party would have the opportunity to "game" the system by tailoring expert discovery specifically to respond to the opponent's summary judgment arguments. Hence, Rule 16(f) of the Federal Rules of Civil Procedure allows the Court, "upon motion or the judge's own initiative, [to] make such orders with regard thereto as are just," including striking expert declarations filed with summary judgment motions. *See, e.g., Trilogy Communications, Inc. v. Times Fiber Communication, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002).

Moreover, the injured party need not show actual prejudice—the burden is on the proponent of the summary judgment declarations to (1) seek the Court's permission to file them, and (2) show good cause as to why the previous expert discovery did not afford the proponent the opportunity to submit expert opinion testimony. *See Akeva*, 212 F.R.D. at 309. "[T]he question is not whether the defendants have been prejudiced, but whether plaintiff has shown good cause for its failure to timely disclose." *Id.* (citations omitted).

In one example, the district court faced very similar facts to those in the instant case, and struck an untimely expert declaration that came after and modified an earlier expert report:

> When Defendant moved for summary judgment, pursuant to the pretrial schedule, on May 2, 2003, Defendant submitted a "Declaration" by Dr. Moreton dated May 1, 2003 (which included a "Declaration" by Dr. Silverman also dated May 1, 2003 as an attachment) (Doc. No. 103) which was substantively different from, and contained information not included in, the original expert report dated November 15, 2002. Although Defendant entitled this submission as a "Declaration," it is really a supplemental expert report, filed to support the Motion for Summary Judgment. This Court finds that such a filing was not

>contemplated by the parties or the Court in the pretrial schedule, and Defendant never moved for leave to supplement its prior expert reports.

*AstraZeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d 491, 502 (E.D. Pa. 2003); *see also Macaulay v. Anas*, 321 F.3d 45 (1st Cir. 2003) (holding that the trial court did not abuse its discretion by precluding expert witness for plaintiff in medical malpractice suit from testifying that surgery performed by defendant was not medically indicated; more than a month had passed after the deadline for submitting expert reports when plaintiff submitted the expert's supplemental report adding the new theory of liability); *Beller v. United States*, 221 F.R.D. 689 (D. N.M. 2003) (holding that there was good cause to strike a supplemental report from plaintiff's expert; the supplemental report was filed after the dates for submission of such reports and plaintiff did not seek leave to file it at that time; the opinions expressed in the supplemental report were broader and deeper than previously offered, and some instances different from earlier opinions); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002) (holding that the exclusion of the second test and opinion by plaintiff's original expert was justified by plaintiff's untimely disclosure of the second test and opinion in violation of the expert disclosure order, by plaintiff's failure to immediately request court permission for the test and opinion, and by the fact that said report was not disclosed to defendants until after discovery ended, which was a second violation of the court's discovery order).

### B.    Flexi-Mat Never Sought the Court's Permission

As the Court's records reflect, Flexi-Mat never sought the Court's permission to file new opposition expert declarations. On that basis alone—Flexi-Mat's failure to seek the Court's permission—the Court should strike the new declaration from Flexi-Mat's testifying expert witness, Mr. Handelsman. *See* FED. R. CIV. P. 16(f); *Trilogy Communications*, 109 F.3d at 744; *Astrazeneca*, 278 F. Supp. 2d at 502.

C.  **Even if Flexi-Mat Had, as Required, Sought the Court's Permission, Flexi-Mat Could Not Show Good Cause Since It Had Ample Opportunity for Expert Discovery**

Even if Flexi-Mat had, as required, sought the Court's permission, Flexi-Mat could not show good cause: It had ample opportunity for expert discovery. The parties have approached the Court three times to amend the schedule in this case to permit sufficient time for discovery, expert reports, and depositions. Flexi-Mat took full advantage, as it had the right to do, for expert discovery under that schedule, as amended. On September 23, 2005, Flexi-Mat served an opening expert report from Mr. Handelsman. On October 21, 2005, Flexi-Mat served a rebuttal report from Mr. Handelsman. Mr. Handelsman had the opportunity to amplify his opinions at his deposition on November 1, 2005.

Notwithstanding the opportunity for reports and the possibility of seeking leave to submit a supplemental report after Mr. Handelsman's deposition, Flexi-Mat waited until filing its summary judgment oppositions to serve Mr. Handelsman's new-found opinions.

