UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation,<br><br>    Defendants. | Civil Action No. 04 10162 DPW |
| DALLAS MANUFACTURING COMPANY, INC., a corporation,<br><br>    Counter-claimant,<br><br>    v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-Defendant. | **FLEXI-MAT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN** |
| BJ'S WHOLESALE CLUB, INC., a corporation,<br><br>    Counter-claimant,<br><br>    v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-Defendant. | |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation,<br><br>    Counter-claimant,<br><br>    v.<br><br>FLEXI-MAT CORPORATION, a corporation,<br><br>    Counter-Defendant. | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

    I.     An Expert Declaration Should Not Be Stricken Under These Circumstances...................................................................................................2

    II.    Mr. Handelsman Previously Testified About The Construction Of The Henry Patent Pet Bed And Dallas' Pet Bed .................................................3

    III.   Mr. Handelsman Previously Testified About A Bolster Side By Side With The Bottom Cushion................................................................................5

    IV.   Mr. Handelsman Previously Testified That Substantially All Of Dallas' Bolster Is Disposed Exteriorly About At Least A Portion Of The Perimeter Of The Bottom Portion ............................................................................6

    V.    The Remaining Paragraphs Of The Handelsman Declaration Contain No New Opinions ............................................................................................8

    VI.   The Cases Cited By Defendants Do Not Apply......................................................9

CONCLUSION ....................................................................................................................11

**Page**

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Aircraft Gear Corp. v. Marsh, 2004 U.S. Dist. LEXIS 15897 (N.D. Ill. Aug. 11, 2004) ................. 3

Akeva LLC v. Mizuno Corp., 212 F.R.D. 306 (M.D. N.C. 2002) ........................................... 9, 10

AstraZeneca AB v. Mutual Pharm. Co. Inc., 278 F. Supp. 2d 491 (E.D. Pa. 2003) ................... 10

Aventis Envtl. Science USA LP v. Scotts Co., 383 F. Supp. 2d 488 (S.D.N.Y. 2005) ................. 8

Beller v. United States, 221 F.R.D. 689 (D. N.M. 2003) ........................................................... 11

Kinser v. Gehl Co., 1998 U.S. Dist. LEXIS 6624 ....................................................................... 3

Macaulay v. Anas, 321 F.3d 45 (1st Cir. 2003) ......................................................................... 10

Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601 (D. N.J. 2004) .................................................. 3

Talarico v. Marathon Shoe Co., 182 F. Supp. 2d 102 (D. Me. 2002) .......................................... 3

Trilogy Communications, Inc. v. Times Fiber Communication, Inc., 109 F.3d 739 (Fed. Cir. 1997) ................................................................................................................................. 9

**INTRODUCTION**

In Defendants' Objections To Declaration Of Simon Handelsman and Motion To Strike, And Memorandum In Support Thereof ("Defs.' Obj"), Defendants collectively object and move to strike paragraphs 2-9 of the Declaration of Simon Handelsman In Opposition To Defendants' Motion For Summary Judgment ("Handelsman Dec."). But the only specific complaints relate to one sentence in paragraph 7 and three sentences in paragraph 8, and all of those relate solely to Defendant Dallas Manufacturing Company's ("Dallas") pet bed. So despite the broad brush and inflammatory language in Defendants' motion, it is really only Dallas complaining about only parts of two paragraphs.

Specifically, Dallas argues that:

1. In paragraph 7 of Handelsman Dec., Mr. Handelsman states that

> Dallas avoided the multiple separate cover construction of Henry, and by doing so saved material and the time of sewing together the ends of two complete covers, and the time of sewing two complete covers together.

According to Dallas, "Mr. Handelsman never previously opined that Dallas Manufacturing's pet bed design saves sewing time, and still provides no basis for how he comes to this conclusion." Defs. Obj., p. 4. Dallas' objection lacks merit because Simon Handelsman's Expert Report on Infringement ("Handelsman Infringement Report") and Simon Handelsman's Expert Report on Validity ("Handelsman Validity Report") (attached as Exhibits 1 and 2, respectively) plainly indicate that he considered both the Henry patent and Dallas' pet bed, and Dallas' counsel spent a good portion of the approximately six hour long deposition questioning Mr. Handelsman about those subjects. Further, these are facts, not opinions as Dallas mischaracterizes them.

