# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FLEXI-MAT CORPORATION, an Illinois corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 04 10162 DPW |
| | ) |
| DALLAS MANUFACTURING COMPANY, a Texas corporation, BJ'S WHOLESALE CLUB, INC., a Delaware corporation, and DOSKOCIL MANUFACTURING COMPANY, INC., a Texas corporation, | )   SIMON HANDELSMAN'S )   EXPERT REPORT ON )   INFRINGEMENT ) ) |
| | ) |
| Defendants. | ) |
| DALLAS MANUFACTURING COMPANY, INC., a corporation, | ) ) |
| | ) |
| Counter-claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FLEXI-MAT CORPORATION, a corporation, | ) |
| | ) |
| Counter-defendant. | ) |
| BJ'S WHOLESALE CLUB, INC., a corporation, | ) |
| | ) |
| Counter-claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FLEXI-MAT CORPORATION, a corporation, | ) |
| | ) |
| Counter-defendant. | ) |
| DOSKOCIL MANUFACTURING COMPANY, INC., a corporation, | ) ) |
| | ) |
| Counter-claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FLEXI-MAT CORPORATION, a corporation, | ) |
| | ) |
| Counter-defendant. | ) |

**FM Infr. Ex. 3**

If called to testify in this case, I will express the following opinions at the trial, the basis and reasons for which are set forth below and detailed in the documentation identified below. I reserve the right to supplement these opinions in the event of new information.

1.    **The Basis For My Opinion**

In preparation for this declaration and pursuant to my role as expert witness, I have reviewed the following documents and things which serve as the data and information upon which I base the opinions set forth herein:

1. U.S. Patent No. 5,765,502 ("the '502 patent");

2. The file history of the '502 patent;

3. Various pet beds, which I understand were manufactured by Doskocil and Dallas (as described in more detail below);

4. The patents and publications set forth on the face of the '502 patent as "References Cited"; and

5. Testimony from Neil Nivert, an employee of Dallas Manufacturing.

I also have extensive knowledge and personal experience in the research and development of products for the pet industry, and I used this knowledge and experience in preparing this report.

2.    **Statement Of My Opinion**

I understand that infringement is determined by comparing the terms (or "limitations") found in a patent's claims to an accused product. If each and every term in a particular claim is found in the accused product, then that product infringes the claim.

I understand that the claims at issue (claims 1-3) read as follows:

1. A pet bed comprising:

an outer covering;

a removable cushion disposed within the outer covering to form a cushioned bottom

2

portion; and

a bolster removably disposed within the interior of the outer covering and substantially all of said bolster disposed exteriorly about at least a portion of the perimeter of the bottom portion without being secured to the removable cushion.

2. The pet bed of claim 1, wherein the outer covering further includes a reclosable access opening.

3. The pet bed of claim 2, wherein the reclosable access opening further includes a zipper.

I have examined the pet beds shown in attached photographs and have found the following. The numbered portions of the beds in the attached photographs correspond to the numbers in the paragraphs below.

A.     Doskocil Bed Sold To BJ's

The pet bed which I understand was sold by Doskocil to BJ's is pictured behind the tab for Exhibit A. This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

B.     Dallas (I) Bed Sold To BJ's

The pet bed which I understand was initially sold by Dallas to BJ's is pictured behind the tab for Exhibit B. This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The

cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

C.    **Dallas (II) Bed Sold To BJ's**

The pet bed which I understand was subsequently sold by Dallas to BJ's is pictured behind the tab for Exhibit C. This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

D.    **Dallas Bed Sold To Costco**

The pet bed which I understand was sold by Dallas to Costco is pictured behind the tab for Exhibit D. This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not

secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

### E.     Dallas Bed Sold To Sam's Club

The pet bed which I understand was sold by Dallas to Sam's Club is pictured behind the tab for Exhibit E. This pet bed has an outer covering (1), a cushion (2) and a bolster (3). The cushion is removable and is disposed within the outer covering. The cushion is in the bottom of the outer covering, and forms a cushioned bottom portion. The bolster is removable and is disposed within the interior of the outer covering. Substantially all of the bolster is disposed exteriorly about at least a portion of the perimeter (4) of the bottom portion. The bolster is not secured to the removable cushion. The outer covering includes a reclosable access opening, which includes a zipper (5).

### F.     Dallas Bed Sold To Bass Pro And To Big Lots

In addition, although I have not physically examined the beds sold by Dallas to Bass Pro or to Big Lots, I have examined photographs of them. These photographs are behind the tab for Exhibits F and G, respectively. I have reviewed testimony from Neil Nivert, an employee of Dallas Manufacturing, stating that these beds were constructed by Dallas in the same way the beds sold to BJ's by Dallas were constructed. (Nivert Dep. at 120-125, attached as Exhibit H). Based on my review of these photographs, I agree.

In summary, and in my opinion, each of the Dallas and Doskocil beds I examined or reviewed in photographs include each of the limitations in claims 1,2 and 3 of the '502 patent.

3.    **Qualifications**

I am the president of Out Of Hand, Inc., a consulting firm for the pet industry.  I have been a consultant since 1992.  My clients include pet product manufacturers, importers, distributors, and retailers.  I consult on pet product design, including pet beds, among other things, and have extensive experience in retailing, manufacturing, and distribution of pet supplies.