Defendants were entitled to rely on the state of the record when they filed their summary judgment motions. With all of that opportunity for expert discovery, Flexi-Mat could not have demonstrated good cause—even if, as it should have, it had sought the Court's permission before filing the Handelsman Declaration. "[S]uch a filing was not contemplated by the parties or the Court in the pretrial schedule, and Defendant never moved for leave to supplement its prior expert reports." *Astrazeneca*, 278 F. Supp. 2d at 502; *see also* FED. R. CIV. P. 16(f); *Trilogy Communications, Inc.*, 109 F.3d at 744.

D.  **It Works No Legally Recognizable Prejudice to Flexi-Mat to Strike the Handelsman Declaration**

It works no legally cognizable prejudice to Flexi-Mat to strike the Handelsman Declaration. As just explained, Flexi-Mat had ample opportunity before Defendants filed their summary judgment motions to develop whatever expert testimony Flexi-Mat thought it could

develop. Flexi-Mat had the opportunity to submit an opening report, and it took it. It had the opportunity to submit a rebuttal report, and it took it.

At some point, enough is enough. At this juncture, the issue is not whether the Handelsman Declaration contains some opinion testimony that Flexi-Mat believes it needs to proffer in order to avoid summary judgment. The Handelsman Declaration clearly must; otherwise, Flexi-Mat would not have filed it. The issues are (1) whether Flexi-Mat had the opportunity to submit expert testimony before filing summary judgment motions, and (2) whether Defendants were entitled to rely on the state of the record when they filed their affirmative summary judgment motions. As explained above, the answer to the first question is "yes."

And the answer to the second question is also "yes." The parties went through extensive expert discovery. Based on the pre-summary judgment motion record developed in the expert reports and depositions, Defendants (and the judicial system, including this Court) were entitled to see whether, based on that existing record, there remained any "genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). Defendants' motion papers proved that no genuine issue remained. It is simply unauthorized, and wholly inappropriate, for Flexi-Mat to wait until after Defendants have filed their summary judgment motions to proffer new expert testimony in light of those motions. The only "prejudice" that Flexi-Mat could point to is that the Court will grant this motion. That is not a legally cognizable prejudice. Indeed it is the central point of Rule 56: to allow, after discovery (and, here, after the close of expert discovery), summary judgment.

# IV.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' objections to and motion to strike paragraphs 2-9 of the Handelsman Declaration.

| | |
|---|---|
| Attorneys for Defendants & Counterclaimants<br>DALLAS MANUFACTURING COMPANY, INC.<br>and BJ'S WHOLESALE CLUB, INC. | Attorneys for Defendants & Counterclaimants<br>DOSKOCIL MANUFACTURING COMPANY, INC.<br>and BJ'S WHOLESALE CLUB, INC. |
| /s/ Darren M. Franklin | /s/ M. Scott Fuller |
| Gary A. Clark (*pro hac vice*)<br>Darren M. Franklin (*pro hac vice*)<br>SHEPPARD MULLIN RICHTER & HAMPTON LLP<br>  A Limited Liability Partnership<br>  Including Professional Corporations<br>333 South Hope Street, 48th Floor<br>Los Angeles, California  90071-1448<br>Telephone:  (213) 620-1780<br>Facsimile:  (213) 620-1398<br>E-mail:  gclark@sheppardmullin.com<br>        dfranklin@sheppardmullin.com | Roy W. Hardin (*pro hac vice*)<br>Martin Korn (*pro hac vice*)<br>M. Scott Fuller (*pro hac vice*)<br>LOCKE LIDDELL & SAPP LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, Texas  75201-6776<br>Telephone:  (214) 740-8556<br>Facsimile:  (214) 740-8800<br>E-mail:  rhardin@lockeliddell.com<br>        mkorn@lockeliddell.com<br>        sfuller@lockeliddell.com |

Dated:   January 30, 2006

James J. Marcellino, Esq. (BBO # 318840)
David M. Mello, Esq. (BBO # 634722)
MCDERMOTT, WILL & EMERY
28 State Street, Boston, Massachusetts  02109-1775
Telephone:  (617) 535-4000;  Facsimile:  (617) 535-3800
E-mail:  jmarcellino@mwe.com; dmello@mwe.com