2. In paragraph 8 of the Handelsman Dec., Mr. Handelsman states:

> There is no requirement in the claim [1 of Patent No. 5,765,502] that the bolster lie on the floor. To do so would defeat the bolstering feature and change the bolster into another, adjacent bottom cushion.

Dallas' objection to these statements is that "Defendants never got a chance to question Mr. Handelsman during his deposition about this …." Defs.' Obj. p. 5. Again, Dallas is incorrect for

1

the same reasons described above.  In addition, the "bolster lie[ing] on the floor" statement responds to an argument first raised by Dallas in its summary judgment memorandum, where it argued at p. 14 that the '502 patent requires the bolster to be "alongside" the bottom cushion.  It would have been impossible for Mr. Handelsman to address this argument in his declaration two months before Dallas raised it.

3. In paragraph 8 of his declaration, Mr. Handelsman states:

> I further believe that during use of the pet bed, with a dog leaning against Dallas' bolster, even more of the bolster will flop over to the exterior of the bottom cushion, and that over time, the bolster of Dallas' pet bed will permanently and progressively move farther to the exterior of the perimeter of the bottom cushion, due to pet usage and the natural sagging or stretching of the cover.

Dallas objects that it "never got the chance to fully explore" these statement in Mr. Handelsman's deposition, that Mr. Handelsman "had not made a study" about this subject, and he offers no opinion on how long it takes the cover to sag and stretch …."  Defs.' Obj. p. 5.  Again, Dallas is incorrect for the reasons mentioned above in connection with point one, and for the additional reason that no one prevented Dallas from "explor[ing] fully" this topic.  In essence, Dallas' objection here is not that it did not question Mr. Handelsman, but that Dallas did not question Mr. Handelsman more on this subject, or that he lacked sufficient basis for his statements.  But those arguments do not warrant striking them from Mr. Handelsman's declaration.

These objections and their complete lack of merit are described hereafter in more detail.

**I.     AN EXPERT DECLARATION SHOULD NOT BE STRICKEN UNDER THESE CIRCUMSTANCES**

Defendants' objections are phrased variously, but they boil down to the argument that they did not have the "chance" to cross-examine Mr. Handelsman regarding certain topics.

As described hereafter, the Handelsman Dec. is not based on any new information and provides no new opinions.  It simply re-states what has already been said in his initial expert reports and deposition.  *See Aircraft Gear Corp. v. Marsh*, 2004 U.S. Dist. Lexis 15897, *18 (N.D. Ill. Aug. 11, 2004) (report did not have to be stricken merely because new language had

2

been added to that opinion). Handelsman's declaration was submitted in response to facts and arguments raised by Defendants in their summary judgment motions. *Cf. Kinser v. Gehl Co.*, 1998 U.S. Dist. LEXIS 6624. *19-20 (D. Kan. April 21, 1998) (where there is no prejudice to opposing party, a motion in limine is denied to exclude expert testimony based upon expert affidavits submitted in opposition to summary judgment motion).

Even if Mr. Handelsman's declaration is considered a supplemental or rebuttal expert report provided beyond discovery deadlines, the facts and circumstances of this particular situation do not warrant the "extreme" sanction of preclusion. *See Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 607-608 (D. N.J. 2004)(although some of plaintiff's disclosures might be slightly vague, permitting the affidavit into the record would not prejudice Defendant and Defendant could not have been surprised). Permitting the Handelsman declaration into the record would not unfairly prejudice Defendants. Defendants could not have been surprised by, or unprepared for, the allegations made in the Handelsman declaration.