From 1989 to 1992, I co-founded and worked for PetCare Superstores, a retailer of pet products, which were eventually sold to PetCo.  From 1978 to 1989, I was employed by Docktor Pet Centers, a franchise chain of over 200 pet stores.  At Docktor Pet, I developed a private label product line of pet products and created promotions to increase sales per store.

Before Docktor Pet, I was with several retail stores, both department and specialty stores.  I also worked for Faded Glory, a jeans apparel company, and learned the fashion and importing business.

I am an inventor on a number of pet product patents and patent applications, a list of which is attached.

A listing of all articles I have authored and have been able to locate copies of is provided along with this report.  I was unable to locate copies of some articles published in *Pet Dealer*.

4.    **Compensation And Expert Testimony In Other Cases**

I am being compensated at $400/hour for my study and testimony.  I was retained as an expert by Four Paws Products Ltd. in the past, however, I have not testified as an expert at trial or by deposition in that or any other case.

Having been informed that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct:

September 30, 2005

Sunouj Handelsman

7

## List of Publications

Copies of my booklet, Successful Retailing, and my columns published in The Pet Dealer, Pet Age, and Groom & Board are provided in lieu of a list.

United States Patent No. 6,474,268
Suchowski and Handelsman, entitled Composite Chew Toy, issued November 5, 2002, assignee The Hartz Mountain Corporation (Secaucus, NJ)

United States Patent No. 6,415,741
Suchowski, Handelsman and Lai, entitled Scented Chew Toy, issued July 9, 2002, assignee The Hartz Mountain Corporation (Secaucus, NJ)

United States Patent No. 6,360,695
Suchowski and Handelsman, entitled Composite Chew Toy, issued March 26, 2002, assignee The Hartz Mountain Corporation (Secaucus, NJ)

United States Patent No. D450,894
Suchowski and Handelsman, entitled Composite Chew Toy, issued November 20, 2001, assignee: The Hartz Mountain Corporation

United States Patent No. 6,305,326
Suchowski and Handelsman, entitled Composite Chew Toy, issued October 23, 2001, assignee The Hartz Mountain Corporation (Secaucus, NJ)

United States Patent No. 6,116,191
Suchowski and Handelsman, entitled Composite Chew Toy, issued September 12, 2000, assignee The Hartz Mountain Corporation (Secaucus, NJ)

United States Patent No. 6,112,703
Handelsman, entitled Shrouded Chewable Pet Toys and Method of Making, issued September 5, 2000, assignee: JW Pet Company, Inc. (Hasbrouck Heights, NJ)

United States Patent No. 5,806,464
Willinger and Handelsman, entitled Modular Pet Furniture, issued September 15, 1998, assignee: J.W. Pet Company, Inc. (Englewood, NJ)

United States Patent Application Pub. No. 20050166865
Handelsman and Lai, entitled Multipart Chew Toy, published August 4, 2005.

United States Patent Application Pub. No. 20040216693
Handelsman, entitled Pet Chews And Methods Of Providing Dental Care To Pets, published November 4, 2004.

United States Patent Application Pub. No. 20010042521
Suchowski and Handelsman, entitled Composite Chew Toy, published November 22, 2001.

United States Patent Application Pub. No. 20010029903
Suchowski, Handelsman, and Lai, entitled Scented Chew Toy, published October 18, 2001.

DOSKOCIL BED SOLD TO BJ'S (PAR. 2.A)





DOSKOCIL BED SOLD TO BJ'S (PAR. 2.A)





DOSKOCIL BED SOLD TO BJ'S (PAR. 2.A)



DALLAS (I) BED SOLD TO BJ'S (PAR. 2.B)





DALLAS (I) BED SOLD TO BJ'S (PAR. 2.B)





DALLAS (I) BED SOLD TO BJ'S (PAR. 2.B)



DALLAS (II) BED SOLD TO BJ'S (PAR. 2.C)





DALLAS (II) BED SOLD TO BJ'S (PAR. 2.C)





DALLAS (II) BED SOLD TO BJ'S (PAR. 2.C)



DALLAS BED SOLD TO COSTCO (PAR. 2.D)





DALLAS BED SOLD TO COSTCO (PAR. 2.D)





DALLAS BED SOLD TO COSTCO (PAR. 2.D)



DALLAS BED SOLD TO SAM'S CLUB (PAR. 2.E)





DALLAS BED SOLD TO SAM'S CLUB (PAR. 2.E)





DALLAS BED SOLD TO SAM'S CLUB (PAR. 2.E)



DALLAS BED SOLD TO BASS PRO (PARA. 2.F)





3 (inside)

1

4

2 (inside)

DALLAS BED SOLD TO BASS PRO (PAR. 2.F)



1
2 (inside)
3 (inside)
5



3 (inside)
4

DALLAS BED SOLD TO BIG LOTS (PAR. 2.G)





DALLAS BED SOLD TO BIG LOTS (PAR. 2.G)





DALLAS BED SOLD TO BIG LOTS (PAR. 2.G)