Similar to the Defendant in *Talarico v. Marathon Shoe Co.*, Dallas and Doskocil are not prejudiced by the Handelsman declaration:

> Because the purposes of disclosure include, *inter alia*, to advise Defendant of likely evidence against it; because Defendant was already aware that [Handelsman] was serving as an expert based on Plaintiff's first timely disclosure[s]; and because the supplemental report … provided no further detail, evidence or explanation, Defendant was not prejudiced by the supplementation of Plaintiff's report.

182 F. Supp. 2d 102, 115 (D. Me. 2002). Handelsman's declaration should not be precluded.

## II. MR. HANDELSMAN PREVIOUSLY TESTIFIED ABOUT THE CONSTRUCTION OF THE HENRY PATENT PET BED AND DALLAS' PET BED

The portion of paragraph 7 of Mr. Handelsman's Declaration to which Defendants object contrasts the construction of the accused Dallas bed with the bed disclosed in the Henry patent. Mr. Handelsman testified in his two expert reports about the Henry patent (pp. 22-24 of the Handelsman Validity Report) and the Dallas pet bed (pp. 3-5 of the Handelsman Infringement Report). At his deposition, Mr. Handelsman testified about the multiple covers of the pet bed

3

shown in Henry and compared and distinguished the Henry pet bed from the Dallas and Doskocil beds (pp. 170-177). He further testified how he examined the Dallas and Doskocil beds.

> I physically handled the beds. I took them apart. I unzipped the zippers and removed the cushion and bolster. I examined the cover. I looked at the fabrics. I tried to familiarize myself with the beds.

Handelsman Dep., attached as Exhibit 3, at p. 35.

Defendants argue that Mr. Handelsman never previously opined that Dallas' pet bed design saves sewing time by avoiding the multiple covers of Henry. Defendants are wrong.

Dallas argued in its Memorandum In Support Of Motion For Summary Judgment Of Non-Infringement Of U.S. Patent No. 5,765,502 (p. 12) that Flexi-Mat's '502 patent is distinguishable from the Henry patent only if the bottom cushion and bolster are in the same interior space, and that Dallas' bed positions the bottom cushion and bolster in "walled off" interior spaces. Mr. Handelsman testified at deposition about the "several covers" of Henry, that "walling off" the bolster and bottom cushion does not transform one cover into several covers, and that sewing the fabric "shut" around the bolster and around the bottom cushion with "one run of the sewing machine … that makes it not a separate cover." Handelsman Dep. pp. 171, 174, 176. Mr. Handelsman's statement in paragraph 7 of his declaration does nothing more than state facts that are the necessary result of the difference between Henry's several and separate covers and Dallas' "walled off" compartments as was explained at his deposition. One saves material and time by making the beds as Defendants do, as opposed to Henry's method of making separate complete covers and then sewing them together. This is not a new opinion.

As to Defendants' arguments that Mr. Handelsman never actually constructed a dog bed himself, designed a dog bed pattern, or determined where the seams should be, those arguments go merely to Mr. Handelsman's basis or qualifications for his statements, not whether Dallas was surprised by them or had a fair opportunity for cross-examination. In fact, however, Defendants again overlooked, as Dallas' counsel put it on p. 14 of the Handelsman

4

Dep., Mr. Handelsman's "extensive knowledge and personal experience in the research and development of products for the pet industry." This was described in the Handelsman Infringement Report and discussed during his deposition, including: "30 years in the pet industry" involving "[p]roduct design, merchandising, marketing, sales promotion, speeches and seminars, articles, general business information … on the pet business," and the "[a]pproximately 30" pet beds he has designed. Handelsman Dep. pp. 15, 17, 20.

Mr. Handelsman's prior testimony supported the sentence of paragraph 7 in question and all of that paragraph, and Defendants have no basis for acting surprised about any of it.

### III. MR. HANDELSMAN PREVIOUSLY TESTIFIED ABOUT A BOLSTER SIDE BY SIDE WITH THE BOTTOM CUSHION

Defendants complain that they "never got a chance" to question Mr. Handelsman about his statement that there is no requirement in claim 1 that the "bolster lie on the floor" and that "[t]o do so would defeat the bolstering feature and change the bolster into another, adjacent bottom cushion" as stated in paragraph 8 of his Declaration. Defendants must have forgotten their own questions. When questioning Mr. Handelsman about the word "about" in claim 1 of the '502 patent, where it appears in the phrase "substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom cushion," Dallas' counsel asked Mr. Handelsman:

> Q. All right. Does the word about indicate to you that the bolster essentially has to be *side by side* with the base cushion?
>
> A. No.

Handelsman Dep. p. 113 (emphasis added).

A bolster that is "side by side" with the base cushion is a bolster that "lie[s] on the floor." Dallas not only got a "chance" to question Mr. Handelsman about this topic during his deposition, Dallas did question him. That Dallas failed to ask the follow-up question of "Why not?", so as to solicit the idea that a bolster lying side by side with the bottom cushion would not function as a bolster, should not be held against Flexi-Mat, and it certainly does not provide a valid basis for

5

striking this portion of Mr. Handelman's Declaration. If Dallas' objection were the rule, the party cross-examining a witness could choose not to ask obvious questions and then complain that it lacked the "chance" to do so. Dallas' objection should be rejected.

IV. **MR. HANDELSMAN PREVIOUSLY TESTIFIED THAT SUBSTANTIALLY ALL OF DALLAS' BOLSTER IS DISPOSED EXTERIORLY ABOUT AT LEAST A PORTION OF THE PERIMETER OF THE BOTTOM PORTION**

Defendants' last specific objection is that they "never got the chance to explore fully" Mr. Handelsman's statement that a dog leaning against Dallas' bolster will cause more of the bolster to flop exteriorly relative to the bottom cushion and that over time, the bolster will permanently extend farther, as stated in paragraph 8 of the Handelsman Declaration. Defendants' use of the words "explore fully" is key here; Defendants did "explore" the "flop effect" during Mr. Handelsman's deposition:

> MR. CLARK:   Q   Well, if you're saying there's that much of the bolster that's beyond the base cushion, you're saying that much of the bolster is not supported by anything underneath?
>
>     *  *  *
>
> THE WITNESS:   I'm saying that when you take this bed and you are trying to determine where the position of the bolster is in relationship to the bottom cushion, one, it changes. If you keep fluffing the bed, it changes wherever it is. But my estimation is it's about like that. And that's on this bed. If you present me with a hundred beds, I suspect there's a variation.
>
> MR. CLARK:   Q   Okay. Now, in the up and down direction where is the bolster relative to the base cushion?
>
> A   In the up and down direction?
>
> Q   In other words, is the bolster down around the side of the base cushion or is it up above the side of the base cushion and simply extended outwardly, you know, above the base cushion?
>
>     *  *  *
>
> THE WITNESS: It flops over, if that's any help.
>
> MR. CLARK:   Q   Is it flopped over right now?
>
> A   Yes.

6

> Q     That's -- Okay. Just so we have our terminology straight, this is your idea of flopping over?
>
> A     This is a degree of flopping over. I'm not trying to be -- I've examined other beds which are more flopped over than this. This one is not as flopped over as some of the others I saw.
>
> Q     Okay. But could you explain what you mean by flopped over?
>
> A     The majority of the bolster is outside the perimeter of the bottom cushion.
>
>     *  *  *

Handelsman Dep. pp. 95-97.

> Defendants also explored the effect of a pet on the Dallas bed:
>
> Q.     Okay. Is your opinion of -- In this case on infringement in any way dependent on whether or not a pet is in the bed?
>
> A.     Is it -- Are you asking me if it -- Would you ask me again? I'm sorry. I understand -- I think I understand what you're asking me.
>
> Q.     Are the opinions expressed in your infringement report relative to the Dallas Manufacturing beds in any way dependent on whether or not a pet is on the bed?
>
> A.     My report does not reflect the -- whatever effect a pet being on the bed would have because I didn't have a pet with me.
>
> Q.     Did you believe it was necessary one way or the other to use a pet?
>
> A.     No.

Handelsman Dep. pp. 114-115.

Defendants obviously had the chance to question Mr. Handelsman on these subjects. That they failed to ask him what effect a pet would have on the bolster, and instead qualified their questions by asking whether Mr. Handelsman's opinions were "dependent" on a pet in the bed and whether it is "necessary … to use a pet," does not justify striking Mr. Handelsman's statements. As to whether Mr. Handelsman made a "study" of how pets use pet beds goes to the basis or foundation of his statement, not whether Defendants "got the chance to explore [it] fully." A challenge to the facts or data relied upon by an expert does not go to the admissibility of his testimony but only to the weight of that testimony. *See Aventis Envtl. Science USA LP v.*

7

*Scotts Co.,* 383 F. Supp. 2d 488, 514 (S.D.N.Y. 2005).  Actually, as previously described, Mr. Handelsman testified about his extensive pet industry experience, pet bed design work, and even ownership of a dog, so he had a basis or foundation.  Defendants' argument that Mr. Handelsman "offers no opinion on how long it allegedly takes the cover to sag …" sounds like a complaint that he did not opine enough in his Declaration, rather than a complaint that he opined about something new.  In any case, if Defendants had more questions on this subject, they should have posed them during Mr. Handelsman's six hour deposition.

### V.    THE REMAINING PARAGRAPHS OF THE HANDELSMAN DECLARATION CONTAIN NO NEW OPINIONS

Defendants seek to strike paragraphs 2-6 and 9 of the Handelsman Declaration, as well as the previously discussed portions of paragraphs 7 and 8.  Defendants do not, however, identify anything specifically objectionable about paragraphs 2-6 and 9.  They have no basis for doing so.

Paragraphs 2-4 refer to the construction of the Doskocil bed.  This was a topic of the Handelsman Infringement Report (p. 3) and Mr. Handelsman's deposition.  For example:

> Q.    All right.  Did you make any investigation on how my client's [Doskocil] dog bed was put together, in other words, where the seams were and how the seams were sewn?
>
> A.    I did look at that.
>
>    *  *  *
>
> Q.    Do you know how this bed is constructed, which piece is put together with which piece and the order of construction?
>
> A.    I understand it.

Handelsman Dep. pp. 163-164.  The deposition continued with multiple questions concerning these subjects.

8

Paragraphs 5-8 of the Handelsman Declaration deal with the construction of the Dallas pet bed. That bed was addressed at pages 3-5 of the Handelsman Infringement Report and as previously described herein, Defendants spent hours on that subject as well.

Paragraph 9 responds to the Declaration of Suzanne D. Fessler In Support Of Dallas Manufacturing's Motion For Summary Judgment Of Non-Infringement Of U.S. Patent No. 5,765,502, which in turn attaches as Exhibit B the Expert Report Of Suzanne Fessler Re: Infringement Issues For U.S. Patent No. 5,765,502. Mr. Handelsman in his declaration refers to "Page 10 of the Declaration of Suzanne D. Fessler" but he is actually referring to p. 10 of her expert report. Mr. Handelsman's declaration cannot fairly be criticized for responding to Ms. Fessler's argument that a pet bed be "deformed, fluffed or plumped up" so that "its shapes changes," because, as previously described, Mr. Handelsman was deposed on the subject of "fluffing" the bed. Handelsman Dep. p. 114.

## VI. THE CASES CITED BY DEFENDANTS DO NOT APPLY

Cases cited by Defendants are distinguishable from the case at hand, because the Handelsman declaration is based upon the same facts and opinions offered in his initial expert reports and deposition. No new opinions are offered, no new information is considered, and no new theories of liability are presented.

In *Trilogy Communications, Inc. v. Times Fiber Communication, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997), documents submitted after the due date for expert's reports "contained *new opinions and information* and did not merely supplement the original report." The court ruled that to the extent the supplemental reports contained new opinions not found in the original report, they should be stricken from the record. *Id.* As previously described, the Handelsman declaration does not contain new opinions or new information.

Similarly, in *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 307 (M.D. N.C. 2002), two untimely expert reports were at issue: the Fields report and Fredricksen report. Fields was a new expert offering a new test and a new opinion, and also requiring a new deposition. *Id.* at

9

308.  His report was characterized as a rebuttal report and therefore, not excluded.  *Id*. at 312.  Fredricksen submitted an initial report and a supplemental report, which incorporated new testing, new data, and a new opinion based on the additional information.  *Id.*  This report was excluded.  *Id.*  Here, on the other hand, Handelsman was the original expert.  His report does not contain new opinions, new "testing" or new information.  His report merely rebuts the allegations set forth by Defendants and their expert in their summary judgment motions.

In *AstraZeneca AB v. Mutual Pharm. Co*., Inc., 278 F. Supp. 2d 491, 502 (E.D. Pa. 2003), the declarations at issue were "substantively different from, and contained information not included in, the original expert report."  Plaintiffs did not have opportunity to adequately address new data and testimony.  *Id*. at 510.  The Court found prejudice to the opposing party that was not easily cured, because they would have to hire experts and do more testing which would delay trial preparation.  *Id.*  In this case, Mr. Handelsman is not proffering new opinions based on new evidence.  Defendants have had the opportunity to depose him on the same subject matter covered in his declaration, which is the same subject matter of his original reports and declaration.  Defendants do not have to hire new experts to consider and rebut the Handelsman Declaration because there is nothing new.  There is no disruption to the summary judgment process by accepting the Handelsman Declaration;  the declaration was merely responding to facts and arguments in Defendants' summary judgment brief.

In *Macaulay v. Anas*, 321 F. 3d 45, 52 (1st Cir. 2003), a supplemental report added a *new theory* of liability, which was introduced days before trial.  "[H]ad the district court allowed the late submissions, it would have had a Hobson's choice:  either force the defense to trial without appropriate preparation … or to reopen discovery and vacate the trial assignment."  *Id.*  Mr. Handelsman's Declaration introduces no new theory of liability.  Defendants had adequate time and opportunity to depose him on the same subject matter.  Defendants cannot claim to have been surprised by Mr. Handelsman's Declaration.

In *Beller v. United States*, 221 F.R.D. 689 (D. N.M. 2003), new opinions were offered based on expanded information and matters not considered at the time initial opinions were formulated at deposition. Again, in contrast, Mr. Handelsman offers no new information. Even if his opinions are considered new opinions, they are based upon the same facts known to all parties during discovery and <u>prior</u> to taking Mr. Handelsman's deposition. The thrust of Mr. Handelsman's opinion never changed.

## CONCLUSION

For the foregoing reasons, Mr. Handelsman's Declaration should not be stricken in any way.

|  | Respectfully submitted, |
|---|---|
| Dated:  February 13 2006 | /s Richard B. Myrus |
|  | Richard B. Myrus (BBO # 638793)<br>GOODWIN PROCTER LLP<br>Exchange Place<br>Boston, MA 02109<br>Telephone:  (617) 570-1058<br>Facsimile:  (617) 523-1231<br><br>Michael Husmann<br>MICHAEL BEST & FRIEDRICH LLP<br>100 East Wisconsin Avenue<br>Suite 3300<br>Milwaukee, WI 53202-4108<br><br>Larry L. Saret<br>Lisa C. Childs<br>Gretchen M. Hosty<br>MICHAEL BEST & FRIEDRICH LLP<br>Two Prudential Plaza<br>180 North Stetson Avenue<br>Suite 2000<br>Chicago, IL 60601<br>Phone: (312) 222-0800<br>Fax: (312) 222-0818<br><br>Attorneys for Plaintiff<br>Flexi-Mat Corporation |

12

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **FLEXI-MAT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO DECLARATION OF SIMON HANDELSMAN** filed through the ECF system will be sent electronically to the registered participants indicated on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 13, 2006.

s/ Richard Myrus<br>
One of the Attorneys for Plaintiff